# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUSTY BUTTON AND MITCHELL TAYLOR BUTTON<br><br>PLAINTIFFS,<br><br>V.<br><br>THE NEW YORK TIMES COMPANY, JULIA JACOBS, LINDSEY RUFF, SABINA MARIELLA, DAWN SCHNEIDER, DEMETRI BLAISDELL and DAVID MCCRAW<br><br>DEFENDANTS. | Case No: 1:24-CV-05888-MKV<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs Dusty Button and Mitchell Taylor Button, (together, "Plaintiffs") file this Amended Complaint and sue The New York Times Company, Julia Jacobs, Lindsey Ruff, Sabina Mariella, Dawn Schneider, Demetri Blaisdell and David McCraw, (together, "Defendants"), jointly and severally:

## <u>NATURE OF THE ACTION</u>

1. This case is about abuse of power, intimidation and the weaponization of the justice system by attorneys from Boies Schiller & Flexner, who *conspired* and *colluded* with The New York Times Company, ("The Times"), to *unethically* and *unlawfully* violate Plaintiffs' Constitutional rights to due process.

2. This is an action about attorney-media collusion and the unethical and unlawful practices of greedy, fame and power-hungry attorneys who are not interested in the truth or law they pled an oath to uphold and who are confident there will be no consequence to their unlawful, unethical and immoral conduct against innocent victims, such as Plaintiffs.

3. This action is about attorneys from Boies Schiller & Flexner; a firm who has a *long proven* history of facilitating favors for The Times and others, by conspiring together in an eagerness to publish the "best headline" and unethically gain an *unfair advantage* in litigation and then *silencing anyone* who proves their tactics are unethical and that the articles pushing *knowingly false* narratives to the public are only to gain notoriety, (*while simultaneously possessing evidence against that narrative),* solely to sway the Court of public opinion and *any potential juror* in their favor.

4. This action is about Defendants who possessed evidence which proved the narrative they pushed to the New York Times was entirely false but chose to withhold the evidence to ensure both parties controlled the headlines.

5. These Defendants have all profited from knowingly false allegations and/or false publication to a mass audience, benefitting from the persecution of two innocent lives; for fame and fortune.

6. *Unlike* the Defendants' attempt in silencing the Plaintiffs through their plagiarized motion practice[1] and unethical manipulation, this lawsuit is not retaliation, and is not meant to harass, intimidate, frighten or silence anyone; as a matter of fact, the Plaintiffs have spent four years trying to get witnesses to speak to them including Ms. Jacobs, but it is a rare occurrence that anyone listed on the Nevada Plaintiffs' disclosures list will speak, and the few that have, have only corroborated the Buttons' truth.

7. *This lawsuit* is not frivolous; it is Plaintiffs' right to due process and the Court should *disregard* Defendants' failed attempts in deceiving the Court that this lawsuit is anything other than Plaintiffs appropriately seeking legal recourse for the civil injustices that were brought against them and that which have destroyed their lives.

8. Defendants Lindsey Ruff and Sabina Mariella in collaboration with their public relations and communications director, Dawn Schneider and associate and non-party co-conspirator, Sigrid McCawley, unethically **colluded** with journalist Julia Jacobs and The New York Times company to *intentionally* compromise Plaintiffs' ability to prepare a defense against a frivolous lawsuit brought forth against them by publishing a defamatory, front-page article to The New York Times which disclosed a private lawsuit to a mass audience *prior* to Plaintiffs **ever being served** with the complaint or a summons even being issued in Nevada.

9. This action is about former Boies Schiller & Flexner associate Demetri Blaisdell, an attorney for The New York Times Company who represents Julia Jacobs and who infringed on Plaintiffs' due process, conspired with his former associates from Boies Schiller & Flexner and **threatened** Plaintiffs in order to impede and *intentionally*

3
AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

*interfere* with Plaintiffs' rights to due process and ability to seek the justice they deserve including by abusing his power as an attorney in an effort to silence Plaintiffs from coming forward and seeking legal recourse against his client.

10. The action is about Defendant Schneider, **known** for her unethical behavior in colluding with the media to sway the public opinion against the opponents of Boies Schiller and Flexner, which has been cited in many articles including because Ms. Schneider is married to New York Times journalist, Joe Nocera, known for using his position of power and colluding with Ms. Schneider in order to gain an advantage in the media.

11. This action is about two attorneys, (Ruff and Mariella), who represent six women in the District Court of Nevada, who have all claimed false allegations of sexual abuse against the Plaintiff, knowing they possessed information and documents proving those allegations to be false from the onset and later obtaining further discovery which confirmed all six of their clients committed perjury.

12. Ms. Ruff and Ms. Mariella have abused their power as attorneys from Boies Schiller & Flexner to mislead multiple federal Courts into believing the Plaintiffs allegations against various third parties is not warranted and is an attempt to "frighten" and "harass" them, leading the Plaintiffs to believe they cannot successfully seek legal recourse against them or any other third party who has irreparably harmed them, thereby making the Plaintiffs afraid to file this lawsuit sooner due to their legal reach and internal networking including but not limited to, with the New York Times Company and other attorneys representing the third parties who Plaintiffs have sued, who are also employees or formerly employed by the Boies Schiller & Flexner firm.

13. Ms. Ruff and Ms. Mariella intentionally led the Plaintiffs to believe that legal recourse against them and third parties was not possible because they would inform the Courts that the lawsuits the Plaintiffs have filed are meant to harass and intimidate "loved ones", "witnesses" and "supporters" of the "victims" in Nevada and even filed for sanctions against them for filing a lawsuit against the parents, therapist and family friend of Jane Doe 1, (who Plaintiffs have never met); although the sanctions were denied.

14. Specifically, Mr. Blaisdell led the Plaintiffs to believe they could not seek legal recourse against him or any party from the New York Times Company including Ms. Jacobs after he stated it would be a "waste of time" and that their subpoenas to Ms. Jacobs and The New York Times Company were against the law and untimely.

15. This action is about Defendant David McCraw, well-known and established attorney for the New York Times Company, who upon belief, colluded with Defendants Ruff, Mariella, Jacobs and Blaisdell to interfere in Plaintiffs' pursuit of legal recourse against Ms. Jacobs and The New York Times Company as he intentionally conspired with the Defendants from Boies Schiller & Flexner to protect the New York Times Company from legal recourse and to ensure the narrative against the Plaintiffs remained as it was when the article about them in the New York Times was published.

16. Journalist for The New York Times Company, Julia Jacobs, conspired and colluded with Boies Schiller & Flexner attorneys *and their clients* to publish and disclose a private lawsuit against Plaintiffs before Plaintiffs were *ever even served*, had *any knowledge of the lawsuit* or the allegations set forth within the complaint.

17. Ms. Jacobs' article about Plaintiffs on July 29th, 2021, was not only defamatory in nature but was *intentionally published prior to service*, or a summons even being issued as a favor to the Boies Schiller & Flexner firm, in order to completely and *intentionally* cripple the Plaintiffs' defense against the false allegations against them in Nevada and to obstruct the litigation in Nevada as the Plaintiffs could no longer work in any industry, including their own after Defendants Ruff, Mariella, Schneider, the Times and Jacobs swayed the public opinion against the Plaintiffs and ruined their reputations and careers.

18. This case is about ***all Defendants***, who exploited their positions of power and influence as attorneys, who used a globally renowned and frequently televised attorney, (non-party co-conspirator, Sigrid McCawley), to orchestrated a false narrative with a defamatory foundation in order to assure the careers, businesses, reputations and well- known and respected good names of the Plaintiffs in this case were *entirely decimated* **prior** to bringing forth a fraudulent lawsuit on behalf of their clients thus, *intentionally* crippling Plaintiffs' finances and rendering them incapable of defending themselves against the fraudulent litigation Defendants and their clients *strategically* ensured was published on the world stage *prior* to Plaintiffs ever learning that they were being sued[1].

---

[1] On July 29th, 2021, the New York Times published interviews with Sigrid McCawley and her clients, including false and defamatory statements about Plaintiffs - https://www.nytimes.com/2021/07/29/arts/dance/mitchell-button-dusty-button-abuse.html . Plaintiffs received an email from Defendants proving Sigrid McCawley and PR Team member Dawn Schneider arranged an interview at least on one occasion with Julia Jacobs of the New York Times which took place on July 26th, 2021, days prior to the lawsuit being filed with the Court. As discussed further herein, to no coincidence; Plaintiffs contacted Julia Jacobs in 2023 addressing the defamatory article, were referred to her attorney David McCraw who then deferred Plaintiffs to a different attorney who Plaintiffs were led to believe represented to Julia Jacobs; Demetri Blaisdell, former associate of Boies Schiller Flexner LLP, who threatened Plaintiffs upon learning Plaintiffs intended to sue The New York Times and Julia Jacobs.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

19. Upon information and belief, Defendants Ruff, Mariella, Schneider, Jacobs and non-party clients of Ruff and Mariella, Sage Humphries and Gina Menichino to produce a false narrative intentionally written to mislead the public and the Courts prior to the Plaintiffs ever being served with the complaint.

20. The New York Times Company states it has a "Commitment to Quality Journalism"; however, that is simply not the case here, as Defendant Julia Jacobs intentionally chose to disregard her duties to investigate, write and publish a "story" consistent with facts, which were available to her through Defendants who were in possession of those facts, various third-parties and through the public, and the attorneys from Boies Schiller & Flexner themselves, proving the allegations against Plaintiffs to be false in their entirety *prior* to publishing her defamatory article.

21. Defendant Julia Jacobs conspired and agreed to an arranged interview by and through Dawn Schneider with Sigrid McCawley, Lindsey Ruff, Sabina Mariella and their clients, weeks prior to a written complaint being filed against Plaintiffs, later publishing that article prior to Plaintiffs being served with the Complaint.

22. Upon information and belief, Defendants Ruff, Mariella, Schneider and Jacobs agreed with each other to produce a story which they knew would be false as they possessed evidence proving Ms. Humphries' and Ms. Menichino's allegations to be false but published the defamatory article anyway, including because the allegations themselves are false and frivolous in their entirety.

23. This case is about attorneys from Boies Schiller & Flexner who *knowingly* violated the model rules of professional conduct by unlawfully and unethically conspiring with the media to publish a lawsuit before the lawsuit was served in an attempt to *intentionally*

*taint any potential jury pool and the public's view of Plaintiffs regardless of the truth or falsity of the article or allegations* and who continue to commit fraud on the Court to falsely "support" their client's knowingly fraudulent allegations.

24. This is not a case of Plaintiffs "disagreeing" or "disapproving" false statements published about them in the media; this case is an exemplary example of attorney-media collusion; attorneys with **power, fortune, fame and influence,** who *egregiously* made and amplified *knowingly* false and defamatory statements to a **mass** audience *aggressively*, *proudly, publicly and repeatedly***,** as an **orchestrated attack** to destroy the livelihoods, businesses, careers and reputations of Plaintiffs though targeted deployments of defamation to mass audiences including to those who not only subscribed to every move that Plaintiffs made in their respective careers but to those who merely received daily news by way of the media and the press in a defamatory global media campaign waged against Plaintiffs.

25. The Defendants knew Ms. Jacobs' article against Plaintiffs would spread like wildfire, and it did, across the globe, to the extent of a globally televised interview on a major news publication, which in turn, *immediately* caused further and complete destruction of Plaintiffs' businesses, careers and reputations, resulting in the termination of *all employment* for Plaintiffs then and for the foreseeable future.

26. This case is about two attorneys from Boies Schiller & Flexner who continuously commit fraud on the Court to protect their clients' perjury, knowing their allegations are fraudulent.

27. Defendants' conduct, shown forth in the complaint herein, is nothing more than **proof** that attorneys and media outlets such as Boies Schiller & Flexner associates and The

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Times have **such an abundance of power** that it allows them to engage in unethical and illegal acts with *no consequence*, leading to the complete destruction of the lives of innocent parties who fall victim to their unlawful, unethical and immoral practices.

28. These Defendants are not innocent; they are powerful corporations who will do whatever is necessary to silence the Plaintiffs' truth, that they have weaponized the justice system, the MeToo movement and their ability to tactically maneuver in Court, regardless of the truth, falsity or manipulation of their statements.

## THE PARTIES

29. Plaintiff Dusty Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Ms. Button is the wife of Plaintiff Mitchell Taylor Button ("Taylor Button", "Taylor").

30. Plaintiff Taylor Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Mr. Button is the husband of Plaintiff Dusty Button ("Dusty").

31. Defendant, The New York Times Company, ("The Times"), is a New York corporation with its headquarters and principal place of business in New York. The Times publishes digital and print products, including its core news product, The New York Times, which is available on its mobile applications, on its website (NYTimes.com), and as a printed newspaper, and associated content such as its podcasts.

32. Upon belief, Defendant Julia Jacobs is an individual who resides and is domiciled in New York City, NY and is a journalist with The New York Times in New York City, NY.

33. Upon belief, Defendant Lindsey Ruff is an individual who resides and is domiciled in New York City, NY and is an attorney with Boies Schiller & Flexner LLP in New York City, NY.

34. Upon belief, Defendant Sabina Mariella is an individual who resides and is domiciled in New York City, NY and is an attorney with Boies Schiller & Flexner LLP in New York City, NY.

35. Upon belief, Defendant Dawn Schneider is an individual who resides and is domiciled in New York City, NY and is an associate with Boies Schiller & Flexner LLP in New York City, NY.

36. Upon belief, Defendant Demetri Blaisdell is an individual who resides and is domiciled in New York City, NY and is an attorney for The New York Times Company.

37. Upon belief, Defendant David McCraw is an individual who resides and is domiciled in New York City, NY and is an attorney for The New York Times Company.

## **JURISDICTION AND VENUE**

38. Plaintiffs are citizens of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C § 1332.

39. Defendants are citizens of the state of New York for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

40. Because The Times' principal place of business and headquarters is in this District, the injuries alleged herein from Defendants' unlawful conduct foreseeably occurred in this District.

41. Venue is proper in this Court pursuant to Title 18 U.S.C. §§ 1391(b)(1) and (b)(2). The New York Times Company and Defendants reside and are subject to personal jurisdiction in New York.

42. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district by virtue of the transmission and publication of the false and defamatory statements in this district (and elsewhere) and also because Defendants are subject to this Court's personal jurisdiction with respect to this action.

43. This Court possesses personal jurisdiction over Defendants on the grounds that Defendants committed a tortious act including but not limited to defamation in this state, (as alleged in this Complaint), and on the grounds that Defendants caused injury to Plaintiffs within the state arising out of an act or omission by Defendants outside of this state, while at or about the time of the injury, products, materials, or things processed, serviced, or manufactured by Defendants were used or consumed within this state in the ordinary course of commerce, trade, or use.

44. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

## **BACKGROUND**

45. Plaintiff Dusty Button was a world-renowned ballet dancer who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City.

In 2007, she joined the Royal Ballet School in London and in 2008 she joined Birmingham Royal Ballet in England.

46. In 2011, Ms. Button danced with American Ballet Theatre.

47. Ms. Button was best known for her work with the Boston Ballet, which she joined in 2012 and was promoted to their highest position of principal ballerina in 2014.

48. Ms. Button was Red Bull's first and only ballet athlete and has been published in media publications across the globe, positively influencing hundreds of thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States.

49. Plaintiff Dusty Button's Instagram account, @dusty_button, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

50. Ms. Button deleted her social media account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Defendants' conspiracy, collusion with the media and defamatory statements, in an unethical play to a mass audience and waging a defamatory global media campaign against Dusty to destroy her livelihood, career, reputation and business and to gain attention and traction for Defendants' clients' false and fraudulent complaints.

51. Plaintiff Mitchell Taylor Button, ("Taylor Button"), was one of the world's most influential custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his automotive design, builds and work in the industry.

52. Plaintiff has positively influenced hundreds of thousands of people nationally and internationally and has been procured from global organizations for speaking engagements and commissions that continue to live on with his legacy today despite the destruction of his life's work by Defendants.

53. Plaintiff Taylor Button's Instagram account, @button_built, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

54. Mr. Button deleted his social media account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Defendants' conspiracy, collusion with the media and defamatory statements, in an unethical play to a mass audience and waging a defamatory global media campaign against Taylor to destroy his livelihood, career, reputation and business and to gain attention and traction for Defendants' clients' false and fraudulent complaints.

55. Plaintiffs' names and likeness was their business and generated one hundred percent of their yearly revenue whereas, Plaintiffs, themselves and what they provided to their respective industries was solely based on what they provided as their name brands, known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand, Bravado by Dusty Button, Meisturwerk and Meisturwerk Machinen.

56. Plaintiffs' established businesses, goods and services were directly sourced and provided from their good names, talent, expertise, reputations, skills, manufacturing and marketing capabilities, which were completely destroyed by Defendants and their abuse of power to influence the media, the public, the press and any potential juror as

famous, world-renowned attorneys and one of the largest and most influential media

publications in the world.

57. Plaintiffs' reputation and their own person was their business, goods and services and

Ms. Jacobs, the New York Times Company, Ms. Ruff, Ms. Mariella and Ms.

Schneider knew their headline about the Plaintiffs would intentionally lead viewers to

believe the Plaintiffs were the next case with a likeness compared to Jeffrey Epstein

and Ghislaine Maxwell, shortly following their co-conspirator's representation of

Virginia Guthrie; this would not have been so if the Defendants ensured the

allegations and headlines to follow were not manipulated as such.

