UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DUSTY BUTTON and MITCHELL TAYLOR
BUTTON,

                            Plaintiffs,

            v.

THE NEW YORK TIMES COMPANY, JULIA
JACOBS, LINDSEY RUFF, SABINA MARIELLA,
DAWN SCHNEIDER, DEMETRI BLAISDELL and
DAVID MCCRAW,

                            Defendants.

No. 1:24-cv-05888-MKV

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS THE NEW YORK TIMES COMPANY, JULIA JACOBS,
<u>DEMETRI BLAISDELL, AND DAVID MCCRAW</u>**

Al-Amyn Sumar
Timothy Tai
The New York Times Company
Legal Department
620 8th Avenue
New York, NY 10018
Telephone: (202) 862-0775
al-amyn.sumar@nytimes.com
timothy.tai@nytimes.com

*Attorneys for Defendants The New York
Times Company, Julia Jacobs, Demetri
Blaisdell, and David McCraw*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 2

A.      The Article ............................................................................................................. 2

B.      The Buttons' Subpoena to The Times ................................................................... 4

C.      The Buttons' Pattern of Frivolous Litigation ....................................................... 5

D.      This Action ............................................................................................................ 5

LEGAL STANDARD ........................................................................................................ 6

A.      The Rule 12(b)(6) Standard .................................................................................. 6

B.      The New York Anti-SLAPP Statute Applies to This Case .................................... 7

ARGUMENT ..................................................................................................................... 8

I.      THE CLAIMS AGAINST THE TIMES AND MS. JACOBS SHOULD BE
        DISMISSED ........................................................................................................... 8

        A.      All the claims against The Times and Ms. Jacobs must be treated as
                defamation claims because they are based on alleged reputational
                harm ........................................................................................................... 9

        B.      The claims against The Times and Ms. Jacobs are time barred ............................ 10

        C.      The claims are additionally barred by the fair report privilege ............................. 12

        D.      Plaintiffs fail to allege essential elements of a defamation claim .......................... 14

                1.      The statement that the Buttons "denied the charges" in the
                        Nevada complaint is not defamatory or false ............................... 14

                2.      References to Mr. Button as a former dance teacher are neither
                        defamatory nor false ..................................................................... 15

                3.      Plaintiffs do not plausibly plead actual malice ............................ 16

        E.      Plaintiffs also fail to plead necessary elements of the causes action
                they purport to assert ................................................................................. 17

II.    THE CLAIMS AGAINST MR. BLAISDELL AND MR. MCCRAW
       SHOULD BE DISMISSED .................................................................................19

III.   THE TIMES DEFENDANTS SHOULD BE AWARDED THEIR COSTS
       AND FEES UNDER THE NEW YORK ANTI-SLAPP LAW.........................................21

CONCLUSION.................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................2, 6, 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)......................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................6, 7

*Biro v. Condé Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)....................................................................................13

*Biro v. Condé Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)......................................................................................7

*Biro v. Condé Nast*,
    807 F.3d 541 (2d Cir. 2015) ...............................................................................................7, 16

*Biro v. Condé Nast*,
    No. 11-cv-4442, 2014 U.S. Dist. LEXIS 139065 (S.D.N.Y. Sept. 29, 2014) ..........................2

*Bobulinski v. Tarlov*,
    No. 24-cv-2349, 2024 U.S. Dist. LEXIS 214981 (S.D.N.Y. Nov. 26, 2024)............7, 8, 21, 22

*Button v. Roe*,
    No. 24-cv-220, 2024 U.S. Dist. LEXIS 227468 (D.N.H. Dec. 17, 2024) ..........................5, 20

*Calcano v. Swarovski N. Am. Ltd.*,
    36 F.4th 68 (2d Cir. 2022) ...................................................................................................17

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014)..................................................................................................14

*Church of Scientology Int'l v. Behar*,
    238 F.3d 168 (2d Cir. 2001)..................................................................................................16

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018)..................................................................................................17

*Cortes v. Twenty-First Century Fox Am., Inc.*,
    285 F. Supp. 3d 629 (S.D.N.Y. 2018)...............................................................................14, 15

*Crews v. Cnty. of Nassau*,
    612 F. Supp. 2d 199 (E.D.N.Y. 2009) ..................................................................................20

*Ctr. for Med. Progress v. Planned Parenthood Fed'n*,
   551 F. Supp. 3d 320 (S.D.N.Y. 2021)...........................................................................12, 13

*Diaz v. NBC Universal, Inc.*,
   536 F. Supp. 2d 337 (S.D.N.Y. 2008)...................................................................................18

*Dongguk Univ. v. Yale Univ.*,
   734 F.3d 113 (2d Cir. 2013).............................................................................................16, 17

*Dowdy v. N.Y.C. Dep't of Sanitation*,
   No. 22-cv-6284, 2023 U.S. Dist. LEXIS 171625 (S.D.N.Y. Sept. 26, 2023) ...........................6

*Francis v. Kings Park Manor, Inc.*,
   992 F.3d 67 (2d Cir. 2021)..............................................................................................18, 20

*Gorokhovsky v. Stefantsova*,
   No. 19-cv-8101, 2022 U.S. Dist. LEXIS 220908 (S.D.N.Y. Dec. 7, 2022) .................9, 10, 11

*Grayson v. Ressler & Ressler*,
   271 F. Supp. 3d 501 (S.D.N.Y. 2017)...................................................................................17

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
   331 F. Supp. 3d 221 (S.D.N.Y. 2018).............................................................................18, 21

*Henry v. Fox News Network LLC*,
   629 F. Supp. 3d 136 (S.D.N.Y. 2022)...................................................................................18

*Herbert v. Lando*,
   781 F.2d 298 (2d Cir. 1986)..................................................................................................16

*Jones v. Volunteers of Am. Greater N.Y.*,
   No. 20-cv-5581, 2022 U.S. Dist. LEXIS 45103 (S.D.N.Y. Mar. 14, 2022)...........................15

*Kesner v. Dow Jones & Co.*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021)...................................................................................13

*King v. Chmielewski*,
   76 N.Y.2d 182 (1990) ...........................................................................................................11

*Kinsey v. N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021)..................................................................................................12

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)............................................................................................10, 16

*Koral v. Saunders*,
   36 F.4th 400 (2d Cir. 2022) ..................................................................................................11

*Leidig v. Buzzfeed, Inc.*,
   371 F. Supp. 3d 134 (S.D.N.Y. 2019) ................................................................14

*Lesesne v. Brimecome*,
   918 F. Supp. 2d 221 (S.D.N.Y. 2013) ..................................................................9

*Lines v. Cablevision Sys. Corp.*,
   No. 04-cv-2517, 2005 U.S. Dist. LEXIS 42540 (E.D.N.Y. Sept. 21, 2005) ...........9

