1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DUSTY BUTTON AND MITCHELL
TAYLOR BUTTON

              PLAINTIFFS,

V.

THE NEW YORK TIMES COMPANY,
JULIA JACOBS, DEMETRI BLAISDELL,
SABINA MARIELLA, LINDSEY RUFF,
DAVID MCCRAW AND DAWN
SCHNEIDER

              DEFENDANT.

Case No: 1:24-CV-05888-MKV

PLAINTIFFS' OPPOSITION TO THE
NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

        The Plaintiffs hereby submit their Opposition to The New York Times' Motion to Dismiss the Plaintiffs' Amended Complaint and respectfully ask the Court to Deny the Motion to Dismiss and allow this case to proceed to discovery so that the Plaintiffs may rightfully seek the justice they deserve.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

1

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT…………………………………………………...5,6,7,8,9

BACKGROUND…………………………………………………………………………...9

    I.       The Article…………………………………………………………..9,10,11,12,13

    II.     The NYT Subpoena………………………………………………………13,14,15

    III.   The Buttons' Are Being Silenced………………………………………...15,16,17,18

LEGAL STANDARD…………………………………………………………………18,19

ARGUMENT………………………………………………………………………...19

    IV.   The Buttons Were Defamed by Ms. Jacobs and the New York Times and The Claims Against Them Should Not Be Dismissed…………………………………...19,20,21

         a.   The Buttons' Claims are Not Time-Barred………………………………...21,22

         b.   The Buttons' Reputation was Their Business…………………………………22,23

         c.   The Claims are Not Barred by The Fair Report Privilege……………………23,24

         d.   The Buttons were Never Charged with a Crime…………………………………24

             i.  Plaintiffs Are Not Public Figures and Therefore, Do Not Need to Plead Actual Malice……………………………………………...24,25,26

    V.    Plaintiffs' Tortious Interference, NIED and Civil Conspiracy Claims…………..26,27,28

    VI.   The Claims against Mr. Blaisdell and Mr. McCraw Succeed………………….28,29,30

CONCLUSION……………………………………………………………………..30,31

CERTIFICATE……………………………………………………………………32

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>TABLE OF AUTHORITIES</u>

**CASES:**

*Button et al v. Breshears* 1:24-cv-03757-MKV Southern District Court of New York...7,15,28

*Button et al v. McCawley* 0:24-cv-60911-DSL Southern District Court of Florida……..8,9,28

*Wynn v. Assoc. Press*, 136 Nev. 611, 613, 475 P.3d 44, 47 (Nev. 2020)………………...11,23

*Shapiro*, 389 P.3d at 269……………………………………………………………………..11,23

*Button et al. v The New York Times* 1:24-cv-05888-MKV Southern District Court of NY….15

*Button et al v. Roe et al.* New Hampshire District Court 1:24-cv-00220-SM-AJ……………16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)……………………………………………………18

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998)………..18

*Humphries et al v. Button* Nevada District Court 2:21-cv-01412-ART-EJY……………...18

*Tsamasiros v. Jones*, 2024 N.Y. Slip Op. 5814 (N.Y. App. Div. 2024)……………………...20

*Huggins v. Moore*, 253 A.D.2d 297, 689 N.Y.S.2d 211, 689 N.Y.S.2d 21 (N.Y. App. Div. 1999)……………………………………………………………………………………………20

(BCRE 230 Riverside LLC v Fuchs, 59 AD3d 282, 283 [1st Dept 2009]……………………21

*Kasada, Inc. v. Access Capital, Inc.*, No. 01 Civ. 8893 (GBD), 2004 WL 2903776, at *15 (S.D.N.Y. Dec. 14, 2004)……………………………………………………………………..22

*Waste Distillation Tech., Inc. v. Blasland & Bouck Engineers*, P.C.,136 A.D.2d 633, 523 N.Y.S.2d 875, 877 (2d Dep't 1988)……………………………………………………………..22

*Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017)…………………22

*Cortes v. Twenty-First Century Fox Am.,* Inc., 285 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (cleaned up), aff'd, 751 F. App'x 69 (2d Cir. 2018)……………………………………………24

*Gertz v. Rober Welch, INC.*, 418 U.S. 323, 351 (1974)……………………………………...25

*Pegasus v, Reno Newspapers,* Inc., 57 P.3d 82, 91 (Nev. 2002)……………………………..25

*Grayson v. Ressler & Ressler,* 271 F. Supp. 3d 501, 519 (S.D.N.Y. 2017)…………………25

*Button et al v. Humphries Southern District Court of California* 8:24-cv-01730-JVS-DFM..25

*Button et al v. Doherty* 1:24-cv-05026-JPC-KHP Southern District Court of New York……25

*Tigano v United States, the* 527 F Supp 3d 232, 249 [ED NY 2021]………………………...29

*Kennedy v McKesson Co.,* 58 NY2d at 504"……………………………………………...29

*BROWN v. LLC (2023) Appeal No. 17203 Decided March 09, 2023*………………………29

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS' MOTION TO DISMISS

*Ornstein, 10 NY3d at 6; Baumann v Hanover Community Bank*, 100 AD3d 814, 816 [2d Dept 2012..................................................................................................................29

*Cleary v Wallace Oil Co., Inc.*, 55 AD3d 773, 775 [2d Dept 2008.............................29

*MacLeish v. Boardman & Clark LLP*, 924 N.W.2d 799 (Wis. 2019)...........................29

*Calvert v. Scharf,* 619 S.E.2d 197 (W. Va. 2005)......................................................29

*Ronald E. Mallen and Jeffrey M. Smith, Legal Malpractice* § 7.10, at 379 (3rd ed. 1993).....29

**OTHER AUTHORITES:**

Restatement (Second) of Torts, § 611 cmt. c.10, 22

Consolidated Laws of New York. Civil Practice Law and Rules CH 8 Article 2 Section 214 (2019)......................................................................................................................21

Restatement (2d) of Torts, § 623A; Restatement (2d) of Torts, § 630; Court Opinions........21

**RULES:**

28 U.S.C. § 1391(b)(2) and (b)(3)...............................................................................8

Fed. R. Civ. P. 12(b)(6)...........................................................................................8,19

Fed. R. Civ. P. 13(a)...................................................................................................8

STATUTES:

Fla. Stat. § 768.295(3)................................................................................................8

Fla. Stat. § 768.295(2)(a)...........................................................................................8

Fla. Stat. § 768.295(4)................................................................................................8

NV Rev. Stat. § 11.190; S.C. Code Ann. § 15–3–550(1)..............................................8

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS' MOTION TO DISMISS

1

## PRELIMINARY STATEMENT

2

Plaintiffs' lives were completely destroyed by the New York Times article,

3

particularly due to the fact that it was published before the Plaintiffs were ever even served with

4

the Nevada lawsuit. Unsurprisingly and on par with their conspirators, the Defendants claim that

5

this is a "frivolous" and "mendacious" attack "against a news organization and its employees for

6

nothing more than accurately reporting on a judicial proceeding and responding in the ordinary

7

course to a non-party subpoena"[1]; but the Defendants' tiresome and plagiarized argument that

8

Plaintiffs' legal recourse and fight for justice is "frivolous" is simply a parroted distraction from

9

their own misconduct. The Defendants claim that there is no conspiracy between the attorneys

10

from Boies Schiller & Flexner and the Times' Defendants themselves but the mere fact that their

11

responses and defenses are nearly identical, proves otherwise. While the majority of the

12

Defendants' response passively aggressively describes the Plaintiffs as "conspiracy theorists", the

13

Defendants fail to actually address the detailed allegations against them and rather, seemingly

14

dismiss the majority of the facts plead in the Amended Complaint. The Plaintiffs are beyond

15

frustrated with the abuse of power at play here, which has been abused for years and includes the

16

collusion between one of the largest news publications in the United States, (if not the largest),

17

and one of the most powerful and influential law firms in the country, known for favoring each

18

other. This litigation is far from frivolous and while the Plaintiffs lack a degree in law, they do not

19

lack evidence when providing the truth and are diligently pursuing their rights to expose it. The

20

Defendants must be held accountable for the destruction of the Defendants' livelihoods, careers

21

and reputations; and they must no longer be able to abuse their power in the industry without

22

consequence. Defendants falsely state that Ms. Jacobs and the Times reported on a judicial

23

24

25

26

[1] Plaintiffs provide Exhibit 1 which includes exhibits from other lawsuits, (which are mentioned in the Defendants' response, so the Court may take judicial notice of such excerpts), to prove the conspiracy against Plaintiffs by the Defendants in this lawsuit and in others, in an effort to silence the truth.

