USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/15/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DUSTY BUTTON and MITCHELL TAYLOR
BUTTON,

                Plaintiffs,

-against-

THE NEW YORK TIMES COMPANY, JULIA
JACOBS, LINDSEY RUFF, SABINA
MARIELLA, DAWN SCHNEIDER, DEMETRI
BLAISDELL, and DAVID MCCRAW

                Defendants.

1:24-cv-05888-MKV

**ORDER & OPINION GRANTING
MOTIONS TO DISMISS
& DENYING ATTORNEYS' FEES**

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiffs Dusty Button and Mitchell Taylor Button (together, "Plaintiffs" or "The Buttons"), proceeding *pro se*, assert a number of claims in this Diversity action[1] alleging that Defendants New York Times Company (the "Times"), Julia Jacobs, Lindsey Ruff, Sabina Mariella, Dawn Schneider, Demetri Blaisdell, and David McCraw (together, "Defendants") have engaged in a wide-ranging conspiracy to defame Plaintiffs and destroy their personal and professional lives. [ECF No. 34 ("AC") at ¶¶ 1-28]. This case centers around a separate lawsuit filed against the Buttons (the "Nevada Litigation") and an article published by the Times about the case (the "Times Article"). AC ¶ 65. On July 29th, 2024, exactly three years after the Times Article was published, Plaintiffs commenced this action. [ECF No. 1]. This action is one in a series of several suits brought by the Buttons against various parties associated with the Nevada Litigation and the allegations underlying the suit, including one other case before this Court.[2]

---

[1] Plaintiffs allege that all defendants are citizens of New York, that they are citizens of South Carolina, and that their damages exceed $75,000. [ECF No. 34 ("AC") at ¶¶ 29-37].

[2] *See Button v. Lopresti*, No. 25-CV-867-DMS-DDL, 2025 WL 1953272, at *3 (S.D. Cal. July 16, 2025) (service pending); *Button v. Melcher*, 771 F.Supp.3d 76, 80 (D. Mass. 2025) (motion to dismiss entire case granted); *Button*

Defendants Times, Jacobs, Blaisdell, and McCraw, (collectively, "Times Defendants"), Defendants Ruff and Mariella, (collectively, "Boies Schiller Defendants" or "Ruff and Mariella"), and Defendant Schneider move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  [ECF Nos. 36, 38, 41].  The Times Defendants additionally request reasonable attorneys' fees pursuant to New York Civil Rights Law section 70-a.  [ECF No. 41 (citing N.Y. Civ. Rights L. § 70-a(a)].  For the following reasons, Defendants' motions to dismiss are GRANTED and the Times Defendants request for attorneys' fees is DENIED.

## FACTUAL BACKGROUND[3]

### I.    The Parties

Plaintiff Dusty was a ballet dancer who danced in several ballet theatres, including the Boston Ballet at which she was a principal ballerina in 2014. AC ¶¶ 45–47.  Mitchell Taylor Button ("Taylor Button") was a Ferrari and military vehicle designer and builder.  AC ¶ 51.  Julia Jacobs is a journalist who wrote the subject Times Article, and Demetri Blaisdell and David McCraw are attorneys who represent the Times.  AC ¶¶ 31, 36–37; Times Article.  Lindsey Ruff and Sabina Mariella are Boies Schiller Flexner LLP attorneys representing the Nevada Litigation

---

*v. Thonis*, No. 24-cv-220, 2025 WL 1092636, at *5 (D.N.H. Apr. 11, 2025) (motion to dismiss entire case granted); *Button v. Humphries*, No. 8:24-cv-01730, 2025 WL 1820116, at *4 (C.D.C.A. June 9, 2025) (motion to dismiss entire case granted with prejudice); *Button v. McCawley*, 24:cv-60911, 2025 WL 50431, at *12 (S.D.F.L. Jan 8, 2025) (motion to dismiss granted with prejudice in part and without prejudice in part); *Button v. Roe*, No. 24-cv-220, 2024 WL 5136694, at *1 (D.N.H. Dec. 17, 2024) (motion to dismiss case in its entirety granted); *Button v. Doherty*, No. 1:24-cv-05026-JPC-KHP (S.D.N.Y.) (motion to dismiss pending, Report & Recommendation suggests granting motion to dismiss case in its entirety); *Button v. Breshears*, No. 1:24-cv-03757-MKV (S.D.N.Y) (motion to dismiss pending).

[3] The Court draws the facts recited in this Opinion from the Amended Complaint [ECF No. 34 ("AC")], the well-pleaded facts of which are accepted as true for purposes of resolving this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The facts are also drawn from documents incorporated into the pleading by reference, including the New York Times article titled *"Former Dance Instructor Accused of Sexual Assault in Lawsuit"* that is at the heart of this dispute. *See* Times Article;  *see also Kleinman v. Elan Corp., plc*, 706 F.3d 145, 147 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  The Court also takes judicial notice of the Nevada Litigation to establish the facts of the proceedings, not for the truth of any facts asserted by parties or factual findings in the case.  *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

Plaintiffs in the Nevada Litigation and several other civil suits.  AC ¶¶ 11–12, 33–34.  Dawn Schneider is a public relations and communications director working with the Boies Schiller Defendants.  AC ¶¶ 35–37, 66.

## II.      The Nevada Litigation

On July 28th, 2021, Sage Humphries, Gina Menichino, Rosemarie DeAngelo, Danielle Gutierrez, Jane Doe 1, and Jane Doe 2, ("together, the "Nevada Plaintiffs"), represented by Ruff and Mariella, non-party Sigrid McCawley, and another attorney, filed a complaint in Nevada District Court ("Nevada Complaint") naming Mitchell Taylor Button ("Taylor Button") as a defendant and accusing him of sexual abuse, and naming Dusty Button as a "non-party co-conspirator."  *See Humphries v. Button*, No. 21-cv-01412, 2024 WL 3673079, at *1 (D. Nev. Aug. 5, 2024); Complaint, at ¶¶ 43–54, *Humphries*, No. 21-cv-01412, (D. Nev. July 28, 2021).[4]  The Buttons filed counterclaims against the Nevada Plaintiffs for defamation, abuse of process, and civil conspiracy.  *See Humphries*, 2024 WL 3673079, at *1.

Buttons allege that, in that case, Ruff and Mariella engaged in various acts of misconduct including that they are in possession of evidence that exculpates the Buttons, including "various text messages and therapy records."  AC ¶ 91.  The Buttons claim that despite this evidence, Ruff and Mariella have allegedly lied to a variety of federal and local law enforcement agencies by telling officers that the Buttons have sexually abused the Nevada Plaintiffs.  AC ¶ 197.  The Buttons also allege that Ruff and Mariella failed to share certain information about discovery with their own clients.  AC ¶ 182.

Furthermore, Plaintiffs assert that Ruff and Mariella have "intentionally and willfully lied to the courts" about a litany of other conduct by the Buttons.  AC ¶ 180 (including stating that the

---

[4] After several amendments, the operative complaint in the Nevada Litigation includes Dusty Button as a defendant. *See* Third Amended Complaint, *Humphries*, No. 21-cv-01412, (D. Nev. August 2, 2023).

Buttons "witness tampered," "stole data," "harassed and intimidated loved ones of their clients by filing lawsuits," "refused to take a lie detector test," "created an alias for their name," "assisted in evasion of a subpoena," made YouTube videos [the Buttons] did not make, "sent harassing emails," "did not confer," "violated the Boston abuse prevention orders" and "disclosed Jane Doe 1's identity"). Ruff and Mariella allegedly mischaracterized some of Taylor Button's actions, including characterizing his move to London as an attempt to flee the consequences of the Nevada Plaintiffs' allegation and construing his taking of Dusty Button's last name as taking an "alias." AC ¶ 182, 183, 191. Moreover, Ruff and Mariella alleged on behalf of Plaintiffs in the Nevada Complaint that the Buttons "abused another young girl" named Lena Mathews, an allegation that the now-adult woman has denied and that was stricken from the Nevada Complaint by the Nevada Court. AC ¶ 184-188. Ruff and Mariella also allegedly falsely stated that one of the plaintiffs in the Nevada Litigation was a minor at the time of the alleged abuse. AC ¶ 207. The Buttons further allege that Ruff and Mariella brought claims on behalf of Jane Doe 1 despite knowing that her allegations were wholly false. AC ¶ 92. It is further alleged that, at some point during the Nevada Trial, "[Ruff and Mariella's] conduct even caused a convicted felon of 19 years, Anthony Pellicano, to harass the Buttons and break into their home." AC ¶ 176.

The Buttons allege that Nevada District Court admonished Ruff and Mariella that they should "'seriously consider' their clients' claims," and that the Nevada District Court has not set a trial date. *See* AC ¶ 181. However, the Court notes that Nevada District Court denied the Buttons' motion to dismiss in full and dismissed the Buttons' abuse of process and civil conspiracy counterclaims. *See Humphries*, 2024 WL 3673079, at *7. Moreover, since the motion to dismiss briefing was filed in this case, Plaintiffs advised the Court that the Nevada District Court denied the Buttons' motion for summary judgment on the Nevada Plaintiffs' claims and granted in part

4

and denied in part the Nevada Plaintiffs' motion for summary judgment on the Buttons' defamation counterclaims. [ECF Nos. 62–64]; Order, *Humphries*, No. 21-cv-01412, (D. Nev. August 20, 2025).

### III.    The July 29th, 2021 Article

On July 29th, 2021, before the Buttons were served with the Nevada Complaint, the Times published an article written by Jacobs titled "Former Dance Instructor Accused of Sexual Assault in Lawsuit." AC ¶¶ 62-63; Julia Jacobs, *Former Dance Instructor Accused of Sexual Assault in Lawsuit*, N.Y. TIMES, July 29, 2021 (the "Times Article"). The article reported primarily on the Nevada Complaint, with a particular focus on the allegations brought by Humphries and Menichino and included statements from Humphries, Menichino, and their attorney. *See* Times Article. The article also stated that "[a] lawyer for the couple said that they denied the charges," and attributed the following quote to the Buttons' attorney: "Taylor and Dusty Button categorically deny these baseless claims and look they forward to the opportunity through court proceedings to disprove all of the plaintiffs' false and fraudulent allegations." *See* Times Article.

