# Exhibit D

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

DONALD J. TRUMP,

                          Plaintiff,

        v.

MARY L. TRUMP, THE NEW YORK TIMES
COMPANY d/b/a *The New York Times*, SUSANNE
CRAIG, DAVID BARSTOW, RUSSELL
BUETTNER, JOHN DOES 1 THROUGH 10, and
ABC CORPORATIONS 1 THROUGH 10,

                         Defendants.

Index No. 453299/2021

Part 43 (Reed, J.)

## AFFIRMATION OF DAVID MCCRAW, ESQ.

I, David McCraw, an attorney duly admitted to practice law before the courts of the State of New York, affirm under penalty of perjury as follows:

1.      I am Deputy General Counsel at The New York Times Company ("The Times") and counsel for Defendants The Times, Susanne Craig, and Russell Buettner in this action.[1] Pursuant to this Court's Decision and Order filed on May 3, 2023, I submit this attorney affirmation of legal services to substantiate the request by Defendants The Times, Susanne Craig, and Russell Buettner for $229,921.00 in attorney's fees and costs. The affirmation sets out the billing practices of The Times's attorneys, the hours expended on this case, the attorneys' experience and qualifications, and the requested hourly rates and total fees.

---

[1] Because Mr. Barstow was no longer an employee of The Times, we concluded that he should not be represented by The Times's in-house legal department. Mr. Barstow was represented by counsel from Vinson & Elkins LLP and Thomas S. Leatherbury Law, PLLC, the fees for which will be presented to the Court via a separate affirmation.

2. I make this affirmation based on my personal knowledge and on the record in this action.

## Billing Practices

3. My colleague Karen Chesley, Senior Counsel at The Times, and I have been the lead lawyers for Defendants throughout these proceedings. We have been assisted in the litigation by Demetri Blaisdell, Counsel at The Times, and Jessica Hui, the former First Amendment Fellow at The Times. We also have been assisted in the litigation by other current and former colleagues at The Times, though we do not seek to recover fees for the time they expended.

4. In this litigation, like others where we might recover our attorneys' fees, each individual attorney has been responsible for recording time spent on the case. And in this case, even more so than others, the hours we logged understate the actual time we spent on the litigation. That is in part because we consistently log time expended on significant tasks, like drafting and editing substantive briefs and preparing for oral argument, but we do not routinely invoice for smaller, day-to-day tasks. In this matter, for instance, my colleagues and I did not consistently log the time spent on tasks like: (i) communicating with opposing counsel regarding stipulations or scheduling matters, (ii) discussing case strategy with colleagues, (iii) communicating with Defendants Craig and Buettner about strategy and developments in the litigation; (iv) communicating with counsel for Defendant Barstow about the litigation; and (v) communicating with counsel for Mary Trump about the litigation.

## Hours Expended

5. Attached as Exhibit A to this affirmation are time logs for me, Ms. Chesley, Mr. Blaisdell and Ms. Hui. The logs reflect that we spent the following time on this litigation:

a. David McCraw: 78.1 hours

2

b. Karen Chesley: 156.3 hours

c. Demetri Blaisdell: 24.2 hours

d. Jessica Hui: 102.9 hours

e. Total: 361.5 hours

6.    In considering the appropriateness of the time expended on this matter, it is important to remember that several dynamics have required additional time and effort. First, the case was initially scheduled for oral argument before Justice Borrok on July 12, 2022. The parties fully briefed the motion to dismiss and Defendants had fully prepared for oral argument when, on the same day the argument had been scheduled, the case was transferred to Your Honor after having been designated as related to *Mary L. Trump v. Donald J. Trump*, Index No. 654698/2020. *See* Dkt. No. 72. The motion to dismiss was ultimately argued on January 19, 2023, a time when Ms. Chesley, who had been the chief author of Defendants' brief, was out of the office on parental leave. Ms. Chesley's absence required me to spend additional time preparing for the argument, aided by Mr. Blaisdell, who also had to spend time to learn the case. Second, the fact that the briefing and argument of The Times's motion to dismiss proceeded in parallel with Mary Trump's motion to dismiss required our team to review and prepare for any overlapping legal issues involved in the two motions, such as the impacts of Ms. Trump's arguments and any concessions or inconsistent positions taken in Plaintiff's briefing. Third, the fact that Mr. Barstow required separate counsel because he was no longer affiliated with The Times increased the total number of hours required for the defense of the claims. Notwithstanding these dynamics, the overall number of hours and fee application represents a reasonable number, in light of the complexity of the issues and the outcome achieved.

3

Attorney Experience and Qualifications

7.      I have more than thirty years of legal experience, including over twenty as a full-time media lawyer.  I graduated from Albany Law School in 1992, then served as a law clerk to Judge Richard D. Simons on the New York State Court of Appeals.  I was later a litigation associate at Rogers & Wells and Clifford Chance in New York. From 2000 to 2002, I was deputy general counsel of Daily News, L.P., the publisher of the New York *Daily News*.  I joined the Legal Department at The Times in 2002, where I am Deputy General Counsel.  I am widely considered one of the top media lawyers in the country.  I have served as the lead litigation attorney for The Times in dozens of libel, freedom-of-information, and commercial cases in New York State Supreme Court and the federal courts in New York and the District of Columbia.

