# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUSTY BUTTON AND MITCHELL TAYLOR BUTTON,<br><br>Plaintiffs,<br><br>v.<br><br>THE NEW YORK TIMES COMPANY, JULIA JACOBS, LINDSEY RUFF, SABINA MARIELLA, DAWN SCHNEIDER, DEMETRI BLAISDELL, and DAVID MCCRAW,<br><br>Defendants. | Case No.: 1:24-cv-5888-MKV<br><br>Hon. Mary Kay Vyskocil |

**DEFENDANTS SABINA MARIELLA AND LINDSEY RUFF'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DECLARE THE BUTTONS VEXATIOUS LITIGANTS AND ENTER A PRE-FILING INJUNCTION**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 3

I.    The Nevada Litigation .............................................................................. 3

    A.    The Nevada Plaintiffs' Claims ............................................................ 3

    B.    The Buttons' Vexatious Conduct Throughout The Nevada Litigation ............... 4

II.    Retaliatory Litigation Campaign .............................................................. 6

    A.    The 2024 Lawsuits Have All Been Dismissed ..................................... 7

        i.    *Button v. Roe et al.*, No. 1:24-cv-00220-SM-AJ (D. N.H.) ........... 8

        ii.    *Button v. Melcher*, No. 1:24-cv-12632-WGY (D. Mass.) ........... 8

        iii.    *Button v. McCawley*, No. 0:24-cv-60911-DSL (S.D. Fla.) ........... 8

        iv.    *Button v. Humphries et al.*, No. 8:24-cv-01730-JVS-DFM (C.D. Cal.) ......... 9

        v.    *Button v. New York Times Co.*, No. 1:24-cv-05888-MKV (S.D.N.Y.) ........ 10

        vi.    *Button v. Breshears*, No. 1:24-cv-03757-MKV (S.D.N.Y.) ......... 11

        vii.    *Button v. Doherty et al.*, No. 1:24-cv-05026-JPC-KHP (S.D.N.Y.) ........... 11

    B.    The 2025 Lawsuits Are Equally Meritless ......................................... 11

        i.    *Button v. Nelson et al.*, No. 2:25-cv-09275-DMG-E (C.D. Cal). ............... 12

        ii.    *Button v. Lopresti*, No. 3:25-cv-00867-DMS-BJW (S.D. Cal.) ............... 12

        iii.    *Button v. Jimison*, No. 3:25-cv-05622-DGE (W.D. Wash.) ........... 12

        iv.    *Button v. Kingsley*, No. 2:25-cv-02619-SMB (D. Ariz.) ............... 13

LEGAL STANDARD ...................................................................................... 13

ARGUMENT ................................................................................................. 13

I.    All Five *Safir* Factors Are Satisfied ....................................................... 13

    A.    Factor One: The Buttons Have a Pattern of Vexatious Litigation. ....... 13

    B.    Factor Two: The Buttons' Abusive and Retaliatory Motives Are Evident. ........ 16

C.    Factor Three: The Buttons Have Abused Their *Pro Se* Status. ........................... 18

D.    Factor Four: The Buttons Have Wasted Significant Judicial Resources. ............. 20

E.    Factor Five: Lesser Sanctions Are Inadequate. ...................................................... 21

II.    The Requested Injunction Is Appropriately Tailored. ...................................................... 23

A.    The Requested Injunction Preserves The Buttons' Ability to Assert Meritorious Claims. ............................................................................................. 24

B.    This Forum Is Well-Suited to Grant the Requested Relief. .................................. 25

C.    Nationwide Relief Is Warranted Here. .................................................................... 26

CONCLUSION ......................................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Button v. Breshears*,
2025 WL 2771663 (S.D.N.Y. Sept. 26, 2025) ............................................................... 6, 11, 25

*Button v. Doherty*,
2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025) ........................................................ 6, 8, 11, 17

*Button v. Doherty*,
2025 WL 2846927 (S.D.N.Y. July 30, 2025) ......................................................................... 8, 11

*Button v. Humphries*,
2025 WL 1820116 (C.D. Cal. June 9, 2025) ........................................................... 6, 9, 15, 20

*Button v. Humphries*,
2025 WL 2785644 (C.D. Cal. Aug. 28, 2025) ..................................................................... 6, 10

*Button v. Humphries*,
2025 WL 2994725 (C.D. Cal. Sept. 12, 2025) ............................................................ 6, 10, 17

*Button v. Jimison*,
2025 WL 2958545 (W.D. Wash. Oct. 17, 2025) ............................................................ 13, 17

*Button v. McCawley*,
2025 WL 1517348 (S.D. Fla. May 28, 2025) ......................................................................... 6, 9

*Button v. McCawley*,
2025 WL 50431 (S.D. Fla. Jan. 8, 2025) .................................................................................. 9

*Button v. Melcher*,
771 F. Supp. 3d 76 (D. Mass. 2025) ..................................................................................... 6, 8

*Button v. New York Times Co.*,
2025 WL 2643674 (S.D.N.Y. Sept. 15, 2025) .......................................................... 3, 6, 10, 25

*Button v. Roe*,
2024 WL 5136694 (D. N.H. Dec. 17, 2024) .................................................................... 6, 8, 15

*Button v. Thonis*,
2025 WL 1092636 (D. N.H. Apr. 11, 2025) ........................................................................ 6, 8

*Davey v. Dolan*,
453 F. Supp. 2d 749 (S.D.N.Y. 2006) ............................................................................. 15, 27

*Eliahu v. Jewish Agency for Israel*,
919 F.3d 709 (2d Cir. 2019) ............................................................................................. 14, 16

*Fitzgerald v. Field*,
1999 WL 1021568 (S.D.N.Y. Nov. 9, 1999) .................................................................... 16, 22

*Gabrelian v. Acampora*,
1991 WL 626724 (E.D.N.Y. Dec. 11, 1991) ........................................................................ 25

*Haziz-Ramadhan v. Specialized Loan Servicing, LLC*,
2024 WL 896837 (E.D.N.Y. Mar. 1, 2024) ..................................................................... 14, 18

*Hermes of Paris, Inc. v. Swain*,
  2021 WL 5170726 (2d Cir. Nov. 8, 2021)................................................................... 18

*Hermes of Paris, Inc. v. Swain*,
  2020 WL 5549704 (S.D.N.Y. Sept. 16, 2020)............................................................. 23

*Humphries v. Button*,
  2025 WL 2421224 (D. Nev. Aug. 20, 2025) ........................................................... 3, 15

*In re Terrorist Attacks on Sept. 11, 2001*,
  2021 WL 11660983 (S.D.N.Y. Sept. 27, 2021)........................................................... 22

*In re Weaver*,
  2023 WL 2500561 (N.D.N.Y. Mar. 14, 2023) ............................................................ 16

*Jones v. Newman*,
  1999 WL 493429 (S.D.N.Y. June 30, 1999). .............................................................. 17

*Kaul v. Intercontinental Exch.*,
  2022 WL 4133427 (S.D.N.Y. Sept. 12, 2022)........................................... 17, 18, 25, 27

*Lipin v. Hunt*,
  573 F. Supp. 2d 836 (S.D.N.Y. 2008) ................................................................. passim

*Niles v. Wilshire Inv. Grp., LLC*,
  859 F. Supp. 2d 308 (E.D.N.Y. 2012) ........................................................................ 24

*Pandozy v. Segan*,
  518 F. Supp. 2d 550 (S.D.N.Y. 2007) ..................................................... 13, 14, 18, 21

*Safir v. U.S. Lines, Inc.*,
  792 F.2d 19 (2d Cir. 1986) ........................................................................... 2, 13, 23

*Sankara v. Martuscellor*,
  2025 WL 3012819 (S.D.N.Y. Oct. 27, 2025)............................................................. 24

*Sathianathan v. Smith Barney, Inc.*,
  2006 WL 538152 (S.D.N.Y. Feb. 24, 2006)................................................... 18, 21, 22

*Shomo v. New York Dep't of Corr. Servs.*,
  2007 WL 2580509 (N.D.N.Y. Sept. 4, 2007).............................................................. 19

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
  547 F.3d 406 (2d Cir. 2008) ....................................................................................... 3

