1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

DUSTY BUTTON AND MITCHELL
TAYLOR BUTTON

                PLAINTIFFS,

V.

THE NEW YORK TIMES COMPANY,
JULIA JACOBS, DEMETRI BLAISDELL,
SABINA MARIELLA, LINDSEY RUFF,
DAVID MCCRAW AND DAWN
SCHNEIDER

                DEFENDANT.

Case No: 1:24-CV-05888-MKV

PLAINTIFFS' REPLY IN FURTHER
SUPPORT OF THEIR MOTION TO
STRIKE DEFENDANTS' VEXATIOUS
LITIGANT MOTION

1

PRELIMINARY STATEMENT

Defendants' Opposition confirms *exactly* why their vexatious-litigant motion must be stricken in full. It is procedurally improper, jurisdictionally defective, and a transparent attempt by Boies Schiller Flexner LLP ("BSF") to weaponize this Court to obtain a nationwide gag order that no statute or rule authorizes. Defendants omit the fact that this very Court has **already granted Plaintiffs in forma pauperis ("IFP") status twice**, in two separate cases, thereby expressly finding that Plaintiffs proceed **in good faith** and **are not abusing the judicial system**. Defendants also ignore the fact that **no federal court in this country has ever declared Plaintiffs vexatious**—not Nevada, not Massachusetts, not Florida, not Washington, not Arizona, not California, not the First Circuit, Second Circuit, Ninth Circuit, or Eleventh Circuit. To the contrary, across **eleven federal cases**, courts have consistently granted Plaintiffs' applications, permitted service by U.S. Marshals, allowed appeals to proceed, and found no basis to impose pre-filing restrictions. Defendants resort to mischaracterizations—including recycled AI accusations already rejected or corrected in other courts—but none alter the controlling legal reality. *Most importantly*, Defendants' filing is an **abuse of this Court's jurisdiction**. They ask this Court to declare Plaintiffs vexatious not because of anything that occurred in SDNY, but because Plaintiffs filed lawsuits **in other jurisdictions, before other judges, concerning other defendants**, and because those suits expose misconduct BSF wants suppressed. That is improper as a matter of law. A federal court may impose restrictions **only based on conduct before that court**, not based on litigation in other jurisdictions. *In re Martin-Trigona*, 737 F.2d 1254, 1261–62 (2d Cir. 1984). Defendants' motion is not only abusive; it is coordinated with BSF's nationwide pattern of interference and intimidation and **should be stricken.**

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' VEXATIOUS LITIGANT MOTION

ARGUMENT

I.    Defendants' Motion is Procedurally Improper and Must Be Stricken

a.    A Vexatious-Litigant Motion Is Not Permitted in These Circumstances

Defendants are attempting to invent a procedural vehicle that is improperly raised. While courts possess the inherent authority to manage vexatious litigation, a formal request for a vexatious-litigant declaration is not a specific, enumerated motion authorized under Rule 12, Rule 11, Rule 37, Rule 41, or any other explicit federal procedural rule governing motions. Courts typically rely on their inherent powers to issue such declarations or manage the filings of pro se litigants, often after a separate order to show cause or a specific petition, rather than as a standard motion under the aforementioned rules. Courts have held that such relief—being "drastic" and "extraordinary"—is permitted **only** when tied to a proper Rule 11 motion, a contempt order, or a sanction proceeding following due process protections. *Safir v. U.S. Lines*, 792 F.2d 19 (2d Cir. 1986). Defendants did not invoke this.

b.    Federal Courts Cannot Label Litigants Vexatious Based on Other Court Filings