58. A culture of defamation permeates and plagues the #MeToo movement, particularly in

the entertainment industries and has in turn, destroyed the credibility of real victims

everywhere, while simultaneously mocking the judicial system and enabling people to

weaponize the civil justice system with false accusations, which ultimately have the

same consequence on innocent lives as they would if they were true accusations

against guilty parties, rendering Courts and Parties afraid to defend against claims of

this magnitude due to the inevitable nuclear social fallout.

59. The culture of defamation has dialed the integrity of civil litigation back decades, as

recently seen in cases around the world such as Depp v. Heard[2], Bauer v. Hill[3] and

recently, the Eleanor Williams[4] case in England, all of which proved innocent parties'

lives were completely destroyed by false and defamatory statements, not only made

through frivolous litigation, but in the media, the news and in the press.

---

[2] Depp v. Heard, *No. CL-2019-2911 (Va. Cir. Ct. Jul. 25, 2019)*
[3] Trevor Bauer v. Lindsey C. Hill *(8:22-cv-00868) District Court, C.D. California*
[4] https://www.judiciary.uk/wp-content/uploads/2023/03/R-v-Eleanor-Williams-sentencing.pdf

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

60. Other prominent dancers have been publicly defamed and severely harassed in past years, through fraudulent and defamatory statements online including but not limited to British dancer and choreographer Liam Scarlett, who sadly took his own life as a direct cause of false and defamatory statements in the media and through industry gossip. "*We feel Liam would not have taken his life if his name hadn't been dragged through the press with inaccurate allegations*", stated by Deborah Scarlett, Liam's mother.

61. Liam Scarlett was *cleared of any wrongdoing*, but only *after* his death which included the false and defamatory statements of misconduct with children, which were **all proven to be false statements** but which were never acknowledged or rectified by any media source to date including but not limited to The New York Times Company[5].

## **STATEMENTS OF FACTS**

62. On July 29th, 2021, Julia Jacobs published an article in the New York Times about Plaintiffs in the "Arts and Culture" section with the title, "*Former Dance Instructor Accused of Sexual Assault in Lawsuit*".

63. Ms. Jacob's article was published *prior* to Plaintiffs *ever being served* with the complaint or Plaintiffs having *any knowledge* of the lawsuit or a summons being issued which had been filed against Taylor but which named his wife, Plaintiff Dusty Button, as a non-party co-conspirator.

---

[5] The New York Times even posted a disgusting "follow up" article following Liam Scarlett's suicide with the title "Liam Scarlett, Choreographer Accused of Sexual Misconduct, Dies at 35"…
https://www.nytimes.com/2021/04/17/arts/dance/liam-scarlett-dead.html .

15
AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

64. The lawsuit was *intentionally* served on Plaintiff Mitchell Taylor Button *after* Ms. Jacobs' article was published.

65. The Nevada complaint was filed on July 28th, 2021 and the Plaintiffs were served at 4:17pm PST on July 29th, 2021. The Times article was published at 12pm EST, before Plaintiffs ever knew they were being sued.

66. Two years later, Plaintiffs were provided an email in discovery of the Nevada litigation which proved that attorneys from Boies Schiller & Flexner, Lindsey Ruff and Sabina Mariella, (in conjunction with their associate and non-party co-conspirator Sigrid McCawley and associate and Public Relations and Communications Director, Dawn Schneider), made an agreement arranging for Julia Jacobs to interview their clients for Ms. Jacobs' article on July 26th, 2021, *three days prior* to filing the Nevada complaint with the Court.

67. Prior to July 26th, 2021, Ms. McCawley and her associates, including Ms. Schneider had already arranged prior meetings with Ms. Jacobs and other media outlets, (as testified to by non-party and Defendant in a separate litigation with Plaintiffs, Madison Breshears[6]), who took matters into her own hands by publishing an entire defamatory and harassing campaign against Plaintiffs on May 13th, 2021 as she "*knew the article was coming out*", "*was imminent*" and "*wanted to be the first to break the story*".

68. Ms. Breshears even admitted that she would not have made the defamatory posts on social media if she had known Plaintiffs were "*going to sue her*".

69. Madison Breshears is the friend of Sage Humphries, (one of the subjects of Ms. Jacobs' article and client of attorneys from Boies Schiller & Flexner), who "*knew the*

---

[6] See case 1:24-cv-03757-MKV – Button et al v. Breshears

*article was coming out in the New York Times*" **months prior** to the article being published, leading her to post false and defamatory statements against Plaintiffs on May 13th, 2021 via a viral Instagram bullying and harassment campaign against Plaintiffs so she would be the first to "*break the story*".

70. Upon information and belief, Ms. Breshears conspired with Ms. Ruff, Mariella, Schneider and Jacobs, (and non-party co-conspirator Sigrid McCawley), to publish defamatory statements about the Plaintiffs prior to the article being published in the New York Times.

71. The following defamatory, harassing and online bullying campaign was waged against Plaintiffs on May 13th, 2021 by Madison Breshears in collusion with her friend Sage Humphries, Hannah Stolrow, Ms. Humphries' attorneys, (Defendants Ruff and Mariella), Defendants Schneider and Jacobs.

72. May 13th, 2021, was the most traumatizing day of Plaintiffs' lives until Ms. Jacobs' article was posted on July 29th, 2021 which caused the Plaintiffs severe emotional trauma including because they had still not yet recovered from the horrible defamatory statement made about them in months prior by Ms. Breshears.

73. The trauma and depression which followed Ms. Jacobs article nearly led Plaintiffs to take their own lives.

74. Ms. Jacobs negligence in diligently researching and reckless disregard for the truth of the statements provided by Sage Humphries, Gina Menichino and their counsel here,

(who were in the possession of evidence proving those allegations to be false), took

everything from two innocent people and very nearly took their lives[7].

***Defendants' Unethical Collusion with Non-Party, Madison Breshears on May 13th, 2021***

75. Around 9:00pm EST on May 13th, 2021, Plaintiff Dusty Button received an initial

attack of two false and defamatory public comments on her Instagram profile page in

response to a video she posted of herself dancing from Madison Breshears' personal

Instagram account with the username, @mjbreshears, which stated the following:

"stop preying on young girls" and "feel like y'all should know she can't keep a ballet job bc

she grooms young girls into sex acts with herself and her husband".



76. Within *seconds* of Plaintiffs blocking and reporting, (what Plaintiffs now know to be

Madison Breshears' personal account), @mjbreshears, the following defamatory

---

[7] It should be noted that Sigrid McCawley's attorney, (also from Boies Schiller & Flexner in Florida), stated that Madison Breshears was a "victims advocate blogger", to intentionally mislead the Court into believing Ms. Breshears' Instagram page was solely meant to "advocate" for victims of sexual abuse. The argument is illogical, an outright lie to the Court and entirely and provenly false, including by Ms. Breshears own testimony, as she stated that her Instagram page @real_world_ballerina is a page for satirical ballet memes which makes fun of other ballet dancers until Ms. Breshears made the defamatory posts about the Plaintiffs. Ms. Breshears was never an" advocate" for "victims" but it is unsurprising considering Boies Schiller's *modus operandi* to intentionally manipulate and lie to ensure the Plaintiffs' truth is prevented from ever being revealed.

statements were posted by Madison Breshears on her anonymous, yet famous account

@Real_World_Ballerina:

**POST ONE BY MADISON BRESHEARS**

"PSA: DUSTY BUTTON IS A PREDATOR"



**POST TWO BY MADISON BRESHEARS**

"This keeps getting removed. And she blocked me. But if you follow Dusty Button, you should know she can't keep a ballet job because she grooms young girls to engage in sex acts with herself and her husband".



**POST THREE BY MADISON BRESHEARS**

"[toxic emoji], if u or someone u know has been victimized by dusty_button, u aren't alone.

She can't keep a ballet job because she grooms young dancers for sex acts with herself and

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

her husband. This will probably get removed, she has managed to block and remove my other

posts, but I hope at least someone can see this [toxic emoji]".



**POST FOUR BY MADISON BRESHEARS**

"I have friends who have personally been victimized, or known someone victimized by

@dusty_button. Don't give her a platform".

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## POST FIVE BY MADISON BRESHEARS

"I don't expect anyone to take my word on faith! This is a serious accusation, and you are

justified in being skeptical. From my end, knowing what I know (but am unable to disclose in

detail), I feel like the right thing to do is at least warn you guys. If anyone is at least a little

more careful or cautious around her, it's worth it to me."

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

77. Madison Breshears posted near exact verbiage of what would soon be written in the Nevada complaint filed by Defendants Ruff and Mariella and published by Julia Jacobs **three months later**.

78. Ms. Breshears has since admitted that she knew the New York Times article was "coming out" and was "imminent", and further stated she wanted to be the "first to break the story".

79. On May 13th, **2024**, Plaintiffs filed a federal lawsuit against Madison Breshears for defamation, civil conspiracy and cyber harassment amongst other claims, which is currently pending in the Southern District Court of New York.

80. Upon information and belief, Ms. Ruff and Ms. Mariella contacted Ms. Breshears prior to Ms. Breshears posting her false and defamatory posts on Instagram.

81. On May 27th, 2024, Plaintiffs filed a federal lawsuit against non-party to this litigation and co-conspirator, Sigrid McCawley, in the Southern District Court of Florida for defamation and civil conspiracy, pertaining to her *many* false and defamatory statements made to the media which fall outside her first amendment rights and privilege as an attorney, equally stating, (like Ms. Jacobs), that Plaintiffs were "criminally charged", amongst other false, defamatory and destructive statements[8].

82. Defendants' conspiracy and collusion was undeniably clear and intentional to gain an advantage in litigation and in the Court of public opinion against the Plaintiffs.

---

[8] See case: 0:24-cv-60911-DSL - Button et al v. McCawley – Plaintiffs lawsuit against Ms. McCawley was granted in part and denied in part and the Court granted Plaintiffs to file a Second Amended Complaint pertaining to statements which were not time-barred in Florida which includes seven defamatory statements made by Ms. McCawley to various media and news outlets, which is due in February. (See ECF No. 50). It should also be noted that Ms. McCawley was denied attorney's fees associated with Florida's anti-SLAPP law and the Court noted that the Plaintiffs' lawsuit against her was not intended to intimidate or harass her, allowing Plaintiffs to file a second amended complaint pertaining to statements which were not time-barred.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

83. Upon information and belief, Ms. Ruff and Mariella interviewed Ms. Breshears as a witness to the Nevada litigation thereby providing her with information about the lawsuit prior to the lawsuit being filed in Nevada[9].

84. Defendant Julia Jacobs continued her collusion with Defendants Ruff, Mariella and Schneider by stating exactly what Ms. McCawley stated in her own defamatory statements and that is that Plaintiffs were criminally "charged"; they were not and Ms. Jacobs knew that to be true as she had information which proved that statement to be false; (Plaintiffs have never committed any act which they should or would have been charged for).

85. Plaintiffs have never been criminally charged and Ms. Jacobs' knew that, or should have known as Ms. Ruff, Mariella and Schneider knew that and her intentional false statement led readers to believe Plaintiffs had been **charged** with a crime.

86. Ms. Jacobs knew that her statement, "denied the charges" would be taken in such a context that any reasonable reader or viewer of the article would believe the Plaintiffs were "charged" with a crime and it is unreasonable to believe an average reader would only believe that to be a statement about a *civil lawsuit* asking for money, ($131,000,000.00 to be exact); this is proven to be true as many associates, sponsors, and employers of the Plaintiffs immediately distanced themselves believing the Plaintiffs had been "charged" with a crime and disassociated from the Plaintiffs indefinitely as a direct cause of Ms. Jacobs' article.

---

1. [9] It should be noted Ms. Breshears is only named as a witness for the Plaintiffs, (Defendants in Nevada).

87. As a direct and proximate result of the false, defamatory and misleading statements made by Boies Schiller & Flexner attorneys and their clients **and** Ms. Jacobs' choice to *intentionally harm Plaintiffs* by making a false statement of fact in her article that Plaintiffs (former) attorney "*denied the charges*", hate pages were made and defamatory statements flooded the interenet by innumerable third-parties about Plaintiffs going to prison as readers were misled to believe that Plaintiffs were "charged" and were going to prison for __raping children__.

A few examples are below:

- "Hey Dusty! I hope prison is everything you hope for! Maybe those tilts and competition tricks will come in handy behind bars?! Best of luck!" – Instagram user - @lauramarbs



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

- "@schonraker_foto him and the missus have been too busy BF'n little girls to make social media posts it would appear" – Instagram user @the_mechanicalanimal.



- "Hi! According to a recent post by @real_world_ballerina, dusty button is a predator who is not someone people should be looking up to! Just spreading the word." – Instagram User - @cheryltanxr



- "#dustybutton You child rap1st P#S. You need to be thrown in a wood chipper." – Instagram User - @dunerooster

- "Child rapist POS. You need to be thrown in a wood chipper." – Instagram User - @dunerooster



- Numerous hate pages and accounts were created as a direct result of Defendants' conspiracy and collusion with the media and the intentionally misleading statements that Plaintiffs were "charged" and going to prison.

• Username – **@dusty_button_hatepage** (depicting Plaintiff Dusty Button in prison).



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   88. This is just a **mere *fraction*** of the communications, notifications, threats and

20   harassment which Plaintiffs received following Defendants' defamatory post, all of

21   which Plaintiffs have documented and preserved for discovery.

22   89. On May 27th, 2024, Ms. Breshears stated on a phone call to Plaintiffs that she had not

23   spoken to Boies Schiller & Flexner's clients prior to her defamatory statements being

24   made on May 13th, 2021, proving she conspired with non-party co-conspirator Sigrid

25   McCawley and Defendants Ruff, Mariella, Schneider and Jacobs to make her online,

26   defamatory publications prior to the complaint being filed as the information received

27

28

by Ms. Breshears was identical to the defamatory statements made by Ms. McCawley *three months later*; statements which **were not** a recitation of the Nevada complaint or the New York Times article.

90. Defendants Ruff and Mariella, in conspiracy with non-party co-conspirator, Sigrid McCawley colluded with their client, Ms. Humphries, Ms. Breshears and Ms. Jacobs to produce and publish an article which supported the narrative that Ms. McCawley forced upon the public and any potential jury; a narrative that "two dance teachers abused their students". Not only are the allegations false in their entirety but the intentional use of "former dance teacher" indicates that the Buttons, (husband and wife), "abused their students" together.

91. Upon information and belief, Defendants Mariella and Ruff lied to at least three different police departments about the Plaintiffs including the Department of Justice, Evan Picariello from Homeland Security and police officers with the Hillsborough County Sherriff's Department stating they committed these horrendous acts of abuse against their clients, knowing their clients' allegations were false as they were not only in possession of various text messages and therapy records proving their allegations to be false but were in possession of their clients' own deposition testimony which proved their allegations to be false.

92. Ms. Ruff and Mariella committed fraud on the Court by knowingly and falsely filing a complaint for their client Jane Doe 1, who the Plaintiffs have never met including because Jane Doe 1's birthyear prevents her allegations from being possible including in the year she alleges in the complaint, (though they are false in their entirety), and including because they had information prior to filing her complaint that the age she

alleged the allegations against the Plaintiffs took place is not the year she could have been that age.

93. Prior to Ms. Humphries and Ms. Menichino's interview with Ms. Jacobs, the Defendants Ruff, Mariella and Schneider had documentation and evidence proving the allegations to be false including but not limited to evidence which proved the narrative they created was intentionally false, which, (upon information and belief), they provided to Ms. Jacobs who chose to neglect the evidence against that narrative.

94. Ms. Jacobs' intentionally titled her article about the Plaintiffs in such a way as to mislead the public including by stating, "*former dance instructor*" though Plaintiff Mitchell Taylor Button has not danced or been involved in the dance industry since 2010 and did not "instruct" Sage Humphries in any way, shape or form.

95. Ms. Jacobs *knew* that by titling her article as such, that she would gain traction for the Nevada Plaintiffs in the Court of public opinion and that it would obstruct litigation by way of leading any reasonable viewer to believe that Mr. and Mrs. Button "instructed" Gina Menichino and Sage Humphries and then "abused" them together.

96. As previously stated, at the time of the events herein, Mr. Button was one of the world's most influential custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his automotive design, builds and work in the industry.

97. Ms. Jacobs intentionally deceived the public as she could have also stated that Mr. Button was any other "former" occupation but chose to state "former dance instructor" as to create a false narrative of two sexually abusive dance teachers to purposefully

lead readers to believe this narrative and to destroy the careers and reputations of the Plaintiffs while knowing that Mr. Button was not involved in dance at all.

98. The New York Times publication was detrimental to Plaintiffs as it not only contained false and fraudulent allegations related to the frivolous litigation, but it intentionally and falsely stated that Plaintiffs, together, abused Ms. Humphries and Ms. Menichino as a direct result of Sigrid McCawley's and Defendants' Ruff, Mariella and Jacobs' manipulative narrative which was so desperately forced on the public as comparison to Epstein and Maxwell, as the Boies Schiller Flexner firm had so recently received such fame and notoriety for.