*McGinniss v. Emp.'s. Reinsurance Corp.*,
   648 F. Supp. 1263 (S.D.N.Y. 1986) ......................................................................9

*Misek-Falkoff v. Am. Law. Media, Inc.*,
   300 A.D.2d 215 (1st Dep't 2002) ........................................................................12

*Prince v. Intercept*,
   634 F. Supp. 3d 114 (S.D.N.Y. 2022) ..............................................................8, 17

*Qadar v. Mayorkas*,
   No. 18-cv-6817, 2021 U.S. Dist. LEXIS 55754 (S.D.N.Y. Mar. 24, 2021) .............6

*Reeves v. Associated Newspapers, Ltd.*,
   232 A.D.3d 10 (1st Dep't 2024) ............................................................................7

*Riddell Sports v. Brooks*,
   872 F. Supp. 73 (S.D.N.Y. 1995) ........................................................................11

*Rolon v. Hennenman*,
   517 F.3d 140 (2d Cir. 2008) ..................................................................................6

*Sejin Precision Indus. Co. v. Citibank, N.A.*,
   235 F. Supp. 3d 542 (S.D.N.Y. 2017) .............................................................11, 12

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ............................................................................................22

*Shapiro v. Jacobson*,
   No. 23-cv-3964, 2024 U.S. Dist. LEXIS 138805 (S.D.N.Y. Aug. 5, 2024) ......18, 21

*Sweigert v. Goodman*,
   No. 18-cv-8653, 2021 U.S. Dist. LEXIS 77704 (S.D.N.Y. Apr. 22, 2021) .............7

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
   864 F.3d 236 (2d Cir. 2017) ................................................................................14

*Trump v. Trump*,
   79 Misc. 3d 866 (Sup. Ct. N.Y. Cnty. 2023) .......................................................18

*Twersky v. Yeshiva Univ.*,
    579 F. App'x 7 (2d Cir. 2014) ...............................................................................11

*Ventilla v. Pac. Indem. Co.*,
    No. 20-cv-8462, 2021 U.S. Dist. LEXIS 218575 (S.D.N.Y. Nov. 10, 2021).........................11

*Wenz v. Becker*,
    948 F. Supp. 319 (S.D.N.Y. 1996) ..............................................................12, 13

*Yamashita v. Scholastic Inc.*,
    936 F.3d 98 (2d Cir. 2019).........................................................................21

**Statutes**

N.Y. Civ. Rights Law § 70-a ...................................................................1, 8, 21, 22

N.Y. Civ. Rights Law § 74 .......................................................................12

N.Y. Civ. Rights Law § 76-a ..............................................................7, 8, 14, 16

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................*passim*

Local R. 7.2 .........................................................................................2

Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-
    SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573 (2023) .........................22

N.Y. C.P.L.R. 201 ...............................................................................11

N.Y. C.P.L.R. 215...........................................................................10, 11

U.S. Const. amend I .....................................................................7, 18, 22

Defendants The New York Times Company ("The Times"), publisher of *The New York Times*; Julia Jacobs; Demetri Blaisdell; and David McCraw (collectively, "The Times Defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(6) and New York Civil Rights Law § 70-a (a provision of the New York anti-SLAPP law) for an order dismissing the Amended Complaint's claims against them and awarding them attorneys' fees and costs.

## PRELIMINARY STATEMENT

As it concerns The Times Defendants, this lawsuit is a frivolous and mendacious attack against a news organization and its employees for nothing more than accurately reporting on a judicial proceeding and responding in the ordinary course to a non-party subpoena. The news story at issue, published three years before this suit was filed, concerns a lawsuit filed by two dancers in Nevada federal court against Plaintiff Mitchell Taylor Button, a former dance teacher, alleging that Mr. Button sexually abused them. Mr. Button's wife, Plaintiff Dusty Button, was not initially named as a defendant but allegedly participated in the abuse. The Times's story accurately recounted the dancers' claims and included a statement from the Buttons' lawyer denying the allegations. Then, in the fall of 2023 — more than two years after the story ran, and after discovery had closed in the Nevada litigation — the Buttons sought to serve a subpoena on Ms. Jacobs, the journalist at The Times who wrote the story. The Buttons mainly interacted with one of The Times's in-house attorneys, Mr. Blaisdell. He declined to waive or accept service of the subpoena and directed them to serve it on his colleague Mr. McCraw. On the basis of this routine conduct, the Buttons assert a host of claims against The Times Defendants — injurious falsehood, tortious interference, negligent infliction of emotional distress, and civil conspiracy — and seek an untold amount in actual and punitive damages.

Even if the Court credits all of these facts, the Buttons do not have any viable cause of action. Their claims against Ms. Jacobs and The Times sound in defamation and, as a result, are

1

time-barred. Even if that were not so, the claims fail on the merits: The Times's report was a fair and accurate report of a judicial proceeding and therefore privileged, the Buttons have failed to identify any statement that was defamatory even if false, and they have not adequately pleaded actual malice. And their causes of action would fail even if not treated as defamation claims. Similarly, the Amended Complaint alleges a fanciful conspiracy involving Mr. McCraw and Mr. Blaisdell, who in fact did nothing more than respond, as any lawyers would, to a discovery demand on behalf of a client. All the claims should be dismissed with prejudice, and The Times Defendants should be awarded their attorneys' fees and costs, as mandated by the New York anti-SLAPP law.

## BACKGROUND[1]

### A. The Article

The Times published the article at issue here, titled "Former Dance Instructor Accused of Sexual Assault in Lawsuit" and authored by Ms. Jacobs, on July 29, 2021 (the "Article").[2, 3] Julia Jacobs, *Former Dance Instructor Accused of Sexual Assault in Lawsuit*, N.Y. Times (July 29, 2021), https://www.nytimes.com/2021/07/29/arts/dance/mitchell-button-dusty-button-abuse.html (attached as Exhibit 1 to the accompanying Decl. of Al-Amyn Sumar). The Article reported on a federal lawsuit filed in Nevada by two professional dancers, Sage Humphries and Gina

---

[1] For purposes of this motion, The Times Defendants accept as true the well-pleaded allegations in the Amended Complaint. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As noted below, many of the Amended Complaint's allegations are not well pleaded.

[2] For avoidance of doubt, the Article is properly considered on this motion as it is both incorporated by reference in and integral to the Amended Complaint. *See, e.g.*, *Biro v. Condé Nast*, No. 11-cv-4442, 2014 U.S. Dist. LEXIS 139065, at *10 (S.D.N.Y. Sept. 29, 2014) ("On a Rule 12(b)(6) or Rule 12(c) motion, the court may consider documents that are incorporated by reference in or are integral to the complaint. In a defamation case, this may include the entirety of a challenged publication that is excerpted in the complaint.").