27

28

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

proceeding but that is not only false, but *impossible*; Ms. Jacobs wrote her article based on an interview with two of the Nevada Plaintiffs prior to those attorneys even filing the initial complaint therefore, Ms. Jacobs' article could not have been written based on the complaint, but on statements made by the Nevada Plaintiffs, (the Buttons filed a defamation counterclaim against Ms. Humphries and Menichino for their statements made to the New York Times and Julia Jacobs which survived a Motion to Dismiss in Nevada, pending resolution in the Buttons' Motion for Summary Judgment)[2].

As stated further herein, Defendants are attempting to once again, manipulate this Court into believing that the Plaintiffs should not be allowed to pursue legal recourse against these Defendants who destroyed their lives and impeded ongoing litigation. Defendants incorrectly state that, "the timing of the Article could have no effect on the strength of the Buttons defenses in the Nevada case"; ***not so***. As previously stated, "Following Ms. Jacobs's article being published, Plaintiffs immediately lost everything they had ever worked for including but not limited to their reputations, careers and business relationships, resulting in the loss of every asset they owned or possessed and including the loss of their home which they were evicted from due to the crippled financial state following Ms. Jacobs' article and collusion with Defendants Ruff, Mariella, Schneider and non-party co-conspirator Sigrid McCawley". (¶ 205 Am. Comp.); "Defendants Ruff, Mariella, Schneider and Jacobs knew that their statements were false and intentionally crippled Plaintiffs' business and ability to generate revenue and income as they maliciously referred to Plaintiffs' goods and services because the "power" they claim Plaintiffs "abused" was the power of their business which was their talent, expertise and their reputable names, (as stated in the Nevada complaint)" ¶228 Am. Comp.". Plaintiffs lost any

---

[2] See Motion for Summary Judgment and Reply in the Nevada District Court – 2:21-cv-01412-ART-EJY – Humphries et al v. Button – ECF Nos. 452, 453, 454, 455, 456 and 477

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

and all employment immediately following the New York Times article, including because readers relied on Ms. Jacobs's article that the allegations were true and that the Buttons had been "charged" with a crime; the article which followed three months after the first May 13th, 2021 harassing and defamatory social media campaign against the Plaintiffs brought by Sage Humphries' friend, Madison Breshears[3], who admittedly knew the article was "imminent" *three months prior*. Had the New York Times not led readers to believe the Plaintiffs were charged with a crime, the Plaintiffs would undoubtedly have been able to continue working, in order to continue funding their attorney who they lost as a result of their financial situation. The New York Times is well aware of their impact on the public, including the Court of public opinion and the Buttons lost in the Court of public opinion as soon as Ms. Jacobs's defamatory article was published, prior to the Plaintiffs ever being issued a summons in Nevada and that public, is the Plaintiffs jury pool, should there even be a trial in Nevada[4].

    In addition to mischaracterized statements in the Defendants' response regarding Nevada as well as the Amended Complaint itself, the Defendants had no knowledge of the Nevada litigation prior to Ms. Jacobs's article being published and her interview with the two Nevada litigants occurred before the lawsuit was even filed; therefore, her article was not "recounting" a judicial proceeding. Defendants state, "two years after the story ran, and after discovery had closed in Nevada litigation – the Buttons sought to serve a subpoena on Ms. Jacobs, the journalist at the The Times who wrote the story"; the Plaintiffs reached out to Ms. Jacobs in October of 2023 after deposing Sage Humphries and after receiving discovery

---

[3] See 1:24-cv-03757-MKV – Button et al v. Breshears
[4] The Nevada litigation is pending cross motions for Summary Judgment but the pre-trial was removed on August 1st, 2023 after the Judge recommended the Plaintiffs there consider their claims, after the Defendants provided evidence in several motions including Rule 11 sanctions motions which the Court deemed would be most appropriate for Summary Judgment as Rule 11 sanctions motions were "rare" in Nevada.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

production which included an email from Defendants Dawn Schneider, Ms. Ruff, Ms. Mariella, (non-party Sigrid McCawley) and Julia Jacobs with a scheduled conference call that was held prior to the Nevada lawsuit being filed, in order for Ms. Jacobs to conduct an interview with Ms. Humphries and Menichino. While discovery had closed in Nevada, the Plaintiffs filed a motion to reopen discovery on a narrow scope and were additionally calling witnesses listed in Nevada to diligently pursue any and all information regarding this conspiracy against them. While Defendants state Mr. Blaisdell's prior employment with Boies Schiller & Flexner is merely a "coincidence", the Plaintiffs have endured nothing but those "coincidences" since Boies Schiller & Flexner made their appearance in the Plaintiffs' lives.

As stated further herein, and as plead in the Amended Complaint, Defendants impeded on the Plaintiffs' ability to properly litigate as well as interfered with ongoing litigation by publishing the article prior to the Plaintiffs ever being served with a lawsuit, thereby giving an advantage to Boies Schiller & Flexner and their clients. Plaintiffs have seen first-hand just how much power, control and influence the media and these attorneys have over the public and over the Courts. Plaintiffs are asking the Court *for help*, just as they are in other jurisdictions where they have appropriately sought legal recourse. This is not a frivolous lawsuit[5] and the Plaintiffs' claims have merit though they understand they are not proficient in

---

[5] A federal court DENIED Sigrid McCawley's, (associate of Ms. Ruff and Mariella in this lawsuit and attorney for Nevada litigants), request for attorneys' fees pertaining to her anti-SLAPP argument against the Plaintiffs' claims of defamation and civil conspiracy against her, (0:24-cv-60911-DSL, Button et al v. McCawley in the Southern District Court of Florida - Ex. A). Ms. McCawley argued that Plaintiffs' lawsuit against her was meant to "silence" and "intimidate" her including from speaking to the press about the Buttons and that she was "entitled to mandatory attorneys' fees and costs under Florida's Anti-SLAPP statute". The Court cited the Plaintiffs argument that their complaint, "does not violate Florida's anti-SLAPP law including because the anti-SLAPP law is designed to protect citizens from lawsuits that are primarily intended to silence or intimidate them. This lawsuit is not intended to silence or intimidate Ms. McCawley[.]" [ECF No. 43 at 8]. That Court agreed with the Buttons and held :"Florida's Anti-SLAPP statute prohibits a person from filing a cause of action "against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue[.]" Fla. Stat. § 768.295(3); see also Fla. Stat. § 768.295(2)(a) (defining "[f]ree speech in connection with public issues" as "any written or oral statement that is protected under applicable law and … is made in or in connection with a …magazine article, musical work,

**PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS**

law and the Plaintiffs respectfully ask this Court to, at the very least, understand that the Plaintiffs are not filing lawsuits for any other purpose than to seek justice they deserve.