The Buttons assert in the Complaint here that the Times Article was published before they were aware of the Nevada Litigation, and they were not given an opportunity to comment. AC ¶¶ 141–42. The Buttons further allege that Jacobs "intentionally deceived the public" by referring to Plaintiff Taylor Button as a "former dance teacher" in order to "create a false narrative of two sexually abusive dance teachers to purposefully lead readers to believe this narrative and to destroy the careers and reputations of the Plaintiffs while knowing that Mr. Button was not involved in dance at all." [5] AC ¶ 97. The Buttons also allege that Jacobs purposefully used the

---

[5] Two paragraphs earlier, Plaintiffs state that "Mitchell Taylor Button has not danced or been involved in the dance industry since 2010." AC ¶ 95.

word "charges" when describing their attorney's statement rather than "allegations" to "intentionally [mislead] readers to believe Plaintiffs had been 'charged' with a crime." AC ¶ 108.

The Buttons further allege that Jacobs intentionally disregarded "factual documentation" purportedly adverse to the allegations in the Nevada Complaint that was either publicly available or provided to her by the Boies Schiller attorneys. AC ¶¶ 143, 204. Jacobs never issued any corrections to her article though the Buttons provided her with "evidence of false police reports filed by Sage Humphries." AC ¶ 265. The Buttons separately allege that Humphries provided to her attorneys "photo evidence and documents proving Sage Humphries' allegations to be entirely false and fraudulent" prior to Humphries' interview with Jacobs, but do not allege specifically that this evidence was provided to Jacobs. AC ¶¶ 155–57, 201.

## IV.   The Alleged Conspiracy

The Buttons allege that Jacobs did not " 'find' this lawsuit and then write, edit and publish her article hours after the complaint was filed." *See* AC ¶ 117. The Buttons claim that instead, before the Nevada Complaint was filed, Jacobs entered into an agreement with Ruff, Mariella, and non-party attorney McCawley arranging for the Jacobs to interview some of the future plaintiffs who filed the Nevada Litigation. *See* AC ¶¶ 66, 117. It is alleged that Schneider, the public relations director working on behalf of Ruff and Mariella, played a role in brokering this agreement. AC ¶¶ 8, 66. Plaintiffs allege that Ruff, Mariella, and Schneider "knew their narrative to be false but colluded with Julia Jacobs to produce and publish a 'story' which would corroborate their clients' false allegations and further, support their false narrative against Plaintiffs . . . ." AC ¶ 100.

They allege that the Nevada Complaint was purposely "defamatory" and "sensationalized," consisted of "perjured statements and lies," and was "published to a mass

audience." AC ¶¶ 188, 189.  According to the Buttons, the goal of the conspiracy was to "cripple [the Buttons'] defense against the [Nevada Litigation] as they knew . . . the misleading title of the article would destroy [the Buttons'] reputations and that it would result in the complete dissemination [*sic*] of [the Buttons'] careers and business relations. . . ."  *See* AC ¶¶ 8, 146.  The Buttons allege that attorneys Ruff, Mariella, and non-party Schneider, and Times journalist Jacobs contacted several of the Buttons' employers and urged these employers to stop working with the Buttons because that they had "been charged with a crime."  AC ¶ 179.  In particular, the Buttons allege "upon information and belief" that Schneider contacted "numerous media sources" including Pointe Magazine, to arrange for the Nevada Plaintiffs to be interviewed while knowing their allegations were false, and "upon belief" that Schneider told Pointe Magazine the Buttons had been charged with a crime.  AC ¶¶ 308–09.

The Buttons also allege that Ruff, Mariella, Schneider, Jacobs, and non-party McCawley "conspired" with another non-party, Madison Breshears, "to publish defamatory statements about the Buttons prior to the article being published in the New York Times."  *See* AC ¶¶ 70, 75–76.[6] The Buttons allege that attorneys Ruff and Mariella interviewed Breshears as a potential witness in the Nevada Litigation.  AC ¶¶ 80, 83.  After the interview and about three months before the Times Article was published, Breshears posted on social media calling Dusty Button a "predator" who "grooms young dancers for sex acts with herself and her husband."  AC ¶¶ 75–77.[7]

Years later, on October 1, 2023, the Buttons called Jacobs to discuss the contents of the Times Article and Jacobs told them to direct any future communications to her attorney David

---

[6] Though Plaintiffs allege that Sigrid McCawley and Madison Breshears were part of the conspiracy, they do not bring any claims against them here. The Buttons bring claims against Breshears individually in a separate case pending before this Court.  *See* Amended Complaint, *Button v. Breshears*, No. 24-cv-03757 (S.D.N.Y. August 4, 2024).

[7] The Buttons allege that these posts used nearly the "exact verbiage of what would soon be written in the Nevada complaint filed by Boies Schiller Defendants and published by Julia Jacobs three months later." AC ¶ 77.

McCraw, a Defendant in this case.  AC ¶¶ 113–19.  The Buttons emailed McCraw, informing him of their intent to serve a subpoena on Jacobs in furtherance of their counterclaims in the Nevada Litigation.    AC ¶ 120.    In reply, they received an email from Demetri Blaisdell—another Defendant in this case—in which he requested a phone call, stated that he represents Jacobs,  and requested that future communication be directed to him rather than Jacobs.  AC ¶¶ 121.  A later email from Blaisdell indicated that he represented both Jacobs and the Times.  AC ¶¶ 122.

Blaisdell was a former associate at Boies Schiller & Flexner LLP and worked at the same New York office as the Ruff, Mariella and non-party Schneider when the Times Article was published about the Plaintiffs and when Ruff and Mariella first represented Nevada Plaintiffs, Humphries and Menichino.  AC ¶ 121.[8]  Blaisdell, Ruff and Mariella each confirmed to the Buttons that they had spoken to each other about the Plaintiffs and their intent to subpoena the New York Times.  AC ¶¶ 125–26.

On a phone call, Blaisdell told the Buttons about "shield laws in New York and Nevada" that, in his view, would make it difficult for the Buttons to get information that Jacobs gathered in the course of her duties and urged them to "reconsider" serving a subpoena on Jacobs.  AC ¶ 128.  He also reiterated that he represents Jacobs.  AC ¶ 128.  A later communication from Blaisdell indicated that he would oppose any attempt to seek discovery form Jacobs and directed the Buttons to serve on him any subpoena of Jacobs.  AC ¶ 129.  Later, Plaintiffs allege that Blaisdell refused to set a time to discuss Jacob's retraction of the Times Article.  AC ¶ 134.[9]

---

[8] The Buttons do not directly allege where McCraw and Blaisdell worked while representing the Times.  *See* AC. However, copied emails from Blaisdell indicate that McCraw could be served at a Times office, suggesting that they both may have represented the Times as in-house counsel.  AC ¶ 167.

[9] Plaintiffs do not specify what the "proposed redaction" actually entailed.

Plaintiffs allege that on July 22nd, 2024, the Buttons contacted Blaisdell once more and asked if he was still active counsel on behalf of Jacobs.  AC ¶ 162.  In his response, Blaisdell informed the Buttons that McCraw and he represent the Times and Jacobs, informed them that both are authorized to accept service on behalf of the Times and Jacobs but would not accept service by email, and reminded them that the discovery period in the Nevada Litigation had closed and thus no additional subpoenas could be served.  AC ¶ 163.  Blaisdell later replied that the Times and Jacobs could be served through service on McCraw at a New York Times office.  AC ¶ 167. Plaintiffs allege that this caused confusion to the Buttons and "[delayed] the onset of this litigation" by an undisclosed period.  AC ¶ 269.

The Buttons assert that, in collusion with McCraw, Ruff, Mariella, Schneider, Jacobs and non-party McCawley, Blaisdell intentionally impeded the Button's defense and their ability to discover relevant information and intentionally delayed their ability to bring this suit by "intentionally intimidat[ing]" and convincing them that they would not be successful against "large and powerful corporations.  *See* AC ¶¶ 131, 132, 165, 170, 171.  Moreover, the Buttons allege that Blaisdell and McCraw's directions to contact or serve one another "was an intentional scheme against the Plaintiffs."  AC ¶ 169.

## V.    The Alleged Fallout after the Times Article

Prior to the publication of the Times Article, the Buttons worked as freelance contractors and managed several brands which used their name, image, and likeness, including Button Built, Button Brand, and Bravado by Dusty Button.  AC ¶¶ 222, 235–37.  Specifically, Dusty Button worked as a dance teacher, choreographer, and performer, while Taylor Button worked in the custom automotive industry.  AC ¶¶ 235-237.  The Buttons had contractual relationships with sponsors and event organizers in their industries, including BLOCH Inc., Tiger Friday, Capezio,

Yumiko, MPG Sport, Fenti, Volcom, Discount Dance, RedBull, and others (together, "Sponsors").  AC ¶ 239.

The Buttons allege that on an unspecified date, attorneys Ruff and Mariella, public relations director Schneider, and journalist Jacobs, all contacted some of the Sponsors "falsely claiming the Plaintiffs had been charged with a crime and that they should no longer work with them. . . ."  AC ¶ 179.  The Buttons assert that these communications directly caused the termination of Plaintiffs' relationship with those Sponsors.  AC ¶ 179.  The Buttons separately allege that, immediately following publication of the Times Article, each of their Sponsors terminated all contracts with the Buttons.  AC ¶¶ 239, 245–46.  Furthermore, Dusty Button's prescheduled engagements to teach, choreograph, or perform were canceled not long after the publication of the Times Article, as were Taylor Button's "pre-planned design builds."  AC ¶ 220, 221 226, 236–39.  "Button Brand," the Buttons' business, was shuttered and the Buttons allege that they were "forced to refund consumers for items already sold."  AC ¶¶ 240-41.  The Buttons allege Ruff, Mariella, Schneider, and Jacobs "knew that their statements were false" nevertheless intentionally caused that the downfall of their business and ability to generate income.  AC ¶ 228, 234.  The Buttons allege that they have been unable to find any work after the publication of the Times Article.  AC ¶ 214.

## PROCEDURAL HISTORY

Plaintiffs, proceeding *pro se*, filed a complaint initiating this action on July 29, 2024.  [ECF No. 1 ("Compl.")].  Thereafter, Defendants filed letter motions seeking leave to file motions to dismiss.  [ECF Nos. 22, 24, 25].  The Court entered a scheduling order which included an opportunity for the Buttons to file an Amended Complaint in response to the issues raised by Defendants in connection with their contemplated motions to dismiss.  [ECF No. 32].  The Buttons

filed the operative Amended Complaint, [ECF No. 34 ("Amended Complaint") or ("AC")], which

asserts five claims against various combinations of Defendants:

- Injurious Falsehood ("Claim One") against the Times, Ruff, Mariella, Schneider, Jacobs

- Tortious Interference ("Claim Two") against the Times, Ruff, Mariella, Schneider, Jacobs

- Negligent Infliction of Emotional Distress ("NIED") ("Claim Three") against all Defendants

- Civil Conspiracy ("Claim Four") against all Defendants[10]

- Fraud and Fraudulent Misrepresentation ("Claim 5 and 6") against Ruff and Mariella

AC ¶¶ 281–419.