8.      As of September 2021, Ms. Chesley had twelve years of legal experience. She graduated from the University of Pennsylvania Law School, *cum laude*, in 2009.  She clerked for Judge Michael A. Chagares of the U.S. Court of Appeals for the Third Circuit and Judge Juan R. Sánchez of the U.S. District for the Eastern District of Pennsylvania.  She was an associate and then a partner at Boies Schiller Flexner LLP from 2012 to 2021, where she focused on high-stakes litigation, including contract disputes, trade secrets litigation, copyright matters, shareholder disputes, and cases involving international law.  She joined The Times's legal department in 2021, where she serves as Senior Counsel.

9.      As of January 2023, when he joined the Times and began working on the case, Mr. Blaisdell had over eight years of legal experience in commercial litigation and arbitration.  He graduated from Columbia Law School in 2014.  He was a litigation associate at Boies Schiller Flexner LLP from 2014 until the end of 2022, where he specialized in complex commercial litigation, including claims involving technology companies, intellectual property disputes, and

4

other varied representations in plaintiff- and defense-side disputes. He joined The Times's legal department in January 2023 as Counsel.

10. Ms. Hui served as the First Amendment Fellow for The Times from August 2021 to August 2022. She graduated from Harvard Law School in 2021.

The Rates and Total Fees

11. Attached as Exhibit B to this affirmation is the decision in *New York Times Co. v. Central Intelligence Agency*, 251 F. Supp. 3d 710 (S.D.N.Y. 2017), a FOIA case litigated by in-house attorneys at The Times's legal department. In the decision, the court approved as "reasonable" rates of $650 per hour for me, as a senior attorney ("a seasoned FOIA litigator with 14 years' experience") and $400 per hour for two "junior attorneys." *Id.* at 715.

12. In order to keep pace with inflation, we have adjusted the rates approved by the Southern District in May 2017 to April 2023 (the most recent month for which data is available) using the Consumer Price Index Inflation Calculator published by the United States Bureau of Labor Statistics, available online at https://www.bls.gov/data/inflation_calculator.htm. The hourly rates of $650 and $400, approved in May 2017, have the same buying power in April 2023 as $805.72 and $495.83, respectively.

13. We have also adjusted the rates approved by the Southern District for the seniority of the attorneys involved in this matter. The appropriate rate for me, in light of my experience, is the same approved rate (adjusted for inflation) of $805/hour. The appropriate rate for Ms. Chesley, given her experience, is the midpoint between the two approved rates: $650/hour. The appropriate rate for Mr. Blaisdell, given his comparatively lower amount of experience, is slightly lower: $600/hour. The appropriate rate for Ms. Hui, as the member of the team with the least experience, is the approved rate for a junior attorney (adjusted for inflation): $495/hour. These rates are in line

5

with rates approved by this Court and the Southern District involving similar commercial claims and lawyers with similar levels of experience and reputation. *See, e.g.*, *Harlem 133 Lender, LLC v. Balkany*, Index No. 656666/2020, 2022 NY Slip Op 31245(U), ¶ 3 (Sup. Ct. Apr. 13, 2022) (awarding attorney's fees for discovery motion brought in breach of contract and ejectment actions, holding that rates of up to $1,070 per hour for partners and up to $715 per hour for associates are "usual and customary for commercial law firms in New York City"); *Navatar Grp., Inc. v. Seale & Assocs., Inc*, Index No. 653643/2018, 2022 NY Slip Op 33223(U), ¶ 2 (Sup. Ct. Sept. 20, 2022) (awarding attorney's fees in breach of contract action at rates of up to $800 per hour for partners and up to $630 for associates); *Carrington v. Graden*, No. 18-cv-4609, 2020 U.S. Dist. LEXIS 178712, at *35 (S.D.N.Y. Sep. 28, 2020) (collecting cases and awarding attorney's fees for spoliation motion in a case involving unfair competition and misappropriation of trade secrets claims, holding that partner rates of up to $900 per hour and associate rates of up to $575 per hour were reasonable).

14.    Multiplying these rates by the hours expended yields the following figures:

a. David McCraw: 78.1 hours x $805/hour = $62,870.50

b. Karen Chesley: 156.3 hours x $650/hour = $101,595.00

c. Demetri Blaisdell: 24.2 hours x $600/hour = $14,520.00

d. Jessica Hui: 102.9 hours x $495/hour = $50,935.50

e. Total: $229,921.00.