*Tracy v. Freshwater*,
  623 F.3d 90 (2d Cir. 2010) ........................................................................................ 18

*Vidurek v. Koskinen*,
  2018 WL 3597644 (S.D.N.Y. July 25, 2018)......................................................... 23, 25

*Ward v. Pennsylvania New York Cent. Transp. Co.*,
  328 F. Supp. 1245 (S.D.N.Y. 1971) ........................................................................... 25

*Wilson v. Pier 1 Imports (US), Inc.*,
  411 F. Supp. 2d 1196 (E.D. Cal. 2006) ...................................................................... 26

*Wood v. Mut. Redevelopment Houses, Inc.*,
   2024 WL 4164485 (S.D.N.Y. Sept. 12, 2024) ......................................................................... 18

*Woodhouse v. Meta Platforms Inc.*,
   704 F. Supp. 3d 502 (S.D.N.Y. 2023) .......................................................................... passim

*Word v. Croce*,
   230 F. Supp. 2d 504 (S.D.N.Y. 2002) ....................................................................... 14, 27

*Young v. Laclair*,
   2016 WL 3911941 (N.D.N.Y. July 15, 2016) ........................................................................ 22

*Zappin v. Comfort*,
   2022 WL 6241248 (S.D.N.Y. Aug. 29, 2022) .................................................................... 23, 25

## PRELIMINARY STATEMENT

This motion seeks an injunction to prevent ongoing harm from a sprawling, improper retaliatory litigation campaign that has caused, and will continue to cause, significant harm in the absence of judicial intervention. In 2024 alone, Plaintiffs Mitchell Taylor Button and Dusty Button (together, "the Buttons") filed seven lawsuits (including three in the Southern District of New York) targeting family, friends, therapists, *pro bono* attorneys, and other individuals connected to the six women who are suing the Buttons for sexual assault, trafficking, and related claims in the District of Nevada. *See Humphries et al. v. Button*, No. 2:21-cv-01412-ART-EJY ("Nevada Litigation"). The Buttons also targeted news organizations, journalists, and bloggers who covered the Nevada Litigation, including, as the Court is aware from this litigation, the *New York Times*. All those lawsuits have now been dismissed. Undeterred, however, the Buttons filed a string of appeals and new meritless lawsuits in 2025, including against bloggers and podcasters who did no more than describe the Nevada Litigation and express support for the Buttons' victims. At the same time, the Buttons have brazenly mocked the judicial system and bragged about their lawsuits on social media, while threatening to continue their litigation campaign into the indefinite future.

In all, the Buttons' waste of judicial resources is staggering. In only two years, the Buttons have filed eleven lawsuits and nine appeals in twelve different courts against over thirty defendants. Despite being utterly meritless, these lawsuits have caused substantial, sometimes devastating, emotional and financial harm to the long list of defendants they target. Even more egregiously, they also send a clear message to the girls and women that are seeking justice against the Buttons: if you dare speak out against us, you, your loved ones, and those who support you will be terrorized by vexatious litigation.

This Court, which has been forced to confront two of the Buttons' vexatious lawsuits, is now intimately familiar with the Buttons' tactics and the deficiencies in their pleadings. It is also

1

well positioned to curb the Buttons' abuse of the judicial system by enjoining the Buttons from filing any additional lawsuits concerning the Nevada Litigation without leave of this Court (or its designee) based on a showing as to why any new claims are non-frivolous and non-duplicative of prior dismissed claims.

In *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986), the Second Circuit articulated five factors that courts should consider when deciding whether to enter such a pre-filing injunction. Each factor is readily satisfied here.

First, the Buttons have a pattern of filing harassing, meritless lawsuits. The sheer volume of the Buttons' litigation campaign illustrates its vexatious nature, and not a single one of their lawsuits has survived a motion to dismiss.

Second, the Buttons have no good-faith expectation of prevailing. Despite an undisturbed record of defeat, the Buttons have continued filing new lawsuits and appeals arising from strikingly similar facts and claims. The Buttons' disrespect for the judiciary is further confirmed by, among other things, their social media posts and long record of sanctionable conduct within the Nevada Litigation. They have also engaged in sanctionable conduct in their retaliatory lawsuits, such as by using artificial intelligence to fabricate case law.

Third, although the Buttons are proceeding *pro se*, they are sophisticated, experienced litigants who have attempted to exploit their *pro se* status to garner leniency from the courts.

Fourth, the Buttons have wasted immense judicial resources. They have forced a long list of defendants to incur needless expenses defending duplicative lawsuits, and the time consumed by lawyers and judges addressing these matters is substantial.

Finally, lesser sanctions will not suffice. The Buttons have a demonstrated pattern of ignoring lesser sanctions within the Nevada Litigation. And a nationwide injunction that applies

2

to claims against any potential defendant is both well-justified and authorized under governing law.

## BACKGROUND

### I.    The Nevada Litigation

#### A.  The Nevada Plaintiffs' Claims

 In the District of Nevada, six plaintiffs—five of whom allege they were abused as minor children—are suing the Buttons for sexual assault, sex trafficking, and related claims. *See* Nevada Litigation, ECF No. 221.[1] The Nevada plaintiffs allege that the Buttons exploited their positions of power and influence in the dance community to abuse young dancers across the country.

Specifically, according to the Nevada complaint, Taylor Button groomed and sexually abused at least four of his students while he was a dance instructor at Centerstage Dance Academy and they were minor children. *See id.* ¶¶ 18–122. When parents of those minor children began discussing Taylor's behavior, he fled to London, married famous ballerina Dusty Button, and took her last name. *See id*. ¶¶ 123–26. The Buttons then worked together to continue to control additional young victims, including by offering false promises of professional support to gain their victims' trust, and then forcing them to engage in sexual acts against their will. *See id*. ¶¶ 137–75. The Nevada plaintiffs' claims have survived multiple motions to dismiss. *See* Nevada Litigation, ECF Nos. 130, 379.

The Nevada Litigation is ongoing. In August, the Nevada court denied the Buttons' motion for summary judgment and concluded that the Nevada plaintiffs' claims should proceed to trial. *See Humphries et al. v. Button*, 2025 WL 2421224, at *7–13 (D. Nev. Aug. 20, 2025).

---

[1]    As this Court already held, it is proper to "take[] judicial notice of the Nevada Litigation to establish the facts of the proceeding." *Button v. New York Times Co*., 2025 WL 2643674, at *1 n.3 (S.D.N.Y. Sept. 15, 2025) (citing *Staehr v. Hartford Fin. Servs. Group, Inc*., 547 F.3d 406, 425 (2d Cir. 2008)).

**B. The Buttons' Vexatious Conduct Throughout the Nevada Litigation**

In the Nevada Litigation, the Buttons have engaged in a long string of misconduct and have been repeatedly sanctioned. *See, e.g.*, Nevada Litigation, ECF No. 402 at 3–16 (detailing the Buttons' misconduct). For instance, they were sanctioned for unlawfully retaining and publishing confidential information about one of their victims in "willful violation" of her abuse prevention orders against them. *See id.*, ECF Nos. 104, 254.[2] The Buttons have repeatedly ignored that sanctions order, however, including by republishing that *very same confidential information* in a lawsuit against that victim's parents, resulting in additional sanctions orders against them. *See id.*, ECF Nos. 421, 479.

The Buttons also created a website and YouTube channel specifically designed to harass and intimidate the Nevada plaintiffs and third-party witnesses. *Id.*, ECF No. 402 at 7–11 (describing online harassment campaign); ECF No. 402-3 (screenshots from the Buttons' websites). The Nevada court called the online bullying crusade "offensive," "harassing," and "intimidating." *Id.*, ECF No. 168-4 at 93:15–17. The Buttons' online harassment was so intense it caused one of the Nevada plaintiffs (a seventh victim) to withdraw her claims "due to severe online harassment from [the Buttons]." *Id.*, ECF No. 132. The Nevada court stated it was considering recommending "case-terminating sanction[s]" against the Buttons for their behavior. *Id.*, ECF No. 222 at 57:9–21. The Buttons subsequently lied about that bullying crusade in open court and while under oath in related restraining order proceedings. *See id.*, ECF No. 402 at 8. Discovery proved the Buttons' denials of involvement were false. *See id.* at 8–11 (describing, *inter alia*, subpoena

---

[2]    The Nevada plaintiff was granted those abuse prevention orders by a Massachusetts court in 2017 after a full hearing. The Massachusetts judge stated he "fully credited" her allegations and was "satisfied **beyond a reasonable doubt**" that the Buttons' treatment of that Nevada plaintiff amounted to abuse. Nevada Litigation, ECF No. 77-2 at 61:2–62:3 (emphasis added).

responses from GoDaddy.com proving the Buttons secretly owned the harassing website).