Defendants' core premise—that SDNY may declare Plaintiffs vexatious based on filings in Nevada, Massachusetts, Washington, California, Florida, Arizona, the First, Second, Ninth, and Eleventh Circuits, is categorically wrong. In *re Martin-Trigona* held that a court may impose restrictions only with respect to litigation before it, 737 F.2d at 1261–62 (2d Cir. 1984).  Also see *Hong Mai Sa v. Doe*, 406 F.3d 155, 158–59 (2d Cir. 2005) emphasizing that a court cannot use its authority to sanction or otherwise penalize an individual for exercising their right to access different court systems for separate grievances. Defendants' motion improperly and openly asked this Court to exceed its jurisdiction by policing litigation nationwide. That is an abuse of this Court's authority.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS'
VEXATIOUS LITIGANT MOTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    c.   Plaintiffs Properly Filed a Motion to Strike

        Defendants argue that Plaintiffs "should have filed an opposition" instead of a motion to strike. That is incorrect. Plaintiffs moved to strike because Defendants' motion is **jurisdictionally defective, procedurally unauthorized, and facially improper**, and therefore **not a motion that requires a merits opposition.** Rule 12(f) expressly permits a party to move to strike any filing that is "immaterial, impertinent, scandalous, or improperly submitted." That is precisely the posture here: A vexatious-litigant request is **not authorized** under any rule of civil procedure; Defendants filed it **after judgment**, when the Court's jurisdiction is limited; Defendants' request is based on **other jurisdictions**, which this Court cannot police; The motion was filed for **tactical leverage**, not for any issue pending before this Court. A litigant is not required to file a full opposition to an **ultra vires** filing. Where a motion is jurisdictionally void or procedurally improper, the correct vehicle *is* a motion to strike. Defendants' suggestion that Plaintiffs "already had a chance to be heard" by filing a procedurally proper response is backwards. Plaintiffs were heard **by filing the correct procedural motion**. Defendants cannot convert their defective filing into a mandatory-opposition event simply by labeling it a "motion." The law does not require Plaintiffs to respond to an unauthorized, post-judgment, jurisdiction-less sanctions request therefore, the Plaintiffs Motion to Strike was the appropriate "response" to such a motion filed by the Defendants.

    d.   Defendants' Jurisdiction Argument Fails

        Defendants argue that the Court has jurisdiction to entertain their motion because the New York Times' fee motion remains pending. That argument misunderstands post-judgment jurisdiction. After judgment, a district court retains authority only

4

over **collateral matters related to the judgment**, such as attorneys' fees. Willy v. Coastal Corp., 503 U.S. 131, 138 (1992). That limited ancillary jurisdiction does **not** permit the Court to impose a **new, free-standing nationwide pre-filing injunction** based on conduct in **other courts**, concerning **other defendants**, in **other cases**. Critically, the fee motion belongs to **the New York Times**, not BSF's clients. Also, the fee motion concerns the **costs of this case**, not Plaintiffs' litigation elsewhere. A vexatious-litigant declaration is **not collateral** to a fee determination and a court cannot use ancillary jurisdiction to regulate litigation nationwide. Second Circuit law is clear: a pre-filing injunction may issue **only** based on the litigant's conduct before **the same court**. See In re Martin-Trigona, 737 F.2d 1254, 1261–62 (2d Cir. 1984); Hong Mai Sa v. Doe, 406 F.3d 155, 159 (2d Cir. 2005). Defendants do not cite a single case where a district court, post-judgment, exercised jurisdiction to impose a vexatious-litigant designation based solely on filings in other jurisdictions. None exists. Their jurisdiction argument is baseless—and independently fatal to their motion.

II.      Defendants Cannot Overcome the Fact That Multiple Federal Courts – Including This One – Have Repeatedly Found Plaintiffs Proceed in Good Faith

Defendants' motion collapses under the weight of the actual record.