99. The Nevada District Court has since ruled that there are "fact intensive" issues to resolve pertaining to the Nevada Plaintiffs' allegations and because of that, all of the Buttons' counterclaims were allowed regarding all the defamatory statements made about them including but not limited to the New York Times interviews with Sage Humphries and Gina Menichino[10].

100. Defendants Ruff, Mariella and Schneider together with Ms. McCawley, knew their narrative to be false but colluded with Julia Jacobs to produce and publish a "story" which would corroborate their clients' false allegations and further, support their false narrative against Plaintiffs, piggybacking off of Ms. McCawley's recent fame in representing Virginia Guthrie in the Epstein and Maxwell case.

---

[10] See ECF No. 379 of case 2:21-cv-01412-ART-EJY – Humphries et al v. Button – Order on the Buttons' Motion to Dismiss which states: "The Court finds that factual issues preclude dismissing Defendants' (Plaintiffs here), defamation claims [...].

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

101.     Ms. Ruff and Mariella declared they performed "hundreds of hours" of research for "over a year" prior to filing their client's complaints in Nevada, thereby proving they knowingly filed false claims while simultaneously possessing evidence proving the claims to be false.

102.     The New York Times article was reposted hundreds of thousands of times, additionally causing third parties within Plaintiffs' industries to further defame them including that it was posted to at least three different platforms whereas, each platform consists of a different audience[11].

103.     Madison Breshears' involvement in the defamatory and harassing online campaign against Plaintiffs, paired with her testimony, (on a legally recorded phone call), the date on which Boies Schiller & Flexner filed the July 28th, 2021 complaint and Ms. Jacobs' timing of the published article without Plaintiffs even having an issued summons or complaint in their hands proves beyond any reasonable doubt that Defendants strategically, unethically and unlawfully conspired and colluded against Plaintiffs to **completely destroy their livelihoods and defense against them in litigation, to gain an unfair advantage.**

104.     To further prove the strategic conspiracy against Plaintiffs, Defendants from Boies Schiller & Flexner filed their client, Gina Menichino's (frivolous) complaint **on the day their clients' statute of limitations expired**, twelve years later.

---

[11] In *Kanerak v. Bugliosi,* an allegedly libelous book that was republished in paperback form, although identical in form and content to the earlier hardcover edition, was intended to and did reach a new group of readers, and therefore constituted the basis for a new cause of action. The Second Restatement of Torts states that the single publication rule does not include separate aggregate publications on different occasions. In these cases, if the publication reaches a new group, the repetition justifies a new cause of action. The originator of defamatory matter may be liable for each "repetition" of the defamatory matter by a second party "if he could reasonably have foreseen the repetition."

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

105.     Two years later, on August 23rd, 2023, Plaintiffs discovered that attorneys and communications director from Boies Schiller & Flexner, Dawn Schneider, colluded with Ms. Jacobs and The New York Times Company to *intentionally* ensure Ms. Jacobs' article about Plaintiffs was published *prior* to the Plaintiffs being served with the Complaint.

106.     Upon information and belief, Ms. Jacobs possessed evidence which would have required her to at least question the truth or falsity of Humphries' and Menichino's interviews particularly in regards to the defamatory statement that stated the Plaintiffs had been charged with crime; thereby publishing the article recklessly and negligently.

107.     Ms. Jacobs stated, "*A lawyer for the couple said that they **denied the charges*** while knowing there were no "charges" at all involving the Plaintiffs; Ms. Jacobs intentionally used the word charges rather than allegations, and any reasonable person would be led to believe "charges" meant involvement with law enforcement.

108.     Ms. Jacobs intentionally misled readers to believe Plaintiffs had been "charged" with a crime, resulting in created hate pages against Plaintiffs, death threats and confusion whether or not Plaintiffs were charged with a crime; they were not.

109.     What the Plaintiffs' attorney **actually stated** to Ms. Jacobs was:

"*Taylor and Dusty Button categorically deny these baseless claims and they look forward to the opportunity through court proceedings to disprove all of the plaintiffs' false and fraudulent **allegations**.*"

110.    Ms. Jacobs knew that she was intentionally misleading readers, including **any potential juror** as she quoted Plaintiffs' attorney in the article and then made the decision to state that "*a lawyer for the couple said that they **denied the charges***", which was never stated by the Plaintiffs' former attorney in the slightest.

111.    Ms. Jacobs additionally knew this was a misleading statement of fact which was false, defamatory and in fact, never said by anyone, as she appropriately leaves the statement out of quotations, proving it was an additional misleading and maliciously crafted statement **made for shock value.**

112.    Ms. Ruff and Ms. Mariella were already required to strike portions of their Nevada complaint which were only used to "sensationalize" their complaint to the media, and which was ordered to be stricken at the first Motion to Dismiss hearing on February 2nd, 2023 where the Defendants intentionally used the names Jane Doe 100 and 200 to lead readers to believe there were over 199 "victims" of the Plaintiffs and additionally filed the complaint with inadmissible and conclusory and bald assertions related to hearsay which the Plaintiffs proved was only meant to sensationalize their complaint[12].

113.    On October 1st, 2023, Plaintiff Dusty Button called Ms. Jacobs to address the defamatory nature of her article which was legally recorded as Plaintiffs reside in a one-party consent state.

---

[12] At the February 2nd, 2023 hearing, Honorable Judge Traum ordered the Defendants, Ruff and Mariella to strike portions of their complaint which were only meant to sensationalize the complaint and additionally were ordered to refer to Jane Doe 100 and 200 as 1 and 2 for the duration of the litigation.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

114.    Ms. Jacobs refused to answer any of the Plaintiffs questions about her article, her association with the Boies Schiller and Flexner attorneys or their PR person and the date on which she published her article, prior to the Plaintiffs being served.

115.    On the call, Ms. Jacobs told the Plaintiffs to contact her attorney instead, Defendant David McCraw, to address any questions or concerns regarding her July 29th, 2021, article and her collusion with Boies Schiller & Flexner attorneys stating:

1)    "*Because this is a litigation I should really discuss with our attorney*". And;

2)    "*Let me talk to our counsel to let me know how to proceed here*".

Plaintiff Dusty Button proceeded to ask Ms. Jacobs if Sigrid McCawley informed Ms. Jacobs of the lawsuit prior to the lawsuit actually being served whereas, Ms. Jacobs' response was as follows:

"*Okay… so… yea.*";

116.    Ms. Jacobs further stated to Plaintiffs that if they wanted to send her an email, she "*can make sure that gets to our lawyer who should be dealing with these types of matters*."

117.    Ms. Jacobs did not "find" this lawsuit and then write, edit and publish her article hours after the complaint was filed; she conspired with Boies Schiller & Flexner attorneys and Defendant Dawn Schneider[13] who is known to unethically play

---

[13] Dawn Schneider is the **Director of Communications** at Boies Schiller Flexner LLP. She has been in this role since 2008, after previously working as the Director of Corporate Affairs and External Communications at Altria from 2002 to 2008. Schneider combines her legal and media expertise to advise leading lawyers and law firms, helping them navigate the media landscape effectively. Joe Nocera, a New York Times opinion columnist, faced controversy when it was discovered that he wrote favorably about Oracle in a lawsuit against SAP, a case represented by the law firm Boies Schiller Flexner, where his fiancée, Dawn Schneider, works as the director of

to the media and obstruct litigation by swaying the public opinion toward her Boies Schiller & Flexner associates.

118.     As seen from the forementioned statements, Ms. Jacobs confirmed attorneys and Defendants from Boies Schiller & Flexner conspired and colluded with Ms. Jacobs *prior to the lawsuit* ever being filed in Nevada or served on Plaintiffs to publish a narrative that was false and defamatory in its entirety.

119.     On October 2nd, 2023, Ms. Jacobs sent a text message to Plaintiff Dusty Button with Defendant David McCraw's contact information including his email address.

120.     On November 5th, 2023, Plaintiffs emailed Mr. McCraw the following message:

*Good evening David,*

*I am reaching out to you in regard to a federal civil litigation in Nevada in which my husband and I are Pro se Defendants against Boies Schiller Flexner in the case Humphries et. al v. Button (2:21-cv-01412-ART-EJY). I was given your contact information by Julia Jacobs who I spoke to very briefly a couple of weeks ago on the phone and stated we should contact you directly in regard to her article (which I have pasted below), as she is listed as a witness on Initial Disclosures for this case. We have also received communications pertaining to Ms. Jacobs in discovery and did have some questions regarding her involvement with Boies Schiller Flexner and*

---

communications. The New York Times added an editor's note to clarify that Nocera would not have written about the case had he known of the law firm's involvement to **avoid the appearance of a conflict of interest.** Boies Schiller Flexner LLP is known for its high-profile litigation cases and has represented clients such as the Department of Justice in the antitrust lawsuit against Microsoft and Vice President Gore in the Supreme Court case Bush v. Gore. The firm has also been involved in controversial cases, such as representing Harvey Weinstein and Theranos, which led to criticism over its aggressive tactics and potential **conflicts of interest**.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

*Plaintiffs involved in the case, particularly the communications and publishing of her article prior to my husband and I ever being served with this lawsuit.*

*I did attempt to ask a few questions on the phone but Ms. Jacobs referred us to you for these questions and other relevant documents to this litigation. I did follow up with Ms. Jacobs via text message and am happy to provide those communications if necessary but respectfully, we are reaching out to you per her request. My husband and I were issued a subpoena for Ms. Jacobs by the Federal District Court of Nevada for the Production of Documents and are happy to have that served however, as she is represented by Counsel as many others have been, we know how daunting it is to be served publicly and really just have a few questions in relation to our Counterclaim against Ms. Humphries and Ms. Menichino regarding Ms. Jacobs' involvement, as well as her initial involvement with Boies Schiller Flexner regarding the article which was posted on July 28th, 2021. Our intentions are solely to perform our due diligence pertaining to witnesses as we are nearing the end of this litigation and will be pursuing other litigation and want to ensure all facts surrounding parties are accurate and absolute.*

*Please let me know if you will accept the subpoena via email or prefer personal service on Ms. Jacobs, or if (like others) you would prefer questions via email rather than service of the subpoena to Ms. Jacobs. If you or Julia Jacobs have followed our case, you'll know that we have enjoyed (though pro se), the last year battling such a corrupt firm and while they have now finally accepted the reality that their litigation was entirely frivolous and thus asked that we end this via a settlement conference, we*

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

*have no intention of allowing their corruption and misconduct to go without*

*consequence… misconduct and corruption that we believe you, yourself are all too*

*familiar with following David Boies' behavior with the New York Times on multiple*

*occasions and particularly in 2019.*

*If you prefer a phone call, my number is 310-499-8930. We appreciate your time.*

*Thank you,*

*Dusty and Taylor Button*

*(Pro se)*

https://www.nytimes.com/2021/07/29/arts/dance/mitchell-button-dusty-button-abuse.html

121.    On November 8th, 2023, Plaintiffs received an email response however, the response was not from Defendant David McCraw and instead, the response was from Defendant Demetri Blaisdell, "attorney for Ms. Jacobs" and **former attorney and employee** of **Boies Schiller & Flexner LLP**, (during the time in which Ms. Jacobs' article was published in 2021). The response was as follows:

*Ms. Button,*

*David forwarded your message to me. **I represent Ms. Jacobs so please***

***contact me instead of Ms. Jacobs about this going forward**. Please let me know when*

*you are available to speak by phone. As it stands, I can speak between 1:00 and 4:30*

*pm Eastern today. Thanks.*

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

*Best,*

*Demetri*

122.     Following Plaintiffs' further email communications with Defendant Blaisdell, he additionally stated, "***I do represent*** *Ms. Jacobs **personally**, **as well as The Times**, regarding this matter. I work with David but **I'll be handling this.**"*

123.     Mr. McCraw had no reason to overturn his well-known representation of the Times and Ms. Jacobs over to Mr. Blaisdell except for the fact that Mr. Blaisdell used to be employed by Boies Schiller & Flexner and that is the only way they could control their narrative, to have all parties from BSF involved in protecting their lies in the media, to the Court and to the Plaintiffs.

124.     Mr. Blaisdell worked at the same Boies Schiller & Flexner office in New York as the Defendants, Ruff, Mariella and Schneider during the time Ms. Jacobs article was published about the Plaintiffs and when the Defendants first represented Sage Humphries and Gina Menichino.

125.     Mr. Blaisdell even confirmed that Ms. Ruff and Mariella had already spoken to him about the Plaintiffs, their call to Ms. Jacobs and their desire to subpoena the New York Times prior to speaking to the Plaintiffs over the phone.

126.     Ms. Ruff and Ms. Mariella confirmed during a meet and confer call with the Plaintiffs that they already informed Mr. Blaisdell that the Plaintiffs would be issuing a subpoena to Ms. Jacobs and the New York Times but that it was against the law and

untimely, (it was not), which is exactly what Mr. Blaisdell would then state to the

Plaintiffs after conspiring with the Defendants prior to his call with the Plaintiffs[14].

127.    At 2:30pm on November 9th, 2023, Plaintiff Dusty Button spoke with

Defendant Blaisdell for nearly an hour and a half whereas, Mr. Blaisdell made

intentionally intimidating legal threats against *pro se* Plaintiffs on the phone call and

unethically provided *pro se* Plaintiffs with unsolicited legal advice regarding

Plaintiffs' litigation and the matters with his own client, which is the *modus operandi*

of any attorney at Boies Schiller & Flexner LLP.

128.    The following statements were made during a legally recorded phone call with

Mr. Blaisdell on November 9th, 2023 on or around 2:30pm[15]:

- "*I'm kinda sposed to talk to a lawyer instead of you*".

---

[14] This is Defendants' Ruff and Mariella's, (and attorneys from BSF) modus operandi as they represent every, single party the Plaintiffs have filed a lawsuit against in various federal Courts while they simultaneously requested from the Nevada District Court to modify the meet and confer requirements in Nevada to allow them to email to confer rather than call after they learned that the Plaintiffs were recording their calls to file BAR complaint against them – only to then request to properly meet and confer over the phone in other states after the Nevada District Court granted their request – see ECF No. 420 in 2:21-cv-01412-ART-EJY. The Defendants Ruff and Mariella represent Sage Humphries parents in California – 8:24-cv-01730-JVS-DFM, their associate Alison Anderson also represents her parents, Micol Small, (former BSF employee) represents the other Defendants in the same case, Hannah Stolrow, (friend of Madison Breshears) and Kathryne Meyer (Sage Humphries' attorney); the Defendants also represent former Nevada Plaintiff and her mother, (Juliet and Krista King-Doherty) in the Southern District Court of New York – 1:24-cv-05026-JPC-KHP; the Defendants themselves, are represented by counsel from Boies Schiller; Ms. McCawley, who Plaintiffs are suing in the Southern District Court of Florida is also represented by two attorneys from Boies Schiller; Demetri Blaisdell was a former employer of Boies Schiller, who represented Julia Jacobs, friend of Dawn Schneider, (director of communications at Boies Schiller), married to Joe Nocera, (publisher at the New York Times Company), and finally, even when the Defendants have not obstructed the Plaintiffs other lawsuits, they have helped write the responses to the Plaintiffs' lawsuits as they all parrot the same narrative that these lawsuits are meant to "silence" and "harass" potential witnesses in Nevada while all of those witnesses are only on the Buttons' witness list and none of the Defendants in this case are supporters, witnesses or even "loved ones" of the "victims" in Nevada. The pattern is clear and it is fraudulent as the Defendants obstruct justice and violate the Plaintiffs' rights to due process by intimidating them and attempting to silence their truth.

[15] Plaintiffs are more than willing to provide the Court with the entire phone call on November 9th, 2023. The forementioned statements are the most relevant to this action in which Mr. Blaisdell *intentionally threatened* Plaintiffs to impede their defense and ability to discover imperative information and made them believe they could not seek legal recourse.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

- *"There's a few reasons why we are not inclined to go there", (referring to Plaintiff Dusty Button's statement inquiring about the very questions Ms. Jacobs stated would be answered by her attorney, who then stated he was "not inclined to go there".*

  - *"We're not going to be waiving service or attempting an alternative method".*

  - *"If you do decide to proceed, you'll need to **serve that on me because I am Ms. Jacobs lawyer**".*

- *"To inform you of some things that I'm not sure you're aware of, there are shield laws in New York and Nevada which make it very difficult or impossible to get information that journalists have gathered in the course of their duties and so if you do try to proceed down this ave[nue] I think it is extremely unlikely that you will be able to get any documents or any information from my client."*

  - *"I'm providing you with this information not to threaten you but just to let you know what you'd be facing in trying to get this information"*

    - *"It really does sound like the information that you're looking for is exactly the information that's protected under the shield laws…"*

- *"Who my client spoke with and who Lindsey, (*referring to Defendant Ruff*), spoke with and the contents of those conversations, those are all exactly what is protected".*

    - *"**I would urge you to reconsider**".*

  - *"I do not think this will be a fruitful thing for you".*

    - *"I don't want you to waste your time".*

- *"We're not going to make Ms. Jacobs available on an informal or formal basis in this matter".*

129.    Following the phone call with Mr. Blaisdell, Plaintiffs received the following

email from Mr. Blaisdell:

*Ms. Button,*

*Thank you for speaking with me today. As we discussed,* ***my client Ms. Jacobs will not***

***be providing any information regarding this matter and we will oppose any attempt***

***to seek discovery from her via a subpoena****. Should you choose to serve a subpoena,*

*you will need to serve it on me as Ms. Jacob's lawyer. Unless I hear from you further,*

***we will consider this matter closed****.*

*Best,*
*Demetri*

130.    Mr. Blaisdell made the Plaintiffs believe they could not seek legal recourse

against Ms. Jacobs or the New York Times Company and that their subpoena would

be unlawful.