[3] As required by Local Rule 7.2, The Times Defendants will provide Plaintiffs with copies of the unpublished authorities cited in this memorandum.

Menichino, against Mr. Button; his wife was named as a "non-party co-conspirator." *Id.*[4] In the suit the dancers allege separate incidences of sexual abuse by the Buttons, who are identified in the story as a ballerina who danced with the Boston Ballet and a "former dance teacher." *Id.* Ms. Humphries, a former apprentice at the Boston Ballet, said the Buttons "sexually and verbally abused her, forced her to live with them and isolated her from her family." *Id.* In the Nevada complaint, as the Article reported, Ms. Humphries said that "on several occasions Ms. Button held her down to immobilize her while Mr. Button had sex with her." *Id.* For her part, Ms. Menichino claimed Mr. Button sexually assaulted her years earlier, when she was 13 and he was her 25-year-old ballet teacher. *Id.* In two incidents in 2010, Ms. Menichino alleged in the complaint, she and Mr. Button "were sharing a blanket while watching a movie with other dancers from the studio when Mr. Button sexually assaulted her." *Id.* She also alleged that Mr. Button "regularly sent [her] sexually explicit text messages, photos and videos." *Id.*

The Times published the Article the day after Ms. Humphries and Ms. Menichino filed their suit. *Id*. The Article quoted a statement from the Buttons' lawyer denying the allegations,[5] and it noted in a separate passage that "[a] lawyer for the couple said that they denied the charges." *Id.* The Buttons claim this single reference to "charges" is defamatory because it implies the existence of a criminal proceeding against them. *See, e.g.*, Am. Compl. ¶ 86. They fail to explain how their interpretation of that word can be squared with the rest of the Article, which makes it abundantly clear that the allegations were made in a civil suit. The Amended

---

[4] The number of plaintiffs has since grown to six, and Mrs. Button was added as a defendant. *See* Dkt. 25 at 1; *Humphries v. Button*, No. 2:21-cv-1412 (D. Nev.), ECF No. 18 (Sumar Decl. Ex. 4).

[5] The Article states: "A statement sent through a lawyer who is speaking for the couple, Ken Swartz, said, 'Taylor and Dusty Button categorically deny these baseless claims and they look forward to the opportunity through court proceedings to disprove all of the plaintiffs' false and fraudulent allegations.'"

Complaint also alleges that The Times published the Article before the Buttons "ha[d] *any knowledge* of the lawsuit," Am. Compl. ¶ 63,[6] which is contradicted by the fact that the Article includes a statement from a lawyer who was "speaking for the couple."

**B.  The Buttons' Subpoena to The Times**

The Amended Complaint's claims against Mr. Blaisdell and Mr. McCraw, in-house lawyers for The Times, are based on the Buttons' threats to serve The Times with a subpoena in the Nevada litigation. Specifically, the Amended Complaint alleges that in fall 2023, the Buttons contacted Ms. Jacobs, who directed them to Mr. McCraw, to seek waiver of service for a subpoena to Ms. Jacobs. Am. Compl. ¶¶ 113-20. Mr. McCraw forwarded the email to Mr. Blaisdell, who in turn responded to the Buttons on Ms. Jacobs' behalf. *Id.* ¶ 121. The Buttons recount several conversations with Mr. Blaisdell, during which he firmly but politely declined to accept service by email and described in general terms some of the legal obstacles to serving a subpoena. *Id.* ¶¶ 121-29. Still, the Buttons allege that in these interactions Mr. Blaisdell "made intentionally intimidating legal threats against [them] . . . and unethically provided [them] with unsolicited legal advice regarding [their] litigation," *id.* ¶ 127, even though those characterizations are not borne out in the statements cited in the Amended Complaint. The pleading also alleges, without any factual basis, that Mr. Blaisdell, a former attorney at Boies Schiller (the firm representing the Nevada plaintiffs, whose lawyers and former communications director are co-defendants here), was involved in a vast conspiracy with the firm's other

---

[6] The Amended Complaint also alleges (¶ 66) that Ms. Jacobs was in touch with the lawyers for the Nevada plaintiffs before the Article was published. To be clear, there is nothing remarkable or nefarious about a plaintiff's lawyer communicating with a journalist in advance of filing a lawsuit.

attorneys, and that Mr. McCraw knew this when he turned the matter over to Mr. Blaisdell. Am. Compl. ¶ 123.

### C.  The Buttons' Pattern of Frivolous Litigation

This case fits within the Buttons' apparent strategy of using meritless litigation to retaliate against their perceived critics and opponents. Indeed, this lawsuit is one of six the Buttons filed in 2024 against individuals connected to the Nevada plaintiffs, including the women's "family, friends, therapists, [and] *pro bono* counsel." Pls.' Mot. for Summary J. at 4, *Humphries v. Button*, No. 2:21-cv-1412 (D. Nev. Jan. 6, 2025), ECF No. 437 (Sumar Decl. Ex. 5). As the other defendants in this case have highlighted, one such suit — brought against relatives of the Nevada plaintiffs and others — was recently dismissed at the pleading stage by a New Hampshire federal court. *See Button v. Roe*, No. 24-cv-220, 2024 U.S. Dist. LEXIS 227468 (D.N.H. Dec. 17, 2024), *appeal docketed*, No. 25-1012 (1st Cir. Jan. 3, 2025). The court dismissed the case because "the Buttons' claims lack any legal merit." *Id.* at *19. Notably, the court also found that the Buttons violated orders of the Nevada court by filing pleadings with "sealed, highly confidential materials" from that case. *Id.* And it acknowledged that one of the plaintiffs in the Nevada case withdrew from the suit after experiencing "severe online harassment from the Buttons in retaliation for her claims." *Id.* at *8 (cleaned up).

### D.  This Action

The Buttons filed their initial Complaint on July 29, 2024. Dkt. No. 1. That pleading asserted claims against The Times Defendants for defamation, injurious falsehood, tortious interference, intentional infliction of emotional distress (IIED), and civil conspiracy. *Id.* Consistent with the Court's Individual Rules, The Times Defendants filed a pre-motion letter on December 5, 2024, requesting a conference regarding their anticipated motion to dismiss. Dkt. No. 24. The Court responded by granting the Buttons leave to file an amended complaint by

January 24, 2025, with responses due within 14 days. Dkt. No. 32. The Buttons filed their

Amended Complaint on that date. Dkt. No. 34.[7] As to The Times Defendants, the pleading

asserts claims of injurious falsehood and tortious interference against The Times and Ms. Jacobs,

and claims for negligent infliction of emotional distress (NIED) and civil conspiracy against all

of The Times Defendants. *Id.*[8]

## **LEGAL STANDARD**

### A. **The Rule 12(b)(6) Standard**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief

that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). While a court must generally accept a complaint's factual allegations as

true and draw reasonable inferences in Plaintiff's favor, *ATSI Commc'ns, Inc. v. Shaar Fund,*

*Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), it need not accept legal conclusions couched as factual

allegations, *Rolon v. Hennenman*, 517 F.3d 140, 148-49 (2d Cir. 2008); *see also Iqbal*, 556 U.S.

at 678. Nor should a court accord the presumption of truth to "naked assertions devoid of further

factual enhancement," *Dowdy v. N.Y.C. Dep't of Sanitation*, No. 22-cv-6284, 2023 U.S. Dist.