BACKGROUND

I.    The Article

One of the biggest issues here is the negligent reliance on hearsay by Ms. Jacobs and The Times as her article was not, (and could not have been), an accurate reporting of a judicial proceeding because that "proceeding" had not yet taken place, which is precisely why the Plaintiffs have alleged the conspiracy between the parties and others. While the Defendants claim it is standard practice to those involved in civil litigation to interview, write and publish a story based on hearsay, prior to a lawsuit being filed; it is not. And in fact, it is entirely unethical. Ms. Jacobs did not diligently research prior to writing her article, nor did she even verify that the statements made by Ms. Humphries or Menichino were true, (they are not). Ms. Jacobs's article is not privileged because she wrote her article prior to the complaint being filed in Nevada so her article was written and published based on statements made by Ms. Humphries and Menichino and not their allegations within the complaint, because the complaint had not yet been filed. Further, Ms. Jacobs knew that Plaintiff Taylor Button was not a dance instructor and had not been involved in the dance industry since 2010 including

---

news report, or other similar work"). The Anti-SLAPP statute also provides that "[t]he court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." Fla. Stat. § 768.295(4)"; and that "Upon review of the parties' arguments, the Court does not agree that Defendant is entitled to an award of fees and costs at this juncture because the Court has not addressed the merits of Plaintiffs' claims, nor has the Court made the finding that Plaintiffs' lawsuit as a whole is without merit". As seen, the Southern District Court of Florida only dismissed the defamation claims against Ms. McCawley which were time-barred but otherwise allowed Plaintiffs to proceed with a Second Amended Complaint in regard to the statements which are not time-barred under the applicable statutes of limitation, including the Plaintiffs' claims of Civil Conspiracy against Ms. McCawley. If the Court believed the Plaintiffs lawsuit was designed as a "tactical maneuver" to "intimidate" Ms. McCawley, it certainly would not have allowed Plaintiffs to "intimidate" her again by filing a Second Amended Complaint. *This **directly undermines** the Defendants' statements that the Plaintiffs' lawsuit against them is vexatious or was meant to harass and intimidate them; it is not. See case 0:24-cv-60911-DSL.*

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS' MOTION TO DISMISS

because there was publicly available information proving that Mr. Button had not been

involved in dance for nearly twelve years but she intentionally titled her article to mislead the

public and any reader. As previously stated, Ms. Jacobs's use of the word "charges" was also

misleading and she knows it. There was no reason for her to use the word charges when the

article was related to a civil lawsuit regardless of whether or not Ms. Jacobs wrote an article

about statements made in reference *to* a civil suit. Any reasonable person would believe, (and

did believe), the Plaintiffs had denied *criminal charges*, not *civil allegations* against them and

that is proven true by the innumerable parties who stated the Plaintiffs were in prison or

"behind bars", even as late as February 6th, 2025, as a direct result of Ms. Jacobs's article. Ms.

Jacobs's statement could have only been made out of actual malice because she knew that

statement was false and that the Buttons had never been charged with a crime.

The second issue here, is that Ms. Humphries and Ms. Menichino's statements

have been proven false by evidence which Ms. McCawley and her associates were in

possession of at the time their clients made the statements to Ms. Jacobs. As stated, upon

information and belief, Ms. Jacobs was presented with this evidence but was negligent and/or

reckless in using that evidence when writing her article. Ms. Jacobs intentionally described

Mr. Button as a "former dance teacher" rather than addressing his actual current occupation,

which was publicly available including on his own social media page, which Ms. Jacobs

followed. While Ms. Jacobs argues that she used "former dance teacher" because the

complaint stated that Ms. Menichino allegations occurred when Mr. Button taught dance in

Florida, again, Ms. Jacobs wrote her article based on statements made by Ms. Menichino, not

from the complaint and Mr. Button's work was within the automotive industry. Regardless,

Ms. Jacobs could have used any of Mr. Button's previous occupations but intentionally

**PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS**

labeled him as a former dance teacher in order to mislead the public in believing the already

created false narrative against the Buttons, that they were two teachers who sexually abused

their students. Further, Ms. Humphries was never a student of either of the Buttons but a co-

worker of Ms. Button at Boston Ballet as an adult. Ms. Jacobs and the Times argue that the

published statements cannot be defamatory because they are in the complaint or otherwise

refer to the complaint but it is proven that Ms. Jacobs's article derived from statements made

by Sage Humphries and Gina Menichino in an interview, not in the complaint. The Nevada

District Court allowed the Plaintiffs' defamation claims against the Nevada litigants to

proceed after two Motions to Dismiss those claims against them including because the Court

stated that the statements were "fact-intensive"[6].

       The Nevada District Court stated on August 5th, 2024, (when ruling on the

Buttons' Motion to Dismiss), "Plaintiffs also argue that the defamation claims should be

dismissed because they are protected by the fair reporting privilege. The Court finds, as it did

in its order on Plaintiffs' earlier motion to dismiss, that ***factual issues*** prevent the Court from

concluding that the fair reporting privilege applies to Plaintiffs' statements. See Restatement

(Second) of Torts, § 611 cmt. c. (stating, "A person cannot confer [the fair reporting] privilege

upon himself"); Wynn v. Assoc. Press, 136 Nev. 611, 613, 475 P.3d 44, 47 (Nev. 2020)

(citing § 611 of the Second Restatement of Torts and applying summary judgment standard in

deciding whether statements were privileged); Shapiro, 389 P.3d at 269 (observing that the

analysis of whether statements are privileged "is a case-specific, fact-intensive inquiry that

must focus on and balance the underlying principles of the privilege"). Thus, the Court will

deny Plaintiffs' motion to dismiss with regards to the fair reporting privilege.

---

[6] See August 5th, 2024 ORDER in the Nevada District Court – ECF No. 379

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

While that Order pertains to the Nevada Plaintiffs' statements made in the media, those statements are also in reference to the statements made to the New York Times. Had Ms. Jacobs verified the statements of Ms. Menichino and Humphries prior to publishing them, she would not have published the statements. As just one example, the Defendants published in the article that Ms. Humphries stated the Buttons, "sexually and verbally abused her, forced her to live with them and isolated her from her family" but Ms. Jacobs would have known that statement was false had she not been reckless, including because Ms. McCawley and her associates were in possession of evidence which directly contradicted that statement which Plaintiffs believe was shared with Ms. Jacobs including the text seen below[7]:



Plaintiffs have been made out to be disgusting people who prey on children and then use them for sex acts; those false allegations ***will never be cleared from their names***

---

[7] Photo of a text message from Sage Humphries' mother to the Plaintiffs and Sage in a group message which proves Plaintiffs never forced Sage to live with them at all and actually, her mother asked if she could move in.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

because the Defendants here, ensured it, after the article was published it with no regard for the truth or falsity of the statements for fame and notoriety and "the best story". No reasonable person would believe the word "charged" was meant in relation to accusations including because all of the (false) allegations are criminal, and any reasonable person understands that any civil suit, depending the allegations, could lead to criminal prosecution.

The Times states that they published the article "the day after Ms. Humphries and Ms. Menichino filed their suit", however, it is proven that Ms. Jacobs used statements from Ms. Humphries and Menichino's interview prior to the complaint ever being filed and therefore, it does not matter when the article was published if the article did not derive from the complaint. As stated in the Plaintiffs' Amended Complaint, ¶62 – 74, Ms. Jacobs and The Times were reckless in publishing statements made by Ms. Humphries and Menichino; "*Prior to July 26th, 2021, Ms. McCawley and her associates, including Ms. Schneider had already arranged prior meetings with Ms. Jacobs and other media outlets, (as testified to by non-party and Defendant in a separate litigation with Plaintiffs, Madison Breshears6), who took matters into her own hands by publishing an entire defamatory and harassing campaign against Plaintiffs on May 13th, 2021 as she "knew the article was coming out", "was imminent" and "wanted to be the first to break the story"*( ¶67 Am. Comp.).