 Defendants, in three separate groups, moved to dismiss, [ECF Nos. 36, 38, 41], and filed

memoranda of law and a declaration in support of their motions.  [ECF Nos. 37 ("Boies Schiller

Mem."), 39 ("Schneider Mem."), 42 ("Times Mem."), 43 ("Times Decl.")].  Plaintiffs opposed

the motions, [ECF Nos. 46 ("Opp. to Ruff"), 47 ("Opp. to Times"), 48 ("Opp. to Schneider")],

and Defendants filed replies.  [ECF Nos. 49 ("Boies Schiller Reply"), 50 ("Times Reply"), 51

("Schneider Reply")].[11]  Ruff and Mariella twice submitted letters advising the Court of orders

issued in various other cases brought by the Buttons.  [ECF Nos. 52, 54].  The Buttons opposed

the Court's consideration of each letter and filed two notices of supplemental authority of their

own.  [ECF Nos. 53, 55, 56, 62]. Ruff and Mariella submitted a response to each Plaintiffs' notices

of supplemental authority, to which Plaintiffs replied. [ECF No. 57, 60, 63, 64].

---

[10] Plaintiffs bring only claims of Negligent Infliction of Emotional Distress and Civil Conspiracy against Defendants Blaisdell and McCraw. AC ¶¶ 355–402.

[11] Plaintiffs also improperly requested oral argument in the operative Amended Complaint. *See* AC.  Construing Plaintiffs' request as a request for oral argument on the pending motions, Plaintiffs' request is denied since oral argument is not needed. *See AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999) (per curiam) (noting that "a district court's decision whether to permit oral argument rests within its discretion" (citing *Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989)); *see also Henderson v. Lagoudis*, No. 3:12cv1688 (JBA), 2014 WL 813120, at *1 n.1 (D. Conn. Feb. 28, 2014) (denying request for oral argument because it was not necessary to decide pending motion).

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must accept as true all of the [factual] allegations contained in a complaint," but the Court is not required to accept "legal conclusions," and mere "conclusory statements" are not factual allegations. *Id.* "[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken," and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers*, 282 F.3d at 152–53 (internal quotation marks omitted) (quoting *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). "A document is incorporated by reference if the complaint 'makes a clear, definite and substantial reference to [it],'" *Hagan v. City of New York*, 39 F. Supp. 3d 481, 494 (S.D.N.Y. 2014) (quoting *Helprin v. Harcourt, Inc.,* 277 F.Supp.2d 327, 330–31 (S.D.N.Y.2003).

The Court must "liberally construe pleadings and briefs submitted by *pro se* litigants." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). A district court is not, however, tasked with "scouring obscure bodies of law in order to come up with novel claims on behalf of *pro se* litigants." *Id.* at 158. Even a *pro se* complaint must give the defendant "fair notice of [the] claim and the grounds upon which it rests." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); see also *Twombly*, 550 U.S. at 545.

## DISCUSSION

### I.    Motion to Dismiss

Plaintiffs' claims of injurious falsehood, tortious interference, and negligent infliction of emotional distress against the Times, Ruff, Mariella, Schneider, and Jacobs are all time-barred. Moreover, Plaintiffs fail to state a claim for any of their causes of action against any of the Defendants.

### A.    Plaintiffs' Claims Sounding in Defamation are Time-Barred

Under New York law, [12] "[i]n determining which statute of limitations is applicable to a cause of action, it is the essence of the action and not its mere name that controls." *Koplinka-Loehr v. Cty. of Tompkins*, 139 N.Y.S.3d 661, 664 (3d Dep't 2020).  Claims based on harm "stemming from injury to reputation" sound in defamation, even if the injury to reputation results in economic damages.  *Goldman v. Barrett*, 733 F. App'x 568, 570 (2d Cir. 2018) (citing *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 458, 227 N.E.2d 572, 573 (N.Y. 1967)); *see also Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (finding that tort claims sounded in defamation where all of the harms complained of by the plaintiff, including termination of employment, "all [flowed] from the effect on his reputation cause by defendants' alleged defamatory statements"); *Lesesne* 918 F.Supp.2d at 224 (finding that claims based on statements harming the Plaintiffs' reputation leading to a loss of business sounded in defamation).

As such, defamation and any torts that sound in defamation are subject to a one-year statute of limitations. [13]  *See* N.Y. C.P.L.R. § 215(3); *D'Arata v. New York Post*, 226 A.D.3d 560, 210

---

[12] The parties agree that New York law applies.

[13] "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).

N.Y.S.3d 384, 385 (1st Dep't 2024) ("The statute of limitations for a libel claim is measured one year from the date of publication. . . . "); *Lancaster v. Town of E. Hampton*, 54 A.D.3d 906, 907, 864 N.Y.S.2d 537, 538 (2d Dep't 2008); *Lesesne v. Brimecome*, 918 F. Supp.2d 221, 224 (S.D.N.Y. 2013) ("[C]ourts in New York have also kept a watchful eye for claims sounding in defamation that have been disguised as other causes of action").  The one-year statute of limitations accrues "at publication, which is the earliest date on which the work was placed on sale or became generally available to the public." *Jay Sarkar v. City of New York*, 24-1219, 2025 WL 1793733, at *3 (2d Cir. June 30, 2025) (citation omitted).

The Buttons bring claims for injurious falsehood, tortious interference, and negligent infliction of emotional distress against the Times, Ruff, Mariella, Schneider, and Jacobs.  Each of those claims is predicated primarily on the allegedly defamatory statements made in the Times Article published on July 29, 2021 regarding accusations that Plaintiffs sexually assaulted minors and on various other allegedly defamatory statements made before the article was published.  *See* AC ¶¶ 18 n.1, 179, 197, 281–402.[14]  Exactly three years after the Times Article was published, on July 29, 2024, Plaintiffs initiated this lawsuit.  *See* Compl.  Even reading the Amended Complaint in the light most favorable to Plaintiffs, as required, the Court finds that these claims are all time-barred.

*i.      Plaintiffs' Injurious Falsehood Claims Sound in Defamation*

The tort of injurious falsehood, also known as "trade libel," involves "the knowing publication of false and derogatory facts about the plaintiff's business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment." *See, e.g.*, *Leonardo*

---

[14] To the extent the Times, Ruff, Mariella, Schneider, and Jacobs made any of the other allegedly defamatory statements within a year of the filing of this lawsuit, the claims still fail because, as further described below, Plaintiffs do not adequately state a claim as a matter of law.  *See* AC ¶¶ 179, 183, 197.

*v. Wells Fargo Bank, N.A.*, 21-CV-04949, 2024 WL 4485608, at *68 (E.D.N.Y. Aug. 1, 2024) (quoting *Banco Popular N. America v. Lieberman*, 75 A.D.3d 460, 905 N.Y.S.2d 82, 82 (N.Y. App. Div. 2010).

Plaintiffs' injurious falsehood claims are premised on allegedly defamatory statements in the Times Article. *See* AC ¶¶ 281-317. Plaintiffs allege that the Times Article contained "defamatory" statements that "tend[ed] to so harm the reputation of Plaintiffs as to lower their professional reputation in the community" and "Defendants [otherwise] made statements that alluded to the Plaintiffs being charged with a crime amongst other statements which led those third parties to disassociate from the Plaintiffs." AC ¶¶ 289–85, 294–301. At their essence, Plaintiffs' injurious falsehood claims sound in defamation and are subject to a one-year statute of limitations. *See, e.g.*, *Ent. Partners Grp., Inc. v. Davis*, 198 A.D.2d 63, 64, 603 N.Y.S.2d 439, 440 (1st Dep't 1993) ("it is well settled that a plaintiff may not circumvent the one-year statute of limitations applicable to defamation actions (CPLR § 215[3]) by denominating the action as one for . . . injurious falsehood if, in fact, the claim seeks redress for injury to reputation."); *Ramsay v. Mary Imogene Bassett Hosp.*, 113 A.D.2d 149, 151, 495 N.Y.S.2d 282, 284 (3d Dep't 1985) (citing *Noel v. Interboro Mut. Indem. Ins. Co.*, 31 A.D.2d 54, 55, 295 N.Y.S.2d 399, 400 (1968), *aff'd*, 29 N.Y.2d 743, 276 N.E.2d 232 (N.Y. 1971)) (same); *Verschleiser v. Frydman*, 2023 WL 5835031, at *9 (S.D.N.Y. Sept. 7, 2023) ("The plaintiff's injurious falsehood claim is subject to a one-year statute of limitations.") (citing N.Y. C.P.L.R. § 215(3) and citing *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 80 (S.D.N.Y. 1995); *Korova Milk Bar of White Plains, Inc. v. PRE Properties*, LLC, 2013 WL 417406, at *16 (S.D.N.Y. Feb. 4, 2013) ("Injurious falsehood is governed by a one-year statute of limitations.").

15

ii.    *Plaintiffs' Tortious Interference Claims*
       *Largely Sound in Defamation*

Plaintiffs' tortious interference claims are similarly largely premised on statements made within or in connection with the Times Article, which Plaintiffs allege "[tended] to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating with them including termination of any and all business, contracts, or employment, inducing third-parties through mass publication to sever contractual agreements . . . ." AC ¶ 345; *see also id.* ¶¶ 326–27 (referring to "defamatory" statements within tortious interference allegations), 337 (alleging that Defendants "expos[ed] Plaintiffs to ridicule . . . which reflected negatively on Plaintiffs' characters, morality and integrity"). Here too, Plaintiffs allege that their injuries flow from reputational harm. As a result, their tortious interference claims sound in defamation and are subject to a one-year statute of limitations. *See Ent. Partners Grp.*, 198 A.D.2d 63, 64, 603 N.Y.S.2d 439 (1993) (finding Plaintiff may not "cast its defamation claim as tortious interference with business relations" to avoid the one-year statute of limitations); *Katz v. Travelers*, 241 F. Supp. 3d 397, 407 (E.D.N.Y. 2017) (cleaned up) (citation omitted) (finding tortious interference claims were time-barred because "the gravamen of Plaintiff's alleged injury in each of the counts is either harm to his reputation or harm that flows from the alleged effect on Plaintiff's reputation, such as . . . loss of contracts and business relationships."); *Lesesne*, 918 F.Supp.2d at 223-225 (finding claims arising from allegedly defamatory statements made online "sound[ed] in defamation rather than tortious interference" even though they resulted in economic harm).