15.    I affirm under penalty of perjury that the statements contained herein are accurate.

6

Case 1:24-cv-05888-MKV    Document 69-4    Filed 09/29/25    Page 8 of 21

Dated: June 5, 2023
New York, New York

THE NEW YORK TIMES COMPANY

By: /s/ David McCraw
Karen A. Chesley
David McCraw
620 8th Avenue
New York, NY 10018
Telephone: (800) 698-4637
karen.chesley@nytimes.com
david.mccraw@nytimes.com

*Attorneys for Defendants The New York
Times Company, Susanne Craig, and
Russell Buettner*

7

Case 1:24-cv-05888-MKV    Document 69-4    Filed 09/29/25    Page 9 of 21

# EXHIBIT A

**Hours of D. McCraw – Trump v. Trump**

| Date | Task | Hours |
|---|---|---|
| 9/21/2021 | Initial review of complaint and working with corp comms to draft public response | 1.10 |
| 9/22/2021 | Analysis of complaint; phone call with Gibson Dunn re: joint defense and strategy; reviewing statute of limitations arguments with Jess | 1.20 |
| 9/24/2021 | Reviewing research on tortious interference and newsgathering | 0.60 |
| 9/27/2021 | Research on change of venue and plaintiff's claims for venue in Dutchess County | 0.80 |
| 9/28/2021 | Preparing for and participating in phone conferences with Gibson Dunn re: venue, service issues, schedule; discussing law on change of venue with Jess | 1.10 |
| 9/29/2021 | Further research on reporting as tortious interference | 1.30 |
| 10/1/2021 | Phone call with David Barstow concerning motion to dismiss and the retaining of counsel | 0.50 |
| 10/2/2021 | Reviewing complaint and motion papers from fraud case brought by Mary Trump | 1.20 |
| 10/4/2021 | Reviewing Jess's research on interplay between libel and tortious interference and research addressed to reporting as a form of tortious interference; sharing research on First Amendment protection for newsgathering | 1.60 |
| 10/8/2021 | Reviewing Karen's outline for motion to dismiss; phone conference with Gibson Dunn re: amicus efforts and strategy | 1.50 |
| 10/9/2021 | Further research on tortious interference. Reviewing 1996 article on journalism and tortious interference | 1.20 |
| 10/11/2021 | Phone conference with Tom Leatherbury concerning representation of David Barstow and plans for motion to dismiss | 0.50 |
| 10/14/2021 | Reviewing briefs from Highland Capital case | 0.70 |
| 11/12/2021 | Drafting First Amendment section of brief and research on First Amendment protection for newsgathering | 1.60 |
| 11/13/2021 | Continuing work on First Amendment section for brief | 2.30 |

1

| 11/14/2021 | Continuing drafting of First Amendment section; addition research on newsgathering issue | 4.30 |
|---|---|---|
| 11/15/2021 | Revising FA section of brief | 1.60 |
| 11/16/2021 | Reviewing Karen's research on tortious interference | 0.50 |
| 1/18/22 | Reviewing Trump responsive brief | 0.80 |
| 1/23/22 | Reviewing cases cited by Trump and drafting memo to team | 1.30 |
| 2/2/22 | Further research on Trump newsgathering cases and SLAPP cases; discussion with team | 2.10 |
| 2/7/22 | Reviewing draft of reply brief | 1.20 |
| 7/8/22 | Preparing for and participating in moot for Karen's oral argument | 2.60 |
| 7/9/22 | Conferring on issues raised by moot; further research | 1.10 |
| 7/10/22 | Reviewing Karen's argument and proposed responses | 0.80 |
| 1/6/23 | Pulling together record and key cases | 1.00 |
| 1/7/23 | Review of key cases | 0.50 |
| 1/8/23 | Reviewing briefs and key cases and creating chart of arguments | 4.10 |
| 1/9/23 | Drafting questions for prep session, reviewing complaint, drafting supplemental authority submission, drafting notice of appearance | 2.30 |
| 1/10/23 | Preparing outline, attending prep session | 4.5 |
| 1/11/23 | Follow-up research from prep session | 1.10 |
| 1/13/23 | Further review of briefs, focusing on Mary's briefs; research on anti-SLAPP, revising outline | 3.60 |
| 1/15/23 | Prep for oral argument, revising outline, looking at newsgathering cases | 2.50 |
| 1/16/23 | Reviewing briefs, reviewing cases, going over likely questions and drafting answers; research on unjust enrichment and tortious interference | 7.80 |
| 1/17/23 | Call with Gibson Dunn to discuss strategy, reviewing cases we rely upon | 4.80 |
| 1/18/23 | Significant revision of outline | 2.80 |
| 1/19/23 | Prep for oral argument, attending court and doing argument, running debrief after court | 7.50 |
| 5/4/23 | Revising summary of decision for executives; reviewing decision; call with opposing counsel | 2.10<br><br>TOTAL: 78.10 |