The Buttons' harassment also extended to the Nevada plaintiffs' *pro bono* counsel. For years, the Buttons would regularly send those attorneys menacing email correspondence, including bizarre "memes" and insults to their presumed religious and political beliefs. *See id.* at 13; *see also id.*, ECF No. 384 at 2–3 (providing examples of harassing correspondence). As a result, the Nevada court disposed of the meet and confer requirement, *id.*, ECF No. 420 at 1, cautioned that the Buttons' "use of threatening language … will not be tolerated," and ordered that they "must stop the personal *ad hominem* attacks on Plaintiffs' counsel or severe sanctions will be considered," *id.*, ECF No. 421 at 3.

The Buttons have also violated the Nevada court's orders throughout their retaliatory litigation campaign, including by revealing highly confidential medical records and deposition testimony in their public lawsuits against the Nevada plaintiffs' loved ones. *See id.*, ECF No. 372 at 1–5 (describing violations of protective orders). Accordingly, last year, the Nevada court sanctioned the Buttons for violating that court's "numerous, well documented Orders regarding confidentiality" and again warned them that further violations could result in "case ending sanctions." *Id.*, ECF No. 421 at 2–3. Despite these repeated warnings, the Buttons' misconduct has continued unabated. This year, the Nevada court yet again sanctioned the Buttons for their failure to abide by the Nevada court's protective orders in connection with their retaliatory litigation campaign. *See id.*, ECF No. 479 at 7–9. The Nevada court noted that prior sanction orders have been insufficient to deter the Buttons from further misconduct and expressed its "frustrat[ion] by [the Buttons'] refusal to take seriously, and therefore comply with, what the Court has plainly stated." *Id.* at 8. The Nevada court also observed that as a consequence of the lawsuits "filed by [the Buttons] across the country," "[v]exatious litigant motions may be filed." *Id.*

## II.    Retaliatory Litigation Campaign

On top of their misconduct within the Nevada Litigation, the Buttons are waging a sprawling retaliatory litigation campaign against their sexual abuse victims and those who support them. The Buttons' meritless lawsuits are a transparent attempt to silence their victims and intimidate third-party witnesses, which is unlawful. *See* 18 U.S.C. § 1512(d)(1) (prohibiting attempts to "harass[]" potential witnesses and thereby "hinder[], delay[], prevent[], or dissuade[]" them from "attending or testifying" at trial).

In 2024 alone, the Buttons filed seven lawsuits against the Nevada plaintiffs' family, friends, therapists, *pro bono* attorneys, and other supporters. **All those lawsuits have now been dismissed.**[3] Undeterred, however, the Buttons have continued to file a string of meritless lawsuits and appeals in 2025. One of those new lawsuits has already been dismissed.

So far, the Buttons have filed eleven lawsuits[4] and nine appeals[5] in twelve different courts,[6] alleging seventy-two claims against thirty-six[7] defendants. The Buttons' cases have generated

---

[3]    *See Button v. Doherty et al.*, 2025 WL 2776069, at *5 (S.D.N.Y. Sept. 30, 2025); *Button v. Breshears*, 2025 WL 2771663, at *13–14 (S.D.N.Y. Sept. 26, 2025); *Button v. New York Times Co.*, 2025 WL 2643674, at *22 (S.D.N.Y. Sept. 15, 2025); *Button v. Humphries et al.*, 2025 WL 1820116, at *4 (C.D. Cal. June 9, 2025); *Button v. McCawley*, 2025 WL 1517348, at *6–7 (S.D. Fla. May 28, 2025); *Button v. Melcher*, 771 F.Supp.3d 76, 80 (D. Mass. 2025); *Button v. Roe et al.*, 2024 WL 5136694, at *7 (D. N.H. Dec. 17, 2024); *see also Button v. Humphries et al.*, 2025 WL 3191868, at *5 (C.D. Cal. Oct. 20, 2025); *Button v. Humphries et al.*, 2025 WL 2994725, at *5 (C.D. Cal. Sept. 12, 2025); *Button v. Humphries et al.*, 2025 WL 2785644, at *8 (C.D. Cal. Aug. 28, 2025); *Button v. Thonis*, 2025 WL 1092636, at *5 (D. N.H. Apr. 11, 2025).

[4]    *See infra* p. 7–13.

[5]    *See Button v. Roe et al.*, No. 25-1394 (1st Cir.); *Button v. Melcher*, No. 25-1316 (1st Cir.); *Button v. New York Times Co.*, No. 25-2634 (2d Cir.); *Button v. Breshears*, No. 25-02696 (2d Cir.); *Button v. Humphries et al.*, No. 25-07163 (9th Cir.); *Button v. Humphries et al.*, No. 25-4079 (9th Cir.); *Button v. Humphries et al.*, No. 25-6045 (9th Cir.); *Button v. Humphries et al.*, No. 25-6497 (9th Cir.); *Button v. McCawley*, No. 25-12165 (11th Cir.).

[6]    Specifically, the Buttons have filed lawsuits in the District of Arizona, Central District of California, Southern District of California, Southern District of Florida, District of Massachusetts, District of New Hampshire, Southern District of New York, and Western District of Washington, and they have filed appeals in the First, Second, Ninth, and Eleventh Circuits. *See infra* p. 7–13.

[7]    *See infra* p. 7–13.

hundreds of docket entries and forced defendants to brief twenty-five[8] motions to dismiss—often in multiple rounds as the Buttons repeatedly file amended complaints that fail to cure fatal defects.

The Buttons brazenly boast about their vexatious litigation campaign on social media, making statements like, "if you read this, I'm suing you," and announcing the "next federal lawsuit on our stinky little shit list." *See* Declaration of Eric Brenner ("Brenner Decl."), Exhibit A. The Buttons' social media posts make clear they intend to continue filing additional lawsuits, threatening to give others "a job performing in the circus that is federal civil litigation" and making statements like, "we love filing lawsuits this time of year … incoming." *See id.* Two individuals who have not yet been sued have contacted the Nevada plaintiffs' attorneys to advise them that the Buttons have specifically threatened to sue them. *See* Brenner Decl. ¶ 4. Additionally, in various filings, the Buttons have threatened to continue their improper litigation campaign into the indefinite future. *See, e.g.*, Nevada Litigation, ECF No. 480 at 35 (Buttons writing that their' so-called "pursuit for justice" is "only beginning" and they "will spend the rest of their days assuring that all responsible parties will be held accountable for the injustices done to them, whether it be in this Court or another").

### A. The 2024 Lawsuits Have All Been Dismissed

The retaliatory lawsuits that the Buttons filed in 2024 have all been dismissed, as set forth below. Six of the seven dismissal orders are with prejudice. One order is without prejudice, but

---

[8]     *See Button v. Roe et al.*, No. 1:24-cv-00220-SM-AJ (D. N.H), ECF Nos. 9, 11, 27, 28, 52; *Button v. McCawley*, No. 0:24-cv-60911-DSL (S.D. Fla.) ECF Nos. 9, 24, 59; *Button v. Humphries et al.*, No. 8:24-cv-01730-JVS-DFM (C.D. Cal.), ECF Nos. 23, 55, 58, 73, 76, 105, 135, 150; *Button v. N.Y. Times Co.*, No. 1:24-cv-05888-MKV (S.D.N.Y.), ECF Nos. 37, 39, 42; *Button v. Breshears*, No. 1:24-cv-03757-MKV (S.D.N.Y), ECF Nos. 12, 21; *Button v. Doherty et al.*, No. 1:24-cv-05026-JPC-KHP (S.D.N.Y.), ECF Nos. 43, 47; *Button v. Lopresti*, No. 3:25-cv-00867-DMS-BJW (S.D. Cal.) ECF No. 16; *Button v. Jimison*, No. 3:25-cv-05622-DGE (W.D. Wash.), ECF No. 18.

only as to certain claims, and only in "solicitude" to the Buttons' pro se status. *Button v. Doherty*, 2025 WL 2846927, at \*18 (S.D.N.Y. July 30, 2025), *report and recommendation adopted,* 2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025).