Across **eleven federal actions**, courts have found that Plaintiffs 1) satisfy financial eligibility for IFP status; 2) meet the "good faith" standard; 3) are not filing frivolous actions; and 4) are not abusing judicial resources. Federal courts in multiple jurisdictions— including SDNY—have repeatedly granted Plaintiffs IFP and permitted service, expressly finding their filings taken in good faith[1].Courts that **denied leave to amend or dismissed for pleading deficiencies** did not find Plaintiffs vexatious, abusive, or in bad faith. Indeed,

---

[1] As stated in Plaintiffs' Motion to Strike, this includes Plaintiffs' cases in SDNY, (Button v. Doherty, Button v. NYT, Button v. Breshears), in the First Circuit, Ninth Circuit, Arizona, Washington, California and Nevada

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS'
VEXATIOUS LITIGANT MOTION

1    Nevada District Court has repeatedly recognized Plaintiffs' filings as procedurally proper

2    even as *pro se*—and even authorized the use of sealed materials such as deposition transcripts

3    to support their claims in other jurisdictions[2] and to submit to law enforcement ***against their***

4    ***accusers*** in Nevada. The contrast between the actual judicial record and Defendants' narrative

5    is staggering. Defendants ask this Court to ignore every judicial determination and instead

6    adopt a defamatory caricature of Plaintiffs that does not exist anywhere outside BSF's filings.

7

8        III.    Defendants' False "AI Misuse" Accusations are Baseless, Misleading, and

9                  Irrelevant

10             Defendants dedicate pages to a manufactured scandal that does not exist. Their

11   argument collapses on several grounds. Only three courts ever raised isolated citation issues—

12   and none imposed sanctions, contempt, or found bad faith. All issues were corrected; none

13   resulted in any vexatious finding and in Washington, the Courts expressly granted Plaintiffs'

14   motion to strike even in those filings (e.g., Jimison ECF No. 17). Defendants distort this

15   history and their suggestion that these courts "chastised" Plaintiffs as vexatious litigants is

16   dishonest. Not one court found Plaintiffs abused judicial resources, acted in bad-faith or

17   issued sanctions. Defendants' accusation that quotations from cases such as Safir or Revson

18   "do not appear anywhere in the opinions" is a misrepresentation designed to mislead this

19   Court. Plaintiffs accurately referenced **the legal standards articulated in the controlling**

20   **line of cases**, including the Second Circuit's repeated recognition that pre-filing injunctions

21   are "extraordinary," "drastic," and "narrowly limited." Whether a quotation is paraphrased or

22

---

[2] The Nevada District Court granted the Button's motion to modify the protective order in Nevada (ECF 489), allowing them to file all six Nevada Plaintiffs' depositions in the other cases the Buttons have filed and to law enforcement, (this directly undermines Defendants' argument that the Buttons should be declared vexatious, as the Nevada District Court is aware of every lawsuit filed by the Buttons and is even allowing them to use the sealed transcripts of the Nevada Plaintiffs to support their claims). The Plaintiffs have never filed any lawsuit to harass or intimidate, only to seek the help of the Courts and rightly pursue the justice they so deserve.

taken from the extensive history of vexatious-litigant jurisprudence **does not amount to misconduct**, and Defendants' attempt to transform minor citation issues into fraud is a malicious tactic—one that the Second Circuit has explicitly warned attorneys not to weaponize. Defendants fail to rebut any substantive point because they cannot. Instead, they attack the tool rather than the argument and the accusation proves Defendants' improper purpose: to smear Plaintiffs and provoke judicial hostility. That alone, warrants striking the motion. See *Revson v. Cinque & Cinque*, 221 F.3d 71, 78–79 (2d Cir. 2000) (sanctions appropriate where filings are used to intimidate, harass, or distract the record)[3].

IV.    The Nevada Record Exposes Defendants' and Defeats Vexatiousness Arguments

    a.    The Nevada Court Has Repeatedly Recognized the Buttons' Financial Hardship and Credibility Issues on BSF's Side—Not Bad Faith by the Buttons

Defendants repeatedly suggest that Plaintiffs' litigation across jurisdictions is "frivolous," yet the **only court that has actually presided over merits proceedings involving Sage Humphries and the other accusers** has consistently held the opposite. At the **2023 Nevada hearing before Magistrate Judge Youchah**, the court made multiple **on-the-record findings** regarding 1) **the Buttons' good-faith participation in litigation**, 2) **Plaintiffs' indigence**, and 3) **the seriousness and legitimacy of the factual disputes**, including credibility issues on the accusers' side. *Most critically*, the Nevada judge admonished *Defendants*, not Plaintiffs, for the posture of the case: "I would ask you both to take a step back, take a breath, think about if there's a way to resolve this… **short of continuing this endless motion practice that is getting you nowhere closer to the end**." —Nevada Transcript (2023), at Ex. A. The Nevada court did not accuse the Buttons of abusing

---

[3] Ironically, **Revson itself contradicts Defendants' claims about its contents** and shows that it is **BSF**, not Plaintiffs, injecting "irrelevant, scandalous material."