131.    Mr. Blaisdell impeded on Plaintiffs' ability to discover relevant information by

intentionally conspiring with the attorneys and director of communications in order to

prevent the Plaintiffs from exposing the fraud committed on the Court and the

collusion between the attorneys at Boies Schiller & Flexner and the media.

132.    Mr. Blaisdell "closed the door" on a matter that was still very much relevant

and open to *intentionally intimidate* and prevent Plaintiffs from further communication

in order to withhold imperative information regarding *his* client and the unethical and

unlawful collusion between Defendant Julia Jacobs and his former associates,

Defendants McCawley, Ruff, Mariella, and Schneider.

133.    Following Plaintiffs' phone call with Mr. Blaisdell, Plaintiffs conferred with

Defendants McCawley, Ruff and Mariella to verify whether or not they communicated

with their former associate Demetri Blaisdell whereas, they verified Mr. Blaisdell had reached out to them to inform them of Plaintiffs' communications and that Plaintiffs intended to serve a subpoena on Ms. Jacobs *prior* to the phone call with Ms. Button on November 9th, 2023.

134.    On January 29th, 2024, following the conducted deposition of one of Boies Schiller Flexner's clients who was the subject of Ms. Jacobs' articles, Plaintiffs reached out to Mr. Blaisdell regarding the previously discussed retraction in Ms. Jacobs' New York Times article written on July 29th, 2021 about Plaintiffs, giving ample opportunity for that previously discussed retraction to take place.

135.    Instead of Mr. Blaisdell providing a time for a discussion regarding the very retraction he proposed, he proceeded to give unsolicited legal advice regarding what could or could not be shared from the deposition, informing Plaintiffs of a protective order in their own litigation which was not of concern to Mr. Blaisdell particularly considering the discussion was not relevant to "sharing" information about that deposition stating, "As we have discussed previously, the protective order may limit what you are able to share with me regarding any recent deposition testimony".

136.    The Plaintiffs never intended on sharing deposition testimony however, it was beyond Mr. Blaisdell's scope to interfere with the Plaintiffs' litigation and appropriate requests.

137.    The Plaintiffs had never mentioned a protective order to Mr. Blaisdell, further confirming the collusion between his former associates to prevent the Plaintiffs from successfully pursuing discovery in their own litigation.

138.      Plaintiffs never stated they would be sharing deposition testimony with Mr. Blaisdell, nor did they intend to as they are aware of their own litigation and the procedures within that litigation however, Mr. Blaisdell should not be aware of any protection order in a litigation he is not involved it.

139.      Every word stated by Plaintiffs to Mr. Blaisdell was passed to the attorneys at Boies Schiller & Flexner who are still representing clients against Plaintiffs in a separate litigation which Mr. Blaisdell has no involvement in but intentionally impeded upon.

140.      Instead of Mr. Blaisdell addressing the previously discussed retraction of his clients' article he stated, "*I disagree with your characterizations of Ms. Jacobs's reporting. The story was a fair account of the lawsuit that contained a statement **on behalf of you and Mr. Button**.*"

141.      The article was written prior to the lawsuit being filed and published prior to the Plaintiffs ever being served.

142.      As mentioned, Plaintiffs *were not even aware* of any lawsuit against them prior to or at the time Ms. Jacobs' article was published and were not given any opportunity to discuss the lawsuit with Ms. Jacobs to counter the defamatory allegations and published article; *even if* they had been given the opportunity to "comment" by Ms. Jacobs, that "comment" would have been a singular statement made with no context relevant to a lawsuit which Plaintiffs were not only unaware of but did not yet have in their possession.

143.      Further, *even if* Plaintiffs had been given the opportunity to "comment" on Ms. Jacobs article, Ms. Jacobs had already made the intentional decision to neglect her

duties in investigating the allegations and to ignore any evidence in the possession of

the attorneys at Boies Schiller & Flexner including publicly available information and

documentation proving the allegations to be false thereby, proving that Ms. Jacobs

intentionally and knowingly published an article for shock value while colluding with

attorneys from Boies Schiller & Flexner to assist them in gaining an advantage in

litigation.

144.    Moreover, it would not have mattered if Plaintiffs were given the opportunity

to "comment" on a story which was already written, which contained false accusations

that Ms. Jacobs would have known about had she been diligent in her duties to

investigate as a journalist; as Sigrid McCawley and her associates from Boies Schiller

had already colluded with Ms. Jacobs to produce and publish false and defamatory

allegations including because Ms. McCawley and her associates intentionally withheld

imperative documents which would have shown the lawsuit filed on July 28th, 2021, in

its entirety… was fraudulent[16].

145.    Defendants McCawley, Ruff, Mariella and Schneider knew that the allegations

stated within the complaint were frivolous and false in their entirety, intentionally

neglecting to provide any documentation to support the allegations listed in the

complaint and further, to support the article written by Ms. Jacobs, as there is none.

146.    Defendants Ruff, Mariella and Schneider knew the article written by Ms.

Jacobs prior to Plaintiffs being served, would cripple Plaintiffs defense against the

---

[16] On February 17th, 2023, Honorable Judge Traum entered an Order in Nevada denying Sage Humphries' (client of Boies Schiller &Flexner attorneys and Defendants listed herein; and subject of Ms. Jacobs' article), motion to dismiss Dusty and Taylor Button's defamation claim against her whereas the Court stated: "*Based on the details herein and in lights of the record as a whole, the Court denies Sage Humphries' Motion to Dismiss the counterclaim of defamation per se.*"

fraudulent and heinous accusations as they knew Plaintiffs were highly respected and sought after in their respective industries; knew the misleading title of the article would destroy Plaintiffs' reputations and that it would result in the complete dissemination of Plaintiffs' careers and business relations but colluded to produce and publish the article anyway to gain an advantage in the litigation against Plaintiffs.

147.    Ms. Jacobs' choice of the word "charges" was intentional, defamatory and false in its entirety.

148.    Ms. Jacobs' article was also published on The New York Times Instagram page whereas, it was posted to their 81 million followers and reposted to hundreds of thousands of various other third-party Instagram accounts.

149.    Ms. Jacobs' article was republished ***hundreds of times*** to various websites, social media platforms and in various other third-party newspapers, magazines and digital online platforms including but not limited to Instagram, TikTok, Snapchat, X Corp., Facebook, Reddit and LinkedIn including in other countries.

150.    As a direct and proximate result of Ms. Jacobs' article, it encouraged and inspired a woman who Plaintiffs have never met, seen or heard of to "come forward" with allegations which are not only literally and physically impossible but which are the most heinous allegations of them all.

151.    This Nevada Plaintiff is protected in Nevada by a pseudonym and by a protective order which Ms. Ruff and Mariella filed to ensure their client would not be publicly scrutinized and "outed" once the Plaintiffs proved they had never met their client in their entire lives, that she had committed perjury and fraud and that they had assisted her in doing so.

152.     The Plaintiffs cannot disclose any information about Jane Doe 1 which directly proves the fraud against them including that Jane Doe 1 claims she was raped in three different years, one singular time, in a building that did not even exist because it was not constructed, at gunpoint with guns the Plaintiffs did not own. Defendants Ruff and Mariella have all of this proof and still, doubled down on their client that has never met the Plaintiffs.

153.     Ms. Mariella, Ms. Ruff and Ms. Schneider even assisted Jane Doe 1 in an interview with the Boston Magazine, whereas Gretchen Voss, (author of the Boston Magazine article), stated it was the "worst interview [she] has ever done", because Jane Doe 1's "story" was "all over the place".

154.     Upon information and belief, Defendants Schneider, Ruff and Mariella with their co-conspirator Ms. McCawley called Ms. Voss back to apologize for how badly the interview with Jane Doe 1 went.

155.     Ms. Schneider[17] contacted Gretchen Voss from the Boston Magazine[18] to arrange the interview with Sage Humphries, but on the day of the interview, Ms. Schneider called Ms. Voss to say she did not like the direction of the interview; the reason for the call was because the Buttons' Counterclaim against Ms. Humphries was filed while she was being interviewed, which included photo evidence and documents proving Sage Humphries' allegations to be entirely false and fraudulent, including evidence of Sage Humphries prostituting herself to Edmonton Oilers hockey team

---

[17] https://slate.com/news-and-politics/2010/10/extreme-ethical-hygiene-new-york-times-opinion-columnist-joe-nocera-isn-t-always-entitled-to-his-opinion.html - Extreme Ethical Hygiene at the New York Times. Ms. Schneider is known for using her connections with the Times through her husband and here, she did the same to assist her associates in gaining an unfair advantage in litigation.
[18] https://www.bostonmagazine.com/news/2022/08/02/ballet-scandal-boston/

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

owner, and billionaire Daryl Katz, (which Ms. Humphries uploaded onto the Buttons'

hard drive in 2017 when she was in an open consensual dating relationship with them

and she asked to upload her camera roll when upgrading to a new iPhone in order to

avoid being charged a late fee for her iPhone which the Plaintiffs mailed back to her

phone provider after she asked them to, which Defendants Ruff and Mariella

convinced the Courts and public to believe was "stolen" from Ms. Humphries in order

to make it inadmissible in Court but was ultimately ruled not stolen and even admitted

by their own client that it was not stolen but which Plaintiffs believe is the sole reason

for the entire litigation).

156.    Upon information and belief, Ms. Schneider was in possession of these

documents which the Plaintiffs, (here) filed in their counterclaim against Ms.

Humphries because Ms. Humphries was in possession of those documents and

admitted to providing them to her attorneys prior to the interview with Ms. Jacobs.

157.    The Defendants Ruff, Mariella and Schneider intentionally neglected the truth,

as did Ms. Jacobs and therefore, deceived the public and the Courts by hiding the truth

that their clients' allegations were false and fraudulent in their entirety.

158.    The New York Times article was intentionally deceptive and was later

plagiarized by Jane Doe 1 who also alleged that "charges" were filed against the

Plaintiffs just one week after the New York Times article was published[19].

---

[19] The Plaintiffs are frustrated as to the ability to provide this Court actual evidence of the Nevada litigants deposition transcripts, therapy records and other admissions as they are all protected by the Nevada District Court and if the Plaintiffs provide proof that this is all a conspiracy against them and that the allegations are false, they will be sanctioned in Nevada for "violating" a protective order which should not even exist including because the Plaintiffs have never met Jane Doe 1; the Plaintiffs have already tried to prove this fraud regarding Jane Doe 1 to the New Hampshire District Court but the Court stated that the Plaintiffs' allegations are "bald and conclusory" because they cannot provide evidence but simultaneously states that they violate the protective order by providing "summarizations" of Jane Doe 1's evidence against her without providing the documentation in their possession which proves her fraud and perjury. The Defendants Ruff and Mariella intentionally "gagged"

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

159.     This woman who Plaintiffs have never met in their lives read the article written

by Ms. Jacobs and immediately came forward, filing her complaint against Plaintiffs

on September 23rd, 2021, plagiarizing one of Julia Jacobs' subject's story in the

complaint as a direct result of Ms. Jacobs' article.

160.     The media, i.e. The New York Times, supported and published the false

narrative created by the attorneys at Boies Schiller Flexner, causing **extreme distress**

to Plaintiffs who have now litigated against a woman they have never met for nearly

four years[20].

161.     Jane Doe 1's allegations are directly related to the collusion, conspiracy and

false and defamatory article published by Ms. Jacobs and the attorneys from Boies

Schiller, their PR person and the New York Times Company were the sole reason that

woman fabricated her claims regardless of her mental health and deranged fantasies.

162.     On July 22nd, 2024, Plaintiffs emailed Demetri Blaisdell once more stating:

    *Mr. Blaisdell,*

    *Are you still active counsel on behalf of Julia Jacobs and the New York Times*

    *and therefore accepting service on their behalf?*

    *Thanks,*

    *Buttons*

163.     On July 23rd, 2024, Mr. Blaisdell replied stating:

    *Ms. Button,*

_____

the Plaintiffs from seeking help from the Courts and are now suffocating them by representing every, single
party the Plaintiffs have filed lawsuits against and stating they are harassing. These lawsuits are to seek justice
and are not meant to harass or intimidate any party involved whatsoever.
[20] Plaintiffs have filed a separate Federal Case pertaining to Boies Schiller & Flexner's client whom they have
never met, seen or heard and are additionally in communication with law enforcement regarding her criminal
activity which attorney's from Boies Schiller & Flexner have supported after knowing her allegations are
impossible and that she has never met Plaintiffs – 1:24-cv-00220-SM-AJ in the New Hampshire District Court

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

*Assuming this concerns the Humphries case, my colleague David (copied) and I represent The Times and Ms. Jacobs. What is it you intend to serve on our clients?*

*While we are authorized to accept service on behalf of The Times and Ms. Jacobs, you will need to go through the ordinary steps to serve whatever it is you are serving. In other words, we will not be waiving service or accepting service by email.*

*As I'm sure you are aware, the discovery period in the Humphries case closed some time ago and the Court has not permitted you to serve additional subpoenas on non-parties.*

*Best,*

*Demetri*

164.    As seen in the forementioned statements sent by Defendant Blaisdell, he once again offers unrepresented Plaintiffs *unsolicited legal advice* regarding a litigation in which he is not involved in and further addresses discovery matters in which his former associates reminded him was "closed" and that the "Court has not permitted" Plaintiffs to "serve additional subpoenas on non-parties".

165.    Defendant Blaisdell once again, corresponded with Defendants Ruff, Mariella and non-party co-conspirator Sigrid McCawley to intimidate and prevent Plaintiffs from pursuing this instant litigation and any discovery matters associated with "his client", Julia Jacobs.

166.    Plaintiffs replied to Mr. Blaisdell and stated the following:

*Demetri,*

*Your assumptions are incorrect as this service is not relevant to the, as you call it, "the Humphries case" and therefore, the close of discovery is irrelevant. It would serve in the best interest of all parties to refrain from further assumptions "as I'm sure you're aware", we would understand the close of discovery in "the Humphries case" more than anyone, including your colleague Ms. McCawley who created the "Humphries case" yet struggles to remember the names of any of the clients she recruited within that case.*

*As you have most likely been informed by your colleagues, we are not interested in unsolicited legal advice so the question remains unchanged, much like our position since your client published her defamatory article in 2021; do you and David accept legal service, (in the form of a court ordered summons), on behalf of Julia Jacobs and the New York Times and by legal service of course, that is literal and thus, does not mean any waiver or service via email or otherwise but proper service as ordered by the Court, serving legal documents through a licensed process server. If so, please specify to whom each service should be provided pursuant to Julia Jacobs and the New York Times as you and David previously stated, all contact should be directed to you in regard to either entity.*

*The Buttons.*

167.    On July 23rd, 2024, Plaintiffs then received an unexpected and shocking reply from Defendant Blaisdell which only corroborates Plaintiffs' claim of conspiracy against Defendants which stated the follow:

*Ms. Button,*

*I'm not going to respond to every part of your email but you can serve*

*whatever it is you intend to serve on The Times and Ms. Jacobs **on David** at*

*the address below.*

*New York Times Company - Legal Department*

***ATTN: David McCraw***

*620 8th Avenue*

*New York, NY 10018*

*Best,*

*Demetri*

168.    Not only did Mr. Blaisdell refer Plaintiffs **back to Mr. McCraw** after stating
***he represented*** Ms. Jacobs and The New York Times but Mr. Blaisdell inadvertently
admitted that he should have never been involved from the onset of Plaintiffs initially
reaching out to Julia Jacobs attorney.

169.    Mr. Blaisdell's actions and Mr. McCraw's actions are not innocent thought
they claim all they did was "defer" one another, this was an intentional scheme against
the Plaintiffs.

170.    Defendants Blaisdell and McCraw colluded and conspired with Defendants
Ruff, Mariella, Schneider, Jacobs and non-party co-conspirator Sigrid McCawley to
*intentionally impede* on Plaintiffs' defense and ability to appropriately address the
very claims stated in this complaint; intentionally causing undue burden and delay in
Plaintiffs being able to seek legal recourse against Defendants after they intimidated

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

them into believing they would not be successful against such large and powerful

corporations.

171.     Additionally, Defendants colluded and conspired with each other to put

Demetri Blaisdell, former associate and attorney at Boies Schiller & Flexner LLP, in

contact with Plaintiffs in place of David McCraw, in order to have a "man on the

inside", who would communicate with Plaintiffs and relay those communications with

them only to notify Plaintiffs after ten months that Mr. Blaisdell was *not even who*

*Plaintiffs should be in contact with* and that instead, it should be, Defendant David

McCraw who could accept service on behalf of Ms. Jacobs, delaying this lawsuit by at

least ten months.

172.     Boies Schiller & Flexner LLP is notorious for having their hands in places they

do not belong and in fact, prevented Plaintiffs from properly being able to seek the

justice they deserve as they continue to commit fraud on the Court.