LEXIS 171625, at \*10 (S.D.N.Y. Sept. 26, 2023) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678-

79), or allegations "contradicted by either more specific allegations or documentary evidence,"

*Qadar v. Mayorkas*, No. 18-cv-6817, 2021 U.S. Dist. LEXIS 55754, at \*12-13 (S.D.N.Y. Mar.

24, 2021).

---

[7] The Amended Complaint was not entered on the docket until January 27, 2025.

[8] The Amended Complaint asserts these four claims against the co-defendants — two
lawyers at the Boies Schiller firm, and the firm's communications director — and adds a claim
against of fraudulent representation against those attorneys. *See* Am. Compl. ¶¶ 281-419.

Robust application of the *Iqbal/Twombly* standard "has a 'particular value' in the defamation context" because "forcing defamation defendants to incur unnecessary costs can chill the exercise of constitutionally protected freedoms." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) (cleaned up), *aff'd*, 807 F.3d 541 (2d Cir. 2015). "In other words, in defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Id.*

**B.  The New York Anti-SLAPP Statute Applies to This Case.**

The Buttons claims against The Times Defendants are subject to requirements imposed by New York's anti-SLAPP law — a set of statutory provisions designed to deter "strategic lawsuits against public participation," or SLAPPs. *Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 12 (1st Dep't 2024). The protections of the law apply to any "action involving public petition and participation," which is defined to include a claim based on "any communication in a place open to the public or a public forum in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a)(1); *see, e.g., Bobulinski v. Tarlov*, No. 24-cv-2349, 2024 U.S. Dist. LEXIS 214981, at *18 (S.D.N.Y. Nov. 26, 2024); *Sweigert v. Goodman*, No. 18-cv-8653, 2021 U.S. Dist. LEXIS 77704, at *1-4 (S.D.N.Y. Apr. 22, 2021). The term "public interest" is defined as "any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d). The Buttons' claims here are premised on statements in a news article in *The New York Times* reporting on a civil lawsuit claiming serious sexual abuse, which easily qualifies as such a communication. *See, e.g.*, *Reeves*, 232 A.D.3d at 19 ("Matters of public interest . . . include judicial proceedings."). While the Buttons' claims against Mr. Blaisdell and Mr. McCraw are based on other alleged conduct, too, the Amended Complaint claims they colluded with Ms.

Jacobs and others to harm the Buttons in a broad conspiracy, of which the Article is a central part. *See, e.g.*, Am. Compl. ¶ 384-85, 391.

The two components of the anti-SLAPP law that apply here, which are both substantive, are the actual malice requirement and the fees provision.[9] Under the anti-SLAPP law, a plaintiff must establish actual malice — *i.e.*, that the defendant made the communication with knowledge it was false or in reckless disregard of its truth — for any claim where "the truth or falsity of such communication is material." N.Y. Civ. Rights Law § 76-a(2). This requirement applies to the claims against Ms. Jacobs and The Times, which are based on allegedly defamatory statements in the Article. *See infra* at 9-10. As for the statute's fees provision, it requires a court to award attorneys' fees and costs "upon a demonstration . . . that the [suit] was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civ. Rights Law § 70-a(1)(a). This is just such a case, as explained below.

## ARGUMENT

## I.    THE CLAIMS AGAINST THE TIMES AND MS. JACOBS SHOULD BE DISMISSED.

Unsurprisingly, the Buttons have dropped the defamation claim pleaded in their original Complaint, which was clearly time barred and otherwise meritless. *See* Dkt. No. 24. But the Buttons cannot evade the statute of limitations and substantive requirements of defamation simply by labeling it as another tort. What matters is whether a claim seeks redress for reputational harm, and all four causes of action against The Times and Ms. Jacobs do so.

---

[9] The Times does not invoke here the anti-SLAPP law's procedural protections. The actual malice requirement is clearly substantive, *see, e.g.*, *Prince v. Intercept*, 634 F. Supp. 3d 114, 138 n.26 (S.D.N.Y. 2022), as is the fees provision, *see Bobulinski*, 2024 U.S. Dist. LEXIS 214981, at *28-43. The applicability of the fees provision is addressed in greater depth below.

Properly viewed as defamation claims, then, these causes of action must be dismissed with prejudice on multiple, independent grounds. And even if the Court analyzed the claims on their own terms — as non-defamation claims — they would still be inadequately pleaded and fail.

### A. All the claims against The Times and Ms. Jacobs must be treated as defamation claims because they are based on alleged reputational harm.

New York courts have consistently guarded against attempts to plead around the statute of limitations for, and substantive confines of, defamation claims. Courts applying New York law "treat harm stemming from injury to reputation as sounding in defamation, and do not recognize separate torts as additional causes of action." *Gorokhovsky v. Stefantsova*, No. 19-cv-8101, 2022 U.S. Dist. LEXIS 220908, at *11 (S.D.N.Y. Dec. 7, 2022) (Vyskocil, J.). Thus, "[i]f the facts alleged in the complaint are found to be based on libel, the plaintiff's claim will proceed as a libel claim accompanied by all of the limitations imposed on that tort." *McGinniss v. Emp.'s. Reinsurance Corp.*, 648 F. Supp. 1263, 1268 (S.D.N.Y. 1986); *see, e.g.*, *Lines v. Cablevision Sys. Corp.*, No. 04-cv-2517, 2005 U.S. Dist. LEXIS 42540, at *12-14 (E.D.N.Y. Sept. 21, 2005). That is because "a contrary result might very well enable plaintiffs in libel and slander cases to circumvent the otherwise short limitations period" for such claims. *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013) (cleaned up).

All the Buttons' claims against The Times and Ms. Jacobs are transparently premised on reputational harm, so they must be treated as defamation claims:

*Injurious falsehood:* The Amended Complaint alleges that the challenged statements constitute injurious falsehood because they "tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community." Am. Compl. ¶ 307. Indeed, the Buttons freely admit that this claim rests solely on the Article's purportedly "defamatory" reporting, *e.g.*,

*id.* ¶¶ 284-85, 294-301, and that their alleged damages are "a direct and proximate result of the false and defamatory statements," *id.* ¶ 310.