II.    The NYT Subpoena

There **are no "coincidences"**, as the Defendants would have this Court believe; and while there are a number of pending issues in other courts regarding Boies Schiller & Flexner's misconduct, Mr. Blaisdell is responsible for his own. First, the Buttons did not "threaten" to serve The Times with a subpoena in the Nevada litigation and equally, the Buttons were never seeking any waiver of service and are unsure why the Defendants continue to make this statement. In fact, the Plaintiffs made it very clear in response to Mr.

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Blaisdell, (after he informed the Plaintiffs that the discovery in their own litigation closed, as if they were not aware of their own deadlines, and additionally informed the Plaintiffs that the "Court ha[d] not permitted [them] to serve additional subpoenas on non-parties" ¶ 163 Am. Comp., which he would not have known without conspiring with the Boies Schiller attorneys); that they were not interested in a waiver of service[8].

The Buttons never requested waiver of service and the Defendants' lies, while unsurprising, are another tactical maneuver to mislead the Court. It makes no logical sense that Mr. Blaisdell would be "up to date" on the Buttons' lawsuit against his former associates and their clients prior to speaking to the Buttons regarding Ms. Jacobs and The Times unless, he conspired with them to aid in their litigation and to prevent the Plaintiffs from discovering communications between Ms. Jacobs, The Times and Boies Schiller & Flexner. The Nevada District Court already instructed the Plaintiffs in Nevada that they must provide their communications with the media but still, they withheld those communications and now, Mr. Blaisdell is just one more party who has impeded on the Plaintiffs' ability to discover those communications which prove the conspiracy against them. As stated in the Amended Complaint, Mr. Blaisdell is responsible for impeding on Plaintiffs' right to due process and he should be held responsible. Further, there was no reason for Mr. McCraw to defer the Plaintiffs to Mr. Blaisdell because Ms. Jacobs specifically stated that Mr. McCraw was the appropriate counsel for her and for the The Times and the Plaintiffs confirmed as he is listed

---

[8] "As you have most likely been informed by your colleagues, we are not interested in unsolicited legal advice so the question remains unchanged, much like our position since your client published her defamatory article in 2021; do you and David accept legal service, (in the form of a court ordered summons), on behalf of Julia Jacobs and the New York Times and by legal service of course, that is literal and thus, **does not mean any waiver or service via email or otherwise but proper service as ordered by the Court, serving legal documents through a licensed process server**. If so, please specify to whom each service should be provided pursuant to Julia Jacobs and the New York Times as you and David previously stated, all contact should be directed to you in regard to either entity.¶ 166 Am. Comp.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

on the New York Times website as legal counsel but were then deferred to Mr. Blaisdell, former employee of the very firm who has destroyed the Buttons' lives for four years[9].

### III.    The Buttons' Are Being Silenced

As stated in the Plaintiffs' Letters to the Court in response to Defendants' Pre-Motion letters, the Plaintiffs have been smothered by the Defendants' abilities to control the narrative against them. The Plaintiffs are beyond frustrated with the Defendants' ability to weaponize the justice system and to manipulate the Courts into believing that the Plaintiffs' claims are either without merit or are "vexatious", when they are not. Defendants here grossly mischaracterize the New Hampshire District Court Order and Juliet Doherty's voluntary dismissal from the Nevada litigation, (which bear no weight on this case), so Plaintiffs correct the record and briefly address the order once more[10]. Unsurprisingly, Defendants' actions parrot those of the attorneys from Boies Schiller & Flexner[11], who continue to weaponize the justice system and harass the Plaintiffs by manipulating each Court against the other, just as the Defendant has done here. Sigrid McCawley filed the same supplementation of the *same* New Hampshire authority in her own case[12] and Defendants Ruff and Mariella's[13] provided the *same* Order[14],

---

[9] See generally Plaintiffs' Amended Complaint ¶120 – 171

[10] ECF No. 33 LETTER addressed to Judge Mary Kay Vyskocil from Plaintiffs dated in response to ECF No. 31. Plaintiffs also addressed this Order when it was filed as supplementation in Madison Breshears's defense against the Plaintiffs, see ECF No. 37 in response to ECF No. 36 in 1:24-cv-03757-MKV.

[11] *Pro se* Plaintiffs have been litigating against the Boies Schiller & Flexner, "BSF," firm for nearly four years in the District Court of Nevada and now, the Southern District Court of Florida, Southern District Court of New York and Southern District Court of California as they infiltrate *every lawsuit* the Plaintiffs have filed to seek legal recourse against those who have irreparably harmed them. *Every* Defendant, (aside from Ms. Breshears) is represented by an attorney from BSF or former employee of BSF including the attorneys from BSF being sued by the Plaintiffs who are *also represented by BSF* in order to control the narrative they lost control of in Nevada against the Plaintiffs.

[12] Button et al v. McCawley in the Southern District Court of Florida; 0:24-cv-60911-DSL, (ECF No. 46)

[13] 1:24-cv-05888-MKV Southern District Court of NY (ECF No. 31)

[14] Defendants Mariella and Ruff - 1:24-cv-05888-MKV filed a Notice of Supplemental Authority immediately following the New Hampshire District Court order, attempting to convince the Court that Plaintiffs' lawsuits were only a "tactical maneuver" to "silence and intimidate witnesses in Nevada" – Plaintiffs reply (ECF No. 33).

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS' MOTION TO DISMISS

who have now all used the New Hampshire Order to manipulate other Courts into believing Plaintiffs' lawsuits are "an attempt to harass and intimidate".

*First*, Defendant states, "The court dismissed the case because "the Buttons' claims lack any legal merit." *Id.* at *19."; ***not so***. The claims against Defendant Thonis in New Hampshire were not dismissed and the order only pertains to Jane and John Roe and Robin Melone. Plaintiffs filed a motion to reconsider the ruling[15] and an appeal due to a number of manifest errors including but not limited to the justification of dismissal based on Jane Doe's allegations in Nevada as the Court stated it was "premature" to bring claims against the Defendants because Jane Doe's allegations had not yet been ruled on while simultaneously and "prematurely" dismissing the complaint *before* Jane Doe's allegations were ruled on. *Second*, Plaintiffs' claims against those Defendants are *entirely unrelated* to the claims brought against Defendants here. Without fully briefing this Court in an effort to save time, Plaintiffs **have never met Jane Doe** *and* have proven that to be true in Nevada *for four years*. Plaintiffs are pursuing criminal charges against Jane Doe in the state of Massachusetts for her crime of perjury pursuant to her two depositions held in Massachusetts[16]. Be that as it may, there are no relevant facts in the NH Order which pertain here, but Defendant's supplementation is a clear attempt to manipulate this Court into believing that Plaintiffs' lawsuits are "harassing" and "intimidating", rather than justice being sought. *Third*, Defendants states, "[…] [the order] acknowledged that one of the plaintiffs in the Nevada case

---

[15] ECF No. 58 – the New Hampshire District Court case 1:24-cv-00220-SM-AJ.