However, Plaintiffs also complain of other conduct by Defendants in which they allegedly tortiously interfered with Plaintiffs' contracts. For example, Defendants allegedly "contacted employers of the Plaintiffs including but not limited to [the Sponsors] falsely claiming that

Plaintiffs had been charged with a crime and that they should no longer work with them, which terminated the Plaintiffs' relationship with those businesses, employers, and sponsors."  AC ¶ ¶ 179, 331–32.  To the extent this claim is predicated on pure economic harm and not reputational harm, the claims cannot be dismissed at the pleading stage on statute of limitations grounds. The three-year statute of limitations for tortious interference applies when "the gravamen of a complaint is economic injury, rather than merely reputational harm."  *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 48, 888 N.Y.S.2d 489, 494 (1st Dep't 2009).  Put differently, the First Department has emphasized that where a "complaint does not rely merely on generalized reputational harm," and instead relies on economic injury, the claim "sounds in tortious interference." *See id.* at 495; *see also Glob. Supplies NY, Inc. v. Electrolux Home Prods., Inc.*, No. 21-674, 2022 WL 815795, at *2 (2d Cir. Mar. 18, 2022).  Though the allegation is vague, Plaintiffs have arguably alleged more than generalized reputational harm.  They appear to allege a concerted effort to terminate Plaintiffs' business relationships with various businesses.  Nevertheless, even if a three-year statute of limitations is applied, as described further below, Plaintiffs fail to state a claim for tortious interference.

### iii.    *Plaintiffs' NIED Claims against the Times, Ruff, Mariella, Schneider, and Jacobs Sound in Defamation*

Plaintiffs' NIED claims against all Defendants other than Blaisdell and McCraw similarly sound in defamation.  The injury which the Plaintiffs allege is essentially distress caused by the reputational harm inflicted by "false and defamatory statements" found in the "defamatory article."  AC ¶ 360, 376.  While negligent infliction of emotional distress may otherwise be recognized as an independent cause of action, subject to its own three-year statute of limitations, *see Barbetta v. Facchini*, 236 A.D.3d 623, 625, 230 N.Y.S.3d 276, 278 (2d Dep't 2025), Plaintiffs do not allege any injury arising from allegedly wrongful conduct separate from the reputational

harm cause by the Times Article.  AC ¶ 360, 376.  Accordingly, Plaintiffs' NIED claims are subject to a one-year statute of limitations and time-barred.  *See, e.g.*, *Bah v. Apple Inc.*, 19-cv-3539, 2020 WL 614932, at *18 (S.D.N.Y. Feb. 10, 2020) ("[Plaintiff's] claims of . . . negligent infliction of emotional harm sound in defamation because these claims merely allege additional emotional injuries resulting from defendant's [statements], which are the basis of [his defamation claims]").

iv.    ***Plaintiffs are not Entitled to Equitable Estoppel or Equitable Tolling***

Plaintiffs argue in the Amended Complaint and in their opposition to Schneider's motion to dismiss that "[e]ach Defendant is equitably estopped from asserting a statute of limitations defense," and any relevant statute of limitations "must be tolled" based on the doctrine of "equitable tolling."  *See* AC ¶¶ 347–49; Opp. to Schneider at 15–18.[15]

The doctrine of equitable tolling does not apply to state causes of action.  *Sejin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 553 (S.D.N.Y. 2017), *aff'd*, 762 F. App'x 27 (2d Cir. 2018) (quoting *Jang Ho Choi v. Beautri Realty Corp.*, 135 A.D.3d 451, 22 N.Y.S.3d 431, 432 (1st Dep't 2016)); *Busher v. Barry*, No. 20-3587-CV, 2021 WL 5071871, at *4 (2d Cir. Nov. 2, 2021) (summary order).  Where, as here, the plaintiff asserts "state causes of action, not federal ones," the proper doctrine to apply is "equitable estoppel," not equitable tolling.  *See Raphael v. Vintage Grape & Grog, Ltd.*, 187 A.D.3d 672, 672, 131 N.Y.S.3d 558 (1st Dep't 2020).

---

[15] Plaintiffs respond only to Schneider's arguments regarding equitable estoppel and tolling, and do not address the issue in their oppositions to the other Defendants.  *See* Opp. to Schneider at 15–18; Opp. to Times; Opp. to Ruff. Accordingly, the Buttons have waived their arguments in favor of tolling the statute of limitations except regarding their claims against Schneider. *See Coker v. Goldberg & Assocs. P.C.*, 2024 WL 869412, at *7 (S.D.N.Y. Feb. 29, 2024) ("Defendants are deemed to have conceded these arguments by failing to address them in their opposition brief. Even if Defendants had not so conceded, the Court agrees with these arguments."). However, to "liberally construe pleadings and briefs submitted by *pro se* litigants," the Court considers Plaintiff's equitable estoppel and tolling arguments as against all Defendants. *See McLeod*, 864 F.3d at 156.

Accordingly, equitable tolling cannot render timely Plaintiffs' time-barred claims, all of which plead causes of action under New York law.

Equitable estoppel is an "extraordinary remedy," *Clark v. Ravikumar*, 90 A.D.3d 971, 972, 935 N.Y.S.2d 633, 635 (2d Dep't 2011), which should be invoked "sparingly and only under exceptional circumstances." *See Sanchez v. Jericho Sch. Dist.*, 180 A.D.3d 828, 830, 120 N.Y.S.3d 163, 165 (2d Dep't 2020) (quoting *Ceely v. New York City Health & Hosps. Corp.*, 162 A.D.2d 492, 493, 556 N.Y.S.2d 694, 695 (2d Dep't 1990)). In order to successfully argue for equitable estoppel, a plaintiff must show "(1) the plaintiff was induced by fraud, misrepresentations, or deception to refrain from filing a timely action (2) the plaintiff reasonably relied on the defendants' misrepresentations; and (3) the plaintiff exercised due diligence in bringing an action within a reasonable period of time after the facts giving rise to the equitable estoppel claim have ceased to be operational." *Endemann v. Liberty Ins. Corp.*, No. 22-1217, 2023 WL 4102245, at *1 (2d Cir. June 21, 2023) (cleaned up) (quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 674, 849 N.E.2d 926, 818 N.Y.S.2d 703 (N.Y. 2006) and quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)).

Plaintiffs have not plead facts sufficient to estop the Defendants from asserting a statute of limitations defense. To be sure, Plaintiffs present many reasons to justify why they did not timely file a complaint. The Buttons allege that Defendants used "the threat of a law degree, the connections between the New York Times and Boies Schiller & Flexner, the ability to silence the Plaintiffs, and their ability to manipulate the Court of public opinion and the Court" to mislead Plaintiffs and make them believe that "legal recourse would be an impossibility against such powerful corporations." *See* AC ¶ 267-272. With respect to Ruff and Mariella, Plaintiffs allege that they failed to timely file suit because they were "afraid" of and "intimidated by" Mariella and

Ruff's "legal reach and internal networking," AC ¶¶ 12, 314, "believe[ed] they would not be successful," AC ¶ 170, knew filing this lawsuit would put them at risk of "sanctions," AC ¶¶ 267, 270, and feared Ruff and Mariella's ability to make "the Courts to believe the Plaintiffs are harassing everyone who has harmed them by appropriately seeking legal recourse," AC ¶ 270. The Buttons allege further that they "could not afford to file claims" and were unable to "generate income." AC ¶ 313. They allege that Schneider's alleged conduct caused them to experience "depression" and that they experience "severe trauma and PTSD as a direct result of Defendant Jacobs's published article." AC ¶¶ 263, 361. In their opposition to Scheider's motion to dismiss, Plaintiffs state, without support, that tolling is warranted because of "defendants' pattern of defamation, harassment, and intimidation." *See* Opp. to Schneider at 17–18. Finally, the Buttons assert that applying the statute of limitations would be "unjust." AC ¶¶ 275, 315, 348, 399. None of this establishes that the Defendants induced Plaintiffs to refrain from filing a timely action by fraud, misrepresentations, or deception or that Plaintiffs reasonably relied on Defendants' misrepresentations. *Zumpano*, 6 N.Y.3d at 674 (holding that it is "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit."); *see also Springs v. Bd. of Educ.*, 2010 WL 4068712, at *3 (S.D.N.Y. Oct. 14, 2010) ("allegations of depression and anxiety" are "too vague to support a finding of extraordinary circumstances that would warrant equitable tolling"); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 322 (S.D.N.Y. 2016) (stating that "[a] plaintiff[']s limited financial means and inability to afford a lawyer are not 'extraordinary circumstances' that support equitably tolling the limitations period.").

Moreover, Plaintiffs do not plead that they made any diligent efforts to timely file their case that were thwarted by misdirection on the part of any Defendant. *See Koral*, 36 F.4th at 411

(declining to apply equitable estoppel despite clearly alleged fraud on the part of the defendant because the plaintiff did not adequately demonstrate that due diligence would not have uncovered the fraud). Ultimately, Plaintiffs have not demonstrated that they are entitled to the extraordinary remedy of equitable estoppel.[16]

**B.    Plaintiffs Fail to State Any Claim On Which Relief Can Be Granted**

*i.    Plaintiffs to State a Claim for Injurious Falsehood*

To state a claim for injurious falsehood, Plaintiffs must allege "(1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." *See, e.g.*, *Computech Int'l v. Compaq Computer Corp.*, 2002 WL 31398933, at *5 (S.D.N.Y. Oct. 24, 2002); *see also Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670, 422 N.E.2d 518, 522 (N.Y. 1981) (holding that plaintiff states a disparagement[17] claim when the "statement is confined to denigrating the quality of the business' goods or services" and special damages and malice are proven); *BCRE 230 Riverside LLC v. Fuchs*, 59 A.D.3d 282, 283, 874 N.Y.S.2d 34, 36 (2d Dep't 2009) (holding that special damages are "a necessary element of an action for injurious falsehood that must be pleaded with particularity."). Injurious falsehood differs from defamation in that

---

[16] Plaintiffs assert that the Times Article was reposted on Instagram by "various other third-party Instagram accounts" and republished to various other social media cites, without specifying the date of republication. AC ¶¶ 148, 149. New York courts have recognized an exception to the statute of limitations where the allegedly defamatory statements were republished, if that republication "occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition and which is intended to reach a new audience." *Enigma Software Group USA, LLC v. Beeping Computer LLC*, 194 F.Supp.3d 263, 276-77 (S.D.N.Y. 2016) (quoting Firth v. State, 98 N.Y.2d 365, 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463 (2002)). However, continuous access to an online article is not a republication and a plaintiff may not recover for a republication by a third party "absent a showing that the original author was responsible for or ratified the republication." *Martin v. Daily News L.P. (Martin II)*, 121 A.D.3d 90, 990 N.Y.S.2d 473, 483 (1st Dep't 2014); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002) (citing *Macy v. New York World–Telegram Corp.*, 2 N.Y.2d 416, 422–23, 161 N.Y.S.2d 55, 141 N.E.2d 566 (1957)).