2

Hours Worked on *Trump v. Trump*
Karen Chesley

| Date | Task | Hours |
|------|------|-------|
| 9/21/21 | Review Complaint (0.5); conf with NYT legal team re same (0.3) | 0.8 |
| 9/22/21 | Conf with NYT legal team re venue and service (0.3); review anti-SLAPP law and related research (1.0) | 1.3 |
| 9/28/21 | Review J. Hui memo re tortious interference claim (0.3); research law of tortious interference (2.7); conf with D. McCraw and legal team re transfer to NY County (0.2) | 3.2 |
| 9/29/21 | Analyze and research case law re whether tortious interference claims can be brought for harm to reputation (0.8); review tax articles mentioned in the Complaint (0.4) | 1.2 |
| 9/30/21 | Conf with J. Hui re projects for a motion to dismiss, including review of all sources cited in the Complaint (0.5); review correspondence from Gibson Dunn re change of venue and schedule (0.2) | 0.7 |
| 10/1/21 | Prep for and participate in call re change of venue (0.8); Review J. Hui research on tortious interference and defamation claims (0.3); analyze relevant passages of Mary Trump book and review J. Hui analysis of same (1.3) | 2.4 |
| 10/2/21 | Conduct research and draft outline of potential arguments for motion to dismiss | 3.3 |
| 10/4/21 | Conf with D. McCraw re stipulation to change of venue (0.1); draft outline of MTD (4.7) | 4.8 |
| 10/5/21 | Execute stipulation to change of venue (0.1); review sources re D. Trump history of SLAPP litigation (0.6); email D. McCraw and J. Hui re same (0.1) | 0.8 |
| 10/6/21 | Conduct research on defenses to claim for tortious interference | 3.3 |
| 10/8/21 | Participate in call with M. Trump counsel re legal strategy | 0.5 |
| 10/12/21 | Participate in call with S. Craig and R. Buttner to discuss legal strategy and potential motion to dismiss | 0.5 |
| 10/20/21 | Conduct research on Trump history of frivolous litigation and use of lawsuits to silence critics | 4.6 |
| 10/21/21 | Revise Trump MTD outline | 1.2 |
| 10/25/21 | Meet with J. Hui to discuss potential MTD arguments and research for same | 0.9 |
| 11/2/21 | Edit J. Hui unjust enrichment section (2.2); conf with J. Hui to discuss (0.4) | 2.6 |
| 11/4/21 | Conduct research on tortious interference and unjust enrichment (3.8); identify key allegations in Complaint (1.3) | 5.1 |
| 11/10/21 | Draft fact section of MTD | 6.7 |
| 11/14/21 | Draft MTD tortious interference argument and revise fact section | 4.4 |

| 11/16/21 | Research and draft First Amendment and NY constitutional law section of MTD | 5.0 |
|---|---|---|
| 11/21/21 | Draft and research negligent supervision section (2.5) and unjust enrichment section (3.2) of MTD | 5.7 |
| 11/22/21 | Research and draft anti-SLAPP portions of MTD (4.3); revise draft MTD (2.8) | 7.1 |
| 11/28/21 | Revise draft MTD and conduct follow-up research for same | 8.3 |
| 11/29/21 | Incorporate V&E edits to MTD (3.4); conf with J. Hui re punch list for MTD (0.9) | 4.3 |
| 11/30/21 | Revise MTD | 5.5 |
| 12/1/21 | Revise MTD (2.4); conf with M. Trump counsel re filing (0.9) | 3.3 |
| 12/2/21 | Finalize MTD and exhibits; coordinate filing | 4.6 |
| 1/19/22 | Review Opposition to MTD (1.2); conf with J. Hui re projects for reply (0.5) | 1.7 |
| 1/20/22 | Conduct supplemental research on anti-SLAPP law for reply brief | 2.8 |
| 1/26/22 | Draft anti-SLAPP section for reply brief | 2.4 |
| 2/1/22 | Conf with J. Hui re Reply ISO of MTD | 0.5 |
| 2/2/22 | Draft constitutional and tortious interference reply brief sections | 4.7 |
| 2/4/22 | Draft remainder of reply brief | 5.8 |
| 2/7/22 | Revise Reply Brief and conduct follow-up research | 6.2 |
| 2/8/22 | Finalize and coordinate filing of Reply Brief | 3.1 |
| 6/28/22 | Conf with D. McCraw, C. Duffy, and T. Leatherbury re OA | 1.0 |
| 7/7/22 | Review Complaint and identify key allegations (2.7); Draft introduction for OA (1.4) | 4.1 |
| 7/8/22 | Review opposition and reply briefing (2.2); Draft OA outline (5.3); Participate in moot of OA (1.0) | 8.5 |
| 7/9/22 | Draft and revise OA outline (2.8); review subsequent case history from cited cases (1.6); draft Q&A (2.5) | 6.9 |
| 7/10/22 | Review M. Trump briefs (1.5); draft points to distinguish Trump cited case law (3.1); draft and revise Q&A (6.4) | 11.0 |
| 7/11/22 | Revise OA outline (1.3); review supporting case law and draft summary of same (3.5); participate in call with court re scheduling (0.4); conf with NYT team re revised schedule (0.3) | 5.5 |
| | | |
| | | 156.3 |