### i. *Button v. Roe et al.*, No. 1:24-cv-00220-SM-AJ (D. N.H.)

The Buttons sued one of the Nevada plaintiff's parents (John and Jane Roe), therapist (Katherine Thonis), and former attorney (Robin Melone) in the District of New Hampshire for defamation and related claims. On December 17, 2024, the court dismissed their amended complaint with prejudice, rejecting the Buttons' "frivolous and vexatious attempt to intimidate friends and family of the Nevada plaintiffs" because even "charitably constru[ed]," their claims "lack any legal merit." *Button v. Roe et al.*, 2024 WL 5136694, at \*2, 7 (D. N.H. Dec. 17, 2024) (dismissing claims against Mr. and Mrs. Roe and Ms. Melone); *see also Button v. Thonis*, 2025 WL 1092636, at \*5 (D. N.H. Apr. 11, 2025) (dismissing claims against Ms. Thonis). The Buttons appealed the dismissal orders to the First Circuit, which is fully briefed and pending. *See Button v. Roe et al.*, No. 25-1394 (1st Cir.).

### ii. *Button v. Melcher*, No. 1:24-cv-12632-WGY (D. Mass.)

The Buttons sued the former attorney of one of the Nevada plaintiffs, Maura Melcher, in the District of Massachusetts for defamation and related claims. On March 24, 2025, the court dismissed the complaint *sua sponte*, finding that Ms. Melcher's "alleged misconduct—both in and outside the courtroom" was protected by Massachusetts' litigation privilege. *Button v. Melcher*, 2025 WL 937175, at \*2 (D. Mass. Mar. 24, 2025). The Buttons appealed the dismissal order to the First Circuit, which is pending. *See Button v. Melcher*, No. 25-1316 (1st Cir.).

### iii. *Button v. McCawley*, No. 0:24-cv-60911-DSL (S.D. Fla.)

The Buttons sued the Nevada plaintiffs' lead *pro bono* attorney, Sigrid McCawley, in the

Southern District of Florida for defamation and related claims. On May 28, 2025, the court dismissed the second amended complaint with prejudice because all of Ms. McCawley's allegedly defamatory statements were inactionable opinion. *Button v. McCawley*, 2025 WL 1517348, at *6–7 (S.D. Fla. May 28, 2025).[9]

The district court denied the Buttons' motion to proceed *in forma pauperis* on appeal, finding "[t]here is no question that this Court's dismissal was proper" and thus "the appeal is not taken in good faith." *Button v. McCawley*, No. 0:24-cv-60911-DSL (S.D. Fla.), ECF No. 69 at 2. The Buttons nonetheless appealed the dismissal order to the Eleventh Circuit. *See Button v. McCawley*, No. 25-12165 (11th Cir.).

### iv.    *Button v. Humphries et al.*, No. 8:24-cv-01730-JVS-DFM (C.D. Cal.)

The Buttons sued a Nevada plaintiff's parents (Michael and Micah Humphries), therapist (Kathryne Meyer), friend (Hannah Stolrow), and three other individuals whom they allege helped concoct a conspiracy against the Buttons (Robert Klieger, Daryl Katz, and Anthony Pellicano) in the Central District of California for defamation and related claims. On June 9, 2025, the court dismissed the second amended complaint with prejudice as to Mr. and Mrs. Humphries, Ms. Meyer, and Ms. Stolrow under Rules 8 and 12(b)(6), including because it was "prolix and conclusory" and filled with "wholly unsupported causes of action." *Button v. Humphries et al.*, 2025 WL 1820116, at *2–4 (C.D. Cal. June 9, 2025).

---

[9]    The court had previously dismissed the amended complaint without prejudice, giving the Buttons "a final opportunity to amend their Complaint (if they can)," "[i]n an abundance of caution, and primarily because the [Buttons] appear *pro se*," but warning that, "[e]ven pro se plaintiffs are subject to sanctions for filing frivolous and vexatious complaints." *Button v. McCawley*, 2025 WL 50431, at *8–9 (S.D. Fla. Jan. 8, 2025).

Post-dismissal, Ms. McCawley moved for attorneys' fees and costs pursuant to Florida's anti-SLAPP law. That motion is pending. *Button v. McCawley*, No. 24-cv-60911 (S.D. Fla.), ECF No. 71.

The court has since dismissed the Buttons' claims as to the other defendants. *See Button v. Humphries et al.*, 2025 WL 3191868, at *5 (C.D. Cal. Oct. 20, 2025); *Button v. Humphries et al.*, 2025 WL 2994725, at *5 (C.D. Cal. Sept. 12, 2025); *Button v. Humphries et al.*, 2025 WL 2785644, at *8 (C.D. Cal. Aug. 28, 2025). In one dismissal order, the court noted that the Buttons "have been informed on numerous occasions by both this Court and opposing parties" that their claims are "untenable," but "[n]evertheless, the Buttons press on, continuing to bring these causes of action." *Button v. Humphries et al.*, 2025 WL 3191868, at *3.

That court also admonished the Buttons for using artificial intelligence to "fabricate case law" and warned them that such conduct may subject them to "monetary or other[] sanctions." *Button v. Humphries et al.*, 2025 WL 2994725, at *4 n.2 (C.D. Cal. Sept. 12, 2025).

That court also repeatedly denied the Buttons' requests to proceed *in forma pauperis* on appeal on the grounds that the appeals were not taken in "good faith." *See Button v. Humphries et al.*, No. 8:24-cv-01730-JVS-DFM (C.D. Cal.), ECF Nos. 109, 154, 164. The Buttons have nonetheless filed multiple appeals in the Ninth Circuit for four of the dismissal orders. *See Button v. Humphries et al.*, No. 25-4079 (9th Cir.); No. 25-6045 (9th Cir.); No. 25-6497 (9th Cir.); No. 25-07163 (9th Cir.).

**v.     *Button v. New York Times Co.*, No. 1:24-cv-05888-MKV (S.D.N.Y.)**

Here, the Buttons sued two of the Nevada plaintiffs' *pro bono* attorneys (Ms. Mariella and Ms. Ruff), The New York Times Company, a reporter (Julia Jacobs), and other media-related defendants (Dawn Schneider, David McCraw, and Demetri Blaisdell) for injurious falsehood and related claims. On September 15, 2025, this Court dismissed the Amended Complaint with prejudice, concluding the claims were "time-barred or otherwise facially deficient." *Button v. New York Times Co.*, 2025 WL 2643674, at *22 (S.D.N.Y. Sept. 15, 2025). The Buttons appealed the

dismissal order to the Second Circuit. *See Button v. New York Times Co.*, No. 25-02634 (2d Cir.).

### vi.    *Button v. Breshears*, No. 1:24-cv-03757-MKV (S.D.N.Y.)

The Buttons sued a blogger, Madison Breshears, in the Southern District of New York for defamation and related claims after she posted on social media warning other dancers about the allegations made against the Buttons in the Nevada Litigation. On September 26, 2025, the court dismissed the amended complaint as "time-barred or otherwise facially deficient as a matter of law." *Button v. Breshears*, 2025 WL 2771663, at *13 (S.D.N.Y. Sept. 26, 2025). The Buttons appealed the dismissal order to the Second Circuit. *See Button v. Breshears*, No. 25-02696 (2d Cir.).

### vii.    *Button v. Doherty et al.*, No. 1:24-cv-05026-JPC-KHP (S.D.N.Y.)

The Buttons sued a former Nevada plaintiff (Juliet Doherty), her mother (Krista King-Doherty), and her business associate (Luis Pons) for defamation, malicious prosecution, and related claims. On September 30, 2025, the district court adopted a Report & Recommendation (over the Buttons' objection) recommending that the amended complaint be dismissed in its entirety because each of the Buttons' claims were either time-barred, legally deficient, or both. *Button v. Doherty et al.*, 2025 WL 2776069, at *2–5 (S.D.N.Y. Sept. 30, 2025).[10] The court also admonished the Buttons for misusing artificial intelligence in drafting their filings. *Id.* at *5 n.7.