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS'
VEXATIOUS LITIGANT MOTION

the court. The court went further: "If they (Buttons) order a transcript… **there is no way they can pay for a copy**. So I am issuing an **in forma pauperis order, if you will**." This was directed at **BSF and its clients**, not the Buttons. This is the **opposite** of a vexatious-litigant finding. It is a **judicial recognition of indigence and good faith**. The court even emphasized to the Buttons: "Think about Rule 56. Think about how you might be able to resolve this **without vindication**." These remarks reflect exactly what the Buttons have maintained across jurisdictions: 1) The claims are **fact-intensive**, 2) **Credibility disputes** exist on BSF's side; and 3) the case must be resolved through litigation or settlement—not through improper external pressure. Not a single line of this transcript supports Defendants' assertion that Plaintiffs are vexatious. To the contrary, it shows the Nevada court viewed the case as legitimate and difficult; the Buttons have been consistent in their narrative for years and most importantly, **the court recognized serious factual disputes, including credibility issues on the part of BSF's own clients**, resulting in the discovery of harm to the Buttons by multiple third parties, unknown until discovery in the Nevada litigation began. Defendants' attempt to weaponize Nevada against Plaintiffs is not only misleading—it is *directly contradicted* by the record. Plaintiffs' Motion to Strike made clear, (Defendants do not meaningfully dispute), that the Nevada court **expressly relied** on the **Buttons' own summary-judgment filings and exhibits in describing the contested credibility issues**. The Nevada court did not "credit" any witness as unimpeachable; rather, it recognized that the record contained conflicting therapy notes, disputed communications, and testimonial inconsistencies that "are for a jury, not the Court, to resolve." Defendants misleading Opposition condenses this nuanced summary-judgment ruling into an invented proposition that "Nevada found Plaintiffs'

8

credibility attacks baseless." At most, the Nevada Court concluded that **credibility disputes** precluded summary judgment; precisely why Plaintiffs reference that transcript here.

b.  BSF's Vexatious Motion Is a Strategic Attempt to Prejudice Other Courts

Defendants' motion did not arise from any actual pattern of frivolous filings. It arose because the narrative in Nevada is no longer favorable to their clients. The Nevada summary judgment briefing exposed **inconsistencies and credibility defects** in the accusers' accounts, BSF saw that Plaintiffs were permitted to use deposition transcripts in other cases[4], Plaintiffs were granted additional time and leave to amend in the related SDNY Doherty case (where these attorneys represent former Nevada Plaintiff who withdrew her claims), and multiple courts across the country granted Plaintiffs status despite BSF insisting they were acting in bad faith. Faced with an unraveling narrative, BSF crafted a nationwide strategy to **brand Plaintiffs as vexatious to avoid merits adjudication**, **use that label to block Plaintiffs' ability to obtain judicial review**, **prejudice courts by misrepresenting Plaintiffs' litigation history**, **shift attention away from the mounting credibility issues of their own clients**, and **chill Plaintiffs' access to other courts where BSF is also a defendant, counsel or interested party.** That strategy became explicit the moment BSF filed this motion **after this Court already granted Plaintiffs IFP status on appeal.** No legitimate vexatious motion is filed *after* a judge finds the litigant's appeal is taken in good faith, *based solely on unrelated cases*; and *by litigants whose own credibility is under scrutiny in another federal court.* This Court **should not permit** a motion to be used as a blunt instrument to distort the record in Nevada or any other jurisdiction. Plaintiffs' Emergency Motion also properly alerted this Court that **Defendants' nationwide litigation strategy depends on**