173.     The Plaintiffs filed a Motion to Vacate the abuse prevention orders obtained

through fraud on the Court by Sage Humphries and her father, (who Plaintiffs have an

open investigation against with the California State BAR, as he is an attorney who

wrote Ms. Humphries' abuse prevention order for her, to force her out of a dating

relationship with the Plaintiffs, as an adult), which Plaintiffs and Defendant Sabina

Mariella attended Oral Argument for on October 9th, 2023.

174.     Ms. Mariella argued that "lying to the Court is not fraud on the Court", after

the panel of Justices asked Ms. Button how Ms. Humphries and her attorneys were

"using the abuse prevention orders against them [in Nevada]".[21]

---

[21] Plaintiffs expect a decision and opinion regarding the Motion to Vacate from the Appeals Court by February
15th, or around that time – which they expect to be in their favor after showing innumerable instances of fraud

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

175.     The Boies Schiller & Flexner firm is **known** for its corruption including its representation of Harvey Weinstein, Theranos and Red Granite Productions, including but not limited to its contradictory and egregious acts involving The New York Times by representing "The Times" in two active cases while representing Harvey Weinstein and simultaneously, "convincing the Times that there was no rape".[22]

176.     The Defendants', Mariella and Ruff's conduct even caused a convicted felon of 19 years, Anthony Pellicano, to harass the Plaintiffs and break into their home.[23]

177.     Defendants Ruff and Mariella even hired two private investigators to follow the Plaintiffs directly after requesting the Plaintiffs prove they had no assets because they did not believe that Plaintiffs lost everything as a direct result of their lies to the Court while representing knowingly false allegations against them and colluding with the largest media company in the Country to publicize those false allegations.

178.     Upon information and belief, Defendants Dawn Schneider, Lindsey Ruff, and Sabina Mariella contacted Boston Magazine, the Boston Globe, the New York Times, Washington Post, Cosmopolitan Magazine, Pointe Magazine, CNN, Fox News and other media outlets to defame the Plaintiffs and to state the Plaintiffs had been charged with crimes and had "other young victims" that would be coming forward.

179.     Upon information and belief, Defendants Ruff, Mariella, Schneider and Jacobs contacted employers of the Plaintiffs including but not limited to Bloch Dance USA,

---

committed by Sage Humphires, which was in the possession of her attorneys, Defendants Ruff and Mariella, prior to the interview with Ms. Jacobs and filing her complaint – the Oral Argument can be found here: https://m.youtube.com/watch?v=vnrbvTXQKUU&pp=ygUlbWFzc2FjaHVzZXR0cyBhcHBlYWxzIGNvdXJ0IG9jdG9iZXIgOA%3D%3D

[22] https://www.nytimes.com/2017/11/09/opinion/david-boies-harvey-weinstein.html ;
https://www.nytimes.com/2018/09/21/business/david-boies-pleads-not-guilty.html

[23] https://variety.com/2022/film/news/anthony-pellicano-daryl-katz-marc-randazza-1235349929/ ;
https://thenevadaindependent.com/article/pellicanos-presence-adds-a-new-twist-in-ballerina-sex-exploitation-litigation

ASH productions, SEMA, Bellamoxi, Toyo Tires, Pointe Magazine, the Dallas Conservatory, Master Ballet Academy and Red Bull falsely claiming the Plaintiffs had been charged with a crime and that they should no longer work with them, which terminated the Plaintiffs' relationship with those businesses, employers and sponsors.

180.    In addition to the allegations in Nevada being false and fraudulent in themselves, Defendants Mariella and Ruff have intentionally and willfully lied to the Courts including by stating the Plaintiffs, "witness tampered", "stole data", "harassed and intimidated loved ones of their clients by filing lawsuits", "refused to take a lie detector test", "created an alias for their name", "assisted in evasion of a subpoena", "made YouTube videos Plaintiffs did not make", "sent harassing emails", "did not confer"(when the Plaintiffs did confer), "violated the Boston abuse prevention orders" (Boston Court ruled Plaintiffs did not but they continued to state otherwise) and "disclosed Jane Doe 1's identity" when Plaintiffs did not amongst other claims which have all been disproven with evidence by the Plaintiffs but only after it obstructed and interfered with litigation.

181.    The Nevada District Court stated that Ms. Ruff and Mariella should "seriously consider" their clients' claims after the Plaintiffs presented evidence proving the allegations to be false, and furthermore, canceled the pre-trial and has not set any trial date.

182.    The Defendants Ruff and Mariella have even been "told on" by their own clients in their depositions including that the Nevada Plaintiffs admitting to having no idea what discovery was produced by their attorneys so they could withhold documents, did not know what discovery was asked of them, did not know what their

own complaint stated, (and in some instances claimed outrageous allegations that were not even in their complaints) and stated Ms. Ruff and Mariella coerced them into the lawsuit because it would look better to have more Plaintiffs.

183.    Upon information and belief, the Defendants Ruff and Mariella lied to law enforcement about their client Jane Doe 1 even after knowing her allegations were impossible, proven by therapy records and statements made by Jane Doe 1 which they possessed prior to filing her complaint.

184.    Upon information and belief, the Defendants Ruff and Mariella specifically set forth a fraudulent scheme to mislead the Court in Nevada to believe the Plaintiffs (here), had abused a young child, Lena Mathews, only for the Plaintiffs to contact that now adult woman and receive information that the Defendants never contacted Ms. Mathews at all and that she had no idea her name was being used in the original complaint filed with the Court against the Plaintiffs.

185.    When the Plaintiffs reached out to Ms. Mathews about the Defendants using her in the original complaint, she stated the following:

*"I had NO clue my name was being used in this way. Neither myself or my father have never said anything bad about either of you, especially concerning anything physically. Our relationship was completely professional, and I have always looked up to both of you. I'm so sorry you're being caught in these heinous lies. I would gladly go on record stating how our relationship was nothing but positive. [heart emoji]. Thank you for informing me of this.*

186.    The Defendants Ruff and Mariella **specifically used Lena Mathews** to convince the public and the Court, (in the complaint) that the Plaintiffs had abused,

"other young girls", referring to her as "another young girl", language which was ordered to be stricken by the Nevada District Court, in order to create another false narrative for shock value in the eyes of the Court of public opinion.

187.    The Plaintiffs *never knew* the Defendants **never contacted** Ms. Mathews and relied on the information that the Defendants stated Ms. Mathews had fabricated allegations against them, discussed in the original complaint, when she had not.

188.    The stricken language from the Nevada Complaint was intentionally written by Sabina Mariella and Lindsey Ruff who then conspired with Dawn Schneider and Julia Jacobs to ensure the sensationalized complaint consisting of perjured statements and lies was published to a mass audience after the interview was conducted with their clients, Sage Humphries and Gina Menichino as to avoid consequences of defamation pertaining to those allegations written for the media within the complaint.

189.    While the Complaint in Nevada is privileged, it is defamatory on its own which is why it was written to sensationalize for the media in order to avoid a defamation lawsuit; these false allegations ruined the Plaintiffs' lives.

190.    The Defendants Ruff and Mariella even stated that the Plaintiff, Taylor Button, "fled to London" in 2010 to avert consequences to the false allegations in the Nevada complaint even though Defendants Ruff, Mariella, Schneider and Jacobs had full access to the publicly available information that Mr. Button moved to London to be with, and marry his now wife and Plaintiff, Dusty Button.

191.    The Defendants also intentionally stated that Mr. Button created an "alias" while knowing through public record that Mr. Button took his wife's last name when they married in 2015, as there was no one to carry on the last name and it was the

Plaintiffs' grandfather's wish before he passed; they used Mr. Button's noble actions against him and stated he used an alias instead, to "flee" from their clients' false allegations.

192.    The Plaintiffs relied on the statement made by the Defendants because they were made to believe that another woman, (who they briefly knew as a child who assisted a dance convention Plaintiff Dusty Button taught for), had brought forth false allegations against them when in fact, that woman had never made any such statement at all and in fact, completely supported the Plaintiffs.

193.    The Defendants Ruff and Mariella have unethically used each and every federal Court Plaintiffs have filed suit in, against the other by manipulating orders and portions of litigations to "support" other fraud to ensure their narrative remains.

194.    Upon information and belief, Defendant David McCraw conspired with the attorneys from Boies Schiller and Flexner, (Ruff and Mariella), to "cover up" their clients' fraud and prevent the Plaintiffs from seeking discovery proving the conspiracy against the Plaintiffs is true, including by appointing former employee Demetri Blaisdell to represent Julia Jacobs.

195.    Upon information and belief Defendants Ruff and Mariella have lied to at least three federal Courts by stating the Plaintiffs "stole" data from their clients' iPhone in 2017, after their own client admitted the Plaintiffs never stole data at all

196.    Upon information and belief Defendants Ruff and Mariella intentionally and willfully filed a frivolous complaint in Nevada on behalf of their clients after coercing them to join the lawsuit against the Plaintiffs and continued to represent those clients *even after* obtaining and possessing evidence against their own clients, proving their

allegations to be false including but not limited due evidence proving that one of their clients **has never even met the Plaintiffs**.

197.    Upon information and belief, Ms. Ruff and Ms. Mariella lied to the Department of Justice about the Plaintiffs, to Homeland Security and to the Hillsborough County Sherriff's Department in Florida by stating the Plaintiffs committed horrendous acts of sexual abuse against their clients while possessing evidence, (including their clients' deposition testimony), that the allegations were knowingly false, in order to try and convince law enforcement that the Plaintiffs were guilty of a crime, including by reporting false allegations against them.

198.    Upon information and belief, Defendants Mariella and Ruff explicitly told Special Agent Evan Picariello that the Plaintiffs raped their client Jane Doe 1 at gun point as a minor.

199.    Upon information and belief, Defendants Mariella and Ruff lied to the Hillsborough County Sherriff's Department and told an officer of the sexual victim's unit that Plaintiff Taylor Button sexually assaulted four of their clients from 2006-2009.

200.    The Plaintiffs have been in contact with Sergeant Bradford Sutter of the HCSO Special Victims Section to file charges against Ms. Ruff and Mariella's clients for filing false police incident reports in 2018 and additionally had to file a Motion with the Nevada District Court just to seek permission to send the department the depositions of their clients to prove they committed perjury as Ms. Ruff and Mariella opposed the Plaintiff's request to submit those depositions to law enforcement without Court order, which they eventually received.

201.    Defendant Mariella lied to the Boston Municipal Court when she stated that her client sustained an injury from the Plaintiffs after she alleged, they raped her while having therapy records in her possession proving that to be false.

202.    Defendants Mariella and Ruff were in possession of the abuse prevention orders filed by Sage Humphries which stated she was never forced, threatened or under duress during any point of her open consensual dating relationship with the Plaintiffs, (intentionally omitted from the Complaint), which was intentionally neglected in order to state in Nevada that she alleged she was raped, which is not only false but entirely contradicted; the Defendants possessed these documents prior to their clients' interviews with Ms. Jacobs.

203.    The New York Times Company profits on the success of their articles; Ms. Jacobs's defamatory article about the Plaintiffs was one of their most successful, based on fraud therefore the New York Times Company made a substantial amount of money by publishing fraudulent allegations which the Defendants Jacobs, Mariella, Ruff and Schneider knew to be false as, upon information and belief, they possessed evidence proving the allegations to be false prior to publishing the article but published and/or allowed the article to be published anyway.

204.    Upon information and belief Ms. Jacobs *intentionally published* the defamatory article about the Plaintiffs knowing there was falsity to the allegations in the Nevada Complaint after receiving factual documentation from the attorneys at Boies Schiller & Flexner prior to the publishing of the defamatory article about the Plaintiffs.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

205.    Following Ms. Jacobs's article being published, Plaintiffs *immediately lost everything* they had ever worked for including but not limited to their reputations, careers and business relationships, resulting in the loss of *every asset* they owned or possessed and including the loss of their home which they were evicted from due to the crippled financial state following Ms. Jacobs' article and collusion with Defendants Ruff, Mariella, Schneider and non-party co-conspirator Sigrid McCawley.

206.    Upon information and belief, and by her clients' own deposition testimony, Ms. Ruff coerced the Plaintiffs to join the lawsuit in Nevada *even after* the Plaintiff did not want to join the lawsuit and after Ms. Ruff had evidence which contradicted and disproved their allegations.

207.    Ms. Ruff and Ms. Mariella, (with Ms. McCawley), intentionally committed fraud on the Court when they knowingly and falsely stated in the Nevada complaint that their client, (former Plaintiff Juliet Doherty who voluntarily withdrew), was a minor at the time of her allegations; the Plaintiffs *did not even know* Ms. Doherty prior to 2018 when she was twenty-one years old, (in addition to the allegations being false themselves), thereby misleading viewers of the public to believe the Plaintiffs assaulted multiple children.

208.    Ms. Ruff and Mariella intentionally wrote the following in Ms. Doherty's complaint:

"*Dusty intentionally attempted, threated, and committed harmful and offensive contacts against Juliet, including but not limited to inflicting juvenile sexual abuse and physical abuse against Juliet*" – ECF No. 35, pg 60.

209.     Upon information and belief, Ms. Ruff and Mariella intentionally coerced women to join the Nevada litigation to lead the Court and the public to believe there were multiple "survivors" and "victims" of the Plaintiffs; there is evidence proving this to be true from their clients' own deposition testimony which confirmed they would not have even joined the litigation if the Defendants did not convince them to do so.

### *Defendants' Destruction of Plaintiffs' Business, Goods and Services*

210.     The Plaintiffs sold their talent, essentially offering their skills and expertise as a service.

211.     The Plaintiffs' talent represents the goods and services they provided to clients, sponsors and employers.

212.     The Plaintiffs' talent, such as their expertise in a particular field was what clients, sponsors and employers were paying for.

213.     Plaintiffs' goods and services *were* their reputation and they suffered financial loss due to the false statements made about them, as a direct result of Ms. Jacobs' intentional decision to make readers believe the Plaintiffs were going to jail and they had been charged with crimes related to sexual assault.

214.     Because the Plaintiffs' businesses were their reputations, goods and services, they suffered from economic harm caused by false representations about their goods and services and they never worked another day after Ms. Jacobs's article.

215.     The Plaintiffs are now on government assisted programs such as SNAP, TANF and Medicaid as a direct result of this conspiracy and the disgusting false allegations against them which were intentionally publicized to a mass audience so that the

Defendants would profit from the Plaintiffs' pain and suffering and garner fame and fortune from the headline in the New York Times and other media outlets.

216.     The Plaintiffs' reputation and their own person was their business, goods and services and Ms. Jacobs, the New York Times Company, Ms. Ruff, Ms. Mariella and Ms. Schneider knew their headline about the Plaintiffs would lead viewers to believe the Plaintiffs had been charged with crimes and were comparatively the next Jeffrey Epstein and Ghislaine Maxwell, shortly following their co-conspirator's representation of Virginia Guthrie.

217.     While the Plaintiffs were successful, extremely talented and possibly the best in their own industries, they were ***never famous*** and were never recognized in public by any person.

218.     The Plaintiffs lived a private life and did not expose themselves or involve themselves in any controversies whatsoever, particularly related to sexual assault or any topics of that nature.

219.     Defendants' intentional collusion and conspiracy, paired with the defamatory statements made in Ms. Jacobs' article caused Plaintiffs *severe emotional distress* including because Plaintiffs discovered they were being sued through The New York Times article rather than through the appropriate manner of being served a summons.

220.     Defendants' Ruff, Mariella and Schneider's unethical behavior and defamatory statements to the media, the press and the public was the direct cause of Plaintiffs' loss of income, destruction of reputation and careers and severe emotional trauma.

221.     Due to Defendants' Ruff, Mariella, Schneider and Jacobs's conspiracy against the Plaintiffs and fraudulent actions committed to mislead the public and the Court

paired with the intentional defamatory statements and arrangement of a global media campaign against Plaintiffs, Dusty and Taylor Button after using the New York Times Company, Mr. Blaisdell's assistance in preventing the Plaintiffs' from exposing the truth and Mr. McCraw's efforts in colluding with the Boies Schiller & Flexner firm, the Plaintiffs immediately lost any and all business including that those who once employed and had business relations with Plaintiffs, entirely disassociated from them proven in just a few examples of text messages below:

- Email from Holly Tudor Miles of BLOCH INC. who Plaintiff worked for and had a business and personal relationship with for ***over fifteen years*** but who completely disassociated from Plaintiff immediately following The New York Times article.



- Text message below from Bree Hafen to Dusty Button, notifying Plaintiff of terminated agreement and negotiations regarding a collaboration.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Checking in. I want you to know....

I believe you. I believe 100% that you are innocent. I will support you and defend you always!

The way things have gone I'm afraid we need to put an indefinite pause/halt on what we are doing together. The truth is, Even though I firmly believe in your innocence...I feel it is going to take time to repair the damage that has been done, and financially – it's hard to continue developing a line with you that I just can't assure can to come to fruition.

I'm not sure how to reconcile something like this. I feel so torn inside. I would love to ask for your blessing to move forward with the two leos/crops that I altered the original designs. The third that we kept 100% the same... I wouldn't feel right asking to continue to develop that piece knowing that it was all your original sketch.

If you don't feel comfortable with that, I understand and I will honor your wishes... I just hate that the development funds will be wasted at that point. But ultimately I feel this needs to be your call, and I will respect your wishes either way. Just let me know your thoughts.