*Tortious interference:* The tortious interference claim rests entirely on statements that allegedly "harm the reputation of Plaintiffs as to lower their professional reputation in the community." *Id.* ¶ 345; *see also, e.g.*, *id.* ¶¶ 326-27 (referring to "defamatory" statements), 337 (alleging that defendants "expos[ed] Plaintiffs to ridicule in [*sic*] which reflected negatively on Plaintiffs' characters, morality and integrity"). The Buttons also concede that their alleged damages were caused "as a direct result of these . . . defamatory statements." *Id.* ¶ 335; *see also id.* ¶ 320.

*NIED:* The Buttons' NIED claim is likewise based on publication of "defamatory" statements, *id.* ¶ 360, and they allege their injuries were "a direct and proximate result of" those statements, *id.* ¶ 376.

*Civil conspiracy:* "New York does not recognize an independent tort of conspiracy," *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006), but at any rate, the Buttons' allegations make clear that this claim, too, sounds in defamation, *e.g.,* Am. Compl. ¶ 388 (alleging conspiracy to "publish[] a false and defamatory statements [*sic*]"); *see also* ¶¶ 389, 391-92, 400.

**B.  The claims against The Times and Ms. Jacobs are time barred.**

Properly viewed as defamation claims, the Buttons' claims are plainly time barred under New York's one-year statute of limitations. N.Y. C.P.L.R. 215(3) (applying to "libel, slander, false words causing special damages"); *see, e.g.*, *Gorokhovsky*, 2022 U.S. Dist. LEXIS 220908,

at *11.[10] The only allegedly defamatory statements the Amended Complaint identifies as having been made by The Times and Ms. Jacobs are contained in the Article. The Buttons concede that the Article was published on July 29, 2021. Am. Compl. ¶ 62. Yet they did not file suit until July 29, 2024 — a full three years later. Compl., Dkt. No. 1. That was two years too late.

The Buttons' attempts to invoke the doctrines of equitable tolling and equitable estoppel, *e.g.*, Am. Compl. ¶¶ 271-76, are unavailing. A federal court evaluating the timeliness of state-law claims must apply the state's tolling rules. *See Koral v. Saunders*, 36 F.4th 400, 409-10 (2d Cir. 2022). And under New York law, "time limitations created by statute are not tolled in the absence of statutory authority." *King v. Chmielewski*, 76 N.Y.2d 182, 187 (1990); *see* N.Y. C.P.L.R. 201 ("No court shall extend the time limited by law for the commencement of an action."). Thus, New York courts have held that "the doctrine of equitable tolling is not available in state causes of action." *Sejin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 553 (S.D.N.Y. 2017), *aff'd*, 762 F. App'x 27 (2d Cir. 2018); *see also Ventilla v. Pac. Indem. Co.*, No. 20-cv-8462, 2021 U.S. Dist. LEXIS 218575, at *7 n.3 (S.D.N.Y. Nov. 10, 2021) (Vyskocil, J.) (explaining that "equitable tolling does not apply to state law claims, as the doctrine only tolls the statute of limitations with regard to federally created causes of action" (cleaned up)).

Nor will New York courts apply the "extraordinary remedy" of equitable estoppel but in "exceptional circumstances." *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 10 (2d Cir. 2014). To establish equitable estoppel, a plaintiff "must make sufficient factual allegations" that she was "prevented from filing an action within the applicable statute of limitations due to his or her

---

[10] The injurious falsehood claim would be subject to the one-year limitations period even if did not sound in defamation because it is "an action to recover damages for . . . false words causing special damages"). N.Y. C.P.L.R. 215(3); *see, e.g.*, *Riddell Sports v. Brooks*, 872 F. Supp. 73, 80 (S.D.N.Y. 1995).

reasonable reliance on deception, fraud or misrepresentations by the defendant." *Sejin*, 235 F.

Supp. 3d at 553. The Buttons' bare claim that applying the statute of limitations would be

"**unjust**," Am. Compl. ¶ 275, falls far short. The Amended Complaint pleads no facts suggesting

that "subsequent and specific actions by [Ms. Jacobs or The Times] somehow kept them from

timely bringing suit." *Sejin*, 235 F. Supp. 3d at 553. To the contrary, the Buttons do not allege

having *any* contacts with Ms. Jacobs or The Times after the Article was published until October

1, 2023 — well after the limitations period had run. *See* Am. Compl.  ¶ 113.

### C.  The claims are additionally barred by the fair report privilege.

All the claims are further barred because they arise from a fair and accurate report of the

complaint in the Nevada litigation. Under New York's fair report privilege, a plaintiff may not

bring any "civil action" arising from "the publication of a fair and true report of any judicial

proceeding" or from "any heading of the report which is a fair and true headnote of the statement

published." N.Y. Civ. Rights Law § 74.[11] The privilege applies where the challenged publication

(1) "is connected to a judicial proceeding" and (2) "fairly and accurately reports the judicial

proceeding." *Wenz v. Becker*, 948 F. Supp. 319, 322 (S.D.N.Y. 1996). It is an "absolute

privilege" that is "not defeated by the presence of malice or bad faith." *Ctr. for Med. Progress v.

Planned Parenthood Fed'n*, 551 F. Supp. 3d 320, 328 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden

v. Planned Parenthood Fed'n*, No. 21-2068-cv, 2022 U.S. App. LEXIS 9086 (2d Cir. Apr. 5,

2022). "New York courts adopt a liberal interpretation of the fair and true report standard of

Section 74 so as to provide broad protection to news accounts of judicial proceedings." *Kinsey v.

N.Y. Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021) (cleaned up).

---

[11] The privilege is not limited to defamation claims but precludes any "civil action." *See, e.g.*, *Misek-Falkoff v. Am. Law. Media, Inc.*, 300 A.D.2d 215, 216 (1st Dep't 2002) (holding that fair report privilege barred tortious interference and NIED claims in addition to defamation claims).

Reports of allegations in civil lawsuits easily fall within the privilege, and the Article is no exception. *See, e.g.*, *Wenz*, 948 F. Supp. at 323. In recounting that the Nevada plaintiffs accused Mr. Button "of sexually assaulting and abusing them" and Ms. Button "of participating in some of that abuse," the Article describes, directly quotes, and repeatedly attributes to the complaint the primary allegations therein. *See* Sumar Decl. Ex 1; Compl., *Humphries v. Button*, No. 2:21-cv-1412 (D. Nev.), ECF No. 1 (Sumar Decl. Ex. 2). As already explained, the Article makes clear that the Buttons were not criminally charged but rather sued civilly. *See, e.g.*, *Ctr. for Med. Progress*, 551 F. Supp. 3d at 331 (plaintiffs "cannot cherry-pick one of several definitions of a word, take the word entirely out of context, and claim that such definition precludes a finding that the Challenged Statements were substantially accurate"). It also accurately reports the Nevada complaint's assertions that Mr. Button was once a "dance instructor" and a "dance teacher." Sumar Decl. Ex. 1; *id.* Ex. 2 ¶¶ 5, 16. And the headline, "Former Dance Instructor Accused of Sexual Assault in Lawsuit," makes clear that the Article is reporting on a judicial proceeding, and it accurately summarizes the Article's contents. *See, e.g.*, *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 177 (S.D.N.Y. 2021), *aff'd*, No. 22-875, 2023 U.S. App. LEXIS 15255 (2d Cir. June 20, 2023).