[16] Plaintiffs were forced to obtain a Court Order allowing them to turn over Jane Doe's and the other Nevada Plaintiffs' depositions to law enforcement as Plaintiffs actively pursue criminal charges against them for their crimes as the Nevada Plaintiffs and their counsel did not consent to the Buttons' request to submit them to law enforcement. Additionally, Jane Doe 1 is the only Plaintiff in Nevada who name Plaintiff Dusty Button as a Defendant in Nevada but the Plaintiffs here have never met her and further, cannot even provide the Courts with that proof because of the protective order the attorneys from Boies Schiller & Flexner ensured was in place, forcing the Plaintiffs to litigate with their hands tied behind their backs, unable to properly defend themselves.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

withdrew from the suit after experiencing "severe online harassment from the Buttons in retaliation for her claims."; ***not so.*** What the NH Court actually stated, (when the Roe's stated Plaintiffs' litigation against them was "vexatious") was: "***Those claims*** *–which the court need not specifically address – do find some support in the "Notice of Voluntary Dismissal" filed by one of the plaintiffs in the Nevada litigation. In it, she reported that she was withdrawing her claims against the Buttons "due to severe online harassment from [the Buttons] in retaliation for her claims*." Nevada Litigation, Notice of *Voluntary Withdrawal (document no. 132) at pages i-ii*" and (in footnote), "*The court notes that the Buttons did move to strike that language from the Notice of Voluntary Withdrawal but, following a hearing on the matter, the Nevada court denied that motion.*" Plaintiffs never harassed Ms. Doherty, proven through subpoenas issued by Boies Schiller attorneys to Meta and other social media platforms; and while Plaintiffs ***did file a motion to strike*** that language in Nevada*,* (after losing their counsel due to the inability to fund representation); the Nevada Court only denied the motion because it was improper, not because the Buttons harassed Ms. Doherty, (they did not). It bears noting that Ms. Doherty withdrew *the day after* the Buttons sent her requests for admissions, along with three hundred files proving her allegations to be fraudulent and malicious[17].

*Finally*, Defendant states, "the court also found that the Buttons violated orders of the Nevada court by filing pleadings with "sealed, highly confidential materials" from that case". While Plaintiffs have already addressed this with both Courts, Plaintiffs note that the Nevada District Court stated: *"While I find Defendants' conduct in violation of the Court's Orders, I*

---

[17]  The Nevada Court specifically stated that it only denied the Plaintiffs (Nevada Defendants) Motion to Strike, because it was improper by law; stated at the April 5th, 2023 hearing: "ECF No. 140 also seeks to strike language this time from the dismissal in Juliet Doherty's dismissal. And the same standards apply to that – to that dismissal, as I've just described. And while there is language in the dismissal that, I understand, the Buttons object to or find offensive and I don't take issue with their feelings or their concerns about it, it is not appropriate under the law to strike that." ECF No. 163 pg. 9 ] in Nevada; See also ECF No. 63 in NH, Motion to Reconsider

1    *do, as I have previously, provide guidance and an opportunity for compliance.* **To ensure the**

2    **Buttons have access to the Courts**[18] *[...]";* Plaintiffs filed the NH case under seal and

3    intentionally **did not file** *any documents* to support their allegations to avoid issue regarding

4    Jane Doe's pseudonym or compliance with the protective order. *Pro se* Plaintiffs have been

5    diligent in navigating the **severe restrictions** imposed by the Nevada Court which gag them

6    from speaking of or providing irrefutable evidence to other Courts, leading to frustration

7    because those Courts then conclude the allegations made by Plaintiffs are "bald and

8    conclusory"; if Plaintiffs could present the evidence they possess, the outcome would

9    undoubtedly be different. Regardless, the Order of the NH Court has *nothing to do* with the

10   claims brought against the Defendants here and their actions merely mimic those of the BSF

11   attorneys which **prove** Plaintiffs' claims of civil conspiracy to be true.

12                                    LEGAL STANDARD

13          "To survive a motion to dismiss, a complaint must contain sufficient factual

14   matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

15   *Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, "all well-pleaded

16   allegations of material fact are taken as true and construed in a light most favorable to the

17   non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th

18   Cir. 1998). A claim is facially plausible "when the plaintiff pleads factual content that allows

19   the court to draw the reasonable inference that the defendant is liable for the misconduct

20   alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must accept as true all of

21   the [factual] allegations contained in a complaint," but the Court is not required to accept

22   "legal conclusions," and mere "conclusory statements" are not factual allegations. Here,

23   _____

24   [18] ECF No. 421- Nevada District Court case 2:21-cv-01412-ART-EJY

18

**PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS**

Plaintiffs plead factual content that allows the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged; as stated further herein.

ARGUMENT

IV.    The Buttons Were Defamed by Ms. Jacobs and the New York Times and The Claims Against Them Should Not Be Dismissed

Discovery is **imminent** in this litigation. Though not required at this stage of the case, or in response to a 12(b)6 motion, Plaintiffs are prevented from disclosing the *actual* material documents obtained during the Nevada litigation including deposition testimony by the Plaintiffs in Nevada which affirm the Buttons' claims against the Defendants. It would be **unjust** to deny Plaintiffs a reasonable opportunity for discovery particularly because the protective order in Nevada prevents them from using documents and material which supports and verifies their claims against the Defendants and appropriately justifies their course of remedy for the injustices, they have endured by filing this lawsuit. For this reason alone, Plaintiffs' claims **must survive the Motion to Dismiss**.

Regarding the Defendants argument that New York's anti-SLAPP law should apply, it should not. First, the Plaintiffs already proved that Ms. Jacobs's knowingly and falsely stated that "a lawyer for the Buttons denied the charges", as she knew that the Buttons were not charged with a crime but intentionally chose to make that defamatory statement, knowing it would have a significant impact on the Buttons' careers, businesses and reputations as the Buttons' businesses, goods and services were themselves, branded by their own person, which garnered income but was immediately destroyed after Ms. Jacobs's publication. Anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") laws are designed to discourage the use or threat of litigation to stifle free expression. In November 2020, New York State amended its anti-SLAPP statute to greatly expand its protections. Since

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS' MOTION TO DISMISS

this amendment, federal courts have wrestled with whether the law (or portions of it) apply in federal cases — sometimes struggling to determine which provisions are substantive (and therefore applicable in federal actions) and which are procedural (and therefore inapplicable). The anti-SLAPP law must not apply to the Defendants here because the false statements were not freedom of expression but knowingly false statements of fact. The Defendant was not "freely expressing" herself when she made the decision to defame the Plaintiffs by leading the Court of public opinion to believe that the Plaintiffs had been charged with a crime; nor did she have any moral compass when she decided to mislead the public in believing Mr. Button was a dance teacher, though uninvolved for nearly twelve years; nor did she consider the opposing evidence prior to writing and publishing her article, to aid Boies Schiller & Flexner in their litigation against the Buttons while simultaneously destroying everything the Buttons' had ever worked for. Aside from the lack of morale, the Defendant should not be allowed to strip the Plaintiffs of their entire livelihoods with false statements to the public without consequence as there is a difference in respective journalism and merely writing an article for shock value. Furthermore, the lawsuit against the Buttons was not of public concern as it was a private matter until the attorneys from Boies Schiller & Flexner unethically played to the media and litigated strategically in the court of public opinion to make it one.