[17] Injurious falsehood is also referred to as "trade libel," and "product disparagement." *Henneberry v. Sumitomo Corp.*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006).

injurious falsehood is limited to statements "denigrating the quality of the [plaintiff's] business' goods or services." *Henneberry* 415 F. Supp. 2d at 470 (quoting *Ruder*, 52 N.Y.2d at 670); *see also Cunningham v. Hagedorn*, 72 A.D.2d 702, 704, 422 N.Y.S.2d 70, 74 (1st Dep't 1979) ("[The statements] do not concern themselves with plaintiff's property. Hence, they may not be the subject of an action for injurious falsehood.").

Plaintiffs claim fails as a matter of law. Plaintiffs do not plead any false statement denigrating their goods or service, nor do they adequately plead malice or special damages. Moreover, statements attributed to certain Defendants are privileged.

As such, to the extent not barred by the statute of limitations, Plaintiff's injurious falsehood claim in Count I is discussed on the merits. First, Plaintiffs' injurious falsehood claim fails because the statements alleged by Plaintiffs to be injurious falsehoods concern Plaintiff's "behavior [at work and] not the quality of any 'goods or services' that [they] provided." *See Pasternack v. Lab'y Corp. of America.*, No. 10 CIV. 4426 PGG, 2014 WL 4832299, at *20 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Pasternack v. Lab'y Corp. of America Holdings*, 839 F.3d 151 (2d Cir. 2016); *see also Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 2010 WL 2519631, at *9 (N.Y. Sup. Ct. May 28, 2010) (dismissing injurious falsehood claim where the statement that plaintiff engaged in a "pattern of sexual harassment" concerned his "integrity" rather than the "quality of a party's goods or services" as an attorney).

Dusty Button's business is teaching, choreographing, and performing dance and Taylor Button's business is designing cars. *See* AC ¶¶ 236–38. Plaintiffs also sold tangible goods, such as dancewear. AC ¶ 245. Nothing in the Times Article concerns the quality of the Buttons' goods or services. *See* Times Article. No other alleged statement made by any of the Defendants regards the quality of their goods or services. AC ¶¶ 179, 183, 197, 298–99, 308–09 (statements that the

Buttons had been charged with a crime and that Buttons sexually abused the Nevada Plaintiffs). While the Plaintiffs claim that "[their] reputation and their own person was their business, goods and services," *see, e.g.*, AC ¶¶ 210-216, and one might extrapolate that, if true, Dusty Button's sexual abuse of pupils would impact her ability to provide quality teaching services, this does not mean that the statements are assertions about the quality of her services. *See Pasternack*, 2014 WL 4832299, at *20. "Even if these statements had a downstream impact on [their] ability to work . . . this does not transform them into statements about the quality of [their] services in those capacities." *Id.*

Second, Plaintiffs fail to adequately plead malice. Plaintiffs argue that they do not need to show malice because they are not public figures.[18] *See* Opp to Times at 24–26; Opp. to Schneider at 21–22. This is not true. Malice is a necessary element of an injurious falsehood claim without a showing of public figure status. *See, e.g.*, *Kasada, Inc. v. Access Cap., Inc.*, 2004 WL 2903776, at *16 (S.D.N.Y. Dec. 14, 2004). Plaintiffs assert, only in a conclusory fashion, that Defendants "knew" that the Nevada Plaintiffs' allegations were "false," *see, e.g.*, AC ¶¶ 22, 100, 253, 300, 308–09, but they provide no factual support for this allegation. *See, e.g.*, *Bobulinski v. Tarlov*, 2024 WL 4893277, at *8 (S.D.N.Y. Nov. 26, 2024) (holding that conclusory assertions about knowledge of falsity is insufficient to establish malice); *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 822-24 (S.D.N.Y. 2021) (finding no malice where complaint "alleges no nonconclusory facts that support the proposition that [the defendant] knew that it was reporting falsities."), *aff'd*, No. 21-CV-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022). Plaintiffs' allegations that various defendants were in possession of unspecified evidence, or "various text messages and therapy records" proving falsity, without any particularization or any explanation

---

[18] The Amended Complaint describes Dusty Button as a "world-renowned ballet dancer." AC ¶ 45.

of how they prove falsity, is insufficient to render their allegations more than merely conclusory. *See, e.g.*, AC ¶¶ 22, 91, 203-04.

Third, Plaintiffs failed to adequately allege special damages. "[A] motion to dismiss a claim of injurious falsehood may be granted for failure to allege special damages with the requisite specificity." *Kasada*, No. 01 CIV. 8893 (GBD), 2004 WL 2903776, at *16 (citing *Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435, 440, 199 N.Y.S.2d 33, 37, 166 N.E.2d 319 (N.Y. 1960); *see also BCRE 230 Riverside LLC v. Fuchs*, 59 A.D.3d 282, 283, 874 N.Y.S.2d 34, 36 (2d Dep't 2009) (special damages "must be pleaded with particularity"); *Wasserman v. Maimonides Med. Ctr.*, 268 A.D.2d 425, 426, 702 N.Y.S.2d 88, 89 (2d Dep't 2000) (same). [G]eneral allegations of lost sales from unidentified customers are insufficient" and "[r]ound figures or a general allegation of a dollar amount . . . will not suffice." *Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15 Civ. 8775, 2016 WL 6310777, at *6 (S.D.N.Y. Oct. 27, 2016). Plaintiffs do not assert even a "general allegation of a dollar amount" and instead assert broadly that "Plaintiffs claim special damages to be proven through contractual agreement, financial records and messages" and "Plaintiffs suffered actual damages and special damages, proven by bank statements, email and text communications, approval of government assistance programs, loss of counsel, loss of employment and other economic and financial evidence of damages." *See* AC ¶¶ 288, 297.

Plaintiffs argue, without support, that they need not articulate particularized special damages because they have stated a claim for injurious falsehood "*per se*." *See* Opp. to Schneider at 23. Plaintiffs did not plead this in their Amended Complaint and there is no cause of action titled "injurious falsehood *per se*" in New York. *See, e.g.*, *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 484 n.30 (S.D.N.Y. 2013), *adhered to on denial of reconsideration*,

2013 WL 6182949 (S.D.N.Y. Nov. 18, 2013), and *aff'd*, 788 F.3d 98 (2d Cir. 2015), and *aff'd*, 788 F.3d 98 (2d Cir. 2015) ("A claim for injurious falsehood, unlike a claim for defamation per se requires the pleading of special damages.").  Plaintiffs fail to allege several necessary elements of their injurious falsehood claim, and thus it must be dismissed.

### ii.    *Plaintiffs Fail to State a Tortious Interference Claim*

New York recognizes two separate "tortious interference" causes of action: tortious interference with contract and tortious interference with prospective business relations.  *See, e.g.*, *Law Offices of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 131 A.D.3d 583, 583, 15 N.Y.S.3d 814 (2d Dep't 2015) (referencing both types of tortious interference).  While Plaintiffs do not specify which of these they intend to pursue, their arguments appear to center on the termination of existing contracts.  *See* AC ¶¶ 319–54 (citing the termination of "contractual agreements" and alleging that "[e]ach Defendant *intentionally* induced innumerable third parties to break their contracts") (emphasis in original).  However, to "liberally construe" *pro se* Plaintiffs' pleadings, the Court will analyze both forms of tortious interference.  *See McLeod*, 864 F.3d at 156.

Plaintiffs allege that Ruff and Mariella "contacted business associates, employers and sponsors of the Plaintiffs" and told them about the allegations underlying the Nevada Complaint, that there were more victims not named in the complaint, and that Plaintiffs had been charged with a crime.  AC ¶¶ 321–24.  They allege that "Schneider knew of the Plaintiffs' contractual agreements with certain employers because Ms. Mariella and Ruff relayed the information to her," that "Schneider knew that Plaintiff Dusty Button was Red Bull's first and only ballet athlete" and "Schneider knew that Plaintiff Taylor Button was sponsored by Toyo Tires and was invited to events such as SEMA in Las Vegas" before contacting Red Bull, TOYO, and SEMA "for comments on the allegations pertaining to the Buttons and stating that the Plaintiff had been

charged with a crime." AC ¶¶ 330–32.  Plaintiffs allege that Jacobs "contacted numerous third-parties for comment on the allegations regarding the Buttons including but not limited to Boston Ballet, ASH productions, BLOCH Dance USA, Toyo Tires, Red Bull, Master Ballet Academy and others" to "warn them of the allegations against the Plaintiffs and to lead them to believe the Plaintiffs had been charged with crimes of sexual assault. . . ." AC ¶ 334.  Though Plaintiffs do not specifically tie this allegation to their tortious interference claim, the Court construes it as an allegation supporting the tortious interference claim:  "Defendants Ruff, Mariella, Schneider and Jacobs contacted employers of the Plaintiffs including but not limited to Bloch Dance USA, ASH productions, SEMA, Bellamoxi, Toyo Tires, Pointe Magazine, the Dallas Conservatory, Master Ballet Academy and Red Bull falsely claiming that Plaintiffs had been charged with a crime and that they should no longer work with them, which terminated the Plaintiffs' relationship with those businesses, employers, and sponsors."  AC ¶ 179.  These allegations fail to sufficiently plead the several elements in either tortious interference claim.

The claim of tortious interference with a contract under New York law requires a Plaintiff to plead "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (N.Y. 1996)).  Plaintiffs fail to allege these elements.