**Demetri Blaisdell**
**Hours Log—Trump v. Trump**

| Date | Task | Hours |
|------|------|-------|
| 1/10/2023 | Reviewing and analyzing NYT MTD briefing, supporting materials, and key cases; reviewing and analyzing Complaint | 3.0 |
| 1/11/2023 | Continuing review and analysis of NYT MTD briefing and key cases; reviewing and analyzing Mary Trump motion to dismiss briefing | 4.0 |
| 1/12/2023 | Preparing for and participating in meeting with D. McCraw and counsel for journalists to prep for oral argument on MTD | 1.0 |
| 1/13/2023 | Reviewing and revising draft tough questions and answers to prepare for argument on MTD | 3.5 |
| 1/17/2023 | Meeting with D. McCraw to prep for oral argument on MTD, preparing for same | 0.9 |
| 1/17/2023 | Reviewing and analyzing negligent supervision/retention claims, email correspondence with D. McCraw re same | 0.7 |
| 1/17/2023 | Reviewing and analyzing *149 Mercer* and *Rubel* anti-SLAPP decisions, preparing email memorandum re same | 1.0 |
| 1/18/2023 | Reviewing and revising draft argument outline | 1.0 |
| 1/19/2023 | Attending oral argument on MTD | 3.0 |
| 1/20/2023 | Reviewing and analyzing draft letter to Court from M. Trump, correspondence re same | 0.5 |
| 2/1/2023 | Reviewing and analyzing transcript of MTD argument | 1.0 |
| 4/19/2023 | Reviewing and analyzing letter to Court from Mary Trump re *New York v. New Jersey* | 0.7 |
| 4/20/2023 | Correspondence with counsel for Barstow re Mary Trump letter to Court | 0.2 |
| 4/25/2023 | Reviewing and analyzing plaintiff's letter to Court re *New York v. New Jersey* | 0.3 |
| 5/3/2023 | Reviewing and analyzing decision on MTD, preparing summary of same | 1.5 |
| 5/3/2023 | Drafting notice of entry, reviewing court rules and CPLR re same | 0.8 |
| 5/4/2023 | Correspondence with counsel for Barstow re notice of entry | 0.3 |
| 5/5/2023 | Revising, finalizing, and filing notice of entry | 0.8 |
| | | |
| TOTAL | | 24.2 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

FILED: NEW YORK COUNTY CLERK 06/07/2023 07:40 PM
INDEX NO. 453299/2021
NYSCEF DOC. NO. 88
RECEIVED NYSCEF: 06/07/2023

Case 1:24-cv-05888-MKV    Document 69-4    Filed 09/29/25    Page 15 of 21

Jess Hui Hours - Trump v. Trump

| Date | Hours | Description |
|---|---|---|
| 9/22/2021 | 2.1 | Research SOL for all claims in complaint |
| 9/24/2021 | 4.3 | Research whether newsgathering is "justification" to an interference claim |
| 9/28/2021 | 1.5 | Research change of venue |
| 9/29/2021 | 2.1 | Research whether tortious interference and defamation can be considered duplicative |
| 10/1/2021 | 2.2 | Research whether tortious interference and defamation can be considered duplicative |
| 10/6/2021 | 1.7 | Research Trump's influence on anti-SLAPP Amendments |
| 10/25/2021 | 2.6 | Research for MTD on unjust enrichment ("duplicative") |
| 10/25/2021 | 1.5 | Meeting with KC to discuss research for MTD |
| 10/26/2021 | 1.7 | Research for MTD on unjust enrichment ("equity and good conscience") |
| 10/27/2021 | 3.4 | Research for MTD on unjust enrichment ("at Trump's expense") |
| 10/28/2021 | 2.9 | Reserch for MTD on unjust enrichment ("equity and good conscience") |
| 10/30/2021 | 1.1 | Research for MTD on tortious interference (causation) |
| 11/2/2021 | 0.5 | Meeting with KC to discuss Oct 26-30 research |
| 11/4/2021 | 1.1 | Follow-up research in response to KC's comments on Oct 26-30 research |
| 11/5/2021 | 3.8 | Follow-up research in response to KC's comments on Oct 26-30 research; outline unjust enrichment section |
| 11/7/2021 | 5.1 | Research cases that dismissed tort claims against reporters on grounds that their activity was ordinary newsgathering |
| 11/8/2021 | 4.8 | Research cases that dismissed tort claims against reporters on grounds that their activity was ordinary newsgathering |
| 11/10/2021 | 2.4 | Incorporated KC's comments into outline; began drafting unjust enrichment section |
| 11/12/2021 | 2.7 | Draft unjust enrichment section |
| 11/13/2021 | 4.3 | Follow-up unjust enrichment research based on KC's comments on Nov 5 outline; draft unjust enrichment section |
| 11/15/2021 | 6.1 | Research tort claims against reporters where activities involve speaking to a source that signed an NDA |
| 11/16/2021 | 3.4 | Research tort claims against reporters where activities involve speaking to a source that signed an NDA |
| 11/18/2021 | 4.6 | Research tort claims against reporters where activities involve speaking to a source that signed an NDA |
| 11/24/2021 | 3.3 | Edited MTD |
| 11/30/2021 | 2.5 | Research whether you can aid and abet your own employees/coworkers and pleading standards for damages |
| 12/1/2021 | 4.0 | Research on judicial notice, incorporation by reference, 3211(a)(1), 3211(a)(7), how to bring a claim for fees in a MTD, preference for hearing |
| 12/2/2021 | 4.6 | Edit, cite-check & proof MTD; prepare brief for filing |
| 12/13/2021 | 0.8 | Judge research |
| 1/21/2022 | 3.0 | Research for reply on legislative history of anti-SLAPP, definition of "public interest" under anti-SLAPP, and assertions for with publication is necessary |
| 1/26/2022 | 1.3 | Draft anti-SLAPP section of reply |
| 2/1/2022 | 0.9 | Call with KC about reply |
| 2/2/2022 | 3.3 | Draft anti-SLAPP section of reply; follow-up research for reply |
| 2/7/2022 | 1.8 | Research on Trump statements on Times |
| 3/13/2022 | 5.1 | Retroactivity research (date complaint is filed vs. date of underlying conduct) |