### B.  The 2025 Lawsuits Are Equally Meritless

Undeterred by their utter lack of success, the Buttons have continued filing a string of

---

[10]    The Report & Recommendation recommended that the Buttons' claims for assault, battery, malicious prosecution, and conspiracy be dismissed with prejudice, but that the remaining claims for defamation, tortious interference, and intentional infliction of emotional distress be dismissed without prejudice solely in "solicitude to the *pro se* Plaintiffs." *Button v. Doherty et al.*, 2025 WL 2846927, at *18 (S.D.N.Y. July 30, 2025), *report and recommendation adopted*, 2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025).

meritless lawsuits in 2025, as set forth below. One of those lawsuits has already been dismissed *sua sponte*.

i.    ***Button v. Nelson et al.*, No. 2:25-cv-09275-DMG-E (C.D. Cal)**

In September 2025, the Buttons sued the co-hosts of a podcast called Some Place Under Neith (Amber Nelson and Natalie Jean), an attorney who allegedly appeared on the podcast (Mackenzie Joy Brennan), the producer of the podcast (Last Podcast Network LLC), and five other individuals who are purportedly affiliated with the podcast (Henry Zebrowski, Ben Kissel, Marcus Parks, Ed Larson, and Ryan Conner), for defamation and related claims based on the podcast's coverage of the Nevada Litigation. The court dismissed that complaint *sua sponte* for lack of subject matter jurisdiction, finding that the Buttons' allegations concerning citizenship and damages were "conclusory and vague." *Button v. Nelson et al.*, No. 2:25-cv-09275 (C.D. Cal.), ECF No. 10 at 4.

ii.    ***Button v. Lopresti*, No. 3:25-cv-00867-DMS-BJW (S.D. Cal.)**

In March 2025, the Buttons sued Craig Lopresti, a social media influencer, in the Southern District of California for libel and related claims based on statements Mr. Lopresti made in support of the Nevada plaintiffs. Mr. Lopresti filed a motion to dismiss, which is pending. *See Button v. Lopresti*, No. 3:25-cv-00867-DMS-BJW (S.D. Cal.), ECF No. 16.

iii.    ***Button v. Jimison*, No. 3:25-cv-05622-DGE (W.D. Wash.)**

In July 2025 the Buttons sued John Jimison, a social media influencer, in the Western District of Washington for libel and related claims based on statements he made in support of the Nevada plaintiffs. Mr. Jimison filed a motion to dismiss, which is pending. *Button v. Jimison*, No. 3:25-cv-05622-DGE (W.D. Wash.), ECF No. 18. That court has admonished the Buttons for misusing artificial intelligence in preparing their filings in that case. *Button. v. Jimison*, 2025 WL

12

2958545, at *2 (W.D. Wash. Oct. 17, 2025).

    iv.    ***Button v. Kingsley*, No. 2:25-cv-02619-SMB (D. Ariz.)**

In July 2025 the Buttons also sued Nick Kingsley, a social media influencer, in the District of Arizona for libel and related claims based on statements Mr. Kingsley made in support of the Nevada plaintiffs. It appears that Mr. Kingsley has not yet been served.

## LEGAL STANDARD

District courts "possess[] the authority to enjoin a person, including a pro se litigant, from filing further vexatious litigation." *Pandozy v. Segan*, 518 F. Supp. 2d 550, 557 (S.D.N.Y. 2007), *aff'd,* 340 F. App'x 723 (2d Cir. 2009) (enjoining *pro se* plaintiff from commencing any further action regarding matter without prior leave of court).

In fact, a "district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." *Safir*, 792 F.2d at 24. In *Safir*, the Second Circuit articulated five factors to be considered in determining whether to restrict a litigant's future access to court:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*See id*. These factors strongly support entering an injunction here.

## ARGUMENT

**I.    All Five *Safir* Factors Are Satisfied.**

**A.  Factor One: The Buttons Have a Pattern of Vexatious Litigation.**

The first *Safir* factor, whether a litigant has engaged in "vexatious, harassing, or duplicative lawsuits," weighs decisively in favor of an injunction here. *Woodhouse v. Meta Platforms Inc.*,

704 F. Supp. 3d 502, 514 (S.D.N.Y. 2023). This factor looks to both the quantity and quality of a litigant's prior lawsuits. *See id.* at 515.

As to the quantity element, the sheer volume of the Buttons' litigation campaign is alone evidence that it is vexatious. In the last two years, the Buttons have filed **eleven**[11] lawsuits and **nine**[12] appeals in **twelve**[13] different courts, alleging **seventy-two** claims against **thirty-six**[14] defendants. Moreover, the Buttons have expressly threatened to expand their litigation campaign into the indefinite future. *See* Brenner Decl. ¶¶ 3–4, Ex. A; *see also, e.g.*, Nevada Litigation, ECF No. 480 at 35. Courts in this circuit have entered pre-filing injunctions against plaintiffs who filed far fewer lawsuits than the Buttons have filed here. *See, e.g.*, *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019) (affirming injunction even though one of the plaintiffs filed only **one** vexatious lawsuit, noting that "the court must consider the record as a whole and the likelihood that the litigant will continue to abuse the judicial process"); *Word v. Croce*, 230 F. Supp. 2d 504, 514 (S.D.N.Y. 2002) (granting injunction where plaintiff filed **five** lawsuits); *Haziz-Ramadhan v. Specialized Loan Servicing, LLC.*, 2024 WL 896837, at *5 (E.D.N.Y. Mar. 1, 2024) (granting injunction where plaintiff filed **four** lawsuits).

As to the quality element, **none of the Buttons' lawsuits has survived a motion to dismiss**. Quite the opposite, six have already been dismissed with prejudice, *see supra* p. 7–11, and two have already been dismissed without prejudice, *see supra* p. 7–12. Further, in assessing this element, courts consider whether the lawsuits are repetitive in nature. *See, e.g.*, *Pandozy*, 518 F. Supp. 2d at 558 (granting injunction where plaintiff filed "duplicative" lawsuits all "arising

---

[11]     *See supra* p. 7–13.
[12]     *See supra* p. 7–11.
[13]     *See supra* p. 7–13.
[14]     *See supra* p. 6.

from the sale of his [a]partment"); *Davey v. Dolan*, 453 F. Supp. 2d 749, 756 (S.D.N.Y. 2006), *aff'd*, 292 F. App'x 127 (2d Cir. 2008) (granting injunction where plaintiff filed multiple lawsuits all concerning "issues arising out of the dissolution of his marriage"). Here, each lawsuit arises from the same core allegation: that the Nevada Litigation is based on lies.[15] As court after court has explained, however, that allegation generally does not give rise to cognizable claims against third parties. *See, e.g.*, *Button v. Humphries et al.*, 2025 WL 3191868, at *3 (noting the Buttons "have been informed on numerous occasions by both this Court and opposing parties" that their claims are "untenable," but "[n]evertheless, the Buttons press on, continuing to bring these causes of action").

Indeed, courts across the country have chastised the Buttons for "repeating grievances [and] bringing wholly unsupported causes of action," *Button v. Humphries et al.*, 2025 WL 1820116, at *2, raising frivolous claims that "even charitably constru[ed] ... lack any legal merit," *Button v. Roe et al.*, 2024 WL 5136694, at *7, and engaging in "troubling" attempts to "intimidate[e] and harass[]" the Nevada plaintiffs' supporters. Nevada Litigation, ECF No. 479 at 5. To the extent the Buttons deny the allegations in the Nevada Litigation, their proper recourse is to defend themselves in that case—not sue the Nevada plaintiffs' supporters.

Since the Buttons' litigation campaign is both voluminous and utterly meritless, the first *Safir* factor is easily satisfied.