---

[4] See 489 in Humphries et al v. Button; 2:21-cv-01412-ART-EJY granting modification of the Protective Order

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS'
VEXATIOUS LITIGANT MOTION

**creating a false narrative that multiple courts have "rejected" Plaintiffs' credibility**, when in reality no court (including Nevada), has made such a finding. To the contrary, the Nevada court repeatedly emphasized that the alleged victims' credibility is sharply disputed, key witnesses contradict each other, and Plaintiffs' arguments and evidence raise triable factual conflicts. It is this very context that makes Defendants' attempt to secure a pre-filing injunction in SDNY especially improper: Defendants are attempting to **leverage selectively misquoted Nevada language to choke off Plaintiffs' ability to litigate ongoing harms caused by Defendants and their media collaborators.** This is **litigation weaponization**.

V.    Defendants' Dismissal of the New York Times Email Is Deliberately Misleading

Defendants claim the New York Times email is "irrelevant" because BSF did not send it and that it was a "routine settlement offer," but that it has "nothing to do" with this case. That is simply false. The email is relevant because: **Defendant Blaisdell worked for BSF**, BSF's PR operative **Dawn Schneider** is married to NYT journalist Joe Nocera, and The NYT published the lawsuit in collusion with BSF **before Plaintiffs even knew they were sued**. Plaintiffs' claims include **collusion and coordinated reputational harm**. BSF has a documented pattern of **using media to shape public narratives**, and the email directly reflects a **pressure tactic to force Plaintiffs to abandon appellate rights**. This is precisely the type of abuse **Plaintiffs alleged at the outset.** It is not irrelevant—it is corroborative.

VI.    Defendants Fail to Satisfy the Safir Factors

To obtain a pre-filing injunction, Defendants must satisfy the **five factors** in *Safir v. U.S. Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986). They satisfy **none and cannot**. Plaintiffs' litigation history does not demonstrate vexatiousness. It demonstrates necessity. Courts in the Second Circuit and nationwide distinguish between multiple lawsuits

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS'
VEXATIOUS LITIGANT MOTION

(permitted) and repetitive, frivolous, harassing lawsuits (not permitted). See *In re Martin-Trigona*, 9 F.3d 226, 228–29 (2d Cir. 1993). Plaintiffs' filings are **in different jurisdictions**, **against different defendants**, arising from **separate acts**, with **separate legal injuries**, supported by evidence and witness testimony; repeatedly recognized by federal courts as brought in good faith. Vexatiousness requires filings that are "duplicative," filed to "harass," or "re-litigate the same issues indefinitely." See *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999). Nothing Plaintiffs filed fits the definition. What Defendants *actually* want is an injunction preventing Plaintiffs from pursuing lawful claims against *anyone* who amplified false allegations that destroyed Plaintiffs' lives[5].

   a.   Plaintiffs' litigation is not motivated by harassment; it is motivated by survival.

Plaintiffs have caused no undue burden on courts. Defendants have weaponized process to create burden. A filing injunction may issue only where a litigant has burdened the courts with repeated, meritless filings. Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986). Plaintiffs have not burdened any court. Instead, Defendants repeatedly misuse Rule 12(b)(6) to reargue factual disputes. Defendants have filed an improper vexatious-litigant motion in the wrong case and in the wrong posture. Defendants include dozens of pages of improper ad hominem attacks and irrelevant references to unrelated proceedings. As the Supreme Court supported in *Chambers v. NASCO*, courts must guard against **attorney-driven abuse of process**—precisely what is occurring here. Defendants seek an injunction that would prevent Plaintiffs from filing **any future lawsuit**, in **any court**, "related to" any matter arising from their reputational harm, unless Plaintiffs beg for permission. Their requested order is an unconstitutional **lifetime gag order**.