21    • Text message below from Shelby Richardson to Dusty Button, notifying Plaintiff of

22    termination of employment.

23
24
25
26
27
28

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Hi Dusty,

First and foremost we wanted to thank you for all that you have taught our kids and bringing the love of ballet back into the classroom as its such a huge part of our program. However, at this time we will not be having you at our intensive this year. We had some concerned parents come forward with some social media posts and feel that we cannot ignore them even if social media is to be taken with a grain of salt. Our top priority is our families and the dance community we have built. This is a time where we need to put them first. I really hope you can understand where we are coming from as we truly have enjoyed having you at the studio and we are hopeful that we will have you back very soon. Again, thank you so much for all that you have done for our students. We will miss you having you at the intensive.

iMessage

- Text message below from Jacqueline Porter, (owner and director of The Dallas Conservatory), to Dusty Button, notifying Plaintiff of termination of employment.

1
2
3
4
5
6
7
8
9
10



11   • These messages are just an example and a *tiny fraction* of what Plaintiffs suffered by

12      way of loss of business and employment which came directly after Ms. Jacobs's

13      article was published.

14   222.    As stated in the above references, Plaintiffs' names and likeness was their *only*

15      business, which generated literally all of their revenue, income and business, whereas

16      Plaintiffs, themselves, and what they provided to their respective industries was solely

17      based on what they provided as their name brands known as Dusty Button, Taylor

18      Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built,

19      Button Brand and Bravado by Dusty Button.

20   223.    Plaintiffs' established business, goods and services were directly sourced and

21      provided from their good names, talent, expertise and reputations, which were

22      completely destroyed by all the Defendants in their efforts to conspire against the

23      Plaintiffs, their agreement to destroy Plaintiffs' defense and their unethical play to the

24      media and the press including but not limited to the false and defamatory publication

25      by Ms. Jacobs in the New York Times.

26
27
28

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

224.    As stated in the above referenced facts, Plaintiffs were highly respected, extremely well-known for their good reputations, leaders of the dance industry and the automotive industry, and reliant on their businesses which were well established for over fifteen years, as each Plaintiff was their own business in which they were hired based on their desired skill sets in their industries, which others could not offer.

225.    Plaintiffs had established business with signed negotiated contracts with three companies to manufacture and sell their dancewear line which was in its initial phase and well under way as Plaintiffs were beginning the second wave of these partnerships when the *all Defendants* conspired efforts and collusion to destroy Plaintiffs' livelihood and defense byway of defamatory statements to a mass audience derailed all operations.

226.    Plaintiffs lost any and all business immediately and for the foreseeable future as a direct result of Defendants' unethical play to the media and intentional defamatory statements made to businesses, employers and sponsors; and due to the fraud committed by Ms. Ruff and Mariella when they intentionally and knowingly wrote a fraudulent and frivolous complaint while possessing evidence which disproved those allegations.

227.    Defendants made their statements and conspired with *actual malice* as they knew that, as a result of the publications, the Plaintiffs would suffer financial harm, lose their careers and their good names but the Defendants Ruff, Mariella, Schneider and Jacobs did not care, as it gained traction for the attorneys from Boies Schiller and equally put Ms. Jacobs' on the map as the first to break the very viral publication that

the Plaintiffs Dusty and Taylor Button had, (according to Ms. Jacobs), been "charged" with crimes of sexual assault.

228.    Defendants Ruff, Mariella, Schneider and Jacobs knew that their statements were false and intentionally crippled Plaintiffs' business and ability to generate revenue and income as they maliciously referred to Plaintiffs' goods and services because the "power" they claims Plaintiffs "abused" was the power of their business which was their talent, expertise and their reputable names, (as stated in the Nevada complaint).

229.    Defendants intentionally, willfully and maliciously committed fraud by deceiving the public and the Courts, (which they continue to do), in addition to making false and defamatory statements to numerous media and press outlets including but not limited to Defendant Julia Jacobs and The New York Times Company which in turn, resulted in further defamation by hundreds of thousands of third parties on social media, in the press and other new outlets including to every subscriber of The New York Times who maintain a subscriber list of 10.36 million subscribers to the paper as well as 9.7 million digital only subscribers; all of whom had access to read and view Julia Jacobs's article about Plaintiffs.

230.    The Plaintiffs would not be crippled in their defense against the largest law firm in the Country, were it not for Ms. Jacobs's article, the collusion between the attorneys Ruff and Mariella, Ms. Schneider and Mr. McCraw and Blaisdell's "cover up" of that fraud while they all possessed documents or had knowledge that the allegations in Nevada were false.

231.    Defendant Jacobs' defamatory article paired with Ms. Ruff and Mariella's clients' fraudulent lawsuit spread like fuel-soaked wildfire throughout the dance industry and

community, automotive industry and community and further, to dance and automotive forums including but not limited to Facebook, Reddit and TikTok and was widely spread via communications through various messaging platforms nationally and internationally; including that defamatory statements continue to be published to this day.

232.    Defendants' conspiracy and attorney-media collusion to publish defamatory remarks, (which were not only spread in written form but widely spread via word of mouth through the grapevine of the industries which Plaintiffs were so highly respected and prominent in) were an intentional play to the media to interfere with Plaintiffs' ability to defend themselves including by influencing any potential juror to bias the Court and create a false narrative against Plaintiffs.

233.    Every Defendants has undoubtedly obstructed justice in that the Plaintiffs cannot and have not been able to appropriately defend themselves due to Defendant Mariella and Ruff's eagerness and ability to lie to the Court and receive no consequence, the relationship between the parties allowing them to control the narrative against the Plaintiffs in every media outlet, creating propaganda against the Plaintiffs which in turn, has created a very large issue of swaying public opinion and biasing potential jurors.

234.    Defendants Ruff, Mariella and Schneider knew that, as a direct result of the publication in the New York Times and later, in other publications and interviews such as Good Morning America, that Plaintiffs would suffer financial harm and never be capable of generating revenue using their names again.

235.     Plaintiffs suffered complete loss of business and sales including that their income was solely based on a per performance basis whereas, Plaintiffs' income was generated upon completion of work as they were themselves, their business.

236.     For example, Plaintiff Dusty Button's teaching classes and performances were immediately canceled as a direct result of Julia Jacobs's article, a result of collusion with attorneys and PR person from Boies Schiller & Flexner.

237.     As another example, Plaintiff Dusty Button immediately lost any and all business with all scheduled dance studios, summer intensive courses, and events which she was scheduled to guest teach and choreograph for, including scheduled guest performance appearances nationally and internationally as a direct result of Defendants' Ruff, Mariella, Schneider and Jacobs' misconduct, conspiracy, defamatory statements and unethical play to the press and the media.

238.     As another example, Plaintiff Taylor Button immediately lost any and all business related to his brands including his business and brand "Button Built", with all scheduled events in the automotive industry including pre-planned design builds for clients and customers including prominent name brands which were sponsors of Plaintiff Taylor Button, all of whom canceled their builds and design concept work with Plaintiff for the foreseeable future as a direct result of Defendants' Ruff, Mariella, Schneider and Jacobs's misconduct, conspiracy, defamatory statements and unethical play to the press and the media.

239.     Further, Plaintiffs both immediately lost any and all contracts with sponsors, endorsements and event appearances in their respective industries including but not limited to: BLOCH Inc., Tiger Friday, Capezio, Yumiko, MPG Sport, Fenti, Volcom,

Discount Dance, RedBull, Adidas, WeWork, Rotiform Wheels, Brixton Forged, Momo racing, Bride Racing, Nitto Tires, Toyo tires, Brembo, Ferrari Parts, Tial Concepts, Xona Rotor, Aviva Performance, Impressive Wraps, Inozetek, Tubi Style, Vivid Motorsport, Voodoo Automotive, SEMA Auto Show, Crep Protect, Accuair Suspensions, Currie axels, Pelican LLC, Greyman Tactical, PRP seats, KMC wheels, RAM mounts, Metalcloak suspension and body components, THULE, Rebel Offroad, PPG paint, Morimoto LED lighting solutions, BAJA off-road lighting solutions, Powertank, Maxxtraxx, HP tuners, Emory Motorsports, SABELT and Illest, amongst many others not listed here.

240.    Plaintiffs not only lost their business "Button Brand", suffering the complete destruction of their self-made brand but were forced to refund customers for items sold due to the connection of the defamatory statements made by Defendants and the third parties who "grapevined" off of her defamatory statements in the media and the press.

241.    Plaintiffs completely lost and forfeited their brand, Button Brand due to the defamatory statements made in the media and The New York Times including because their sponsors, business relations and employers read the article before Plaintiffs were served with the lawsuit.

242.    Plaintiffs had a pre-planned, negotiated contract with dancewear company Tiger Friday whereas, Plaintiffs designed, licensed and would market the line of leotards and dancewear utilizing the Button name and brand to expand their already successful company and image which was decimated as a result of the New York Times article as the Business believed the Plaintiffs were charged with a crime.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

243.    Plaintiffs' contract was immediately canceled as a direct result of Defendants Jacobs' defamatory remarks within her article and the false and fraudulent complaint filed by Lindsey Ruff and Sabina Mariella.

244.    Plaintiffs were not paid for work already completed as Tiger Friday continued to use Plaintiffs' already completed designs, due to the false and defamatory statements made by Defendants', the New York Times article and the defamatory global media campaign waged against Plaintiffs.

245.    Plaintiffs' brand, Bravado by Dusty Button was a dancewear and leotard line for dancers in which Plaintiffs had previous negotiated contracts with sponsored third-party companies and distributors such as Artists Simply Human, Discount Dance, Showstopper and GK Elite, as well as advertised and garnered sales of this line through their own website "bravadodancewear.com" and through Plaintiffs' former social media page on Instagram, @bravado_dancewear and Plaintiffs' personal social media account, @dusty_button but it was completely destroyed as a result of Defendants' Ruff, Mariella, Schneider and Jacobs's misconduct including the fraud on the Court which was committed by the Defendants Ruff and Mariella.

246.    Bravado by Dusty Button was sold at various dance events for distribution, whereas, sales and contracts were immediately terminated following $100,000.00 of partner investment and nearly a year of travel and planning as a direct result of Defendants collusion with The New York Times including but not limited to the defamatory statements made against Plaintiffs.

247.    Defendants' Ruff, Mariella, Schneider and Jacobs's conduct forced the termination of Bravado by Dusty Button as all sales came to a halt and additionally,

customers demanded refunds stating the brand was associated with "sexual predators", "perpetrators", "criminal behavior" and "rapists" and that they were "charged" with a crime.

248.    Plaintiffs' businesses, Button Brand, Button Built, and Bravado by Dusty Button were completely destroyed, losing hundreds of thousands of dollars in revenue and costs, which were already paid, promised and negotiated with third party companies and distributors as a direct result of the conspiracy against them, the fraudulent complaint filed by Ms. Ruff and Mariella in Nevada, the withholding of evidence by Ms. Ruff, Mariella and Schneider and the reckless disregard for the truth which Ms. Jacobs had as she neglected to provide the truth to readers and instead, chose to defame the Plaintiffs for a better "story".

249.    Any and all marketing for the above reference brands with associated accounts advertising those brands including all sales were terminated as a direct result of Defendants' Ruff, Mariella, Schneider and Jacobs's conduct.

250.    The seriousness of Defendants' Ruff, Mariella, Schneider and Jacobs's defamatory statements made to businesses, employers and sponsers and law enforcement, fraudulent complaint filed on behalf of Ruff and Mariella's clients, collusion, conspiracy and fraud on the Court proves a clear intention to cause damage to Plaintiffs including by way of attorney-media collusion and fraudulent misrepresentation.

251.    The Defendants Ruff and Mariella had actual knowledge that their statements filed in the complaint against the Plaintiffs were untrue and prove that Defendants' actions were willful, intentional and malicious.

252.    Defendants Schneider had actual knowledge that their statements filed in the complaint against the Plaintiffs were untrue and prove that Defendants' actions were willful, intentional and malicious.

253.    Defendant Jacobs had actual knowledge that their statements filed in the complaint against the Plaintiffs were untrue and prove that Defendants' actions were willful, intentional and malicious.

254.    Defendant Jacobs intended to, and did reach a mass audience including that she intended to harm Plaintiffs' careers, businesses and reputations as the false statements were aimed specifically at Plaintiffs' colleagues, clients and target demographics including because she published her article in the New York Times prior to the Plaintiffs ever being served.

255.    The Plaintiffs' lack of knowledge of the lawsuit prior to reading Ms. Jacobs' article in the New York Times deprived them of an ability to defend themselves in litigation appropriately.

256.    The Plaintiffs' lack of knowledge of the lawsuit prior to reading Ms. Jacobs' article in the New York Times caused the Plaintiffs to suffer severe emotional trauma resulting in severe depression and suicidal thoughts and causing them to become reclusive in their home in order to avoid any public setting.

257.    Defendants' Ruff, Mariella, Jacobs's and Schneider's attorney-media collusion and publication of defamatory statements caused the entire dance industry to not only turn against Plaintiff Dusty Button, (who had worked her entire life to build the reputation she was known for in her industry and was at the pinnacle of her career), but caused the industry to disassociate from Dusty, repost the defamatory statements

and cease all communication with her, including halting any and all forms of

employment for which she had been in extremely high demand for, for over fifteen

years.

258.     Defendants' Ruff, Mariella, Jacobs's and Schneider's attorney-media collusion

and published defamatory statements caused the entire automotive industry to not only

turn against Plaintiff Taylor Button, (who had worked over thirteen years to build the

reputation of the idol he was and that he was known for in his industry and was at the

pinnacle of his career), but caused the industry to disassociate from Taylor, repost the

defamatory statements and cease all communication with him, including halting any

and all forms of employment for which he had been in extremely high demand for, for

over thirteen years.

259.     Defendants *specifically targeted* Plaintiffs in their global media campaign waged

against them, as they were influential and informative people in their industries in

which Defendants Mariella and Ruff used to their advantage while disregarding

documented evidence that their clients' allegations were false so that their clients,

would gain an unfair advantage in the Court of public opinion and in the Court.

260.     Each Defendant played a large role in the destruction of the Plaintiffs' lives as

they conspired to ensure the continued fame and success of the attorneys at Boies

Schiller & Flexner and the New York Times Company.

261.     Plaintiffs were completely prevented from defending themselves to all third party

employers, sponsors and business associates as all Defendants' attorney-media

collusion and conspiracy to publish the New York Times article prior to Plaintiffs

being served which included defamatory statements were so immediately viral and out

of control, that Plaintiffs could not control or manage the effects stemming from the Defendants' conduct.

262.    Ms. Ruff and Mariella continue to lie to the Courts about the Plaintiffs and the Plaintiffs have filed Rule 11 sanctions and case terminating sanctions against them for their fraud on the Court including but not limited to knowingly filing false and frivolous allegations against the Plaintiffs as they possessed proof the allegations were false.

263.    To this day, Plaintiffs keep their phones on silent as it results in severe trauma and PTSD as a direct result of Defendant Jacobs's published article, the defamatory statements and the global media campaign waged against them including because Defendants Ruff, Mariella and Blaisdell have intimidated and continue to intentionally harass and intimidate Plaintiffs, abusing their power to prevent Plaintiffs from coming forward regarding their misconduct and unethical attorney-media collusion.

264.    Defendant Jacobs has never made any attempt to rectify the false and malicious statements even after Plaintiffs have proven her statements to be defamatory, false, misleading and intentionally harmful, including in litigation including after Plaintiffs contacted Ms. Jacobs to find resolution.

265.    The Plaintiffs even provided Ms. Jacobs with evidence of false police reports filed by Sage Humphries, (reports which Ms. Mariella and Ms. Ruff stated their client was not obligated to produce), on text message, which she stated she would "take a look at" but never corrected her defamatory article.

266.    The shock and confusion resulting from Ms. Jacobs's article, coupled with Defendant Ruff, Mariella, Blaisdell and McCraw's abuse of power and influence

resulted in intense threats, harassment, and severe bullying toward the Plaintiffs by third-parties as the mass media was led to believe the fraudulent allegations against the Plaintiffs were true and that Ms. Jacobs's article was true.

267.    Plaintiffs were led to believe legal recourse would be an impossibility against such powerful corporations.

268.    Defendants Demetri Blaisdell and David McCraw took affirmative steps to lead the Plaintiffs to believe they were without the ability to seek recourse against them, Ms. Jacobs, the New York Times Company, Ms. Ruff or Ms. Mariella until now with the threat of a law degree, the connections between the New York Times and Boies Schiller & Flexner, the ability to silence the Plaintiffs and their ability to manipulate the Court of public opinion and the Court.

269.    Defendant McCraw took affirmative steps to mislead the Plaintiffs and giving them the run around to speak to a former employee of Boies Schiller & Flexner rather than to him, (the attorney for the New York Times and Ms. Jacobs), significantly delaying the onset of this litigation.

270.    Defendants Ruff and Mariella continue to take active steps in preventing the Plaintiffs from filing any lawsuit by threatening the Plaintiffs with sanctions and stating to the courts they are "criminals" and manipulating the Courts to believe the Plaintiffs are harassing everyone who has harmed them by appropriately seeking legal recourse, as they continue to attempt to persuade any and all Court's that the Plaintiffs are "predators" and "abusers" who committed horrendous acts against their clients and are only filing lawsuits because they "deny" the allegations.