The Buttons devote much of their Amended Complaint to contesting the underlying allegations in the Nevada lawsuit, but the fair report privilege does not consider whether those allegations are true — only whether the Article accurately recounts them. *See, e.g.*, *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 479 (S.D.N.Y. 2012) (argument "that the plaintiffs in the original suits were incorrect in their allegations . . . is not sufficient to defeat the fair and true report privilege"). Even the Buttons concede that it does. *E.g.*, Am. Compl. ¶¶ 98 (asserting the

Article "contained" the allegations in the Nevada complaint), 189 (agreeing that "the Complaint in Nevada is privileged"); *see also id.* ¶¶ 100, 160.

**D. Plaintiffs fail to allege essential elements of a defamation claim.**

The claims also must be dismissed because the Amended Complaint fails to state a defamation claim. Although the Buttons repeatedly complain about the Article as a whole, purportedly defamatory statements "must be specifically identified by the plaintiff." *Leidig v. Buzzfeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019) (citing *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017)), *aff'd*, No. 19-851 (2d Cir. 2019). The Amended Complaint singles out three statements in the Article: (1) "A lawyer for the couple said that they denied the charges," Am. Compl. ¶¶ 107, 285 (emphasis omitted); (2) references to Mr. Button as a "former dance teacher" and "former dance instructor," *id.* ¶¶ 90, 94, 97; and (3) the headline, "Former Dance Instructor Accused of Sexual Assault in Lawsuit," *id.* ¶ 289.[12] None is actionable, as the Amended Complaint fails to plausibly plead the necessary elements of defamatory meaning, falsity, and actual malice. *See Chau v. Lewis*, 771 F.3d 118, 126-27 (2d Cir. 2014); N.Y. Civ. Rights Law § 76-a.

*1. The statement that the Buttons "denied the charges" in the Nevada complaint is not defamatory or false.*

The Buttons contend (*e.g.*, Am. Compl. ¶¶ 86, 107) that the first statement — "[a] lawyer for the couple said that they denied the charges" — implies they were criminally charged, but this reading is plainly unreasonable. "Defamatory statements should be construed as they would be commonly understood in the context of their publication and a court should not render

---

[12] The Amended Complaint also refers to an alleged statement in the Article that "'two dance teachers abused their students,'" Am. Compl. ¶ 90, but this line never appears in the Article, Sumar Decl. Ex.1.

statements actionable by giving them a strained or artificial construction." *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (cleaned up), *aff'd*, 751 F. App'x 69 (2d Cir. 2018). Here, the Article is clear that the Buttons were the subject of a civil lawsuit accusing them of sexual assault and abuse. *See* Sumar Decl. Ex. 1. It even notes that police did not pursue criminal charges against Mr. Button, and it further quotes the couple's lawyer as stating that the Buttons "look forward to the opportunity through court proceedings to disprove all of the plaintiffs' false and fraudulent allegations." *Id.* In context, then, no reasonable reader would have understood the statement to assert that the couple had been charged with a crime. It is not defamatory (and the Buttons never allege that it could be) to report that the couple denied the accusations against them in the civil suit, nor is it false. Am. Compl. ¶ 109 (admitting that their lawyer issued the denial quoted in the Article).

   2.  *References to Mr. Button as a former dance teacher are neither defamatory nor false.*

References to Mr. Button as a "former dance teacher" or "former dance instructor," Am. Compl. ¶¶ 90, 94, 97, are not actionable for the same reasons. It is not defamatory to call someone a former dance teacher, and here, it is also true: Mr. Button admitted in a sworn declaration in the Nevada litigation that he "was a dance instructor and had been involved with dance instruction since 2007 and is very well-known as a premier instructor in the dance community."[13] Dec. of Mitchell Taylor Button ¶ 4, *Humphries v. Button*, No. 2:21-cv-1412 (D. Nev. Sept. 9, 2021), ECF No. 17-1 (Sumar Decl. Ex. 3); *see also* Am. Compl. ¶ 94 (alleging that he was *formerly* involved in the dance industry). To the extent Ms. Button claims she was also

---

[13] "[I]n considering a motion to dismiss, the Court is entitled to take judicial notice of . . . documents filed in other courts and other public records." *Jones v. Volunteers of Am. Greater N.Y.*, No. 20-cv-5581, 2022 U.S. Dist. LEXIS 45103, at *11 (S.D.N.Y. Mar. 14, 2022) (Vyskocil, J.).

defamed by this statement, Am. Compl. ¶ 90, that claim would fail for the additional reason that the statement does not refer to her. *See, e.g.*, *Kirch*, 449 F.3d at 398.[14]

   3.   *Plaintiffs do not plausibly plead actual malice.*

The Buttons also never plausibly plead that The Times or Ms. Jacobs published any of those statements with actual malice — that is, "with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civ. Rights Law § 76-a(2) . Most of their attempts to do so (*e.g.*, Am. Compl. ¶¶ 253, 300) are "naked assertions" or "conclusory statements" of actual malice that fall far short of plausibility. *Biro*, 807 F.3d at 544. Their factually unsupported allegations of ill will (*e.g.*, Am. Compl. ¶ 111), of ignoring purportedly favorable "evidence" after publication (*id.* ¶¶ 264-65), and of failure to investigate (*e.g.*, *id.* ¶¶ 143-44) are similarly inadequate and irrelevant. *See, e.g.*, *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001); *Herbert v. Lando*, 781 F.2d 298, 305-06 (2d Cir. 1986); *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 125-26 (2d Cir. 2013).

Apparently recognizing the absence of actual malice, the Buttons now seek to manufacture it by spuriously alleging "upon information and belief" that Ms. Jacobs reported on the Nevada complaint while possessing unspecified evidence contradicting its allegations. *E.g.*, Am. Compl. ¶¶ 203-04.[15] Such claims not only fail to show actual malice, *see Dongguk*, 734

---

[14] Invoking a fabricated quote, the Buttons also allege that the Article's "use of 'former dance teacher' indicates that the Buttons, (husband and wife), 'abused their students' together." Am. Compl. ¶ 90. The phrase "abused their students" never appears in the Article. Sumar Decl. Ex. 1.