In Tsamasiros v. Jones, the Second Department continued a significant trend of New York courts borrowing from case law in the defamation context to determine what constitutes matters of "public interest" that trigger the protections of the anti-SLAPP statute. The court's decision in Tsamasiros is significant because it solidifies a trend of New York courts looking to the standard for "public concern" under defamation law--set forth in *Huggins v. Moore*, and its progeny--to define what constitutes a matter of "public interest"

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

under New York's anti-SLAPP statute. Tsamasiros provides assurance for future anti-SLAPP

litigants that they may consider the wealth of New York defamation case law defining a

matter of "public concern" in determining whether the "gross irresponsibility" standard

applies in crafting arguments about whether their case involves a matter of "public interest"

triggering the protections of the anti-SLAPP statute. The Nevada litigation was not of public

concern until Ms. Jacobs made it one and therefore, the anti-SLAPP laws **should not apply**.

     a.   The Buttons' Claims are Not Time-Barred

       The Defendants claims must not be viewed as defamation claims, as the claim is

most appropriately related to the destruction of the Buttons' goods, services and business which

were also their reputations and expertise in their fields. The Plaintiffs believe that the claim of

Injurious Falsehood is most appropriate here because *the Plaintiffs were their goods*, services and

business, because of their occupation, and because they are not mere defamatory statements which

harmed more than just their reputation. Given that Plaintiffs' claims must be taken as injurious

falsehood claims, they are not time-barred. A claim for injurious falsehood "must plead with

particularity both the alleged falsehood on which it is based", (BCRE 230 Riverside LLC v Fuchs,

59 AD3d 282, 283 [1st Dept 2009].) Here, the Plaintiffs have plead the alleged falsehood against

Ms. Jacobs and The Times and additionally stated the contracts, sponsors, business relationships

and employment which was lost as a direct cause of Ms. Jacobs and The Times. Plaintiffs' claim

of Injurious Falsehood is **not** time-barred as N.Y. provides a three-year statute of limitations

for Injurious Falsehood[19]. Defendants' defamatory article was published on July 29th, 2021.

Plaintiffs filed their complaint on July 29th, 2024, therefore, Count I of Injurious Falsehood is

_____

[19] Consolidated Laws of New York. Civil Practice Law and Rules CH 8 Article 2 Section 214 (2019);
Restatement (2d) of Torts, § 623A; Restatement (2d) of Torts, § 630; Court Opinions.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

timely and **must not** be dismissed[20]. The tort of injurious falsehood "consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment." Kasada, Inc. v. Access Capital, Inc., No. 01 Civ. 8893 (GBD), 2004 WL 2903776, at *15 (S.D.N.Y. Dec. 14, 2004) (quoting Waste Distillation Tech., Inc. v. Blasland & Bouck Engineers, P.C.,136 A.D.2d 633, 523 N.Y.S.2d 875, 877 (2d Dep't 1988) ) (internal citation marks omitted). Grayson v. Ressler & Ressler, 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017). Because of the Defendants actions in writing and publishing a defamatory article about the Plaintiffs goods, services and business, it destroyed the Buttons' inability to work at all because the quality of those goods, services and business were destroyed.

      b.  The Buttons' Reputation was Their Business

While the Defendants' published article is defamatory, particularly when referring to "denied charges", the Plaintiffs reiterate that Ms. Jacobs and The Times damaged the Plaintiffs' goods, services and business. Mr. Button's brand was himself and therefore his goods and services were solely based on the quality of his work and branding of his work. The Plaintiffs did not own a business and therefore, their goods and services including any business which others sought were directly related to the Buttons themselves and what they offered as an expert in their field. Ms. Jacobs knew that and the article was intentionally published to sever any and all contracts, (as listed in the Amended Complaint), between the Buttons and other third-parties which immediately followed Ms. Jacobs's article and reposted it. While the Defendants claim that

---

[20] In addition, in order for Ms. Jacobs to benefit from the fair report privilege, she must present a balanced and neutral account of the proceedings, not selectively highlighting only damaging information. She did not. In fact, the Defendant admits that Ms. Jacobs specifically used the word "charges", indicating the Plaintiffs had been "charged" with a crime. Her words were intentional as it is on par with Boies Schiller & Flexner's false narrative, which has since failed in Nevada.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

because the article was not particularly discussing Dusty being named as a Defendant, (by a woman the Plaintiffs have never met), the article falsely accused Dusty, (as well as Taylor), of sexual misconduct and therefore, the quality of her goods and services, (which was her image and expertise as a dancer, choreographer and teacher), were damaged so much so that she lost every contract with every sponsor, employer, business affiliate and even contracts that were in place but had not yet come to fruition and were terminated as a direct result of Ms. Jacobs and The Times.

      c.   The Claims are Not Barred by The Fair Report Privilege

Here, the Defendant uses the Fair Report Privilege as a defense but the Defendant could not "fairly" or accurately report on anything that had not yet been filed with the Court and therefore, her interview with the Nevada Plaintiffs in collusion with Boies Schiller & Flexner, directly proves that the published article was written based on hearsay and statements made by Ms. Humphries and Ms. Menichino, not the Nevada complaint itself. Be that as it may, the Plaintiffs ask this Court to take judicial notice of the Nevada District Court Order on August 5th, 2024, when referring to the Buttons' defamation claims against the Nevada Plaintiffs including Ms. Humphries and Menichino[21]. The Restatement (Second) of Torts § 611 (1977) defines the privilege: "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deal s with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." As previously stated, Ms. Jacobs' article was not accurate nor was it the least bit "fair" including because, (as admitted by the Defendant), she did not even speak to the Defendants prior

---

[21] The Court finds, as it did in its order on Plaintiffs' earlier motion to dismiss, that **factual issues** prevent the Court from concluding that the fair reporting privilege applies to Plaintiffs' statements. See Restatement (Second) of Torts, § 611 cmt. c. (stating, "A person cannot confer [the fair reporting] privilege upon himself"); *Wynn v. Assoc. Press*, 136 Nev. 611, 613, 475 P.3d 44, 47 (Nev. 2020) (citing § 611 of the Second Restatement of Torts and applying summary judgment standard in deciding whether statements were privileged); *Shapiro*, 389 P.3d at 269 (observing that the analysis of whether statements are privileged "is a case-specific, fact-intensive inquiry that must focus on and balance the underlying principles of the privilege").

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

1    to filing her defamatory article and Plaintiffs reiterate that Ms. Jacobs's statements were not

2    accurately reporting from the proceeding because it had not even been filed prior to Ms. Jacobs'

3    article being published.

4            d.    The Buttons were Never Charged with a Crime

5                    "Defamatory statements should be construed as they would be commonly

6    understood in the context of their publication and a court should not render statements actionable

7    by giving them a strained or artificial construction." Cortes v. Twenty-First Century Fox Am.,

8    Inc., 285 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (cleaned up), aff'd, 751 F. App'x 69 (2d Cir.

9    2018). Here, any common reader would presume the Buttons were charged with a crime, even

10   within the context of the article and readers did in fact presume that to be true. Even as late as

11   February 6th, 2025, readers of the NYT article about the Plaintiffs are still continuing to state that

12   the Plaintiffs are "locked up" – (see Exhibit 2 – social media user states, "Button Built, him and

13   his wife locked up for human trafficking."). Defendants are responsible for this because of the

14   use of the word "charges", and while they are free to defend themselves, the Court of public

15   opinion including a jury pool is tainted and prejudiced against the Plaintiffs in every litigation,

16   including in Nevada because of Ms. Jacobs's and The Times's actions.