Plaintiffs do not adequately allege specific valid contracts that were purportedly breached. *See Martian Ent., LLC v. Harris*, 12 Misc. 3d 1190(A), 824 N.Y.S.2d 769 (Sup. Ct. 2006) (dismissing a tortious interference with a contract claim where the complaint does not "expressly

reference any provisions of . . . an alleged agreement" or attach a copy of the agreement); *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F.Supp.3d 763, 791 (S.D.N.Y. 2019) (dismissing a tortious interference claim due to Plaintiffs' failure to plead the terms of the contract or the terms that were supposedly breached); *WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.*, No. 10 civ. 3205 (BSJ), 2011 WL 2565284, at *6 (S.D.N.Y. June 22, 2011) ("Under New York law, although such claims are to be construed liberally, a plaintiff must specifically plead the existence of a valid contract and provide some details about its terms and its breach to sustain a claim at the motion to dismiss stage."); *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 WL 2320544, at *35 (S.D.N.Y. Aug. 10, 2006) (finding that Plaintiff failed to adequately plead tortious interference by failing to plead the terms of the contract that was allegedly interfered with).

Plaintiffs also do not adequately plead knowledge. They allege only that Schneider, Mariella, and Ruff knew the Buttons were sponsored by Red Bull and Toyo Tires. AC ¶¶ 330–32. The Court also infers knowledge of some sponsorships or business relationships based on the allegation that Ruff, Mariella, Schneider and Jacobs contacted "Bloch Dance USA, ASH productions, SEMA, Bellamoxi, Toyo Tires, Pointe Magazine, the Dallas Conservatory, Master Ballet Academy and Red Bull" and stated that those companies "should no longer work with [Plaintiffs]." AC ¶ 179. Plaintiffs make no allegations that Defendants knew about "specific contract[s]," they make no allegations about Defendants' knowledge of other sponsorships, and they make no allegations pertaining to the Times's knowledge at all. *See, e.g.*, *Greer v. Fox Corp.*, No. 20-CV-5484-LTS-SDA, 2022 WL 4093155, at *8 (S.D.N.Y. Sept. 7, 2022), *aff'd sub nom. Greer v. Fox News Media*, No. 22-1970-CV, 2023 WL 2671796 (2d Cir. Mar. 29, 2023) (holding that the complaint must allege that Defendant had "actual knowledge of the specific contract . . . a defendant's general awareness that the plaintiff did business with third parties is not enough").

Furthermore, Plaintiffs do not allege a breach of any provision of any contract. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (holding that allegations that a third party "abandoned" and "walked away" from a contract was insufficient to establish an "actual breach"). Plaintiffs merely allege that: (1) "Plaintiffs both immediately lost any and all contracts with sponsors, endorsements and event appearances in their respective industries. . . ," listing several alleged sponsors; and (2) Defendants' statement cause the "termination of any and all business, . . . , contracts or employment, inducing third-parties through mass media publication to sever contractual agreements and disassociate from Plaintiffs." *See* AC ¶¶ 238, 239, 243, 245, 345. Plaintiffs have failed to plead several elements of tortious interference with a contract.

To the extent Plaintiffs intend to plead tortious interference with a prospective business relationship, that claim fares no better. To state a claim for tortious interference with a prospective business relationship must allege that the Defendant (1) knew about the business relationship or prospective business relationship between the plaintiff and a third party; (2) intentionally interfered with the relationship; and (3) acted using "wrongful means or with the sole purpose of malice"; and (4) resulting injury to the business relationship. *See 534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick*, 90 A.D.3d 541, 542, 935 N.Y.S.2d 23, 24 (1st Dep't 2011).

Plaintiffs fail again to adequately plead the knowledge element of this form of tortious interference for the Times. *See, e.g.*, *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 546–47 (S.D.N.Y. 2014) ("[B]ecause the Amended Complaint fails to provide any factual allegations that the defendants had actual knowledge of any specific business relationships . . . plaintiffs have failed to state a claim"). As explained above, they make no allegations about the Times's knowledge, and they allege only that Schneider, Mariella, and Ruff knew the Buttons were sponsored by Red Bull and Toyo Tires. *See* AC ¶¶ 330–32. The Court will again infer that

Plaintiffs intended to allege Ruff, Mariella, Schneider and Jacobs had knowledge of Plaintiffs' business relationship with "Bloch Dance USA, ASH productions, SEMA, Bellamoxi, Toyo Tires, Pointe Magazine, the Dallas Conservatory, Master Ballet Academy and Red Bull." AC ¶ 179.

Plaintiffs fail to adequately plead that any Defendants acted using "wrongful means or with the sole purpose of malice." *See 534 E. 11th St. Hous. Dev. Fund*, 90 A.D.3d at 542. Generally, to satisfy this element a defendant's conduct must amount to a crime or an independent tort or be driven by the "sole purpose of malice." *L. Offs. of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 131 A.D.3d 583, 585, 15 N.Y.S.3d 814 (2d Dep't 2015) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 818 N.E.2d 1100 (N.Y. 2004)). Plaintiffs allege neither. Indeed, the alternative purposes for the alleged conversations with sponsors are clear from the Complaint. Plaintiffs allege that Ms. Schneider reached out to Red Bull, Toyo Tires, and SEMA "for comment[]." *See* AC ¶¶ 331–32. Plaintiffs also allege that Ruff, Mariella, and Schneider's actions "were motivated by a desire to . . . continue the fame and notoriety acquired by their colleague Sigrid McCawley's representation of Virginia Guthrie in the Epstein case." AC ¶ 344. Moreover, Jacobs was a journalist investigating a story about the Plaintiffs and the Boies Schiller Defendants were attorneys litigating a case against Plaintiffs who attempting to learn more about Plaintiffs. *See* AC ¶¶ 17, 177, 384 (Boies Schiller Defendants allegedly hired two private investigators to learn more about Plaintiffs).

Finally, Plaintiffs fail to allege that Defendant's outreach to their alleged sponsors were the "but for" cause of the termination of their business relationships. See, e.g., *Vigoda v. DCA Prods. Plus Inc.*, 293 A.D.2d 265, 741 N.Y.S.2d 20, 23 (1st Dep't 2002) ("Tortious interference with prospective economic relations requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct."); *Premium Mortg. Corp. v.*

*Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009) (same).  Indeed, Plaintiffs provide several alternative causes for the termination of their business relationships. They allege that "as a direct result of the publication in the New York Times and later, in other publications and interviews such as Good Morning America, that Plaintiffs would suffer financial harm and never be capable of generating revenue using their names again." AC ¶ 234. Further, one business associate states that it ended its business relationship with the Buttons because "some concerned parents [came] forward with some social media posts." AC ¶ 221. To the extent Plaintiff's tortious interference claims are not time-barred, Plaintiffs have failed to plead the several elements of either tortious interference claim, and as such, the claim is dismissed.

### iii.    *Plaintiffs Fail to State a Negligent Infliction of Emotional Distress Claim*

To plead an NIED claim under New York law, a plaintiff must allege "(1) a breach of duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 n.57 (2d Cir. 2021) (citing *Ornstein v. N.Y.C. Health & Hosps. Corp.*, 10 N.Y.3d 1, 6, 852 N.Y.S.2d 1, 881 N.E.2d 1187 (N.Y. 2008) and citing *Taggart v. Costabile*, 131 A.D.3d 243, 252–53, 14 N.Y.S.3d 388 (2d Dep't 2015)).  To establish "some guarantee of genuineness of the harm," the plaintiff generally must plead that the breach endangered his physical safety or caused him to fear for his physical safety.  *Id.* (citing *Taggart v. Costabile*, 131 A.D.3d 243, 253, 14 N.Y.S.3d 388, 396 (N.Y. 2015)).

Plaintiffs generally allege that "[e]ach and every Defendant named herein caused the Plaintiffs emotional distress as for their reckless disregard of evidence in their possession and of the truth."  AC ¶ 356.  They allege that Schneider's arrangement of interviews for the Nevada Plaintiffs "furthered [their] depression" and, along with Ruff and Mariella, "continued to push the

false narrative against the Plaintiffs." AC ¶ 361. They allege that Ruff and Mariella attempted to silence them in court. AC ¶ 367. They allege Blaisdell "is responsible for making the Plaintiffs believe they could not seek legal recourse, again leading the Plaintiffs to depression" and "attempted to persuade the Plaintiffs that their legal recourse was unlawful." AC ¶¶ 362, 366. They allege that McCraw "condoned" a conspiracy between Blaisdell, Ruff, Mariella, Schneider and the Times and attempted to persuade Plaintiffs not to pursue litigation against the Times and Jacobs. AC ¶¶ 363, 373. Finally, they allege Jacobs published her statements negligently, with knowledge of the falsity of the statements, malice, and/or with reckless disregard of their truth or falsity. AC ¶ 369. These allegations are insufficient to plausibly suggest a claim for NIED.

First, Plaintiffs fail to allege any specific duty owed to them by the Defendants. *See LaRussa v. LaRussa*, 232 A.D.2d 297, 298, 648 N.Y.S.2d 567, 568 (1st Dep't 1996) ("The cause of action for negligent infliction of emotional distress was also properly dismissed since plaintiffs failed to establish that defendant owed them a special duty. . . ."); *Corley v. Vance*, 365 F.Supp.3d 407, 454 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F.App'x 62 (2d Cir. 2020) (finding that plaintiff had insufficiently pled NIED by failing to "allege any special duty owed to him by any of the defendants"); *see also Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) ("The duty in [an NIED claim] must be specific to the plaintiff, and not some amorphous, free-floating duty to society."); *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 526–27, 478 N.Y.S.2d 838, 467 N.E.2d 502 (N.Y. 1984) ("The duty in [NIED cases] must be specific to the plaintiff, and not some amorphous, free-floating duty to society"). Plaintiffs argue that Blaisdell, McCraw, Ruff, and Mariella—all attorneys—owe them a duty because an attorney may owe a duty to a third-party if hired for the purpose of benefitting a third party. *See* Opp. to Times at 29. But the attorney Defendants here were clearly not hired for that purpose. In fact, they were hired to litigate

31

*against* the Buttons, either representing the Nevada Plaintiffs or representing the Times and Jacobs. AC ¶¶ 9, 11, 15.    While Plaintiffs generally allege emotional harm, *see, e.g.*, AC ¶ 263 (alleging "severe trauma and PTSD"), AC ¶¶ 361, 362 (alleging "depression"), they fail to allege a causal connection between their distress and Defendants' breach of any duty to them. Given the lack of alleged duty that had been breached, the third element requiring "a direct causal connection between the breach [of duty] and the emotional harm" is also not satisfied. *Francis*, 992 F.3d at 81 n.57.