FILED: NEW YORK COUNTY CLERK 06/07/2023 07:40 PM
INDEX NO. 453299/2021
NYSCEF DOC. NO. 88
RECEIVED NYSCEF: 06/07/2023

Case 1:24-cv-05888-MKV    Document 69-4    Filed 09/29/25    Page 16 of 21

Jess Hui Hours - Trump v. Trump

| 7/5/2022 | 1.0 | Call with KC about oral arg task list |
|----------|-----|---------------------------------------|
| 7/6/2022 | 3.2 | Research for oral arg (shepardizing all cases; Q&A for KC; new authority for newsgathering and attorney file propositions) |
| 7/7/2022 | 2.2 | Research on property law; discuss best newsgathering cases with KC via email |

TOTAL        102.9

# EXHIBIT B

 Positive

As of: June 6, 2023 6:45 PM Z

# *New York Times Co. v. CIA*

United States District Court for the Southern District of New York

May 1, 2017, Decided

16 Civ. 3098 (JSR)

**Reporter**

251 F. Supp. 3d 710 *; 2017 U.S. Dist. LEXIS 66085 **; 2017 WL 1573234

THE NEW YORK TIMES COMPANY, Plaintiff, -v-CENTRAL INTELLIGENCE AGENCY, Defendant.

**Counsel:  [\*\*1]** For The New York Times Company, Plaintiff: David Edward McCraw, LEAD ATTORNEY, The New York Times Company (10018), New York, NY USA.

For Central Intelligence Agency, Defendant: Leigh Aaron Wasserstrom, LEAD ATTORNEY, U.S. Attorney's Office, S.D.N.Y., New York, NY USA.

**Judges:** JED S. RAKOFF, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JED S. RAKOFF

# Opinion

 **[\*712]**  OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

Plaintiff The New York Times Company ("The Times") brought this action under the *Freedom of Information Act* seeking to force defendant Central Intelligence Agency ("CIA") to produce three reports, identified by name and approximate date of publication, relating to chemical weapons in Iraq. See Complaint, ECF No. 1, ¶ 8(i)-(iii). The CIA refused to confirm or deny the existence of these reports - a so-called "Glomar response"[1] - a position it maintained throughout the

---

[1] This term derives from *Phillippi v. CIA, 546 F.2d 1009, 178 U.S. App. D.C. 243 (D.C. Cir. 1976)*, in which the defendant refused to confirm or deny the existence of records relating to a vessel named the Hughes Glomar Explorer. See *New York Times Co. v. U.S. Dep't of Justice, 756 F.3d 100, 105 & n.4 (2d Cir. 2014)*.

briefing and oral argument on the parties' cross-motions for summary judgment. Following oral argument, however, the CIA withdrew its Glomar response and produced the reports (with redactions), and the parties withdrew their summary judgment motions as moot. See Joint Stipulation dated Sept. 16, 2016, ECF No. 25. The Times, having achieved this favorable result, now **[\*\*2]** seeks $61,909.86 in attorney's fees and costs under FOIA's fee-shifting provision, *5 U.S.C. § 552(a)(4)(E)*. For the reasons stated below, **[\*713]** the Court finds that The Times is entitled to an award of $51,909.86.

Evaluating FOIA fee applications is a three-step process. First, the court determines whether the applicant has shown "eligibility" for fees by showing that it "substantially prevailed" in the litigation. See *Pietrangelo v. U.S. Army, 568 F.3d 341, 343 (2d Cir. 2009)* (per curiam) (quoting *5 U.S.C. § 552(a)(4)(E)(i)*). A FOIA complainant substantially prevails if it has "obtained relief through . . . a voluntary or unilateral change in position by the agency" and its claim was "not insubstantial." *5 U.S.C. § 552(a)(4) (E) (ii) (II)*.

Second, if an applicant is eligible for fees, the court next determines whether the applicant is "entitled" to fees by weighing the following four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information." *Pietrangelo, 568 F.3d at 343*.

Third, and finally, a court determines whether the fee requested by an eligible and entitled applicant is "presumptively reasonable" under the lodestar approach generally applied to fee applications **[\*\*3]** in the Second Circuit. See *Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)*.

Here, the CIA concedes that The Times is eligible for fees, see *5 U.S.C. § 552(a)(4)(E)(ii)(II)*, but argues that The Times is not entitled to them, and, in the alternative,

251 F. Supp. 3d 710, *713; 2017 U.S. Dist. LEXIS 66085, **3

that some of The Times' specific requests are unreasonable.