---

[15]    It is again worth noting that no court has found the Nevada plaintiffs' claims to be unmeritorious. To the contrary, a Massachusetts court already found "beyond a reasonable doubt" that the Buttons abused one of the Nevada plaintiffs within the meaning of Massachusetts law and awarded her abuse prevention orders against them. Nevada Litigation, ECF No. 77-2 at 61:2–62:3. And the Nevada court recently rejected the Buttons' argument that the Nevada plaintiffs' claims are insufficiently supported by the record and denied the Buttons' motion for summary judgment in full. *See Humphries et al. v. Button*, 2025 WL 2421224, at *7–13.

### B.  Factor Two: The Buttons' Abusive and Retaliatory Motives Are Evident.

The second *Safir* factor—the litigant's motives and whether he has an "objective good faith expectation of prevailing"—likewise strongly favors of an injunction here. *Woodhouse*, 704 F. Supp. 3d at 515. It is readily apparent that the Buttons have no reasonable expectation of success and are instead focused on terrifying their victims, intimidating third-party witnesses, and silencing anyone who exercises their First Amendment right to comment on the Nevada Litigation.

A litigant's "lack [of] an objective good-faith expectation of prevailing" is apparent where, as here, his previous lawsuits have been "failures." *In re Weaver*, 2023 WL 2500561, at *2 (N.D.N.Y. Mar. 14, 2023); *see Eliahu*, 919 F.3d at 715 ("The dismissal of similar … prior actions underscores that both [plaintiffs] had little, if any, good faith basis for believing they could prevail on their claims"). None of the Buttons' lawsuits has prevailed on the merits. To the contrary, all of the lawsuits they filed in 2024 have been dismissed, *see supra* p. 7–11, and two courts have expressly held that the Buttons' appeals are not taken in "good faith," *Button v. McCawley*, No. 24-cv-60911 (S.D. Fla.), ECF No. 69; *Button v. Humphries et al.*, No. 8:24-cv-01730-JVS-DFM (C.D. Cal.), ECF Nos. 109, 154, 164. Despite a record of total defeat, however, the Buttons have continued filing new lawsuits and appeals in 2025 arising from strikingly similar facts and claims. "Whether viewed as a deliberate endeavor intended to harass and antagonize opposing parties, or as the result of cognitive dissonance and an inability to accept judicial rulings, such behavior is unacceptable." *Fitzgerald v. Field*, 1999 WL 1021568, at *5 (S.D.N.Y. Nov. 9, 1999), *aff'd*, 216 F.3d 1072 (2d Cir. 2000); *see, e.g.*, *Woodhouse*, 704 F. Supp. 3d at 516 (finding improper motive where "every case that [plaintiff] has initiated … has been dismissed" and "numerous claims have been summarily rejected as patently frivolous").

16

The Buttons' conduct on social media further confirms their improper motives. Their Instagram page openly mocks the judicial system, calling federal litigation a "circus" and labeling the defendants they have sued their "stinky little shit list." *See* Brenner Decl., Ex. A. Such conduct makes plain that the Buttons' "primary, if not exclusive, purpose … is to harass and/or embarrass [their] perceived enemies." *Jones v. Newman*, 1999 WL 493429, at *13 (S.D.N.Y. June 30, 1999).

The Buttons' disrespect for the judiciary is likewise illustrated by their long record of vexatious conduct within the Nevada Litigation. The Buttons have repeatedly disobeyed court orders, orchestrated an outrageous online bullying campaign against the Nevada plaintiffs, and repeatedly harassed the Nevada plaintiffs' *pro bono* counsel, resulting in seriatim sanction orders and admonishments from the Nevada court. *See supra* p. 4–5. The Buttons have also already begun to engage in misconduct in their retaliatory lawsuits, including by misusing artificial intelligence to fabricate case law. *See Button v. Humphries et al.*, 2025 WL 2994725, at *4 n.2; *Button v. Doherty et al.*, 2025 WL 2776069, at *5 n.7; *Button. v. Jimison*, 2025 WL 2958545, at *2. Courts routinely enter pre-filing injunctions where litigants have a similar history of misconduct. *See, e.g.*, *Kaul v. Intercontinental Exch.*, 2022 WL 4133427, at *8 (S.D.N.Y. Sept. 12, 2022) (finding improper motive where plaintiff had a history of "harass[ing] opposing parties during litigation"); *Woodhouse*, 704 F. Supp. 3d at 516 (finding improper motive where plaintiff "has been repeatedly sanctioned").

The Buttons' lengthy record of litigation failures and disrespect for the courts demonstrates their bad faith motives, satisfying the second *Safir* factor.

17

### C. Factor Three: The Buttons Have Abused Their *Pro Se* Status.

The third factor, whether the litigant is represented by counsel, should be treated as neutral here.[16] Although the Buttons are proceeding *pro se*, "a court's authority to enjoin vexatious litigation extends equally over pro se litigants and those represented by counsel." *Pandozy*, 518 F. Supp. 2d at 558. Courts in this circuit routinely enter pre-filing injunctions against *pro se* litigants. *See, e.g.*, *id.*; *Woodhouse*, 704 F. Supp. 3d at 516; *Kaul*, 2022 WL 4133427, at *8; *Haziz-Ramadhan*, 2024 WL 896837, at *5. Further, *pro se* litigants are not entitled to "special solicitude" where, as here, they have demonstrated a "willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *Pandozy*, 518 F. Supp. 2d at 558 (quoting *Sathianathan v. Smith Barney, Inc.*, 2006 WL 538152, at *34 (S.D.N.Y. Feb. 24, 2006), *report and recommendation adopted*, 2007 WL 576097 (S.D.N.Y. Feb. 21, 2007)).

The Buttons' *pro se* status is of little relevance because they are "experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). The Buttons have been representing themselves in the Nevada Litigation for years, both defending themselves and actively pursuing counterclaims. They have made hundreds of submissions, argued at numerous hearings, and taken and defended depositions, among other sophisticated conduct. *See generally*, Nevada Litigation. Because the Buttons are "sophisticated litigant[s]," an "injunction is appropriate … even though [they] proceed[] *pro se*." *Kaul*, 2022 WL 4133427, at *8 (collecting cases where courts entered injunctions against *pro se* litigants).

---

[16]    "[T]he Second Circuit has never required that all five factors be met, and in fact, it has previously upheld the issuance of a similar injunction where only three of the *Safir* factors were satisfied." *Wood v. Mut. Redevelopment Houses, Inc.*, 2024 WL 4164485, at *3 (S.D.N.Y. Sept. 12, 2024) (discussing *Hermes of Paris, Inc. v. Swain*, 2021 WL 5170726, at *3–4 (2d Cir. Nov. 8, 2021)).

The Buttons' *pro se* status is particularly irrelevant because they are proceeding *pro se* strategically. The Buttons told the Nevada court they "feel their position will be compromised should [their] Motion practice be left in anyone's hands but their own" and that "they will proceed *pro se* both now and forever in … the litigation and all litigations to follow." Nevada Litigation, ECF No. 307 at 9, 19.[17] And they have weaponized their *pro se* status to garner leniency from the courts, repeatedly referencing it in their filings and insisting that their pleading deficiencies and disregard for applicable rules should be overlooked accordingly. *See, e.g.*, *Button v. Doherty et al.*, No. 1:24-cv-05026-JPC-KHP (S.D.N.Y.), ECF No. 67 at 6 ("[The Buttons] note that they are proceeding pro se … Defendants, by contrast, are represented by attorneys from some of the nation's largest firms, including Boies Schiller and Flexer … The disparity in resources underscores the importance of [granting the Buttons' requested relief]"). The Buttons should not be permitted to escape the consequences of their vexatious conduct based on their tactical decision to proceed *pro se*. *See Shomo v. New York Dep't of Corr. Servs.*, 2007 WL 2580509, at *3 (N.D.N.Y. Sept. 4, 2007) (revoking plaintiff's special status as a *pro se* litigant to avoid "tilt[ing] the scales of justice unfairly in favor of the *pro se* litigant and against his opponents").

Because the Buttons are experienced litigants who have exploited their *pro se* status, the third *Safir* factor should be treated as neutral under the circumstances of this case.