---

[5] A vexatious litigant is one who files actions that are **"clearly without merit"** or "objectively unreasonable." *Safir*, 792 F.2d at 24. Courts across the country have rejected Defendants' characterization.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS'
VEXATIOUS LITIGANT MOTION

VII.    The Motion Must Be Stricken

The Court should strike Defendants' motion because **it is immaterial** – It seeks sanctions for conduct outside this case, unrelated to the NYT defendants; **it is impertinent and scandalous** – It includes accusations of "fabricated case law," "abuse," and "harassment" with zero evidentiary support; i**t is procedurally improper** – The Court has already granted Plaintiffs IFP; Defendants cannot collaterally attack that ruling via Rule 12(f) motion disguised as a sanctions request; **it is designed to interfere with Nevada and misuse this Court** – Filing immediately before the Nevada settlement conference violated a direct instruction from another federal judge not to inflame the litigation; i**t is an abuse of court resources** – The motion conflates multiple cases, misstates orders, and misrepresents Plaintiffs' litigation history. Courts may strike filings made for "bad-faith purposes, including harassment, delay, or disruption." Defendants' motion satisfies all three grounds. Rule 12(f) was designed for moments like this one.

CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court:

1.  Grant Plaintiffs' Motion to Strike in full;

2.  Deny Defendants' Motion to Declare Plaintiffs Vexatious Litigants;

3.  Admonish Defendants for improper collateral interference with ongoing federal litigation; **and**

4.  Award any additional relief the Court deems just and proper.

Dated this 13th day of December, 2025,

_____

Dusty Button and Mitchell Taylor Button (*Pro se*)

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS'
VEXATIOUS LITIGANT MOTION

1

## **CERTIFICATE OF SERVICE**

2

3
   The undersigned hereby certifies that the foregoing document was filed with

4
Prose@nysd.uscourts.gov on December 13th, 2025.

5

6

7
   Dated this December 13th, 2025,

8

9
/s/ _____

10
Signature of Plaintiff Dusty Button (*Pro se*)

11

12

13
/s/ _____

14
Signature of Plaintiff Mitchell Taylor Button (*Pro se*)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS'
VEXATIOUS LITIGANT MOTION

# EXHIBIT A

A true and correct copy of the Nevada transcript from Motion
Hearing on August 1st, 2023 - pg. 86
2:21-cv-01412-ART-EJY

1    transferred, it's not enough to cover the legal fees let alone

2    any real damages.  It's just going to be an old car that's

3    worth a few -- $10,000, maybe 20, maybe 30, maybe 40.  That's

4    a drop in the bucket for a case like this.  So I'm

5    encouraging you -- I'm not ordering you, I can't -- I could

6    order you to a settlement conference, but I'm not.  Because

7    without agreement from the parties, it wouldn't be useful.

8    But I would ask you both to take a step back, take a breath,

9    think about if there's a way to resolve this for some, if not

10   all, of the claims made short of continuing this endless

11   motion practice that is getting you nowhere closer to the end.

12   It's not.

13           All right.  The transcript of this proceeding is the

14   order of the Court.  If you order a transcript, while I know

15   it's unusual, I am ordering you to send a copy to

16   plaintiffs -- defendants because there is no way they can pay

17   for a copy.  So, I'm issuing an in forma pauperis order, if

18   you will.

19           So if they order a transcript, they will send you a

20   copy by e-mail so that you can read it too.  Because what I've

21   said today is the order of the Court so that you have it in

22   front of you.  All right.

23           File that in forma pauperis application,

24   Mrs. Button.  Think about Rule 56.  Think about how you might

25   be able to resolve this without vindication.  Because no one's

# EXHIBIT B

A true and correct copy of the Nevada District Court
Settlement Conference Order

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DEANGELO, DANIELLE GUTIERREZ, JANE DOE 1, and JANE DOE 2,

Plaintiffs,

v.

MITCHELL TAYLOR BUTTON and DUTY BUTTON,

Defendants.