271.    The Plaintiffs make it known that they just want to expose the truth but are fighting a very large group of attorneys and a mass media corporation who do not want that truth to be exposed, otherwise, they will be at fault for the fraud the Plaintiffs accuse them of and they will be exposed themselves.

272.    Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

273.    All the Defendants' actions, paired together and described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

274.    All the Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

275.    Allowing any of the Defendants to do so **would be unjust** and would prove that large corporations who commit fraud against a person, can get away with it if they have the right connections and capabilities of silencing the truth.

276.    Each Defendant took active steps to prevent Dusty and Taylor from commencing this lawsuit before now, including by destroying Plaintiffs' ability to work after the first publication of Ms. Jacobs's defamatory article against Plaintiffs in The New York Times came out and by using tactical intimidation by way of using their law degrees to suppress and silence *pro se* Plaintiffs from defending against their conspiracy, collusion and false and defamatory statements through the media and in litigation.

277.    Plaintiffs have suffered and continue to suffer mental anguish, severe emotional distress and loss of enjoyment of life as a direct and proximate result of Defendants' conduct.

278.    Had Plaintiffs succumbed to the darkness that each Defendant cast over their lives, businesses, families and futures, this litigation would be criminal rather than civil as they are directly responsible for serving as the catalyst of the global defamatory media campaign waged against Plaintiffs and the fraudulent actions that nearly ended two innocent lives that were once the brightest lights of their careers for millions of people abroad.

279.    Plaintiffs allege the foregoing based upon personal knowledge, public statements of others, and records in its possession.

280.    Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of The New York Times and Defendants and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

## **CAUSES OF ACTION**

## **COUNT I - INJURIOUS FALSEHOOD**

***Against Defendants The New York Times Company, Lindsey Ruff, Sabina Mariella, Dawn Schneider and Julia Jacobs***

281.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

282.    The unprivileged statements of fact made by Ms. Jacobs to others about Plaintiffs were false and defamatory including by making a statement that the "couple denied the charges", leading any reasonable viewer or reader to believe the Plaintiffs had been charged with a crime.

283.    Ms. Jacobs's words were maliciously calculated to cause financial injury, constituting Plaintiffs' claim of Injurious Falsehood.

284.    Ms. Jacobs's article contained intentional false and defamatory statements which does not express statements of opinion and are not protected by any shield law, opinion defense or defamation liability.

285.    The Defendant's article contained the statement, "*A lawyer for the couple said that they **denied the charges**"* which was false, defamatory and intentionally misleading to a mass audience including any potential juror, resulting in the complete and total loss of Plaintiffs' businesses, business relations, affiliates and/or any and all contractual agreements as Defendant Julia Jacobs intentionally led readers to believe Plaintiffs had been charged with a crime rather than allegations made in a civil complaint.

286.    Ms. Jacobs made a false statement of fact which was not based on any such statement within the lawsuit she wrote her article on and instead, diverted to a false statement of fact which was not stated by the Buttons' previous attorney or any other party in order to intentionally mislead a mass audience to believe there were "charges" against Plaintiffs; this malicious statement was knowingly and undeniably false and Ms. Jacobs made it anyway.

287.    Ms. Jacobs's article contained a false, defamatory and intentionally malicious statement which was only made to amplify her "story", made solely for shock value and which severely harmed Plaintiffs and caused extreme emotional distress.

288.    Plaintiffs claim special damages to be proven through contractual agreement, financial records and messages which prove the New York Times article was the

direct and proximate cause of Plaintiffs' complete and total loss of businesses, business relations, affiliates, and/or any and all contractual agreements including but not limited to the reputations, careers and livelihoods in their respective industries.

289.    Defendants' misleading title of the article, "*Former Dance Instructor Accused of Sexual Assault in Lawsuit",* was intentionally misleading in order to appeal to viewers for shock value, by convincing and leading any reader to believe that Plaintiffs, together, were teaching and abusing their students which is false and defamatory in its entirety.

290.    Ms. Jacobs's words were published in a written fashion to hundreds of thousands, if not millions of readers including in documented online content, newspapers, social media publications, law journals and in the new and media including on television programs which were also republished.

291.    Defendant Julia Jacobs did not verify the accuracy of her subject's allegations before making her defamatory statements and therefore, made her statements out of neglect, reckless disregard for the truth and/or actual malice.

292.    Upon information and belief, Ms. Jacobs received evidence and documentation proving the allegations in the Nevada complaint were false and that her article was defamatory, prior to publishing the article.

293.    Defendants Ruff, Mariella, Schneider and non-party co-conspirator Sigrid McCawley are liable for arranging the press and media outlets where the false and defamatory statements were made including but not limited to their clients' interviews with Julia Jacobs days prior to the Nevada Complaint being filed.

294.    Defendant The New York Times Company is liable for the false and defamatory statements made by Ms. Jacobs as the publication's is liable in editing, publishing, and distributing the defamatory material.

295.    The New York Times is liable for the false and defamatory statements made by Ms. Jacobs as the publication benefited and profited immensely from the content *even if* Ms. Jacobs acted independently.

296.    The New York Times is liable for the false and defamatory statements made by Ms. Jacobs as they did not "fact-check" their sources prior to the publishing of the article.

297.    Ms. Jacobs' article was a direct cause of Plaintiffs' complete loss of business and sales related to their names, likeness and brands whereas, Plaintiffs suffered *actual damages* and special damages, proven by bank statements, email and text communications, approval of government assistance programs, loss of counsel, loss of employment and other economic and financial evidence of damages as a result of The New York Times' and Julia Jacobs' false and defamatory statements made to a mass audience which was published on multiple platforms.

298.    The unprivileged statements made by Ms. Ruff, Ms. Mariella, Ms Schneider, Mr. Blaisdell and non-party co-conspirator Sigrid McCawley to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses, whereas Plaintiffs have not worked one, single job since July 28th, 2021, including that any and all contracts including but not limited to the forementioned company contracts and agreements were immediately and prematurely terminated following the collusion between

Defendants and the unethical conduct of publishing a defamatory article prior to Plaintiffs *ever being served*.

299.     Upon information and belief, as a result of Ms. Mariella and Ms. Ruffs contact and defamatory statements made to third-parties including sponsors, business affiliates and employers of the Plaintiffs in an effort to coerce others to join the litigation, Plaintiffs lost jobs, opportunities and sponsors because the Defendants made statements that alluded to the Plaintiffs being charged with a crime amongst other statements which led those third parties to disassociate from the Plaintiffs.

300.     Ms. Jacobs published and made her defamatory statements negligently, with knowledge of the falsity of the statements and with reckless disregard of their truth or falsity and with actual malice for her own personal gain.

301.     At the time Julia Jacobs's statements were made, she knew or should have known that they were false and defamatory including because she had access to documents with proved their falsity.

302.     Ms. Jacobs published a direct quote which she stated was from Plaintiffs' attorney citing that Plaintiffs deny the "charges"; there was no other purpose to make the unquoted statement, (that Plaintiffs' previous attorney did not make), that Plaintiffs "**denied the charges**" other than to sensationalize the article and mislead any reader to believe that Plaintiffs had been charged with a crime and to intentionally create confusion by implying Plaintiffs were involved in criminal activity.

303.     Hundreds of thousands of people *actually* read the article and/or heard the false and defamatory statements in the article.

304.     Ms. Jacobs' statements were not privileged.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

305.    Defendants Ruff, Mariella, Schneider and Jacobs possessed information and had access to information which showed Ms. Humphries and Menichino's statements were false including but not limited to publicly available records which showed the allegations in the lawsuit to be false in its entirety; which were accessible to Ms. Jacobs and were in the possession of Defendants Ruff, Mariella, Schneider and non-party co-conspirator Sigrid McCawley.

306.    Defendants made statements which had no factual basis including but not limited to by insinuating Plaintiffs had been "charged" with a crime.

307.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute *injurious falsehood*.

308.    Ms. Schneider, upon information and belief, contacted numerous third party media sources through her connections and arranged for the Boies Schiller, Nevada litigants to be interviewed, knowing the allegations were false.

309.    Upon belief, Ms. Schneider contacted various third parties including Pointe Magazine and told the magazine the Plaintiffs had been charged with a crime, and arranged an interview with Ms. Humphries while knowing that allegation was false.

310.    As a direct and proximate result of the false and defamatory statements made by the Defendants Ruff, Mariella, Schneider and Jacobs, Plaintiffs have been *severely* damaged.

311.    Upon information and belief, there are innumerable third-parties which are in possession of evidence that Ms. Ruff, Schneider, Mariella, and Jacobs contacted them

to source information about the Plaintiffs and told those third parties they should disassociate from the Plaintiffs because of the alleged "crimes" they had committed.

312.     Plaintiffs are entitled to punitive damages, because the Defendants' Ruff, Mariella, Schneider and Jacobs's defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

313.     Each Defendants' defamatory statements were intentionally and specifically timed to prevent Plaintiffs from seeking recourse against them as Plaintiffs could not afford to file claims against each Defendant, as the defamatory statements *immediately* destroyed Plaintiffs' ability to work and to generate income.

314.     The Plaintiffs have been intimidated by Defendants Ruff and Mariella including by their abuse of power, threats of sanctions, harassment in following and representing each third party which Plaintiffs have filed lawsuits against and preventing the Plaintiffs' truth from being heard.

315.     Again, these Defendants are equitably estopped from asserting a statute of limitations as a defense and allowing them to do so would be **unjust**.

316.     Plaintiffs have actual knowledge that substantial and additional evidentiary support, which is in the exclusive possession of The New York Times, Defendant Ruff, Mariella, Schneider and Jacobs's and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

317.     Plaintiffs cannot provide this court with certain portions of discovery related to the Boies Schiller clients, (Nevada Plaintiffs), as they are restricted by the protective

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

order and therefore, this Court should allow an opportunity for discovery to commence.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants Ruff, Mariella, Schneider and Jacobs for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT II – TORTIOUS INTERFERENCE

### *Against Defendants Ruff, Mariella, Schneider, Jacobs and the New York Times Company*

318.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

319.    The unprivileged statements made by Defendants Ruff, Mariella, Schneider, Jacobs and the New York Times Company and non-party co-conspirator Sigrid McCawley to others about Plaintiffs were false and defamatory.

320.    The unprivileged statements made by each Defendant named above to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs have not worked one single job since July, 29th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct and the publishing of Ms. Jacobs' and The New York Times article.

321.    Defendants Ruff and Mariella contacted business associates, employers and sponsors of the Plaintiffs and notified them of the allegations in Nevada including allegations which lie outside the complaint such as that the Plaintiffs had abused others not mentioned in the Complaint and that the Plaintiffs had been charged with a crime.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

322.    Defendants Ruff and Mariella contacted various third-parties to "research" their clients' claims and in turn, attempted to persuade them in becoming a part of the litigation by telling those third parties that the Plaintiffs had been charged with a crime and that they had abused others which were not in the complaint but "afraid" to come forward.

323.    Defendants Ruff and Mariella coerced certain Nevada litigants to join the litigation to gain strength in numbers which added to "shock" value of the Nevada complaint.

324.    These Defendants made statements to third parties and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

325.    Defendant Schneider, upon belief, contacted various media and news outlets through her connections to state that Plaintiffs had been charged with a crime and that Ms. McCawley was the lead attorney in representing "seven ballerinas" in a "sex-trafficking" case against the Plaintiffs, leading those third-parties to publish other defamatory statements which in turn, led to the destruction of Plaintiffs' careers and reputations.

326.    At the time Defendants Ruff, Mariella, Schneider and Jacobs made and published such statements, they knew or should have known that they were false and defamatory.

327.    Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements which were published or stated by the Defendants listed here.

328.    None of the Defendants' statements were privileged.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

329.    Defendants Mariella, Ruff, Schneider, Jacobs and the New York Times Company conspired and colluded to interfere with Plaintiffs' businesses, contractual agreements, relationships, sponsors, employers, business affiliates, reputations and business agreements in order to cripple Plaintiffs' defense against a lawsuit which was publicly disclosed prior to Plaintiffs ever being served with that lawsuit or having knowledge of the allegations set forth within the lawsuit.

330.    Upon belief, Defendant Schneider knew of the Plaintiffs' contractual agreements with certain employers because Ms. Mariella and Ruff relayed the information to her prior to her arrangement of interviews with their clients.

331.    Defendant Schneider knew that Plaintiff Dusty Button was Red Bull's first and only ballet athlete prior to her contacting Red Bull for comments on the allegations pertaining to the Buttons and stating that the Plaintiff had been charged with a crime.

332.    Defendant Schneider knew that Plaintiff Taylor Button was sponsored by Toyo Tires and was invited to events such as SEMA in Las Vegas prior to contacted TOYO and SEMA for comments on the allegations pertaining to the Buttons and stating that the Plaintiff had been charged with a crime.

333.    Each Defendant here participated in attorney-media collusion and interference, compromising the fairness and integrity of the lawsuit in Nevada which Plaintiffs were not yet served with and thereby, strategically disrupting the normal course of litigation and intentionally causing extreme harm to Plaintiffs including by influencing public perception and any potential juror prior to Plaintiffs having the ability to prepare a defense and even after the litigation began as Defendants Ruff, Mariella and Schneider

continued to arrange interviews for the Nevada litigants, while having evidence that their allegations were false.

334.    Ms. Jacobs contacted numerous third-parties for comment on the allegations regarding the Buttons including but not limited to Boston Ballet, ASH productions, BLOCH Dance USA, Toyo Tires, Red Bull, Master Ballet Academy and others prior to the Plaintiffs even learning of the lawsuit against them to warn them of the allegations against the Plaintiffs and to lead them to believe the Plaintiffs had been charged with crimes of sexual assault when they had not.

335.    The Plaintiffs were no longer hired by anyone as a direct result of these Plaintiffs' misconduct and defamatory statements.

336.    These Defendants made statements for which they had no factual basis and in fact, had contradicting evidence against these statements but chose to make the false statements anyway for personal gain and for notoriety.

337.    Each Defendant suggested Plaintiffs were involved in a serious crime involving moral turpitude or a felony, exposing Plaintiffs to ridicule in which reflected negatively on Plaintiffs' characters, morality and integrity whereas, the defamatory statements impaired Plaintiffs' financial well-being including by publishing those suggested statements prior to Plaintiffs ever being served.

338.    Each Defendant *intentionally* induced innumerable third parties to break their contracts with Plaintiffs including because Julia Jacobs' article intentionally interfered with the Plaintiffs' ability to defend themselves or settle the lawsuit and therefore, each Defendants' actions constitute a tortious interference with Plaintiffs' legal rights

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

including because each Defendant led some third-party to believe the Plaintiffs were guilty and charged with a crime of sexual assault, rape and or sexual misconduct.

339.    Each Defendant knew that Plaintiff Dusty Button worked with children but intentionally made the disgusting decision to lead viewers and third parties to believe that she abused children and somehow "shared" that abuse of those children with her husband.

340.    Each Defendant knew from evidence that the Plaintiff Dusty Button had only met one litigant in Nevada, Sage Humphries.

341.    Each Defendant knew that Taylor Button was not a dance instructor and was not in any way involved in the dance industry but manipulated the allegations as such that the viewers and/or contacted third parties would believe the married couple lured children in to abuse them together as a "dance couple" for personal gain in litigation and/or within their own company.

342.    Each Defendants did so without justification as there was no self-interest in Plaintiffs' contractual agreements other than to destroy Plaintiffs ability to rightfully defend themselves and to gain traction in the Nevada litigation and/or in their own positions within their companies such as Ms. Jacobs's position with the New York Times Company and Ms. Schneider's position with Boies Schiller & Flexner.

343.    Defendants' false statements accused Plaintiffs of a serious crime and maligned Plaintiffs in their professions, those statements which resulted in constitute a tortious interference and Plaintiffs' injuries are presumed.

344.    Defendant Ruff, Mariella and Schneider's actions were motivated by a desire to harm the Plaintiffs and to continue the fame and notoriety acquired by their

colleague Sigrid McCawley's representation of Virginia Guthrie in the Epstein case which their client Sage Humphries stated was the "reason she contacted Sigrid McCawley".

345.    The statements made by each Defendant listed here tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, (which they did), contracts or employment, inducing third-parties through mass media publication to sever contractual agreements and disassociate from Plaintiffs, preventing Plaintiffs from a rightful defense against the lawsuit including prior to Plaintiffs being served.

346.    One third-party even stated that they disassociated with Plaintiffs because they were going to "prison" for sexual assault because of Ms. Jacobs's choice of defamatory words that the couple "denied the charges".

347.    Each Defendant is equitably estopped from asserting a statute of limitations as a defense.

348.     Allowing them to do so would be **unjust**.

349.    Plaintiffs' statutes, if any, must be tolled.

350.    Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of The New York Times and Defendants and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

351.    Plaintiffs are entitled to punitive damages, because Defendants' defamatory statements to a mass audience, third-parties and business affiliates of the Plaintiffs

were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm as there was publicly available information and data including information, data and documentation proving Defendants' statements to be false.

352.    Because each Defendants' defamatory statements and misconduct constitute intentional acts which were made with actual malice towards Plaintiffs and or reckless disregard for the truth, Plaintiffs seek an award for punitive damages.