[15] The Amended Complaint makes a series of other baseless assertions about Ms. Jacobs, including that she was "paid" to write the Article (Am. Compl. ¶ 384), conspired with the co-defendants here to harm the Buttons (*id.* ¶ 391), and that one aspect of this conspiracy was to publish the Article before the Buttons knew of the Nevada suit (which, as noted, cannot be untrue given that the Article quotes their lawyer) or were served with the complaint in order to "*intentionally cripple*" their defense in the Nevada case (*id.* ¶ 17). These and other allegations about Ms. Jacobs are offered without any basis at all (because none exists), and the last

F.3d at 125-26, but they are also entirely devoid of the "factual support" required at the pleading stage, *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 78 (2d Cir. 2022). The Second Circuit has made clear that a "litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). In any event, the Buttons undermine these specious claims by admitting (at Am. Compl. ¶ 109) that Ms. Jacobs sought their lawyer's statement denying the allegations — a statement prominently featured in the Article. Sumar Decl. Ex. 1. Courts have consistently found that such efforts *refute* a finding of actual malice. *See, e.g.*, *Prince*, 634 F. Supp. 3d at 139-41 (finding no actual malice where "the Article reported Plaintiff's denial of the allegations").

### E. Plaintiffs also fail to plead necessary elements of the causes action they purport to assert.

Even if the Buttons' claims did not sound in defamation, dismissal would still be warranted because the Amended Complaint fails to plead necessary elements of each cause of action.

*Injurious falsehood:* The challenged statements do not "denigrat[e] the quality of the plaintiff's business's goods or services," *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017) — here, Ms. Button's ballet performances, Am. Compl. ¶ 45-48, or Mr. Button's vehicle design services, *id.* ¶ 51. The Amended Complaint also fails to plead falsity, *supra* at 14-15, and offers only conclusory allegations of malice, *e.g.*, Am. Compl. ¶ 283, 286-87, and special damages, *id.* ¶¶ 288, 297; *see Grayson*, 271 F. Supp. 3d at 519.

---

allegation in particular makes no sense: the timing of the Article could have no effect on the strength of the Buttons defenses in the Nevada case.

*Tortious interference:* The Amended Complaint never alleges that The Times or Ms. Jacobs knew of a valid contract between the Buttons and other parties, that they induced those parties to breach such contracts, or that such contracts were actually breached (as opposed to permissibly terminated). *See Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 152 (S.D.N.Y. 2022). Moreover, New York courts have held that a defendant's "purpose in reporting on a newsworthy story" is an "absolute defense" to a tortious interference claim. *Trump v. Trump*, 79 Misc. 3d 866, 884 (Sup. Ct. N.Y. Cnty. 2023).

*NIED:* The Buttons do not allege that The Times or Ms. Jacobs owed them a duty, that any duty was breached, or that such breach endangered their physical safety. *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 & n.57 (2d Cir. 2021) (en banc). And it is well settled that an NIED claim fails where, as here, it is "alleges only intentional conduct, which cannot form the basis for a claim grounded in negligence." *Shapiro v. Jacobson*, No. 23-cv-3964, 2024 U.S. Dist. LEXIS 138805, at *22 (S.D.N.Y. Aug. 5, 2024); *see* Am. Compl. ¶ 374.[16]

*Civil conspiracy:* Civil conspiracy is not an independent tort, and the Buttons fail not only to plead a viable underlying tort, but also plausibly to allege that The Times or Ms. Jacobs agreed to commit such tort with other defendants in furtherance of a common purpose. *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 245-46 (S.D.N.Y. 2018). Their claim "upon belief" that Ms. Jacobs was paid by Boies Schiller, Am. Compl. ¶ 384, can be ignored because it is implausible and insufficiently pleaded, as well as entirely false.

---

[16] To state an NIED claim, the Buttons are also required by the First Amendment to plead actual malice, which they have not plausibly done. *See Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 344 (S.D.N.Y. 2008) (explaining that "when additional tort claims are aimed at controlling the same speech that is the basis of a libel claim, courts should not entertain the additional claims under less stringent standards"), *aff'd*, 337 F. App'x 94 (2d Cir. 2009).

## II.    THE CLAIMS AGAINST MR. BLAISDELL AND MR. MCCRAW SHOULD BE DISMISSED.

The Amended Complaint asserts two of its assorted state law torts against Mr. Blaisdell and Mr. McCraw — NIED and civil conspiracy — but, as applied to these defendants, the claims are just as frivolous and also should be dismissed with prejudice. The two attorneys did what lawyers do: respond to discovery demands on behalf of a client. From that, the Button weave a grand, and preposterous, conspiracy theory.

As with Ms. Jacobs and The Times, much of what the Amended Complaint says about Mr. McCraw and Mr. Blaisdell is implausible, baseless, and at odds with other aspects of the pleading. For instance, the Amended Complaint repeatedly trumpets the existence of a vast, nefarious conspiracy between The Times's in-house attorneys and the Boies Schiller firm that had the goal of harming the Buttons. *See, e.g.*, Am. Compl. ¶¶ 9, 15, 131, 391. The primary evidence for that grand claim? That Mr. Blaisdell once worked at Boies Schiller (which is evidence of nothing except that coincidences happen) and that Mr. Blaisdell was in touch with Boies Schiller lawyers after he spoke to the Buttons regarding their subpoena (which would surprise no one with experience in civil litigation).[17] *See, e.g.*, *id.* ¶¶ 123, 165, 171. To take another example, the Amended Complaint repeatedly accuses Mr. Blaisdell of seeking to "intentionally intimidat[e]" the Buttons and of providing them with "unsolicited legal advice," *see, e.g.*, *id.* ¶ 127, even though the excerpts of their conversations cited in the Amended

_____

[17] The Buttons also find it nefarious that Mr. McCraw and Mr. Blaisdell "defer[red]" the subpoena matter to each other, Am. Compl. ¶ 169, even though colleagues refer matters to each other all the time. And there is nothing to the claim that Mr. McCraw and Mr. Blaisdell prevented the Buttons from seeking "legal recourse," *e.g.*, *id.* ¶¶ 362-63, since the only thing Mr. Blaisdell declined to do was waive service of the Buttons' subpoena on Ms. Jacobs, *see id.* ¶ 129. He did not stop the Buttons, nor could he have, from attempting to effectuate service.

Complaint show nothing of the sort.[18] What they do show, in spades, is that Mr. Blaisdell was a competent attorney who acted in the best interests of his clients — and who attempted to explain to his adversaries, repeatedly, that the disclosure they sought was foreclosed by shield laws. *See* Am. Compl. ¶ 128.

But even if the Court takes as true every single factual allegation in the Amended Complaint about Mr. McCraw and Mr. Blaisdell, the Buttons have not adequately pleaded a claim against either of them. A plaintiff asserting NIED must plausibly allege "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm;" and (4) "that the breach endangered his physical safety or caused him to fear for his physical safety." *Francis*, 992 F.3d at 81 & n.57. The Amended Complaint does not allege that Mr. McCraw or Mr. Blaisdell owed the Buttons a legal duty, much less that they breached any such duty. The general rule in New York, moreover, is that "an attorney does not owe a duty of care to his adversary." *Crews v. Cnty. of Nassau*, 612 F. Supp. 2d 199, 205 (E.D.N.Y. 2009) (noting that "relevant decisions by New York courts make abundantly clear that an attorney does not owe a duty of care to an adversary," and collecting cases). There is also nothing in the Amended Complaint suggesting that Mr. McCraw or Mr. Blaisdell's conduct caused the Buttons to fear for their physical safety, despite claims that they suffered "emotional distress" and "depression" as a result. Am. Compl. ¶¶ 362, 374. On top of all that, the Buttons' pleading takes issue with allegedly intentional conduct by Mr. McCraw and Mr. Blaisdell — not

---

[18] According to the Buttons, the "unsolicited" advice that Mr. Blaisdell unlawfully and "unethically" dispensed to them was his caution that "the protective order [in the Nevada litigation] may limit what you are able to share with me regarding any recent deposition testimony." Am. Compl. ¶¶ 127, 135. But Mr. Blaisdell was not purporting to offer legal advice, nor was his statement inaccurate. Indeed, his concern that the Buttons might purposefully or unwittingly disclose material subject to a protective order was well founded. *Roe*, 2024 U.S. Dist. LEXIS 227468, at *19.

negligence, which is the proper subject of an NIED claim. *See Shapiro*, 2024 U.S. Dist. LEXIS 138805, at *22.

The civil conspiracy claim against The Times's in-house attorneys fares no better. This claim necessarily fails because, as noted above, civil conspiracy is not a freestanding tort, and the Amended Complaint does not adequately plead any "primary tort." *Gym Door Repairs*, 331 F. Supp. 3d at 245-46. And for all of the Amended Complaint's talk of "collusion" between Times lawyers and Boies Schiller, the pleading offers nothing in the way of actual facts to demonstrate the existence of such a conspiracy. *See, e.g.*, *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 107 (2d Cir. 2019) (plaintiff "must marshal more than unsubstantiated suspicions" at the pleading stage).

## III.    THE TIMES DEFENDANTS SHOULD BE AWARDED THEIR COSTS AND FEES UNDER THE NEW YORK ANTI-SLAPP LAW.

The New York anti-SLAPP law entitles The Times Defendants to recover the attorneys' fees and costs associated with this motion practice, and this Court should award them. As noted above, the statute makes a fee award mandatory "upon a demonstration . . . that the [lawsuit] was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a(1)(a). The Times Defendants have made this showing above, and nothing more is necessary. They are, therefore, unquestionably entitled to recover those fees.

The remaining question is whether this Court is empowered to award these fees in this proceeding. The answer is yes. As Judge Oetken cogently explained in a recent opinion, the fee provision of the New York anti-SLAPP statute does not conflict with the Federal Rules of Civil Procedure and thus applies in federal court. *See Bobulinski*, 2024 U.S. Dist. LEXIS 214981, at *28-43. This is because, among other reasons, the New York statute does not tie the entitlement to fees to a specific state procedural mechanism; it says merely that a prevailing defendant may recover its fees for demonstrating that the claims lacked merit. As Judge Oetken summarized it:

21

> In short, the anti-SLAPP law here—a motion for attorney's fees upon a Rule 12(b)(6) dismissal—is doing no procedural work; it is merely defining the substantive standard for entitlement to attorney's fees. To return to the *Shady Grove* analysis: the Federal Rule—Rule 12(b)(6)—does not "answer[] the question in dispute," 559 U.S. at 398: namely, whether the defendant is entitled to attorney's fees based on a demonstration that the claim is "without a substantial basis in fact and law."

*Id.* at *36 (quoting *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398

(2010)). Judge Oetken also pointed out that holding otherwise — which would mean that the fees

provision of the anti-SLAPP law applies in state but not federal court — would lead to

"inequitable" outcomes, invite forum-shopping, and override "the New York legislature's

interest in protecting the robust free speech rights of New Yorkers beyond that of the federal

First Amendment protections." *Id.* at *37. Though some courts in this Circuit have come out the

other way on this question, The Times Defendants respectfully disagree with their reasoning.

*See, e.g.*, Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-*

*SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573, 599-614 (2023) (distinguishing

contrary cases and analyzing in detail why the statute's fee provision applies in federal court).

In *Bobulinski*, Judge Oetken also ruled, correctly, that a defendant can seek to recover its

fees through a motion to dismiss; a separate counterclaim for fees is not necessary. 2024 U.S.

Dist. LEXIS 214981, at *41-42. Under the statute, "[a] defendant . . . may maintain an action,

claim, cross claim or counterclaim to recover damages," N.Y. Civ. Rights Law § 70-a(1), and

"'[m]aintain[ing] an action' includes defendants' continuing to litigate in an original action filed

against them," *Bobulinski*, 2024 U.S. Dist. LEXIS 214981, at *41. To rule otherwise would be to

force prevailing defendants to initiate a separate action to recover their fees. As Judge Oetken

recognized, that outcome would "undermin[e] the New York legislature's intent in broadening

anti-SLAPP protections to protect defendants and prevent the chilling of speech." *Id.* at *42.

22

## <u>CONCLUSION</u>

For the foregoing reasons, The Times Defendants respectfully request that the Court to dismiss all the claims against them, award them their fees and costs under the New York anti-SLAPP law, and grant such further relief as the Court deems appropriate.


Dated:  February 7, 2025                    THE NEW YORK TIMES COMPANY
        New York, New York


                                            By:  */s/ Al-Amyn Sumar*
                                            Al-Amyn Sumar
                                            Timothy Tai
                                            The New York Times Company
                                            Legal Department
                                            620 8th Avenue
                                            New York, NY 10018
                                            Telephone: (202) 862-0775
                                            al-amyn.sumar@nytimes.com
                                            timothy.tai@nytimes.com

                                            *Attorneys for Defendants The New York
                                            Times Company, Julia Jacobs, Demetri
                                            Blaisdell, and David McCraw*

23

## **CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the word count requirements of Local Civil Rule 7.1(c). According to the word count in Microsoft Word, which was used to prepare this brief, the number of words in this document, excluding the caption, any index, table of contents, table of authorities, signature blocks, and this certificate, is 7,510.

Dated:  February 7, 2025
      New York, New York

                                        */s/ Al-Amyn Sumar*
                                        Al-Amyn Sumar