17            i.    Plaintiffs Are Not Public Figures and Therefore, Do Not Need to Plead

18                    Actual Malice but Do So Anyway, in Their Amended Complaint

19                    *First*, in *Four Star Stage Lighting v. Merrick*, the Court expanded on the types

20   of defamatory statements that might injure another in their business or profession. In New

21   York, statements imputing "any kind of fraud, dishonesty, misconduct, incapacity, unfitness,

22   or want of any necessary qualifications" *can be presumed to injure another's professional*

23   *reputation.* The Defendants wrote about statements of sexual misconduct which were not yet

24   filed with any Court and additionally misled the public to believe the Plaintiffs were charged

25

26

27

28

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

with crimes. *Second*, the Nevada District Court squarely rejected the Boies Schiller attorney's claim that the Buttons were public figures or even limited-purpose public figures. On August 5th, 2024 the Nevada District Court Ordered: "Here, the Court finds that Plaintiffs' allegations fail to show that [the Buttons] voluntarily inserted themselves into a prominent role in the public issue of sexual abuse in the dance industry simply by being a famous dancer or married to a famous dancer. Similarly, to find that Defendants voluntarily inserted themselves into this issue of public concern by allegedly committing acts of sexual abuse would require courts to find that all people with some fame accused of a crime are necessarily limited purpose public figures." Black's Law defines a "Public Figure" as "A person who has achieved fame or notoriety or who has voluntarily become involved in a public controversy", Black's Law, 3rd Pocket Ed. In Gertz, the Court described a public figure as: "[A]n individual [who has achieved] such persuasive fame or notoriety that he [became] a public figure for all purposes and in all contexts." – Gertz v. Rober Welch, INC., 418 U.S. 323, 351 (1974) and then defines a "Limited Purpose Public Figure" as: "A person who, having become involved in a particular public issue, has achieved fame or notoriety only in relation to that particular issue.". The Defendants here, meet the criteria of neither a public figure or limited-purpose public figure. Pegasus v, Reno Newspapers, Inc., 57 P.3d 82, 91 (Nev. 2002) (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974)). In Pegasus, the Nevada Supreme Court adopted the test outlined in Gertz, which focuses on whether the people played a voluntary and prominent role in a matter of public concern. Id. (citing Gertz, 418 U.S. at 351). Plaintiffs have never voluntarily played a role in a matter of public concern and the manipulation of their careers do not affect the criteria necessary to be met to become a limited-purpose public figure or public figure just because Mrs. Button was a ballet dancer who additionally taught dance classes to

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS' MOTION TO DISMISS

adults and children over the course of her career. Mr. Button was successful in the automotive industry but was not famous and the manipulation that the Buttons were famous as a couple in the dance industry is intentional though entirely untrue. The Nevada District Court's Order on August 5th, 2024, also stated, "Because the Court concludes that [the Buttons] are not limited purpose public figures, they ***were not required to allege actual malice in their defamation claims***". The Defendant states, "It is not defamatory (and the Buttons never allege that it could be) to report that the couple denied the accusations against them in the civil suit, nor is it false", but the Defendant did not say "denied the accusations", which would have not been defamatory; instead, the Defendant states a "lawyer for the couple **denied the charges**" and does not quote any lawyer. Defendants' choice of word is charges, not accusations which they admit would not have been defamatory, thereby admitting that the use of the word charges *was*, and they knew it[22].

V.    Plaintiffs' Tortious Interference, NIED and Civil Conspiracy Claims

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." Grayson v. Ressler & Ressler, 271 F. Supp. 3d 501, 519 (S.D.N.Y. 2017). As stated in

---

[22] Defendants state that Plaintiffs do not allege actual malice but they do in their Amended Complaint, including at ¶102, 227, 291, 299, 352, and 369. Further, based on information obtained in Sage Humphries' deposition, the Plaintiffs, (upon information and belief), understand that Ms. Jacobs was provided with documents which contradicted statements made to her, which she should have used to verify the statements made by Humphries and Menichino, and their attorneys including but not limited to Sage Humphries' abuse prevention order from 2017 which states she was in an open dating relationship with the Plaintiffs, was not forced, threatened or under duress during the time she was in a relationship with the Plaintiffs and waived all monetary damages. As an aside, the Plaintiffs filed to vacate those orders after receiving documents in the Nevada discovery which proved Sage Humphries obtained those orders through fraud on the Court including false police reports, (which were sent to Ms. Jacobs), and false statements made to the Court at an ex-parte hearing where the orders were made permanent, including statements by Ms. Humphries and her attorney that the Plaintiffs were "stalking her" and that they were selling illegal firearms in California, (provenly false statements), which the Plaintiffs have provided evidence against in the Massachusetts Appeals Court and to the Boston Police Department, the Somerville District Attorney's Office and the Orange County Sheriffs' Department. Appeal Case 2023-p-1202.

the Plaintiffs' Amended Complaint, Ms. Jacobs knew of various contracts between the Plaintiffs

and sponsors including because she followed them on social media, which the Plaintiffs later

discovered[23]. Ms. Jacobs's intentional acts were not justified and her actions resulted in the

complete destruction of the Plaintiffs' careers, livelihoods, business and reputations for the

foreseeable future. Next, Ms. Jacobs and the Times caused Plaintiffs significant emotional

distress by publishing inaccurate and harmful information without taking proper care to verify

facts nor did they consider the potential impact on the Plaintiffs; or they did, and did not care.

The Defendants published false information about Plaintiffs "criminal" history, leading to

social stigma and distress and additionally reported on a sensitive personal matter without

obtaining proper consent or taking steps to protect the Plaintiffs' privacy. Ms. Jacobs knew

that her reporting would cause significant emotional distress to the Plaintiffs but disregarded

information which countered Humphries' and Menichino's statements for a "hit piece".

Finally, Plaintiffs' civil conspiracy claim must survive because their other claims survive[24].

The Plaintiffs plainly stated that The Times and Ms. Jacobs' spoke to the BSF attorneys and

their clients prior to the Nevada complaint being filed and that Ms. Jacobs' article derived

from those statements and not from the complaint, proving that Ms. Jacobs and the Times

entered an agreement which allowed her inside information to allegations which had not yet

even been filed with the Court, thereby proving a conspiracy exists to influence public

opinion, sway potential jurors, cripple the Buttons' defense, (who had no knowledge of the

---

[23] ¶ 334 Am. Comp. "Ms. Jacobs contacted numerous third-parties for comment on the allegations regarding the Buttons including but not limited to Boston Ballet, ASH productions, BLOCH Dance USA, Toyo Tires, Red Bull, Master Ballet Academy and others prior to the Plaintiffs even learning of the lawsuit against them to warn them of the allegations against the Plaintiffs and to lead them to believe the Plaintiffs had been charged with crimes of sexual assault when they had not."

[24] The Plaintiffs are not Public Figures or Public Officials and therefore, do not need to plead malice however, the Plaintiffs make it clear throughout their Amended Complaint that the false statements were made with actual malice and reckless disregard for the truth of those statements.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

1
2

lawsuit or the allegations), and to help the Nevada litigants gain an unfair advantage in

litigation including in the Court of public opinion. All of the Plaintiffs' claims **must survive.**

3
4

VI.    The Claims against Mr. Blaisdell and Mr. McCraw Succeed

5

        The Defendants claim again, that the Buttons' claims against Mr. Blaisdell and

6

Mr. McCraw are a "frivolous", preposterous and grand conspiracy theory; but the Buttons

7

plead facts which prove the conspiracy is not a theory. As stated generally in Plaintiffs'

8

Amended Complaint, it is no conspiracy that after communicating with the proper attorney for

9

The Times, (Mr. McCraw), that suddenly, the Plaintiffs were instructed to speak to Mr.

10

Blaisdell, a former attorney with the same Boies Schiller & Flexner office in New York that

11

Ms. Ruff and Mariella are assigned to and the Defendants defense to the Plaintiffs' claims are

12

that, "coincidences happen", neither a legitimate or legal argument. Contrary to the

13

Defendants' arguments, the Plaintiffs Amended Complaint describes in detail just how this

14

"conspiracy" occurred and how inside information was obtained by Mr. Blaisdell about a

15
16

litigation he was not a part of prior to speaking to the Plaintiffs. Plaintiffs would be more

17

inclined to believe this "coincidence" were it not for Boies Schiller's infectious interference in

18

all other litigations anytime the Plaintiffs threaten the exposure of their fraud[25].

19
20

---

21

[25] Plaintiffs have not been litigating against the Nevada Plaintiffs for years and instead have been litigating against attorneys from Boies Schiller & Flexner and their unethical tactics. Plaintiffs filed a lawsuit in the

22

Southern District Court of California – 8:24-cv-01730-JVS-DFM against the parents, (who provenly committed fraud in 2017, 2018, 2023 and 2024 in three different Courts), of Ms. Humphries – they are represented by Ms.

23

Mariella, Ms. Ruff and Ms. McCawley and Alison Anderson (BSF California counsel); the other two defendants in that case are **also** represented by a former BSF associate, Micol Smalls. Plaintiffs filed a lawsuit against Sigrid McCawley in the Southern District Court of Florida and she is represented by counsel from BSF. Defendants

24

**here** are represented by attorneys from BSF. Plaintiffs filed a lawsuit against former Nevada Plaintiff, Juliet Doherty, her mother and her photographer; 1:24-cv-05026-JPC-KHP in the SDNY; Ms. Mariella, Ms. Ruff and

25

McCawley represent them. Plaintiffs are *pro se* and continue to diligently learn but the Boies Schiller Flexner firm, (known for intimidation), has a vast reach and the Plaintiffs are merely seeking justice as two innocent

26

parties but the Courts continuously *believe* Boies Schiller & Flexner, "would never lie to the Court", so the Plaintiffs are navigating the manipulative tactics from BSF while trying to prove to every Court that what they

27

allege is the truth. At the April 5th, 2023 hearing, Judge Youchah stated she, "*seriously doubts an attorney from Boies Schiller would stand up the Court room and lie to [her]*" Hr. Tr. Pg 56. When Defendants told the Court they could prove Ms. McCawley lied to the Court, the Court then **warned** Defendants stating, "I'd be careful

28

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

1

2          In Tigano v United States, the 527 F Supp 3d 232, 249 [ED NY 2021] [citations

3     omitted]. Court in sustaining the claim for negligent infliction of emotional distress, stated "the

4     Court notes that outrageous conduct is not an essential element of an NIED claim. While certain

5     courts in this district cited by both Plaintiff and Defendants previously held that '[u]nder New

6     York law, the tort[ ] of . . . negligent infliction of emotional distress [requires, inter alia conduct,'

7     New York courts have since disavowed the 'extreme and outrageous conduct' requirement,]

8     extreme and outrageous. "We now clarify that a breach of a duty of care resulting directly in

9     emotional harm is compensable even though no physical injury occurred (Kennedy v McKesson

10    Co., 58 NY2d at 504"; BROWN v. LLC (2023) Appeal No. 17203 Decided March 09, 2023

11    United States Supreme Court, Appellate Division, First Department, New York. see Ornstein, 10

12    NY3d at 6; Baumann v Hanover Community Bank, 100 AD3d 814, 816 [2d Dept 2012]; Cleary v

13    Wallace Oil Co., Inc., 55 AD3d 773, 775 [2d Dept 2008]). Further, An attorney may owe a duty to

14    a third party if the attorney was hired for the purpose of benefitting a third party. See MacLeish v.

15    Boardman & Clark LLP, 924 N.W.2d 799 (Wis. 2019) (non-client named as a beneficiary in a will has

16    standing to sue attorney for malpractice if beneficiary can demonstrate attorney's negligence impeded

17    testator's intent); Calvert v. Scharf, 619 S.E.2d 197 (W. Va. 2005) (intended beneficiaries of a will

18    who are specifically identifiable can sue lawyer who prepared will when they can show the testator's

19    intent was frustrated by the negligence of the lawyer resulting in the loss of the beneficiaries' interest

20    under the will); see also Ronald E. Mallen and Jeffrey M. Smith, Legal Malpractice § 7.10, at 379 (3rd

21    ed. 1993) ("the vast majority of modern decisions have favored expanding privity beyond the confines

22    of the attorney-client relationship where the plaintiff was intended to be the beneficiary of the lawyer's

23    retention."). Here, Mr. McCraw and Mr. Blaisdell engaged in inappropriate obstruction of an ongoing

24    litigation and misled the Plaintiffs, who are *pro se*, to believe they could not appropriately seek legal

25

26

27    _____
      what you say Ms. Button" and later, deterred Defendants from filing BAR complaints; It should be noted that
28    Ms. McCawley brought her own BAR counsel to the next hearing on August 1st, 2025.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

recourse because it "would not be fruitful" and that it would be a "waste of time". While Plaintiffs are diligently learning the rules of litigation, they are continuously frustrated by Boies Schiller's tactics in preventing them from pursuing their rights to due process, including by using other third-parties like Mr. Blaisdell and McCraw. Defendants are used to flying under the radar, and their misconduct is often viewed as "typical" but the Plaintiffs argue that there is nothing "typical" about a firm and a news publication conspiring so that the Plaintiffs' truth will never be exposed, which would in turn expose their misconduct, as Plaintiffs have alleged. Mr. McCraw and Blaisdell prevented the Plaintiffs from filing this lawsuit sooner because they intimidated them into believing they could not and that it was unlawful for them to do so. Defendants played a role in obstructing the Plaintiffs' pursuit of justice by colluding with the attorneys who represent clients who have made horrendous false allegations of sexual assault against them so that they may maintain their false narrative against them[26]. All of these claims give rise to Plaintiffs' NIED and Conspiracy Claims against Defendants. It is in the public's best interest for this case to resolve on the merits. While Plaintiffs strongly believe in the First Amendment, one cannot create and publish a false narrative for purposes of fame, notoriety, and gaining an unfair advantage; resulting in the destruction of everything the Plaintiffs have ever worked for. That is not what the First Amendment is for and it must not be used that way.

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny the Defendants' Motion to Dismiss and allow this case to proceed to discovery so that the Plaintiffs may exercise their rights to pursue the justice they deserve.

---

[26] It should be noted that, (as stated in Plaintiffs' letter and response to the Defendants Ruff and Mariella's notice of authority), Plaintiffs discovered evidence of fraud on the Court committed by Sage Humphries over five years after she obtained abuse prevention orders against the Plaintiffs in 2017, made permanent in 2018 at an ex-parte hearing with false allegations of stalking and the selling of illegal firearms; and filed over eight different false police reports which stated her allegations were unfounded but she withheld from the Courts. The Plaintiffs presented those to the Massachusetts Appeals Court and filed to vacate those orders on the grounds of fraud on the Court committed by her and her former attorney in Massachusetts – the BSF attorneys then replaced her former counsel and argued on October 8th, 2024 that "lying to the Court is not fraud on the Court". These attorneys must be held responsible, as should their co-defendants.

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

1

Respectfully dated this 7th day of March,

2

3

4 _____

5 Dusty Button and Mitchell Taylor Button

6 (*Pro se*)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS'
MOTION TO DISMISS

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

The undersigned hereby certifies that pursuant to Local Civil Rule 7.1. Motion Papers - For briefs filed by unrepresented parties, handwritten or typewritten: Briefs supporting or responding to a motion may not exceed 25 pages – this brief and response is 25 pages in which the Plaintiffs relied on Microsoft Word to verify the page count.

The undersigned hereby certifies that the foregoing document was filed with Prose@nysd.uscourts.gov on March 7th, 2025.

Dated this 7th day of March, 2025,

/s/_____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/_____

Signature of Plaintiff Mitchell Taylor Button (*Pro se*)

PLAINTIFFS OBJECTION / RESPONSE TO THE NEW YORK TIMES DEFENDANTS' MOTION TO DISMISS