Plaintiffs also fail to plead the fourth element, "some guarantee of genuineness of the harm," because they did not plead that any purported breach endangered their physical safety or caused them to fear for their physical safety.  *Francis*, 992 F.3d at 81 n.57 (citing *Taggart*, 131 A.D.3d at 253).  Indeed, Plaintiff allege no danger to their physical safety or reason to fear for their physical safety.

Finally, Plaintiffs fail to allege that Defendants acted negligently.   In their original complaint, Plaintiffs alleged intentional infliction of emotional distress and in their Amended Complaint, apparently relabeled this claim as a claim for negligent infliction of emotion distress. *Compare* Compl. ¶ 271–90 *with* AC ¶¶ 355–77.  In the Amended Complaint, Plaintiffs now allege Defendants acted with "negligence" and "recklessness" when publishing the Times Article and making other allegedly defamatory statements.  *See* AC ¶¶ 74, 106, 299, 300, 324, 369.  Perhaps to circumvent the clear one-year statute of limitations barring an intentional tort claim, *see Barbetta*, 236 A.D.3d at 625, Plaintiffs decided to claim a negligence tort but the claim continues to impermissibly rely on *intentional* conduct.  Their factual allegations remained essentially the same as those in the original complaint, leaving the NIED claim premised primarily on allegedly intentional conduct.  *See, e.g.,* AC ¶¶ 204, 219, 221, 373 (alleging that Defendants "intentionally

published the defamatory article . . . knowing there was falsity to the allegations," participated in an "intentional collusion and conspiracy," and "intentionally attempted to persuade the Plaintiffs not to pursue legal recourse."). Faced with "internally inconsistent" allegations, the Court "is neither obligated to reconcile nor accept" them "as true." *Hurckes v. JPMorgan Chase Bank, N.A.*, No. 22-CV-4616 (JMF), 2023 WL 2664080, at *2 (S.D.N.Y. Mar. 28, 2023), *aff'd*, No. 23-749-CV, 2024 WL 1478575 (2d Cir. Apr. 5, 2024) (*In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 424 n.1 (S.D.N.Y. 2021)). Accordingly, Plaintiffs have not established that Defendants acted negligently.

New York courts are clear that intentional conduct cannot form the basis of an NIED claim. *See, e.g.*, *Mahn v. Allegis Group, Inc.*, 24-cv-8326, 2025 WL 1504812, at *17 (S.D.N.Y. May 24, 2025) (finding that and NIED claim "premised on intentional conduct and not negligence" must be dismissed); *Scifo v. Taibi*, 198 A.D.3d 704, 706, 156 N.Y.S.3d 40, 43 (2d Dep't 2021) (finding that, where a complaint only pleads intentional conduct, there is no cause of action for NIED); *Offor v. Mercy Medical Center*, 171 A.D.3d 502, 503; 98 N.Y.S.3d 69, 70 (1st Dep't 2019) (same). Furthermore, Plaintiffs do not provide any unique allegations to support their NIED claim, relying almost entirely on the same allegedly defamatory statements that form the basis of their other claims. AC ¶¶ 334-337. "[Plaintiffs] cannot make out a separate claim for NIED based on allegations that are essentially duplicative of [their] other tort causes of action." *Mahn*, 2025 WL 1504812, at *17 (internal citations omitted). For these reasons, Plaintiffs fail to state an NIED claim and the third cause of action is dismissed.

### iv.    *Plaintiffs Do Not State a Claim for Fraud or Fraudulent Misrepresentation*

Plaintiffs' fraud claims against Ruff and Mariella boil down to allegations that the pair "committed fraud on the Court in multiple Courts" by providing "false evidence" and otherwise

"[lying] to the Court." AC ¶¶ 404, 405, 412. The gravamen of Plaintiff's claim is that the Boies Schiller Defendants filed a lawsuit containing claims they knew were false and have continued litigating it despite this knowledge. *See id*. As an initial matter, under New York law, there is an "absolute privilege applicable to the statements of participants in judicial proceedings." *See, e.g.*, *Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007); *TRB Acquisitions LLC v. Yedid*, 215 A.D.3d 40, 43, 187 N.Y.S.3d 164, 168 (1st Dep't 2023) ("It is well-settled that statements made in the course of litigation are entitled to absolute privilege."). Plaintiffs separately fail to plead the elements of fraud.

To state a claim for fraud or fraudulent misrepresentation, a plaintiff must plead (1) material misrepresentation of a fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff; and (3) damages. *See Sneider v. Great South Bay Surgical Associates*, 235 A.D.3d 685, 687, 228 N.Y.S.3d 195, 199 (2d Dep't 2025) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y. 3d 553, 559, 883 N.Y.S.2d 147, 910 N.E. 976 (N.Y. 2009) (stating elements for fraud)); *see also Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178, 944 N.E.2d 1104, 1108 (N.Y. 2011) ("Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege 'a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.' "). Under Federal Rule of Civil Procedure 9(b), Plaintiffs must plead those elements with particularity. Fed. R. Civ. P. 9(b); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) (upholding the dismissal of a fraud claim for failing to plead fraud with particularity).

Plaintiffs fail to plead the third and fourth elements of fraud. Plaintiffs allege that Ruff and Mariella defrauded the Nevada District Court, not the Plaintiffs themselves, and as such, Plaintiffs nowhere allege that they relied on Defendants' allegedly fraudulent statements or that Defendants intended to induce their reliance. *See, e.g.*, AC ¶¶ 404-412; *see also Nineteen New York Properties Limited Partnership v. 535 5th Operating Inc.*, 211 A.D.2d 411, 412–13, 621 N.Y.S.2d 42, 43 (1st Dep't 1995) ("The only fraud alleged is with respect to statements made in the complaint and in support of Plaintiffs motion; there could be no detrimental reliance on such statements."); *Brownstone Inv. Grp., LLC. v. Levey*, 468 F. Supp. 2d 654, 659 (S.D.N.Y. 2007) (holding that plaintiff failed to allege fraud when he failed to allege reliance on an alleged misrepresentation which was made in the course of this litigation); *Kashelkar v. Rubin & Rothman*, 97 F.Supp.2d 383, 395 (S.D.N.Y. 2000) ("Plaintiff does not and cannot plead reliance because all of the alleged 'misrepresentations' appeared in legal papers in the course of adversary litigation; they were not statements made by [the defendant] upon which Plaintiff relied or changed his position in reliance therein.").

Further, Plaintiffs fail to plead their claim with particularity. The Buttons allege that Ruff and Mariella "possessed evidence . . . that proved their clients were lying," but fail to identify the evidence with particularity or explain why it proves the falsity of the Nevada Plaintiffs' allegations. AC ¶ 409. Plaintiffs merely describe the allegedly exculpatory evidence as "various text messages and therapy records," "photo evidence and documents proving Sage Humphries' allegations to be entirely false and fraudulent," and "evidence of Sage Humphries prostituting herself to Edmonton Oilers hockey team[.]" *See, e.g.*, AC ¶¶ 91, 155. None of this explains why the allegations in the Nevada Litigation were false. *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) ("A complaint making [fraud] allegations must '(1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " (cleaned up)); *Winter v. American Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 226 (S.D.N.Y. 2017) (finding that plaintiff fails to meet the 9(b) particularity requirements because "short of stating these claims are patently false, Plaintiff fails to explain why these statements were fraudulent.").

Moreover, since this claim is based on the allegation that Ruff and Mariella "fil[ed] . . . a lawsuit in bad faith, with knowledge that the complaint contained false statements, the claim must be dismissed." *Brownstone Inv. Grp., LLC v. Levey*, 468 F.Supp.2d 654, 659 (S.D.N.Y. 2007). The proper remedy for such conduct would be a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See id.* ("[T]he appropriate remedy for such a violation . . . would be a motion for sanctions."); *see also Papworth,* 2007 WL 2903944, at *12 (same). Indeed, the Buttons have unsuccessfully sought sanctions in Nevada District Court several times. *See Humphries*, No. 21-cv-01412, (D. Nev.) [ECF Nos. 220, 305, 327, 360]. For the reasons stated, Plaintiffs failed to state a claim of fraud or fraudulent misrepresentation, and the fifth cause of action is dismissed.

### v.    *Plaintiffs' Civil Conspiracy Claim Cannot Stand on its Own*

"New York does not recognize civil conspiracy to commit a tort as an independent cause of action." *Whitfield v. Law Enforcement Employees Benevolent Association*, 237 A.D.3d 1139, 1140-1141, 233 N.Y.S.3d 615, 619 (2d Dep't 2025); *see also Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*, 215 A.D.3d 699, 703, 187 N.Y.S.3d 702, 707 (2d Dep't 2023) ("Under New York law, in order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of an agreement"). Since each

of the Buttons' other tort claims have been dismissed, the civil conspiracy claim must be dismissed as well. *See Mamoon v. Dot Net Inc.*, 135 A.D.3d 656, 658, 25 N.Y.S.3d 85, 88 (1st Dep't 2016) (dismissing civil conspiracy claim when other tort claims were dismissed).

## II.    The Times Defendants' Request
for Attorneys' Fees

The Times Defendants assert that pursuant to the New York anti-SLAPP law, they are owed attorneys' fees and costs associated with their motion to dismiss. *See* Times Mem. at 21. Plaintiffs do not contest the Times Defendants' argument regarding the New York anti-SLAPP law, arguably conceding that they owe attorneys' fees. *See* Opp. to Times; *Coker*, 2024 WL 869412, at *7. In their opposition, Plaintiffs merely argue that their case is not frivolous and include a footnote that cites to an order in their Florida District Court case against McCawley that denies her request for attorneys' fees pursuant to a *Florida* Anti-SLAPP law. *See* Opp. to Times at 8–9 n.5 (citing *Button v. McCawley*, 24:cv-60911, 2025 WL 50431, at *11 (S.D.F.L. Jan 8, 2025)). Nevertheless, considering the special solicitude owed to Plaintiffs as *pro se* parties, the Court considers the Times Defendants' request for attorneys' fees on the merits. *See Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)) ("Courts must afford pro se plaintiffs 'special solicitude' " in reviewing their filings.). For the reasons below, the Times Defendants' motion is denied.

### A.    New York Civil Rights Law Section
70-a(1) Applies in Federal Court

Pursuant to the New York anti-SLAPP statute, New York Civil Rights Law Section 70-a, an award of attorneys' fees is mandatory if a lawsuit "involving public petition and participation" was "commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification, or reversal of existing law."

37

*See* N.Y. Civ. Rights L. § 70-a(1); *see also Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 12, 218 N.Y.S.3d 19, 22 (1st Dep't 2024) (describing the fees and costs as a "mandatory award of attorneys' fees to the prevailing defendant"). This provision is automatically triggered by a dismissal pursuant to New York Civil Practice Law and Rules subdivision 3211(g) or subdivision 3212(h). *See Id.* These two provisions create special standards for dismissal and summary judgment in cases involving "public petition and participation." *See* N.Y. C.P.L.R. §§ 3211(g), 3212(h); Fed. R. Civ. P. 12(b)(6), 56.

This suit qualifies as an "action involving public petition and participation" because it involves a claim based upon "[a] communication in a place open to the public or a public forum in connection with an issue of public interest." *See* N.Y. Civ. Rights Law § 76-a (McKinney); *Sweigert v. Goodman*, No. 118CV08653VECSDA, 2021 WL 1578097, at *2 (S.D.N.Y. Apr. 22, 2021). The term "public interest" must be "construed broadly" and is defined as "any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d); *Bobulinski v. Tarlov*, 758 F. Supp.3d 166, 177 (S.D.N.Y. 2024) *appeal withdrawn*, No. 25-17, 2025 WL 1009663 (2d Cir. Mar. 31, 2025). Accordingly, the Buttons' claims against the New York Times and Jacobs, which are based on statements in the Times Article reporting on a civil lawsuit are claims involving "public petition and participation."

Courts in this District disagree on the question of whether the provision applies in federal court. *See Cortsidis v. K'hal Bnei Torah of Mount Ivy*, No. 22-cv-10502, 2024 WL 37122, at *15 (S.D.N.Y. Jan 3, 2024) (finding that the attorneys' fees provision of the New York anti-SLAPP statute does not apply in federal court "because its standard conflicts with Federal Rules of Civil Procedure 12 and 56" and collecting cases to that effect). While several courts have held that it does not, *see id.*, more recently a well-reasoned minority has come to the opposite conclusion.

*See Heilbut v. Cassava Sciences, Inc.*, F. Supp.3d , 2025 WL 919654, (S.D.N.Y. Mar. 26, 2025) (finding that the mandatory award of attorneys' fees in section 70-a is purely substantive and thus must be applied in federal court); *Bobulinski*, 758 F. Supp.3d at 189 (holding that § 70-a applies in Federal Court on *Erie* grounds and that defendant is entitled to attorneys' fees); *see also Murchinson Ltd. v. Nano Dimension Ltd.*, 2025 WL 1397615, at *16 (S.D.N.Y. May 14, 2025) (citing *Bobulinski*). The Times Defendants ask the Court to resolve this split in their favor, apply section 70-a, and award them reasonable attorneys' fees pursuant to the statute. *See* Times Mem. at 21.

The question of the applicability of section 70-a centers on whether it is procedural in nature and conflicts with Federal Rules 12(b)(6) and 56. The courts that have declined to apply the statute have done so on the basis that the statute's "substantial basis" standard is procedural and conflicts with Rule 12(b)(6) and Rule 56 standards, meaning the Federal Rule governs. *See Coritsidis*, 2024 WL 37122, at *15; *Kesner v. Buhl*, 590 F.Supp.3d 680, 701 (S.D.N.Y. 2022); *accord Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The courts that have applied the statute, on the other hand, have found that the rule, which entitles a defendant to receive attorneys' fees in a defamation action when it is "without substantial basis in fact and law," is substantive, not procedural and thus under *Erie*, applies in federal court. *Bobulinski*, 758 F. Supp.3d at 183–88 (quoting *Shady Grove*, 559 U.S. at 398); *see also Heilbut*, 2025 WL 919654, at *25.

This Court agrees with *Bobulinski* and *Heilbut*. "The test is whether a Federal Rule of Civil Procedure answers the same question as the [anti-SLAPP statute]." *La Liberte v. Reid*, 966 F.3d 79, 87 (2d. Cir. 2020). In *La Liberte*, the Second Circuit determined that the relevant question regarding whether to apply a special motion to strike in California's anti-SLAPP law was the

"circumstances under which a court must dismiss a plaintiff's claim before trial, a question that is already answered differently by Federal Rules 12 and 56." *La Liberte*, 966 F.3d at 87.  On the other hand, in *Adelson*, the Second Circuit found that a Nevada anti-SLAPP statute concerning the mandatory award of attorneys' fees did not conflict with any federal rules.  *See Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (quoting *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir.1993) ("Attorney's fees mandated by state statute are available when a federal court sits in diversity.")).

Similar to *Adelson*, here the New York anti-SLAPP fee-shifting provision answers the question of whether a party is entitled to attorneys' fees, a question that the pleading standard of Rule 12(b)(6) does not answer.[19]  *Compare* N.Y. Civ. Rights L. § 70-a *with* Fed. R. Civ. P. 12(b)(6); *see also Heilbut*, 2025 WL 919654, at *9; *Bobulinski*, 758 F. Supp. 3d at 186.  Since the state statute allowing for attorneys' fees and the pleading standard of Rule 12(b)(6) answer different questions, the Court must determine whether the law in question is substantive or procedural.  *Shady Grove*, 559 U.S. at 398.  If the state law is substantive, the Court is bound to apply it.  *See Gasperini v. Ctr. For Humanities*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  The entitlement to attorneys' fees is substantive.  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) ("We apply New York substantive law to resolve the dispute regarding plaintiff's entitlement to attorney's fees"); *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992).  As *Bobulinski* outlines, twin aims of *Erie*, as outlined in *Hanna*, support this conclusion. *See Bobulinski*, 758 F. Supp.3d at 186.  First, declining to apply the statute in federal court would encourage forum shopping, as plaintiffs with borderline defamation cases would flock to federal

---

[19] The only Federal Rule that relates to attorneys' fees in any significant capacity is Rule 54, which sets the procedure for filing a motion for fees rather than the substantive standard for entitlement to such fees.  *See* Fed. R. Civ. P. 54.

court to skirt the risk of paying their adversary's attorneys' fees in case of dismissal. *Id.* Second, different outcomes in federal and state court for cases of identical merit would have a substantially negative impact on the equal administration of justice. *See Bobulinski*, 758 F. Supp.3d at 186 (citing *Hanna v. Plumer*, 380 U.S. 460, 468 (1965) (defining the twin aims of *Erie* as the equitable administration of justice and preventing forum shopping)). Because there is no conflict with existing rules and the state statute governs an established substantive right, section 70-a applies in federal court.

**B.    Attorneys' Fees In This Action**

Having found that the substantive right to attorneys' fees in Section 70-a applies in federal court, the Court must determine whether Section 70-a applies and requires the award of attorneys' fees in this case. Section 70-a(1) states that "[a] defendant . . . may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action". *Bobulinski* holds that this means Defendants need not bring a separate action or counterclaim to demand attorneys' fees. *See* N.Y. Civ. Rights L. *Bobulinski*, 758 F. Supp. 3d at 188 ("'[M]aintain[ing] an action' includes defendants' continuing to litigate in an original action filed against them."); *see also Heilbut*, 2025 WL 919654, at *10 (party requesting attorneys' fees filed a separate cause of action seeking such fees). However, according to the *Erie* analysis laid out above, this Court must apply the federal procedural Rule 54(d) to determine the question of how parties may move for attorneys' fees. *See Zhang v. Zhang*, No. 22-CV-02745-WFK-JRC, 2024 WL 4267790, at *3 (E.D.N.Y. Sept. 6, 2024), *report and recommendation adopted*, No. 22-CV-2745 (WFK) (JRC), 2024 WL 4266272 (E.D.N.Y. Sept. 23, 2024) ("Rule 54(d) of the Federal Rules of Civil Procedure is a procedural rule."); *Cameau v. Nat'l Recovery Agency, Inc.*, No. CV 15-2861 (DRH) (AKT), 2018 WL

4522104, at *4 (E.D.N.Y. Aug. 6, 2018), *report and recommendation adopted*, No. 15CV2861(DRH) (AKT), 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018) ("Rule 54(d)(2) is a procedural guide to be utilized where attorneys' fees are elsewhere authorized."); *Latin Am. Fin. Grp., Inc. v. Pareja*, No. 04 CIV. 10082 (DLC), 2007 WL 1009506, at *1 (S.D.N.Y. Apr. 2, 2007) (referring to Rule 54 as an "unambiguous procedural rule.").

Rule 54(d) states that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." *See* Fed. R. Civ. P. 54(d)(2)(A). It requires further that "[u]nless a statute or a court order provides otherwise" that the motion "state the amount sought or provide a fair estimate of it." *See* Fed. R. Civ. P. 54(d)(2)(B). The Times Defendants do not state any amount sought or any estimate. Accordingly, the Times Defendants' motion is denied. *See Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 629 (S.D.N.Y. 2016), aff'd, 683 F. App'x 33 (2d Cir. 2017) (denying a motion for attorneys' fees because it did not "state the amount sought or provide a fair estimate of it."); *Bartels v. Inc. Vill. of Lloyd Harbor*, No. 10 CV 5076 PKC, 2015 WL 4459403, at *2 (E.D.N.Y. July 21, 2015) (denying a motion for attorneys' fees because the motion failed to state the amount sought or provide an estimate explaining that "[b]y failing to provide any figure or estimate as to the fees sought, Defendants essentially ask the Court to approve a blank check for Plaintiff to write.").

## CONCLUSION

For the reasons stated above, each of Plaintiffs' claims is time-barred or otherwise facially deficient, and the Defendants' motions to dismiss [ECF Nos. 36, 38, 41] are GRANTED.

Accordingly, Plaintiffs' case is dismissed with prejudice.[20]  The Times Defendant's request for attorneys' fees is DENIED without prejudice.

The Clerk of Court respectfully is requested to terminate the motions pending at docket entries 36, 38, and 41, and to close this case.


**SO ORDERED.**

**Date:  September 15, 2025**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[20] The Court does not grant Plaintiffs leave to amend the Amended Complaint.  Plaintiffs were granted an opportunity to amend their complaint in response to issues raised in Defendants' initial pre-motion letters requesting leave to file a motion to dismiss.  [ECF Nos. 32].  Plaintiffs took that opportunity and did not remedy the defects as described above.  *See* AC.  Second, Plaintiffs did not request leave to amend in their oppositions to the pending motions to dismiss and did not demonstrate to the Court that the opportunity to amend would not be futile.  *See, e.g.*, *Treiber v. Aspen Dental Mgmt.*, Inc., 635 F. App'x 1, 4 (2d Cir. 2016).