Regarding entitlement, the Court, weighing the Pietrangelo factors, finds that The Times is entitled to fees. The first factor, public benefit, unambiguously favors The Times. The public greatly benefits from learning what the Government knew about chemical weapons in Iraq following the invasion; after all, the existence vel non of such weapons was one of the principal flashpoints in the public debate over the war. Whether the Government, following the invasion, took adequate precautions to protect U.S. service members from the dangers of what, according to The Times' reporting, turned out to be degraded and decrepit remnants of Iraq's pre-Gulf War stockpile is likewise of great public interest.[2]

The second and third factors (the plaintiff's commercial benefit and the nature of the plaintiff's interest in the records) - which are often considered together, see Davy v. CIA, 550 F.3d 1155, 1160, 384 U.S. App. D.C. 49 (D.C. Cir. 2008) - also favor The Times. Although [**4] The Times is a commercial enterprise, courts have "long recognized that news interests, regardless of private incentive, generally should not be considered commercial interests for purposes of the second factor." See id. (internal quotation marks omitted). The Times' interest in the records it sought was public-minded and journalistic, not narrowly focused on the bottom line.

The CIA all but concedes that the first three factors favor The Times, for it relegates the lot of them to a single footnote in its brief that vaguely alludes to the supposedly "unique circumstances" of this case, by which it apparently means that the CIA's interest in chemical weapons was already well-known, that the produced documents total fewer than forty pages, [*714] and that awarding fees would discourage "discretionary" releases such as this. See Memorandum of Law in Opposition to Plaintiff's Motion for Fees and Costs ("CIA Mem."), ECF No. 35, at 8 n.l. Only the first of these arguments even purports to respond to the first three Pietrangelo factors, and it is wholly without merit. The CIA conflates its interest in concealing the fact of its investigation into chemical weapons in Iraq - an end it

sought to achieve [**5] with its Glomar response - with the public's very real interest in learning the results of that investigation, i.e., the contents of the reports. Thus, the first three factors heavily favor The Times.

The CIA instead focuses almost entirely on the fourth and final factor, i.e., "whether the Government had a reasonable basis for withholding requested information," Pietrangelo, 568 F.3d at 343, which, the CIA claims, is potentially dispositive on its own. Thus, relying on a line of cases from the D.C. Circuit, the CIA argues that, because its Glomar response supposedly would have been upheld on summary judgment, The Times is not entitled to any fees, regardless of the other factors. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 526, 395 U.S. App. D.C. 155 (D.C. Cir. 2011). In response, The Times argues, inter alia, that it (The Times), not the CIA, would have prevailed on summary judgment, and that the CIA's about-face following oral argument is a sure sign that the CIA itself had no faith in its own position on the merits. See Reply Memorandum of Law in Further Support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to 5 U.S.C. § 552(a)(4)(E), ECF No. 37, at 2-3.

While the Times may well be right that it would have prevailed on summary judgment, the Court need not reach that question here, because it disagrees [**6] with the CIA's premise that if it prevails on the fourth factor, that automatically outweighs the other three factors. While this arguably is the position of the D.C. Circuit, there is no Second Circuit decision adopting it, and, indeed, such an approach would appear to be in some tension with the Second Circuit's characterization of the entitlement inquiry as "weigh[ing]" the "four criteria" discussed supra. See Pietrangelo, 568 F.3d at 343. Nor does the Senate Report upon which the four-factor test is ultimately based, see Davy, 550 F.3d at 1158-59 & n.2, contemplate such a rigid approach. See S. Rep. No. 93-854 (1974), at 19-20 ("It should be noted that the criteria set out in this subsection are intended to provide guidance and direction - not airtight standards - for courts to use in determining awards of fees. Each criterion should be considered independently, so that, for example, newsmen would ordinarily recover fees even where the government's defense had a reasonable basis in law . . . .").

Accordingly, the Court here, guided by Pietrangelo, will balance the reasonableness of the CIA's Glomar response with the other factors, which, as noted, the CIA all but concedes. Having done so, the Court finds that, at a minimum, the fourth factor [**7] does not

---

[2] See, e.g., C.J. Chivers, The Secret Casualties of Iraq's Abandoned Chemical Weapons, N.Y. Times, Oct. 14, 2014, available at https://www.nytimes.com/interactive/2014/10/14/world/middleeast/us-casualties-of-iraq-chemical-weapons.html.

FILED: NEW YORK COUNTY CLERK 06/07/2023 07:40 PM INDEX NO. 453299/2021

NYSCEF DOC. NO. 88 RECEIVED NYSCEF: 06/07/2023

Case 1:24-cv-05888-MKV    Document 69-4    Filed 09/29/25    Page 20 of 21    Page 3 of 4

251 F. Supp. 3d 710, *714; 2017 U.S. Dist. LEXIS 66085, **7

outweigh The Times' clear advantage on the other three. To take one example, the CIA's puzzling refusal to acknowledge, either now or on summary judgment, the clear import of *Florez v. CIA, 829 F.3d 178, 183-87 (2d Cir. 2016)*, which held that disclosures by one agency are relevant to the sufficiency of another agency's Glomar response, calls into question the reasonableness of the CIA's approach. Accordingly, even assuming arguendo that the CIA would prevail on the fourth factor, The Times is still entitled to attorney's fees, for the other three factors cut so strongly in The Times' favor as to outweigh the fourth factor - a factor that in this case would be at best a close call.

 [*715]  Turning to whether The Times' fee application is reasonable, The Times' "lodestar" value is $61,909.86, which comprises $61,370 in attorney's fees and $539.86 in costs. See Declaration of David E. McCraw in Support of Plaintiff's Motion for Costs and Attorneys' Fees ("McCraw Decl."), ECF No. 33, ¶¶ 41-45. The CIA does not challenge the hourly rates ($650/hour for a seasoned FOIA litigator with 14 years' experience and $400/hour for two junior attorneys, see id. ¶¶ 24, 35-38), which the Court finds to be reasonable, nor does it challenge The Times' **[**8]** (quite minimal) costs. The CIA does, however, raise several arguments against certain categories of fees, which the Court will address in turn.

First, relying on the general rule that courts have discretion to reduce fee awards in light of "limited success," see *Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*, the CIA argues that the fee application should be discounted by an unspecified amount because the Times "apparently" first obtained the three chemical weapons reports that it sought in this litigation through a "leak." See CIA Mem. at 9. The argument seems to be that, because The Times supposedly first obtained these documents outside the litigation, its success in obtaining them a second time, this time with the CIA's imprimatur, is a lesser victory. This argument is meritless. To begin with, the CIA has failed to establish that The Times did in fact first obtain the reports through a leak. The CIA presumably suspects a leak because The Times requested the reports by name and approximate date, but having names and dates is equally consistent with The Times having discovered only that the reports existed. More importantly, the *Hensley* principle deals with occasions where a litigant won relatively little within a lawsuit, not **[**9]** where a party, through its own efforts, earns an advantage outside the courtroom that strengthens its position inside of it. There is no reason in

principle why the Times' successful investigative journalism warrants a lower award in the FOIA fee litigation, and the Court will not reduce fees on this account.

Second, the CIA argues that the approximately 55 hours The Times spent on summary judgment was excessive in light of The Times' experience with FOIA litigation, and that fees for certain administrative tasks and factual research ought to be calculated using a lower paralegal billing rate. The Court agrees that a modest reduction is warranted. While The Times' argument on summary judgment was, in light of the *Florez* decision, fact- and time-intensive, The Times need not have had attorneys perform all such tasks in the first instance, and could also have been more efficient with its time. For these reasons, the Court will reduce The Times' requested fee award by $5,000.

Third, the CIA argues that The Times' application for $10,850 (representing approximately 17 hours of time) for litigating "fees on fees" is unreasonably high, given the brevity of the fee application and the fact **[**10]** that much of this time represented efforts to resolve the fee dispute without the Court's input. See CIA Mem. at 10. While successful FOIA litigants may generally recover for time spent on fee litigation, applications for fees on fees must be carefully scrutinized. See, e.g., *Judicial Watch, Inc. v. U.S. Dep't of Justice, 878 F. Supp. 2d 225, 240 (D.D.C. 2012)*. The Court agrees that The Times' application for fees on fees is excessive, and will reduce The Times' requested fee award by an additional $5,000. Fourth, the CIA argues that The Times cannot recover $7,445 in fees for three specific tasks set forth below:

 [*716]  (1) The CIA opposes fees associated with The Times' unsuccessful opposition to the CIA's request to file a supplemental classified declaration following oral argument on the cross-motions for summary judgment. See Order dated Sept. 2, 2016, ECF No. 22. But a fee applicant "who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage," *Hall v. CIA, 115 F. Supp. 3d 24, 29 (D.D.C. 2015)*, and here, The Times' loss during this round of motion practice was a necessary step en route to prevailing. Indeed, because the CIA never made its supplemental filing and instead withdrew its Glomar response entirely, the reasonable **[**11]** inference is that the CIA concluded that even an ex parte classified declaration would not be "particularly persuasive," as required to support a Glomar response, see *Florez, 829*

251 F. Supp. 3d 710, *716; 2017 U.S. Dist. LEXIS 66085, **11

*F.3d at 182*, and thus decided to produce the reports. The Times may therefore recover these fees.

(2) The CIA also opposes fees associated with The Times' reviewing the three reports after the CIA finally produced them. But "[I]t would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation," see *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 999 F. Supp. 2d 61, 75 (D.D.C. 2013)*, and it appears The Times spent all of two hours reviewing the CIA's production, which is eminently reasonable. See Exhs. A, C to McCraw Decl.

(3) The CIA opposes fees for "administrative" work done at the pre-complaint stage, because "FOIA does not authorize fees for work performed at the administrative stage." *Nw. Coal. for Alternatives to Pesticides v. Browner, 965 F. Supp. 59, 65 (D.D.C. 1997)* (denying fees for 56.5 hours of time accrued over two years before filing the complaint). But even if *Browner* were binding on this Court - and it is not - The Times logged only four hours on such work, all of which took place shortly before filing the complaint, all of which relates to drafting the complaint, and **[**12]** all of which is reasonable. See Exhs. A, B to McCraw Decl.

For the foregoing reasons, The Times' motion for attorney's fees and costs is hereby granted, and The Times is awarded $51,909.86. The Clerk of Court is directed to close docket entry 31.

SO ORDERED.

Dated: New York, NY

2/1/2017

/s/ Jed S. Rakoff

JED S. RAKOFF, U. S. D. J.

**End of Document**