---

[17] Notably, the Nevada court appointed counsel to represent the Buttons in connection with a settlement conference, but the Buttons terminated that counsel shortly thereafter. *See* Nevada Litigation, ECF No. 307 at 1, 19 (moving to terminate their court-appointed *pro bono* counsel, stating that "the only assurance [the Buttons] have that their future in this litigation will be fair, is if that future remains in their hands and their hands alone"). It is also worth noting that the Buttons were represented by competent counsel at the outset of the Nevada Litigation, including when they moved to dismiss the Second Amended Complaint (a motion that was denied in full). *See* Nevada Litigation, ECF Nos. 38, 130.

### D. Factor Four: The Buttons Have Wasted Significant Judicial Resources.

The fourth *Safir* factor, "whether the litigant has caused needless expense to parties or has posed an unnecessary burden on the courts and their personnel," likewise counsels strongly in favor of an injunction here. *Woodhouse*, 704 F. Supp. 3d at 516. The Buttons' sprawling litigation campaign has "forced defendants to incur needless expenses defending against duplicative baseless suits" both in "trial court[s] and on appeal," and the "time consumed by lawyers and judges [in] addressing these abusive matters" is "substantial." *Id.*

The breadth of the Buttons' waste of judicial resources is staggering. So far, courts have had to review twenty-five motions to dismiss the Button's claims. *See supra*, n.8. That number will only grow as additional defendants are served. On top of that, the Buttons have forced various courts to review a litany of frivolous filings—such as a the "notice regarding post-dismissal conduct" that they filed here, *see* ECF No. 78—and they have begun to file a string of meritless appeals, and will evidently continue to do so. *See supra*, n.5.

Exacerbating the issue, the Buttons' filings are routinely protracted and confusing, requiring a disproportionate amount of time to parse. Several of their complaints are over 100 pages long. *See* ECF No. 34 (106-page Amended Complaint); *see also, e.g.*, *Button v. Humphries et al.*, 2025 WL 1820116, at *2 (noting the Buttons' complaint was "160 pages long consisting of more than 800 paragraphs"). "Interpreting and responding" to the Buttons' "prolix and redundant" filings imposes "a tremendous and unnecessary burden on defendants and on the Court[s]." *Lipin v. Hunt*, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008).

The Buttons' litigation campaign has been particularly burdensome on defendants who lack the resources to retain counsel, such as Madison Breshears, who is defending herself *pro se*. *Button v. Breshears*, No. 1:24-cv-03757-MKV (S.D.N.Y.), ECF No. 8. And while the Buttons'

lawyer defendants, such as the Nevada plaintiffs' counsel, Boies Schiller Flexner LLP ("BSF"), may be more readily able to defend themselves, the burden on those firms and individual lawyers is still high. BSF, for example, is representing the Nevada plaintiffs' attorneys and family members in multiple proceedings and has wasted hundreds of *pro bono* hours responding the Buttons' attacks, which is time that could be spent pursuing far more meaningful *pro bono* projects.[18]

In sum, the Buttons have imposed an immense burden on various courts, defendants, and attorneys, easily satisfying the fourth *Safir* factor and warranting injunctive relief. *See, e.g.*, *Pandozy,* 518 F. Supp. 2d at 558 (granting injunction where the "multitude of lengthy filings submitted in" plaintiff's lawsuits "puts an undue burden on [d]efendants and the [c]ourt"); *Sathianathan*, 2006 WL 538152, at *34 (granting injunction where "it is clear … [d]efendants have incurred tremendous expense in the course of responding to [plaintiff's] many complaints and motions," including because in one case, "several rounds of briefing were required before [plaintiff's] case eventually was dismissed").

### E.  Factor Five: Lesser Sanctions Are Inadequate.

The final *Safir* factor, "whether sanctions short of a filing injunction would be adequate to protect the courts and parties," militates strongly in support of an injunction here. *Woodhouse*, 704 F. Supp. 3d at 516. An injunction should be imposed where "monetary sanctions and/or disciplinary measures alone would [not] deter" the plaintiff from further filings. *Id.* at 516–17.

It is "apparent that other sanctions will not deter [the Buttons] from further vexatious and baseless litigation." *Lipin*, 573 F. Supp. 2d at 845. They have a demonstrated "unwillingness to

---

[18]    BSF represents Ms. Mariella and Ms. Ruff in the instant action; defendant Sigrid McCawley in a Southern District of Florida action; defendants Michael and Micah Humphries in a Central District of California action; and defendants Juliet and Krista King-Doherty in a Southern District of New York action. *See supra* p. 7–11. BSF additionally expends resources coordinating with other defendants pursuant to joint defense and common interest arrangements.

accept unfavorable rulings on [their] claims." *Id.* Each time their claims "are dismissed, [they] repackage[] them with new labels, against new defendants, and in new courts, as part of an 'ever-broadening conspiracy theory.'" *Id.* The Buttons' utter refusal to accept that their litigation campaign is failing indicates that only a pre-suit injunction will curb their vexatious conduct. *See Sathianathan*, 2006 WL 538152, at *34 (granting injunction where "the adverse determinations in prior proceedings seem only to fuel [the plaintiff's] fire"); *Fitzgerald*, 1999 WL 1021568, at *5 (granting injunction and citing the plaintiff's "refusal to accept judicial rulings or the rejection of his claims").

Further, repeated sanctions—including monetary sanctions—have been wholly ineffective at deterring the Buttons from engaging in misconduct in the Nevada Litigation. The Nevada court has acknowledged as much, expressing its "frustrat[ion] by [the Buttons'] refusal to take seriously, and therefore comply with, what the Court has plainly stated." Nevada Litigation, ECF No. 479 at 8. In the face of repeated warnings and penalties—including multiple threats of case-ending sanctions—the Buttons' misconduct has only intensified. *See supra* p. 4–5; *see also, e.g.*, *Woodhouse*, 704 F. Supp. 3d at 516 (granting injunction where plaintiff had been "repeatedly sanctioned and fined," but misconduct persisted).

Monetary sanctions would be particularly ineffective here since the Buttons claim to have zero assets. *See* ECF Nos. 74, 75. *In re Terrorist Attacks on Sept. 11, 2001*, 2021 WL 11660983, at *4 (S.D.N.Y. Sept. 27, 2021), *report and recommendation adopted*, 2023 WL 4868416 (S.D.N.Y. July 31, 2023) (recommending case-ending sanctions and noting lesser sanctions, such as "[f]ines," would not suffice, including because plaintiff "will not (and perhaps cannot) pay them"); *Young v. Laclair*, 2016 WL 3911941, at *2 (N.D.N.Y. July 15, 2016) (granting case-ending sanctions including because "plaintiff is proceeding *in forma pauperis* and, therefore, monetary sanctions

would be ineffective").

The Buttons' purported indigency and pattern of disrespect for judicial authority make clear that lesser sanctions will not suffice, satisfying the fifth *Safir* factor and warranting injunctive relief.

## II.    The Requested Injunction Is Appropriately Tailored.

It is "beyond peradventure" that "[a] district court possesse[s] the authority to enjoin [a litigant] from further vexatious litigation." *Safir*, 792 F.2d at 23. District courts have authority to enjoin future lawsuits in both "federal and state court." *Hermes of Paris, Inc. v. Swain*, 2020 WL 5549704, at *5 (S.D.N.Y. Sept. 16, 2020), *aff'd,* 2021 WL 5170726 (2d Cir. Nov. 8, 2021). And district courts have authority to enjoin future lawsuits against any potential defendant. *See Zappin v. Comfort*, 2022 WL 6241248, at *25 (S.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022) ("There is ample authority to support a filing injunction barring new actions related to previously litigated proceedings, without regard to the defendants' identity"); *see also, e.g.*, *Vidurek v. Koskinen*, 2018 WL 3597644, at *14 (S.D.N.Y. July 25, 2018), *aff'd*, 789 F. App'x 889 (2d Cir. 2019) (entering pre-filing injunction to "protect[] the Court and the other parties from further harassment, burden, and expense" with no limitation on the identity of the defendant in a future suit). That is because a court's duty to prevent vexatious litigation extends not only to specific parties, but to the entire judicial system. *See, e.g.*, *Safir*, 792 F.2d at 24.

That said, a pre-filing injunction must be properly tailored to the circumstances of the case. "The Second Circuit has indicated that an injunction restricting a litigant's access to the courts is not overly broad if it preserves that litigant's ability to assert meritorious claims with approval of the court." *Lipin*, 573 F. Supp. 2d at 845 (citing *Safir*, 792 F.2d at 25).

### A. The Requested Injunction Preserves the Buttons' Ability to Assert Meritorious Claims.

Ms. Mariella and Ms. Ruff are not requesting that the Court wholesale prohibit the Buttons from filing any future lawsuit. Rather, they respectfully request that the Court require that the Buttons obtain approval from Your Honor or your designee before filing any additional actions concerning the Nevada Litigation. Consistent with other pre-filing injunctions ordered in this Circuit, Ms. Mariella and Ms. Ruff propose that if the Buttons seek to file a new lawsuit (on behalf of themselves, their family members, or any corporate entity they may control) concerning the Nevada Litigation, (1) the Buttons must submit a short affidavit explaining why the proposed claims are non-frivolous and non-duplicative of prior dismissed claims, attaching all prior dismissal orders; and (2) the defendants named in any such suit will be obligated to respond only if the Court authorizes the Buttons' new filing request.

The proposed injunction is appropriately limited by "subject matter." *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 321–22 (E.D.N.Y. 2012). Specifically, the proposed injunction relates only to new matters that concern the Nevada Litigation, including any matters concerning statements by third parties about the Nevada Litigation. It does nothing to prevent the Buttons from litigating, for example, a personal injury or medical malpractice suit, or any other action that is unrelated to the Nevada Litigation. Nor does it prevent the Buttons from filing new matters concerning the Nevada Litigation, so long as they are able to make a threshold showing that the new matter is non-frivolous and non-duplicative. *See Sankara v. Martuscellor*, 2025 WL 3012819, at *2 (S.D.N.Y. Oct. 27, 2025) (entering injunction that "does not preclude [litigant] from instituting any action whatsoever" and instead permits the litigant to file a lawsuit to "the extent [he] develops a meritorious claim" and has "obtain[ed] the Court's approval").

Courts in this Circuit have entered similar injunctions in similar cases. *See Lipin*, 573 F.

Supp. 2d at 845 (entering nationwide pre-filing injunction against *pro se* litigant who had filed six lawsuits involving a similar set of facts); *Kaul*, 2022 WL 4133427, at *8 (entering nationwide pre-filing injunction against *pro se* litigant who filed twelve frivolous lawsuits and had engaged in harassing behavior); *see also, e.g.*, *Zappin*, 2022 WL 6241248, at *25 (enjoining plaintiff "from filing further actions flowing from the Custody Action … without prior court approval"); *Vidurek*, 2018 WL 3597644, at *14 (enjoining plaintiff "from filing additional complaints regarding their ... tax liability"); *Ward v. Pennsylvania New York Cent. Transp. Co.*, 328 F. Supp. 1245, 1247 (S.D.N.Y. 1971) (enjoining plaintiff "from filing a similar suit in any court"); *Gabrelian v. Acampora*, 1991 WL 626724, at *4 (E.D.N.Y. Dec. 11, 1991) (enjoining plaintiff from instituting any action "in any court or administrative agency, state, federal or local, which in any way relates to any matter arising out of his matrimonial dispute").

### B.  This Forum Is Well-Suited to Grant the Requested Relief.

This Court is well-suited to enter the requested injunction. To date, this District has shouldered the greatest burden—the Buttons have filed three separate lawsuits in the Southern District of New York, more than any other court, wasting significant judicial resources in this District. *See Button v. New York Times Co.*, No. 1:24-cv-05888-MKV (S.D.N.Y.); *Button v. Breshears*, No. 1:24-cv-03757-MKV (S.D.N.Y.); *Button v. Doherty et al.*, No. 1:24-cv-05026-JPC-KHP (S.D.N.Y.). Two of those cases have been resolved by Your Honor, who is now regrettably familiar with the Buttons' vexatious litigation campaign and the legal deficiencies in their claims. *See Button v. New York Times Co.*, 2025 WL 2643674, at *22; *Button v. Breshears*, 2025 WL 2771663, at *13.[19] And while we hesitate to impose any additional burden on Your Honor, we

---

[19]    Although the Buttons' lawsuits all arise out of the Nevada Litigation, the District of Nevada is not as well-positioned to enter a pre-filing injunction because none of the Buttons' lawsuits were filed in that district. Relatedly, none of the current Nevada plaintiffs were named as defendants in

respectfully submit that this Court is best situated to police the Buttons' conduct going forward, an effort that will ultimately conserve judicial resources here—the Buttons' favored court—and across the country.

Likewise, Ms. Mariella and Ms. Ruff are well-suited to pursue the requested injunction because they have been harmed by the Buttons' vexatious litigation campaign in multiple ways. First and foremost, the Buttons wrongfully targeted Ms. Mariella and Ms. Ruff by naming them as defendants in the instant vexatious lawsuit. *See, e.g.*, *Woodhouse*, 704 F. Supp. 3d at 514 (holding that the plaintiff's "documented history of filing harassing and duplicative lawsuits, including against the moving defendants, supplie[d] the necessary factual predicate for a filing injunction identifying him as a vexatious litigant and restricting his future access to court"). Further, Ms. Mariella and Ms. Ruff have wasted significant time and *pro bono* resources responding to the Buttons' attacks, since they represent multiple other individuals who were also named as defendants in the Buttons' litigation campaign. *See supra* n.18. Finally, Ms. Mariella and Ms. Ruff also represent the Nevada Plaintiffs, who have suffered significant emotional distress as result of the litigation campaign, which appears to be the Buttons' primary objective. In short, Ms. Mariella and Ms. Ruff are uniquely positioned to speak to the myriad harms the Buttons have inflicted across multiple jurisdictions.

### C. Nationwide Relief Is Warranted Here.

A nationwide injunction is warranted in this case. Where, as here, a litigant has "peppered multiple jurisdictions with vexatious filings ... the case law supports imposition of a nationwide filing injunction." *Woodhouse*, 704 F. Supp. 3d at 518.

---

any of the Buttons' suits, so they may lack standing to request a pre-filing injunction. *See Wilson v. Pier 1 Imports (US), Inc.*, 411 F. Supp. 2d 1196, 1199 (E.D. Cal. 2006) (holding movant lacked standing because "in order to bring the [vexatious litigant] motion the defendants must be subject to the injury complained of, vexatious litigation").

Courts in this Circuit have entered nationwide pre-filing injunctions under similar circumstances. *See, e.g.*, *Kaul*, 2022 WL 4133427, at *8–9 (granting nationwide injunction where *pro se* litigant had "a pattern of abusing different district courts around the country" by filing "duplicative lawsuits" in multiple jurisdictions); *Lipin*, 573 F. Supp. 2d at 844–45 (granting nationwide injunction where *pro se* litigant had a "well documented history of vexatious litigation"); *Davey*, 453 F. Supp. 2d at 756–57 (granting nationwide injunction where *pro se* plaintiff had a "history of vexatious litigation" related to his divorce, which included suing "not only his ex-wife ... [but also] her brother, her sister, and his own son," his ex-wife's attorney and her firm, "the divorce judge and ... New York State"); *Word*, 230 F. Supp. 2d at 515 (granting nationwide injunction enjoining plaintiff from filing "without prior leave of court," further actions concerning the same factual matters already litigated).

Because the proposed injunction "preserves [the Buttons'] ability to assert meritorious claims with approval of the court," it is appropriately tailored and should be entered. *Lipin*, 573 F. Supp. 2d at 845.

## **CONCLUSION**

Ms. Mariella and Ms. Ruff respectfully request that the Court declare the Buttons vexatious litigants and enter the requested pre-filing injunction.

Dated:  November 18, 2025

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

*/s/* Eric Brenner
Eric Brenner
Pete Skinner
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: 212.446.2300
ebrenner@bsfllp.com
pskinner@bsfllp.com

*Attorneys for Defendants Lindsey Ruff and Sabina Mariella*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Motion was served on November 18, 2025, via the Court's CM/ECF electronic-filing system addressed to all parties on the e-service list.

<u>/s/ Eric Brenner</u>
Eric Brenner