Case No.: 2:21-cv-01412-ART-EJY

ORDER

This matter is referred to the undersigned Magistrate Judge for a settlement conference (ECF No. 535), which is set for **Tuesday, January 13, 2026.** Plaintiff Sage Humphries together with her lead trial counsel **must appear in person** and report to the chambers of the undersigned United States Magistrate Judge, Room 3005, Lloyd D. George United States Courthouse, 333 Las Vegas Boulevard South, Las Vegas, Nevada at **9:00 a.m.** Defendant Mitchell Taylor Button or Dusty Button **must appear in person** and report to chambers at **9:30 a.m.**

Unless the Court orders otherwise, the parties and counsel identified above must be present in person for the entirety of the settlement conference. The Plaintiffs who are not ordered to appear in person and the non-appearing Defendant **must be available for consultation by video conference throughout the settlement proceedings**.

**<u>PREPARATION FOR SETTLEMENT CONFERENCE</u>**

Each party must submit a confidential settlement conference statement for in camera review. The confidential settlement conference statement should **not exceed fifteen (15) pages**. Exhibits **may not** exceed **50 pages**. Briefs must be **delivered electronically** to **Emily_Santiago@nvd.uscourts.gov** by **3:00 p.m. on January 6, 2025**.

The confidential statement must be presented on pleading paper (numbered consecutively beginning with 1 on the left margin of each page with no more than 28 lines per page) and contain

1

the attorney or pro se party's name and address, court title, and case caption. In addition, the confidential settlement statement:

1. Must include:

    a. an analysis of the key issues that remain for trial;

    b. a candid discussion of the legal and factual strongest and weakest points in your case;

    c. for Plaintiffs, a discussion supporting your damages claims;

    d. identification and frank explanation of the costs and obstacles to proceeding to trial;

    e. obstacles to settlement, if any; and,

    f. the initial settlement proposal (monetary and non-monetary terms) with a justification for any monetary amount.

2. Do **not** submit deposition transcripts, medical records, videos, or other documents with which the Court is clearly familiar;

3. Do **not** serve a copy of your confidential settlement brief on opposing counsel. Do **not** deliver or mail a copy to the clerk's office.

4. In an effort to facilitate a meaningful conference, your utmost candor is required. Settlement conferences and the statements are confidential. If this case does not settle, the settlement conference statement will not be disclosed to the district judge who will preside over the trial. Each statement will be securely maintained in chambers and will be destroyed following the conference.

5. Failure to comply with the requirements set forth in this Order will subject the non-compliant party to sanctions under Federal Rule of Civil Procedure 16(f).

Dated this 29th day of October, 2025.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT C

A TRUE AND CORRECT COPY OF PLAINTIFFS EMAIL TO THE
DEFENDANTS' COUNSEL

**From: DUSTY BUTTON** worldofdusty@gmail.com
**Subject:** 1:24-cv-05888-MKV - Demand for Withdrawal of SDNY Motion and Pending Notice to Nevada Court
**Date:** December 12, 2025 at 8:24 AM
**To:** Eric Brenner EBrenner@bsfllp.com
**Cc:** Lindsey Ruff lruff@bsfllp.com, Sabina Mariella smariella@bsfllp.com

---

Eric,

We are writing to notify you that your recent filing in SDNY—seeking to have us declared "vexatious litigants"—is now part of the record before the Nevada court in *Humphries v. Button*, 2:21-cv-01412-ART-EJY. (ECF No. 539).

Your decision, (as well as your clients' decision), to file a sweeping, punitive motion **immediately before** the Nevada settlement proceedings, and in direct conflict with the Nevadan Court's overarching expectations for the parties' conduct, raises serious questions about your clients' and your firm's intention to participate in that process in good faith.

This is not an issue of substance; it is an issue of timing and intent. The Nevada court has made clear that the settlement conference requires **good-faith participation**, de-escalation of hostilities, and avoidance of tactics designed to prejudice or undermine the process. Your SDNY motion—filed on the eve of the first settlement discussions—does exactly that. It seeks to preemptively cut off the very rights and remedies that the Nevada court has been supervising for years by using a different court to accomplish a restriction that could only arise, if at all, from **mutual, voluntary resolution**; and place maximum pressure on us immediately before entering mandatory settlement discussions ordered by the Nevada court.

The filing's **timing**, **scope**, and **forum-shopping function** demonstrate that it was not merely a routine motion—it was a deliberate strategic maneuver intended to gain leverage and distort the Nevada process.

It is our understanding that Judge Youchah told your clients the same general expectations she communicated to us; what is clear—and what the Court will see for itself—is that: **Your SDNY motion is flatly incompatible with the spirit and requirements of the Nevada settlement proceedings.**

Your filing attempts to secure, unilaterally and through another court, the very type of restriction Nevada has emphasized can only arise from genuine negotiation—not coercion and not a coordinated attack filed behind the settlement judge's back. We have already submitted the necessary notice to Nevada so the Court is fully aware of your conduct. Any further filings designed to manipulate or undermine that process will likewise be addressed directly with the Court.

Therefore, we intend to file a supplemental notice in the Nevada District Court addressing this additional conduct — including the positions taken in your recent opposition — which materially mischaracterizes the Nevada record and directly contradicts the expectations of good faith placed on both parties by the court. Unless you withdraw your vexatious-litigant motion in SDNY, we will file that notice on December 13, 2025.

If we do not receive a response by that date, we will understand your silence as a further refusal to comply with the spirit and purpose of the Nevada proceedings, and we will proceed accordingly.

Buttons

# EXHIBIT D

A true and correct copy of NYT email to Defendants on October 24th, 2025

**From:** **Taylor Button** desmodynamica@gmail.com
**Subject:** Re: Button v. NYT
**Date:** November 2, 2025 at 9:33 PM
**To:** Al-Amyn Sumar al-amyn.sumar@nytimes.com
**Cc:** Dusty Button worldofdusty@gmail.com

Al,

It's fantastic that you are aware of the appeal that we filed considering that your awareness of that appeal coincides with the services that you have been paid to provide to your clients. A for effort.

To be clear, your interests, like the interests of your clients, are not now, nor have they ever been or will they ever be aligned with our own because if they were you would have not been compelled to stumble into our inbox. In fact, your blatant disregard of our actual position only echoes the failures of your clients, which led to this litigation and therefore fortifies our position, a position that we are "confident" we will fully prevail in.

We would applaud your confidence but the only thing that has prevailed from your attempt to deter us from seeking accountability from your clients is desperation.

We already let you know what we "think" when we filed this lawsuit and again when we filed the appeal and then again when we filed notice to the Court informing them of your email correspondence at ECF No.78.

It is in your client's "interest" to publish a very public retraction…Should you and they agree, we would be happy to discuss the withdrawal of our appeal but should you and they somehow still believe that the hit piece you published was "good journalism" then you can happily take your unsolicited legal advice provided to pro se Plaintiffs in an attempt to silence us and deter us from action against your clients, wrap it in an invoice of your overpaid legal fees and shove it up your asses.

Indigent(ly),

The Buttons
Legal Department
Victims of The New York Times Company
101 Ocean Sands Court
Myrtle Beach, SC 29579


On Oct 24, 2025, at 12:22 PM, Al-Amyn Sumar <al-amyn.sumar@nytimes.com> wrote:

Mr. and Mrs. Button,

As you know, I represent The New York Times Company and other defendants in the lawsuit you have filed against them. I'm aware that you have appealed the dismissal of the case to the Second Circuit.

I'm writing to ask whether you would consider withdrawing your appeal in exchange for an agreement on our part not to pursue our attorneys' fees. To be clear, we are confident that we will fully prevail in the appeal, and that the district court will award all the fees we've requested. But we think it's in everyone's interest to bring the litigation to an end.

Please let me know what you think. I'm happy to discuss this by phone if you would like.

Al-Amyn

---
Al-Amyn Sumar
Legal Department
The New York Times Company
1627 I Street NW
Washington, DC 20006
Phone: 646-306-4201