353.    Each Defendant profited exponentially from their misconduct and the defamatory statements made about the Plaintiffs as for Ms. Ruff and Mariella, those statements greatly influenced the Court of public opinion and the Court's opinion of the Plaintiffs which in turn, prevented the Plaintiffs from appropriately defending themselves; Ms. Schneider was able to profit greatly as she was paid for each and every interview she arranged with the Boies Schiller clients and for her connections with certain media outlets including the New York Times; and the New York Times and Ms. Jacobs profited tremendously from their viral but defamatory article about the Plaintiffs as it was republished and posted on a global scale.

354.    The Defendants should be held responsible for this abomination of attorney-client media collusion which destroyed the lives of two innocent people.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against these Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## **COUNT III - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

### *Against all Defendants*

355.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

356.    Each and every Defendant named herein caused the Plaintiffs emotional distress as for their reckless disregard of evidence in their possession and of the truth.

357.    At the time of the events herein and at the time Ms. Jacobs' article was published, Plaintiffs received innumerable messages and phone calls regarding the article and the lawsuit which was disclosed to a mass audience prior to Plaintiffs' being served, whereas, Plaintiffs were notified by various third-parties about the article.

358.    Plaintiffs own attorney, (who they previously retained following the May 13th, 2021 attack in order to sue Defendants' clients and non-party, Madison Breshears), did not even have a copy of the complaint filed and was in search for the complaint upon the release of Ms. Jacobs' article.

359.    Plaintiffs' attorney could not even comment on the article appropriately as he was unaware of what was written in the complaint.

360.    The unprivileged statements made by Defendants Jacobs, Schneider, Ruff and Mariella (as mentioned, *supra*), to others about Plaintiffs were false and defamatory and caused extreme distress on Plaintiffs and their family including that Plaintiffs became depressed and began having suicidal thoughts due to the shock of Ms. Jacobs' defamatory article as Defendants conspired to intentionally harm Plaintiffs.

361.    The interviews arranged by Ms. Schneider furthered that depression because the allegations against the Plaintiffs were already false but the Boies Schiller & Flexner attorneys and their PR person continued to push the false narrative against the

Plaintiffs which were continuously published over and over again in various magazines and new outlets and on television, leading the Plaintiffs to stay in their home and avoid the public at all including because they lost any and all work associated with these defamatory statements and the global defamatory media campaign waged against them.

362.    Defendant Blaisdell is responsible for making the Plaintiffs believe they could not seek legal recourse, again leading the Plaintiffs to depression for their belief they could not seek the justice they deserved because they have never abused or assaulted anyone in their entire lives and have never committed any crime.

363.    Defendant McCraw is equally responsible for not only allowing the conspiracy between Mr. Blaisdell, Ms. Ruff, Ms. Mariella, Ms. Schneider and the New York Times Company to take place but he condoned it and even aided in it because he instructed the Plaintiffs to speak to a former employee of the Boies Schiller office which Ms. Ruff and Mariella are employed at now, to ensure the Plaintiffs could never seek legal recourse, to intimidate them and to ensure the narrative against the Plaintiffs stayed as it was because of the New York Times' long running connections with the Boies Schiller & Flexner firm.

364.    The unprivileged statements and the misconduct committed by all Defendants to others about Plaintiffs, to ensure the truth would never see the light of day, (that the Plaintiffs had never sexually abused anyone and had never been charged with any crime), caused complete loss and injury to Plaintiffs mental well-being and careers, which they spent their entire lives building and creating.

365.    The Plaintiffs became hopeless in their pursuit for justice because each Defendant made it clear on multiple occasions, (and Ms. Ruff and Mariella continue to do make clear), that the Plaintiffs are not powerful enough to defeat these corporations and that the Courts will believe whatever the attorneys from Boies Schiller & Flexner say to them regardless of the truth or falsity of that statement.

366.    Mr. Blaisdell attempted to persuade the Plaintiffs that their legal recourse was unlawful, not allowed and that they would be punished for seeking such recourse.

367.    Ms. Ruff and Ms. Mariella continue their attempts to silence the Plaintiffs in the Court of law, even when the litigation does not even pertain to them.

368.    As a direct cause of Defendant Dawn Schneider's comments to third-parties, the Plaintiffs believed they would never be able to expose the truth and that they would not prevail in their pursuit of justice.

369.    Defendant Jacobs published her statements negligently, with knowledge of the falsity of the statements, malice, and/or with reckless disregard of their truth or falsity.

370.    Defendants Ruff, Mariella and Schneider aided Ms. Jacobs and other media outlets in publishing false and defamatory statements by way of neglecting evidence against their own clients to "save face" and prevent the Plaintiffs truth from prevailing.

371.    Each Defendant, (as stated in the complaint), caused the Plaintiffs tremendous distress and hopelessness in their pursuit against two very powerful corporations who have each deterred the Plaintiffs from pursuing legal recourse so that they will not be exposed in their lies to the Court, the public and even to law enforcement.

372.    Defendant also made statements for which they had no factual basis.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

373.     Defendants McCraw and Blaisdell intentionally attempted to persuade the Plaintiffs not to pursue legal recourse against the New York Times Company or Ms. Jacobs.

374.     Each Defendant acted intentionally and/or recklessly whereas each Defendants' conduct was *extreme and outrageous* and was the direct cause of Plaintiffs' severe emotional distress in which Plaintiffs continue to suffer today.

375.     Plaintiffs cannot even provide essential needs to their five month old child without government assistance as a direct cause of each Defendants' misconduct.

376.     As a direct and proximate result of the false and defamatory publication of statements to innumerable third parties by Ms. Jacobs, arrangements of other interviews arranged by Ms. Schneider while she knew the allegations agains the Plaintiffs were false, contacts by Ms. Ruff, Schneider, Jacobs and Mariella to other third parties and the intimidation and threats made by Mr. Blaisdell, paired with the collusion of each Defendant with each other caused Plaintiffs harm and Plaintiffs have been *severely damaged* as a result.

377.    Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of The New York Times and each Defendant and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

**COUNT IV – CIVIL CONSPIRACY**

*Against all Defendants*

378.     Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

379.     Each Defendant conspired between each other, (parties which are consisting of media and attorneys), and colluded to commit an unlawful and unethical act such as defamation and invasion of Plaintiffs' privacy in order to coordinate coverage and mutual influence to cripple Plaintiffs' defense and destroy Plaintiffs' right to due process including but not limited to publishing and disclosing a lawsuit prior to even serving the complaint on Plaintiffs.

380.     Each Defendant, (through the allegations set forth herein), obstructed justice and the Plaintiffs' ability to either properly litigate, defend themselves in the eyes of the public opinion, defend themselves in the eyes of the Court and have impeded on the Plaintiffs' rights to discover pertinent information by withholding information and/or neglecting to use that information to tell the truth.

381.     Defendant Blaisdell specifically and intentionally impeded on Plaintiffs' right to discover imperative information by colluding with his former associates at Boies Schiller & Flexner to prevent Plaintiffs from discovering further proof of collusion and to prevent Plaintiffs from bring forth the claims listed herein against the Defendants in a timely manner.

382.     Defendant Blaisdell intentionally intimidated, harassed and threatened Plaintiffs, who are unrepresented, in an effort to persuade them to cease any and all communications regarding "his client" Julia Jacobs to seek legal recourse against her.

383.    Defendant Blaisdell misled Plaintiffs into believing they had no legal recourse against "his client", Ms. Jacobs or against The New York Times Company.

384.    Ms. Jacobs made an agreement and was paid by Boies Schiller & Flexner, (upon belief), to write and publish the article about the Plaintiffs prior to the complaint being filed and prior to the Plaintiffs being served with the lawsuit.

385.    Ms. Jacobs made an agreement with Ms. Schneider, whose husband is a journalist with the New York Times; to exploit the Plaintiffs and use them to gain notoriety for Ms. Ruff, Mariella and non-party conspirator Sigrid McCawley so they would gain an advantage in litigation and continue to receive fame in the media.

386.    The attorneys, Ms. Ruff and Mariella used their connections through Ms. Schneider to conspire against the Plaintiffs prior to the lawsuit against them being filed to sway the opinion of the public, including any potential juror.

387.    The agreement between the New York Times Company and Boies Schiller & Flexner has existed for years and each Defendant here has relied on that very agreement to conspire against the Plaintiffs here, and to gain an unfair advantage in litigation even after knowing the allegations of the Boies Schiller clients in Nevada were false and fraudulent.

388.    Each Defendant intentionally, knowingly and maliciously conspired and colluded to prevent Plaintiffs from seeking legal recourse until now including but not limited to by publishing a false and defamatory statements prior to serving the complaint on Plaintiffs, as a long string harassment and bullying campaign against Plaintiffs to intentionally sway any potential juror and to gain an unlawful advantage in an action of law.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

389.    Each Defendant, at the time they conspired, possessed information and had access to information that showed the allegations against the Plaintiffs were false but conspired to create and maintain a false narrative against them including by intentionally disregarding evidence which was in the possession of the Boies Schiller & Flexner attorneys, Defendant Schneider, Julia Jacobs and The New York Times in order to specifically and intentionally file a frivolous lawsuit and publish defamatory articles, (including Ms. Jacobs's article), which was not based on any of the evidence in Defendants' possession prior to the article being published or the lawsuit being filed.

390.    Every Defendant conferred with each other to point the Plaintiffs in the wrong direction, delaying this litigation by at least ten months.

391.    Defendants Ruff, Mariella, Schneider, Jacobs, McCraw and Blaisdell and non-party co-conspirator Sigrid McCawley made an express agreement with each other, to commit wrong against the Plaintiffs and commit actions outside of litigation against them to specifically harass, bully, threaten and dismantle Plaintiffs in a joint effort to destroy their business, reputations, careers, ability to work and financial ability to defend the frivolous lawsuit Defendants and her clients brought forth on July 28th, 2021 to intentionally deprive Plaintiffs in an overt act in furtherance causing economic loss and to prevent the Plaintiffs from seeking the justice they deserve by exposing the truth.

392.    Each of the Defendants' actions resulted in "Unfair Competition" by way of coordinating efforts to spread intentionally false information about Plaintiffs, (whose names and likeness were their business), to gain an advantage, by conspiring and

colluding together to destroy Plaintiffs' reputations, careers, business and ability to work and defend themselves against the mass media attack against them and the frivolous litigation itself.

393.    Each Defendants' actions were unlawful against the Plaintiffs.

394.    Each Defendants colluded and either agreed to publish the article prior to a summons even being issued to serve Plaintiffs, and prior to service of the lawsuit on Plaintiffs to intentionally gain an advantage and prevent Plaintiffs from seeking legal recourse against Defendants and their clients, or to cover up the clients' of Ruff and Mariella's fraud and their own fraud once the Plaintiffs began pursuing action against them, constituting a *Civil Conspiracy* to prevent the truth from getting out, which will expose all the Defendants named herein, Ms. McCawley and their clients.

395.    The statute of limitations if any, must be tolled.

396.    Mr. Blaisdell intentionally made false statements to Plaintiffs to lead them to believe they could not seek legal recourse against Ms. Jacobs or The New York Times.

397.    Each Defendants' conduct is of a similar pattern whereas; the *modus operandi* of attorneys from Boies Schiller & Flexner including non-party co-conspirator Sigrid McCawley is to engage in unethical practices of filing lawsuits and disclosing them to the press prior for fame and notoriety; as one recent example, attorneys from Boies Schiller & Flexner engaged in the same misconduct and pattern by representing two Olympians who filed allegations against their coach whereas, representatives of Defendant were asked for a comment but stated:

*"We are aware of the lawsuits that were filed," the statement read. "U.S. Ski & Snowboard has not yet been served with the complaint nor have had an opportunity to fully review it. U.S. Ski & Snowboard is and will remain an organization that prioritizes the safety, health and well-being of its athletes and staff."*

398.    Each Defendants proof of conspiracy lies within their pattern to continue conspiring and unethically colluding with the media to gain an unlawful advantage in the Court rooms and in the media regardless of truth.

399.    Each Defendant is equitably estopped from asserting a statute of limitations as a defense and allowing Defendants to do so would be **unjust**.

400.    As a direct and proximate result of each Defendants' conspiracy including the false and defamatory publication of statements to the mass media and innumerable third parties by Defendants, the deterrence of legal recourse, the suppression of evidence and the intimidation and harassment against the Plaintiffs; Plaintiffs livelihoods were completely destroyed and they have been severely and irreparably damaged.

401.    The Defendants' Ruff and Mariella continue to conspire against the Plaintiffs.

402.    Plaintiffs are entitled to punitive damages because Defendants' defamatory statements and blatant disregard of the truth caused them harm and because each Defendants' conduct individually constitutes intentional acts of conspiracy which were made with actual malice towards Plaintiff and the conduct is part of a pattern of similar conduct directed at the public generally, indicating a reckless disregard for civil obligations, Plaintiffs seek an award for punitive damages.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT V – FRAUD - FRAUDULENT MISREPRESENTATION

### *Against Ms. Mariella and Ms. Ruff*

403.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

404.    Ms. Mariella and Ms. Ruff have committed fraud on the Court in multiple Courts including but not limited to the Nevada District Court, the Southern District Court of California and the Southern District Court of New York.

405.    Ms. Ruff and Ms. Mariella have provided false evidence as stated above including but not limited to stating the Plaintiffs abused Juliet Doherty as a minor knowing she did not even meet the Plaintiffs until she was twenty-one.

406.    Ms. Ruff coerced Plaintiffs to join the Nevada lawsuit.

407.    Ms. Mariella stated to the Massachusetts Appeals Court that Plaintiffs "stole" date from Sage Humphries iPhone after Ms. Humphries admitted they did not, after a full hearing in Massachusetts where the Court ruled, they did not, after they "backtracked" on that statement which resulted in the Plaintiffs being sanctioned in Nevada and after they admitted it was not stolen; they continued to lead the court to believe it was.

408.    Ms. Ruff and Mariella possessed evidence that their client Jane Doe 1 had never met the Plaintiffs but filed a false and frivolous complaint on her behalf anyway.

409.     Ms. Ruff and Mariella possessed evidence prior to the publishing of any article about the Plaintiffs that proved their clients were lying but neglected to use that evidence because it exposed their clients as liars and hid the truth.

410.     Ms. Ruff and Mariella received further evidence in Nevada that their clients perjured themselves but continued to represent those clients and even aided them in their perjury including by stating that "lying to the Court is not fraud on the Court".

411.     Ms. Ruff and Mariella have consistently and continuously obstructed justice and impeded on the Plaintiffs' right to due process by way of manipulating Courts against each other including by using Ms. Humphries' allegations from 2017 in Massachusetts as their grounds for a lawsuit in Nevada but which are now under review after the Plaintiffs filed against Ms. Humphries for fraud on the Court in Massachusetts, ultimately proving the entirety of their grounds for the lawsuit in Nevada is based on fraud as they continuously use that fraud to commit other fraud against the Plaintiffs.

412.     Ms. Ruff and Mariella lied to the Court to lead the court to believe the Plaintiffs were witness tampering only for the Plaintiffs to provide those recorded calls to the Court to prove they were only seeking the truth.

413.     Ms. Ruff and Mariella will say and do anything to prevent the Plaintiffs from exposing their clients, which will in turn, expose them for fraud on the Court.

414.     Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of The New York Times and each Defendant and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

415.    Ms. Ruff and Mariella even have evidence that the abuse prevention order they relied on as grounds to file the complaint against Plaintiffs in Nevada (Defendants there), was not even her handwriting but they continue to aid her in her perjury.

416.    Defendants Mariella and Ruff used a "young dancer" who had no idea she was being used to state that the Plaintiffs had abused her when her testimony states otherwise after they stated they performed, "hundreds of hours of research" which resulted in their lawsuit against the Plaintiffs.

417.    Ms. Ruff and Mariella have received an abundance of evidence against all of their clients in Nevada which prove they are not the victims they claim to be at all but continue to "double down" on their clients in Nevada instead of withdrawing from representation as they should do.

418.    Ms. Ruff and Mariella have continuously used their law degrees to manipulate the law and use it with bad intentions, not to protect their clients but to "win" against the Plaintiffs, while losing sight of the truth and their representation of these clients in Nevada.

419.    Ms. Ruff and Mariella have abused their position of power against pro se (Defendants in Nevada), and their connections with powerful media outlets to totally destroy the Plaintiffs, who have proven their clients are frauds but they continue to commit fraud for them to ensure the truth is never exposed.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendants, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial, including but not limited to:

A.  Entering judgment against the Defendant on all claims made against her in this Complaint;

B.  Entering an Order directing that Defendant pay Plaintiffs reasonable fees and costs pursuant to any applicable law;

C.  For actual damages in an amount to be proven at trial;

D.  For punitive damages in an amount to be proven at trial;

E.  For costs of suit;

F.  For pre-judgment and post-judgment interest on the foregoing sums;

G.  For such other and further relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby request a trial by jury on all causes of action asserted within this pleading.

Respectfully dated this 24th day of January, 2025,

_____.

Dusty Button and Mitchell Taylor Button (*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
Email: prosecanyousee@mailfence.com
Phone: 310-499-8930
Phone: 310-499-8702

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was mailed as directed to pro_se_filing@nysd.uscourts.gov on January 24th, 2025.

Dated this 24th day of January, 2025,

/s/_____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/_____

Signature of Plaintiff Mitchell Taylor Button (*Pro se*)

.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL